1

Steve W. Berman (*pro hac vice pending*)
Jessica M. Thompson (*pro hac vice pending*)

2

HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300

3

Seattle, WA  98101
Telephone: (206) 623-7292

4

Facsimile: (206) 623-0594
steve@hbsslaw.com

5

jessicat@hbsslaw.com

6

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP

7

715 Hearst Avenue, Suite 202
Berkeley, CA  94710

8

Telephone: (510) 725-3000
Facsimile: (510) 725-3001

9

shanas@hbsslaw.com

10

*Attorneys for Plaintiff and the Proposed Classes*

11

[Additional counsel on signature page]

12

UNITED STATES DISTRICT COURT

13

NORTHERN DISTRICT OF CALIFORNIA

14

15

JOSE CHAVEZ, individually and on behalf of
all others similarly situated,

No.

16

CLASS ACTION COMPLAINT

Plaintiff,

17

**DEMAND FOR JURY TRIAL**

18

v.

19

FCA US LLC, a Delaware Limited Liability
Company; ROBERT BOSCH GMBH, a

20

corporation organized under the laws of
Germany; and ROBERT BOSCH LLC, a

21

Delaware Limited Liability Company,

22

Defendants.

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................1

II.     JURISDICTION .................................................................................................5

III.    VENUE...............................................................................................................5

IV.     PARTIES ............................................................................................................5

        A.    Plaintiff ...................................................................................................5

        B.    Defendants ..............................................................................................7

              1.    FCA US LLC.................................................................................7

              2.    The Bosch Defendants..................................................................7

V.      FACTUAL ALLEGATIONS .............................................................................9

        A.    The Environmental Challenges Posed by Diesel Engines and the U.S.
              Regulatory Response Thereto.................................................................9

        B.    The EcoDiesel Technology ...................................................................10

        C.    FCA Advertised and Promoted EcoDiesel as Clean and EPA-Compliant................11

        D.    FCA Advertised and Promoted EcoDiesel as Fuel Efficient....................13

        E.    FCA Advertised and Promoted EcoDiesel as Powerful .........................16

        F.    Worldwide Diesel Emissions Cheating .................................................16

        G.    Defendants' Dirty "Cheat Device" Scheme ..........................................19

        H.    Bosch Played a Critical Role in the Defeat Device Scheme ..................22

              1.    Volkswagen and Bosch conspire to develop the illegal defeat device..........23

              2.    Volkswagen and Bosch conspire to conceal the illegal
                    "akustikfunktion". ....................................................................31

              3.    Volkswagen and Bosch conspire in the U.S. and Germany to elude
                    U.S. regulators who regulated not just Volkswagen diesels, but all
                    diesels. ......................................................................................33

              4.    Bosch keeps Volkswagen's secret safe and pushes "clean" diesel in the
                    U.S. ...........................................................................................37

        I.    The Deception Involving FCA's "EcoDiesels".....................................40

        J.    The Damage..........................................................................................42

1    VI.    TOLLING OF THE STATUTE OF LIMITATIONS ........................................................43

2           A.    Discovery Rule Tolling ...........................................................................43

3           B.    Fraudulent Concealment Tolling ............................................................43

4           C.    Estoppel ..................................................................................................44

5    VII.   CLASS ALLEGATIONS ..........................................................................................44

6    VIII.  CLAIMS ...................................................................................................................48

7           A.    Claims Brought on Behalf of the Nationwide RICO Class .....................48

8    COUNT I VIOLATIONS OF RACKETEER INFLUENCED AND  CORRUPT
     ORGANIZATIONS ACT (RICO) VIOLATION OF 18 U.S.C. § 1962(C) - (D) ...............48
9
                 1.    The Members of the Emissions Fraud Enterprise .........................49
10
                 2.    The Predicate Acts ........................................................................54
11
            B.    Claims Brought on Behalf of the California Class ..................................59
12
     COUNT I  FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW....................................59
13
     COUNT II  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW  (CAL.
14         BUS. & PROF. CODE § 17200 *ET SEQ.*) .....................................................................62

15   COUNT III  VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES
           ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)......................................................................64
16
     COUNT IV  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL.
17         BUS. & PROF. CODE § 17500 *ET SEQ.*).....................................................................66

18          C.    Claims Brought on Behalf of the Alabama Subclass ...............................67

19   COUNT I  VIOLATIONS OF THE ALABAMA DECEPTIVE  TRADE PRACTICES ACT
           (ALA. CODE § 8-19-1 *ET SEQ.*).................................................................................67
20
     COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALABAMA LAW)......................68
21
            D.    Claims Brought on Behalf of the Alaska Subclass..................................73
22
     COUNT I  VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND
23         CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*) ........73

24   COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALASKA LAW)..........................73

25          E.    Claims Brought on Behalf of the Arizona Subclass.................................78

26   COUNT I  VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ. REV.
           STAT. § 44-1521 *ET SEQ.*) ........................................................................................78
27
     COUNT II  FRAUDULENT CONCEALMENT (BASED ON ARIZONA LAW) ........................80
28

F.      Claims Brought on Behalf of the Arkansas Subclass .................................................85

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT (ARK. CODE
        ANN. § 4-88-101 *ET SEQ.*) ..............................................................85

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ARKANSAS LAW) ....................88

G.      Claims Brought on Behalf of the California Subclass ................................................92

COUNT I  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW  (CAL.
        BUS. & PROF. CODE § 17200 *ET SEQ.*) ..............................................................92

COUNT II  VIOLATIONS OF THE CALIFORNIA CONSUMER  LEGAL REMEDIES
        ACT (CAL. CIV. CODE § 1750 *ET SEQ.*) ..............................................................95

COUNT III  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL.
        BUS. & PROF. CODE § 17500 *ET SEQ.*) ..............................................................99

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW) ..............100

H.      Claims Brought on Behalf of the Colorado Subclass ...............................................105

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
        (COLO. REV. STAT. § 6-1-101 *ET SEQ.*) ..............................................................105

COUNT II  FRAUDULENT CONCEALMENT (BASED ON COLORADO LAW) ..................108

I.      Claims Brought on Behalf of the Connecticut Subclass .........................................112

COUNT I  VIOLATIONS OF THE CONNECTICUT UNFAIR  TRADE PRACTICES ACT
        (CONN. GEN. STAT. ANN. § 42-110A *ET SEQ.*) ..............................................112

COUNT II  FRAUDULENT NON-DISCLOSURE (BASED ON CONNECTICUT LAW) ........115

J.      Claims Brought on Behalf of the Delaware Subclass ..............................................120

COUNT I  VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT (DEL. CODE
        § 2513 *ET SEQ.*) ..............................................................120

COUNT II  FRAUDULENT CONCEALMENT (BASED ON DELAWARE LAW) .................123

K.      Claims Brought on Behalf of the District of Columbia Subclass ...........................127

COUNT I  VIOLATION OF THE CONSUMER PROTECTION  PROCEDURES ACT
        (D.C. CODE § 28-3901 *ET SEQ.*) ..............................................................127

COUNT II  FRAUDULENT CONCEALMENT (BASED ON DISTRICT OF COLUMBIA
        LAW) ..............................................................130

L.      Claims Brought on Behalf of the Florida Subclass ................................................134

COUNT I  VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE
        PRACTICES ACT (FLA. STAT. § 501.201 *ET SEQ.*) ....................................134

COUNT II  FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW) ......................137

M.      Claims Brought on Behalf of the Georgia Subclass ................................. 142

COUNT I  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA. CODE ANN. § 10-1-390 *ET SEQ.*)...................................................... 142

COUNT II  FRAUDULENT CONCEALMENT (BASED ON GEORGIA LAW) ...................... 142

N.      Claims Brought on Behalf of the Hawaii Subclass .................................. 147

COUNT I  UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW (HAW. REV. STAT. § 480 *ET SEQ.*)..................................................... 147

COUNT II  FRAUDULENT CONCEALMENT (BASED ON HAWAII LAW) ........................ 150

O.      Claims Brought on Behalf of the Idaho Subclass.................................... 154

COUNT I  VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO CODE § 48-601 *ET SEQ.*)...................................................... 154

COUNT II  FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW) .......................... 157

P.      Claims Brought on Behalf of the Illinois Subclass ................................. 161

COUNT I  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND  DECEPTIVE BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1 *ET SEQ.* AND  720 ILL. COMP. STAT. 295/1A) ................................................................ 161

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ILLINOIS LAW) ...................... 164

Q.      Claims Brought on Behalf of the Kansas Subclass .................................. 169

COUNT I  VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN. STAT. ANN. § 50-623 *ET SEQ.*)................................................. 169

COUNT II  FRAUDULENT CONCEALMENT (BASED ON KANSAS LAW) ........................ 172

R.      Claims Brought on Behalf of the Kentucky Subclass ............................... 176

COUNT I  VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT (KY. REV. STAT. ANN. § 367.110 *ET SEQ.*) ......................................... 176

COUNT II  FRAUD BY OMISSION (BASED ON KENTUCKY LAW)................................... 179

S.      Claims Brought on Behalf of the Louisiana Subclass................................ 183

COUNT I  VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. STAT. ANN. § 51:1401 *ET SEQ.*) ................. 183

COUNT II  FRAUDULENT CONCEALMENT (BASED ON LOUISIANA LAW) .................. 186

T.      Claims Brought on Behalf of the Maine Subclass................................... 190

COUNT I  VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)............................................. 190

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MAINE LAW) ............................191

      U.      Claims Brought on Behalf of the Maryland Subclass ...............................195

COUNT I  VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT (MD.
      CODE ANN., COM. LAW § 13-101 *ET SEQ.*)..................................................195

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW) .................198

      V.      Claims Brought on Behalf of the Massachusetts Subclass.....................................203

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER  PROTECTION
      ACT (MASS. GEN. LAWS CH. 93A)...............................................................203

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS LAW) .......203

      W.      Claims Brought on Behalf of the Michigan Subclass ...............................208

COUNT I  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT  (MICH.
      COMP. LAWS § 445.903 *ET SEQ.*) ...............................................................208

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MICHIGAN LAW)....................210

      X.      Claims Brought on Behalf of the Minnesota Subclass...............................215

COUNT I  VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD
      ACT  (MINN. STAT. § 325F.68 *ET SEQ.*)........................................................215

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MINNESOTA LAW).................218

      Y.      Claims Brought on Behalf of the Missouri Subclass...............................222

COUNT I  VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
      (MO. REV. STAT. § 407.010 *ET SEQ.*) ..........................................................222

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MISSOURI LAW) ....................225

      Z.      Claims Brought on Behalf of the Montana Subclass...............................230

COUNT I  VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND
      CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101 *ET
      SEQ.*) ...................................................................................................................230

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MONTANA LAW)....................233

      AA.      Claims Brought on Behalf of the Nebraska Subclass...............................238

COUNT I  VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (NEB.
      REV. STAT. § 59-1601 *ET SEQ.*) ...................................................................238

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEBRASKA LAW)...................240

      BB.      Claims Brought on Behalf of the Nevada Subclass................................245

COUNT I  VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
(NEV. REV. STAT. § 598.0903 *ET SEQ.*) .........................................................245

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEVADA LAW) .......................248

    CC.    Claims Brought on Behalf of the New Hampshire Subclass under New
Hampshire Law .............................................................................................252

COUNT I  VIOLATION OF N.H. CONSUMER PROTECTION ACT (N.H. REV. STAT. §
358-A:1 *ET SEQ.*) ...........................................................................................252

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW HAMPSHIRE LAW)........255

    DD.    Claims Brought on Behalf of the New Jersey Subclass Under New Jersey Law....259

COUNT I  VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. STAT.
ANN. § 56:8-1 *ET SEQ.*).................................................................................259

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW JERSEY LAW)................262

    EE.    Claims Brought on Behalf of the New Mexico Subclass ........................................266

COUNT I  VIOLATIONS OF THE NEW MEXICO UNFAIR  TRADE PRACTICES ACT
(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)............................................................266

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW MEXICO LAW) ..............269

    FF.    Claims Brought on Behalf of the New York Subclass............................................274

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y.
GEN. BUS. LAW § 349)....................................................................................274

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y.
GEN. BUS. LAW § 350)....................................................................................276

COUNT III  FRAUDULENT CONCEALMENT (BASED ON NEW YORK LAW) ..................279

    GG.    Claims Brought on Behalf of the North Carolina Subclass.....................................283

COUNT I  VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND  DECEPTIVE
ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)..........................283

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH CAROLINA LAW)......286

    HH.    Claims Brought on Behalf of the North Dakota Subclass ......................................290

COUNT I  VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D.
CENT. CODE § 51-15-02)..................................................................................290

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH DAKOTA LAW) .........293

    II.    Claims Brought on Behalf of the Ohio Subclass....................................................298

COUNT I  VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (OHIO
REV. CODE § 1345.01 *ET SEQ.*)......................................................................298

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OHIO LAW) ...............................301

    JJ.     Claims Brought on Behalf of the Oklahoma Subclass ................................305

COUNT I  VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT (OKLA. STAT. TIT. 15 § 751 *ET SEQ.*).....................................................................305

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OKLAHOMA LAW).................308

    KK.    Claims Brought on Behalf of the Pennsylvania Subclass ........................313

COUNT I  VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1 *ET SEQ.*)..............................313

COUNT II  FRAUDULENT CONCEALMENT (BASED ON PENNSYLVANIA LAW) .........316

    LL.    Claims Brought on Behalf of the Rhode Island Subclass.........................320

COUNT I  VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*) .....................320

COUNT II  FRAUDULENT CONCEALMENT (BASED ON RHODE ISLAND LAW)...........323

    MM.   Claims Brought on Behalf of the South Carolina Subclass.....................328

COUNT I  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET SEQ.*) ......................................................328

COUNT II  VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET SEQ.*) ..............................................................330

COUNT III  FRAUDULENT CONCEALMENT (BASED ON SOUTH CAROLINA LAW).....331

    NN.    Claims Brought on Behalf of the Tennessee Subclass ............................336

COUNT I  VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT (TENN. CODE ANN. § 47-18-101 *ET SEQ.*)......................................................336

COUNT II  FRAUDULENT CONCEALMENT (BASED ON TENNESSEE LAW).................339

    OO.    Claims Brought on Behalf of the Texas Subclass ...................................343

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX. BUS. & COM. CODE § 17.41 *ET SEQ.*)..................................................................343

COUNT II  FRAUDULENT CONCEALMENT (BASED ON TEXAS LAW) ..........................344

    PP.     Claims Brought on Behalf of the Utah Subclass ....................................348

COUNT I  VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT (UTAH CODE ANN. § 13-11-1 *ET SEQ.*) ........................................................348

COUNT II  FRAUDULENT CONCEALMENT (BASED ON UTAH LAW) ...........................351

QQ.     Claims Brought on Behalf of the Vermont Subclass.................................356

COUNT I  VIOLATION OF VERMONT CONSUMER FRAUD ACT (VT. STAT. ANN.
TIT. 9, § 2451 *ET SEQ.*).................................................................356

COUNT II  FRAUDULENT CONCEALMENT (BASED ON VERMONT LAW) ...................359

RR.     Claims Brought on Behalf of the Virginia Subclass ................................363

COUNT I  VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA.
CODE ANN. § 59.1-196 *ET SEQ.*) ...................................................363

COUNT II  FRAUDULENT CONCEALMENT (BASED ON VIIRGINIA LAW).....................366

SS.     Claims Brought on Behalf of the Washington Subclass .........................371

COUNT I  VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
(WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*) ...........................371

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WASHINGTON LAW) ..............374

TT.     Claims Brought on Behalf of the West Virginia Subclass .....................378

COUNT I  VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND
PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*).........................378

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WEST VIRGINIA LAW)..........379

UU.     Claims Brought on Behalf of the Wisconsin Subclass............................383

COUNT I  VIOLATIONS OF THE WISCONSIN  DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18) ......................................................................383

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WISCONSIN LAW)..................386

PRAYER FOR RELIEF.........................................................................391

DEMAND FOR JURY TRIAL ...............................................................391

1  Plaintiff Jose Chavez, individually and on behalf of all others similarly situated (the "Class"),

2  alleges the following based upon the investigation of counsel, the review of scientific papers, and the

3  investigation of experts:

4  ## I.     INTRODUCTION

5  1.     This case involves trucks sold as "EcoDiesels" which, like the infamous Volkswagen

6  Diesels, are hardly "Eco" and in fact belch out harmful pollutants far in excess of both U.S. and State

7  of California emissions standards, but also in excess of what a reasonable consumer would expect

8  from an "Eco" vehicle.

9  2.     The world is besieged by a scandal involving tens of millions of diesel cars that

10  violate relevant emissions standards and were sold under false pretenses that they were "clean" or

11  "cleaner than gas vehicles," or environmentally friendly.  The United States, most European

12  countries, and other nations have implemented strict emissions standards for diesel engines designed

13  to protect all of us from the harmful byproducts found in the exhaust of diesel engines.

14  3.     Diesel engines pose a difficult challenge to the environment because they have an

15  inherent trade-off between power, fuel efficiency, and emissions.  Compared to gasoline engines,

16  diesel engines generally produce greater torque, low-end power, better drivability, and much higher

17  fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

18  4.     One byproduct of diesel combustion is oxides of nitrogen ("NOx"), which generally

19  describes several compounds comprised of nitrogen and oxygen atoms.  These compounds are

20  formed in the cylinder of the engine during the high temperature combustion process.  NOx pollution

21  contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the

22  atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers,

23  including serious respiratory illnesses and premature death due to respiratory-related or

24  cardiovascular-related effects.  The U.S. government, through the Environmental Protection Agency

25  (EPA), and many states, like California, have passed and enforced laws designed to protect U.S.

26  citizens from these pollutants and certain chemicals and agents known to cause disease in humans.

27  Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.

28

5.      Seeing a major opportunity for growth, almost all of the major automobile manufacturers rushed to develop "clean diesel" and promoted new diesel vehicles as environmentally friendly and clean.  Volkswagen, Mercedes, GM, Fiat Chrysler America (FCA), and other manufacturers began selling diesel cars and trucks as more powerful, yet also as an environmentally friendly alternative to gasoline vehicles.  And the marketing worked, as millions of diesel vehicles were purchased between 2007 and 2016.

6.      The green bubble with respect to diesel vehicles popped on September 18, 2015, when the EPA issued a Notice of Violation of the Clean Air Act (the "First NOV") to Volkswagen Group of America, Audi AG, and Volkswagen America for installing illegal "defeat devices" in 2009–2015 Volkswagen and Audi diesel cars equipped with 2.0-liter diesel engines.  A defeat device, as defined by the EPA, is any apparatus that unduly reduces the effectiveness of emissions control systems under conditions a vehicle may reasonably be expected to experience.  The EPA found that the Volkswagen/Audi defeat device allowed the vehicles to pass emissions testing while in the real world these vehicles polluted far in excess of emissions standards.  The California Air Resources Board also announced that it had initiated an enforcement investigation of Volkswagen pertaining to the vehicles at issue in the First NOV.

7.      On September 22, 2015, Volkswagen announced that 11 million diesel cars worldwide were installed with the same defeat device software that had evaded emissions testing by U.S. regulators.  Contemporaneously, Volkswagen announced that it had set aside reserves of 6.5 billion euros ($7.3 billion) in the third quarter to address the matter.[1]

8.      Volkswagen wasn't alone—soon, government agencies began to reveal that many manufacturers had produced dozens of models that were exceeding emissions standards.

9.      The "Dieselgate" issue is not limited to passenger vehicles, and hence this case.  In 2001, the EPA announced stringent emissions standards for heavy-duty diesel engines, slated to take

---

[1] *See* Nathan Bomey, *Volkswagen Emission Scandal Widens: 11 Million Cars Affected*, USA Today (Sept. 22, 2015), http://www.usatoday.com/story/money/cars/2015/09/22/volkswagen-emissions-scandal/72605874/.

CLASS ACTION COMPLAINT - 2
Case No.:
010635-11  918538 V1

effect in 2010.  Cummins Inc. and Chrysler (now known as FCA US LLC[2]) saw a golden business opportunity and worked together to build a truck that, at least on paper, met these standards, three years ahead of schedule.  Cummins announced the new truck as the:[3]

> [S]trongest, cleanest, quietest best-in-class 2007 Cummins Turbo Diesel.  Leapfrogging the competition, the Cummins 6.7-liter Turbo Diesel engine, used exclusively in Dodge Ram 2500 and 3500 Heavy Duty pickup trucks, has increased displacement[,] providing increased horsepower and torque[,] while achieving the world's lowest 2010 Environmental Protection Agency (EPA) NOx standard a full three years ahead of the requirements.

10.     FCA decided to push into this market beyond the Dodge Ram 2500 and 3500 and, in 2014, it introduced the Dodge Ram "EcoDiesel" and the Grand Cherokee Overland "EcoDiesel."

11.     To appeal to environmentally conscious consumers, FCA *vigorously* markets its EcoDiesel vehicles as "clean diesel" with ultra-low emissions, high fuel economy, and powerful torque and towing capacity.  FCA calls its EcoDiesel "ultra clean," "emissions compliant," and claims that "**no NOx**" exits the tailpipe.  FCA charges a premium for EcoDiesel-equipped vehicles.  For example, selecting the 3.0-liter EcoDiesel engine for the 2016 Dodge Ram 1500 Laramie adds $4,770 to the purchase price.  And the 2016 Jeep Grand Cherokee Overland EcoDiesel costs $4,500 more than its gasoline counterpart.

12.     These representations are deceptive and false.  FCA has programmed its EcoDiesel vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions.  On-road testing has confirmed that FCA's so-called EcoDiesel cars produced NOx emissions at an average of 222 mg/mile in city driving (four times the FTP standard of 50 mg/mile) and 353 mg/mile in highway driving (five times higher than the U.S. highway standard of 70 mg/mile).  In many instances, NOx values were in excess of 1,600 mg/mile, more than 20 times the standards.

13.     Thus, FCA manufactures, designs, markets, sells, and leases certain "EcoDiesel" vehicles as if they are "reduced emissions" cars that are cleaner than gasoline cars, when, in fact,

---

[2] FCA stands for Fiat Chrysler Automobiles.

[3] *Cummins Reveals Best-In-Class 2007 Turbo Diesel Engine*, Cummins Inc. (Jan. 23, 2007), http://investor.cummins.com/phoenix.zhtml?c=112916&p=irol-newsArticle_pf&ID=953050.

these FCA vehicles are not "Eco" and emit far more pollutants than their gasoline-fueled counterparts.  Plaintiff alleges that the following FCA models powered by EcoDiesel engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by FCA:  2014–2016 Dodge Ram 1500 and 2014–2016 Jeep Grand Cherokee (the "Affected Vehicles").

14.     In addition, FCA markets the vehicles as fuel efficient, if not the "best" of any full-sized pickup.  Without cheating emissions, FCA could not achieve the fuel economy and range it promises.

15.     FCA did not previously disclose to Plaintiff or Class members that in real-world driving conditions, the Affected Vehicles can only achieve high fuel economy and powerful towing by spewing unmitigated NOx into the air.  FCA never disclosed that it prioritizes engine power and profits over people.

16.     FCA never disclosed to consumers that the Affected Vehicles may be "clean" diesels in very limited circumstances, but are "dirty" diesels under most driving conditions.  FCA never disclosed that it prioritizes engine power and profits over the environment and people's time and money.  FCA never disclosed that the Affected Vehicles' emissions materially exceed the emissions from gasoline-powered vehicles, that the emissions exceed what a reasonable consumer would expect from a "clean diesel," and that the emissions materially exceed applicable emissions limits in real-world driving conditions.  And FCA collected a premium for these trucks by selling them at thousands of dollars over the cost of a comparable gas truck.

17.     FCA did not act alone.  At the heart of the diesel scandal in the United States and Europe are Bosch GmbH and Bosch LLC (together, "Bosch").  Bosch was an active and knowing participant in the scheme to evade U.S. emissions requirements.  Bosch manufactured and tested the electronic diesel control ("EDC") that allowed FCA to implement the defeat device.

18.     Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of the Affected Vehicles.  Plaintiff seeks damages, injunctive relief, and equitable relief for FCA's misconduct related to the design, manufacture, marketing, sale, and lease of Affected Vehicles, as alleged in this Complaint.

## II.   JURISDICTION

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the RICO Act, 18 U.S.C. § 1962.  The Court also has diversity jurisdiction because Plaintiff and Defendants reside in different states.  The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.  This Court also has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action Fairness Act of 2005, because Plaintiff and Defendants are citizens of different states; there are more than 100 members of the Class (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Class members reside across the United States.  The citizenship of each party is described further below in the "Parties" section.

20.     This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C. § 1965(b) & (d), and/or Cal. Code Civ. P. § 410.10.  This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and this State, and intentionally availed themselves of the laws of the United States and this state by conducting a substantial amount of business throughout the state, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of FCA vehicles in this State and District.  At least in part because of Defendants' misconduct as alleged in this lawsuit, Affected Vehicles ended up on this state's roads and in dozens of franchise dealerships.

## III.   VENUE

21.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Moreover, FCA has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV.   PARTIES

**A.     Plaintiff**

22.     Plaintiff Jose Chavez is an individual residing in Antioch, California.  On August 26, 2016, Plaintiff purchased a new model year 2016 Dodge Ram 1500 EcoDiesel from Hilltop Chrysler Jeep Dodge, an authorized FCA dealer in Richmond, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff, at the time the vehicle was purchased it only achieved its

promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.

23.     Plaintiff selected and ultimately purchased his vehicle, in part, because of the EcoDiesel system, as represented through advertisements and representations made by FCA. Plaintiff recalls that before he purchased the vehicle, he reviewed advertisements on FCA's website and representations from FCA's authorized dealer touting the efficiency, fuel economy, and power and performance of the engine.  He also recalls that before purchasing the vehicle, he reviewed advertisements on FCA's website and representations from FCA's authorized dealer that the Dodge Ram 1500 complied with U.S. emissions standards and was a low-emitting vehicle.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

24.     Plaintiff and each Class member has suffered an ascertainable loss as a result of FCA's omissions and/or misrepresentations associated with the EcoDiesel engine system, including, but not limited to, a high premium for the EcoDiesel engine compared to what they would have paid for a gas-powered engine, out-of-pocket losses and future attempted repairs, future additional fuel costs, decreased performance of the vehicles, and diminished value of the vehicles.

25.     Neither FCA nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the EcoDiesel engine system of the Affected Vehicles prior to purchase.

**B.     Defendants**

**1.     FCA US LLC**

26.     FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom.  FCA's principal place of business and headquarters is in Auburn Hills, Michigan.

27.     FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles.  FCA's Chrysler brand is one of the "Big Three" American automobile brands.  FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.  Other major divisions of FCA include Mopar, its automotive parts and accessories division, and SRT, its performance automobile division.  As of 2015, FCA is the seventh largest automaker in the world by unit production.

28.     FCA, through its various entities, designs, manufactures, markets, distributes, and sells automobiles in California and multiple other locations in the U.S. and worldwide.  FCA and/or its agents designed, manufactured, and installed the EcoDiesel engine systems in the Affected Vehicles.  FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

**2.     The Bosch Defendants**

29.     From at least 2005 to 2015, Robert Bosch GmbH, Robert Bosch LLC and currently unnamed Bosch employees (together, "Bosch") were knowing and active participants in the creation, development, marketing, and sale of illegal defeat devices specifically designed to evade U.S. emissions requirements in vehicles sold solely in the United States.  These vehicles include the Dodge Ram 1500 EcoDiesel and Jeep Grand Cherokee EcoDiesel, as well as diesels made by Volkswagen, Audi, Porsche, and Mercedes.  Bosch participated not just in the development of the

1    defeat device, but in the scheme to prevent U.S. regulators from uncovering the device's true

2    functionality.  Moreover, Bosch's participation was not limited to engineering the defeat device (in a

3    collaboration described as unusually close).  Rather, Bosch marketed "Clean Diesel" in the United

4    States and lobbied U.S. regulators to approve "Clean Diesel," another highly unusual activity for a

5    mere supplier.  These lobbying efforts, taken together with evidence of Bosch's actual knowledge

6    that the "akustikfunction" operated as a defeat device, and participation in concealing the true

7    functionality of the device from U.S. regulators, can be interpreted only one way under U.S. law:

8    Bosch was a knowing and active participant in a massive, decade-long conspiracy with Volkswagen,

9    FCA, and others to defraud U.S. consumers, regulators, and diesel car purchasers or lessees.

10          30.     Robert Bosch GmbH is a German multinational engineering and electronics company

11   headquartered in Gerlingen, Germany.  Robert Bosch GmbH is the parent company of Robert Bosch

12   LLC.  Robert Bosch GmbH, directly and/or through its North-American subsidiary Robert Bosch

13   LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to

14   Volkswagen for use in the Affected Vehicles.  Bosch GmbH is subject to the personal jurisdiction of

15   this Court because it has availed itself of the laws of the United States through its management and

16   control over Bosch, LLC, and over the design, development, manufacture, distribution, testing, and

17   sale of hundreds of thousands of the defeat devices installed in the Affected Vehicles sold or leased

18   in the U.S.

19          31.     Robert Bosch LLC is a Delaware limited liability company with its principal place of

20   business located at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331.  Robert Bosch LLC

21   is a wholly-owned subsidiary of Robert Bosch Gmbh.  Robert Bosch LLC, directly and/or in

22   conjunction with its parent Robert Bosch GmbH, at all material times, designed, manufactured, and

23   supplied elements of the defeat device to FCA for use in the Affected Vehicles.

24          32.     Both Robert Bosch GmbH and Robert Bosch LLC operate under the umbrella of the

25   Bosch Group, which encompasses some 340 subsidiaries and companies.  The Bosch Group is

26   divided into four business sectors:  Mobility Solutions (formerly Automotive Technology), Industrial

27   Technology, Consumer Goods, and Energy and Building Technology.  The Mobility Solutions

28   sector, which supplies parts to the automotive industry, and its Diesel Systems division, which

CLASS ACTION COMPLAINT - 8
Case No.:
010635-11  918538 V1

develops, manufacturers, and supplies diesel systems, are particularly at issue here and include the relevant individuals at both Bosch GmbH and Bosch LLC.  Bosch's sectors and divisions are grouped not by location, but by subject matter.  Mobility Solutions includes the relevant individuals at both Bosch GmbH and Bosch LLC.  Regardless of whether an individual works for Bosch in Germany or the U.S., the individual holds him or herself out as working for Bosch.  This collective identity is captured by Bosch's mission statement:  "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.[4]

## V.      FACTUAL ALLEGATIONS

**A.      The Environmental Challenges Posed by Diesel Engines and the U.S. Regulatory Response Thereto**

33.      The U.S. government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect U.S. citizens from pollution and, in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.

34.      The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the U.S. meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the U.S. must be covered by an EPA-issued certificate of conformity.

35.      There is a very good reason that these laws and regulations exist, particularly in regards to vehicles with diesel engines:  In 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic, and about as dangerous as asbestos.

36.      Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions:  the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

37.      Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high

---

[4] Bosch 2014 Annual Report, *Experiencing quality of life*, available at http://www.bosch.com/media/com/bosch_group/bosch_in_figures/publications/archive/GB2014_EN.pdf (last accessed November 30, 2016).

temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more powerful compression of the pistons, which produces greater engine torque (that is, more power).

38.    The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

39.    But this greater energy and fuel efficiency comes at a cost: diesel produces dirtier and more dangerous emissions.  One byproduct of diesel combustion is oxides of nitrogen (NOx), which includes a variety of nitrogen and oxygen chemical compounds that only form at high temperatures.

40.    NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

**B.     The EcoDiesel Technology**

41.    Vehicle manufacturers have struggled to produce diesel engines that have high power and strong fuel efficiency but also cleaner emissions.  Removing NOx from the untreated exhaust is difficult, and diesel vehicle makers have reacted by trying to remove NOx from vehicles' exhaust using catalysts.

42.    FCA's response to the challenge has been the EcoDiesel engine.

43.    Emission reductions start in the cylinder with advanced fuel injection strategies. After the byproducts of combustion leave the engine, the EcoDiesel technology treats these emissions using a diesel oxidation catalyst, diesel particulate filter, and selective catalyst reduction.

44.    The EcoDiesel approach, when it is operational, results in cleaner emissions without compromising power or fuel economy.

### C.     FCA Advertised and Promoted EcoDiesel as Clean and EPA-Compliant

45.     In order to counter beliefs that diesel engines produce "dirty" emissions and to capitalize on consumers' desire to protect the environment, FCA aggressively markets the EcoDiesel engine as being environmentally friendly, using a leaf and green coloring in its logo:



46.     The central theme in FCA's diesel engine marketing is the promise of clean diesel:[5]



47.     In its EcoDiesel advertising, FCA specifically targets consumers "who want to drive an efficient, environmentally-friendly truck without sacrificing capability or performance."[6]  Indeed, it claims that the Ram 1500 was "the NAFTA market's first and only light-duty pickup powered by clean diesel technology."[7]

---

[5] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror… (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

[6] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[7] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*,  Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2013Dec12.pdf.

48.     To convince these consumers, FCA expressly markets the Affected Vehicles as EcoDiesel vehicles, with EPA certifications throughout the U.S., claiming as follows throughout its advertising, specifications, and public-facing statements:

- "Thanks to advanced emissions-control technology … [EcoDiesel's] exhaust is ultra-clean, making this engine available in all 50 states."[8]

- "Equipped with a diesel oxidation catalyst, diesel particulate filter and selective catalyst reduction, the EcoDiesel V6 engine will be emissions-compliant in all 50 states."[9]

- "Chrysler Group engineers adapted the engine—manufactured by Fiat-owned V.M. Motori—to meet the NAFTA region's stringent emissions and on-board diagnostic regulations.  The new EcoDiesel V-6 is Tier 2/Bin 5 compliant."[10]

- The emissions on the EcoDiesel engine data sheet meet Tier2 Bin5 requirements.[11]

49.     FCA further claims that "the Bosch emissions control system helps ensure that virtually no particulates and minimal oxides of nitrogen (NOx) exit the tailpipe."[12]

50.     And FCA holds itself out as a protector of the environment:  "We are in a race against time.  Climate change and the increasing scarcity of traditional sources of energy require new approaches to mobility.  Fiat Group is addressing this challenge head-on by ensuring individual freedom of movement with maximum consideration for the environment and local communities."[13]

[8] *Id.*

[9] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[10] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014,*  Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2013Dec12.pdf.

[11] Specification Sheet, *available at* http://www.vmmotori.com/images/data_sheet/L630_DOHC-NEW.pdf (last accessed Nov. 30, 2016).

[12] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror… (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

[13] Fiat Chrysler's 2014 Sustainability Report at 4, *available at* http://www.fcanorthamerica.com/company/sustainability/Documents/Fiat%20Chrysler%20Sustainability%20Brochure%202014.pdf.

1    Step one, according to FCA is to "minimize environmental impacts related to the use of our

2    products."

3    **D.     FCA Advertised and Promoted EcoDiesel as Fuel Efficient**

4          51.     FCA promises that the EcoDiesel vehicles provide greater fuel economy, "30% better

5    than a comparable gasoline engine."  According to FCA, "a Jeep Grand Cherokee or Ram 1500 with

6    the EcoDiesel V-6 has a driving range of about 730 miles on one tank of fuel.  That's more than

7    enough range to make the drive from Detroit to Traverse City and back without a refueling stop."[14]

8          52.     FCA's website claims that "[t]he 3.0-liter V-6 EcoDiesel engine available on the Jeep

9    Grand Cherokee and Ram 1500 pickup has been listed among Ward's "10 Best Engines" for three

10   consecutive years.  On the Ram 1500, the engine delivers the highest fuel economy among all full-

11   size truck competitors – 12% higher than the next-closest competitor.  On the Jeep Grand Cherokee,

12   it offers fuel economy of 30 miles per gallon highway with a driving range of more than 730

13   miles."[15]

14         53.     FCA further claims that the 2014 Ram 1500 "exceeds the EPA highway rating for the

15   top-ranked small pickup.  The breakthrough results mean Ram keeps the half-ton fuel-economy

16   record set last year by the 2013 Ram 1500."

17         54.     A chart on FCA's website claims that Ram 1500 has the "best fuel economy of any

18   full-size pick-up:"[16]

19

20

21

22

23

24

---

25   [14] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror…
     (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/
26   22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

     [15] *Fuel Efficiency*, FCA US LLC, http://www.fcanorthamerica.com/Innovation/Pages/Fuel-
27   Efficiency2.aspx (last accessed Nov. 30, 2016).

28   [16] *EcoDiesel – Ram 1500 HFE*, Ram Trucks (FCA), http://www.ramtrucks.com/en/ecodiesel/#
     (last accessed Nov. 30, 2016).

1
2
3
4
5
6
7
8
9
10



11    55.    And FCA offers prospective Ram 1500 buyers a calculator to determine how much
12
money they can save with "fewer fill-ups day-by-day":[17]
13



14
15
16
17
18
19
20
21
22
23
24
25

26    56.    FCA's advertising has been effective.  According to one press release,"[i]t's every
27
truck manufacturer's dream to have this kind of initial order demand for a product.  Fuel economy is

28    [17] *Id.*

CLASS ACTION COMPLAINT - 14
Case No.:
010635-11  918538 V1

1    the No. 1 request of half-ton buyers and the Ram 1500 EcoDiesel delivers without compromising

2    capability."[18]

3           57.    FCA's Jeep Grand Cherokee advertising is similarly deceptive, claiming that diesel

4    technology reduces the number of fill-ups:[19]



17          58.    FCA further claims that the EcoDiesel fuel efficiency equips the Jeep Grand Cherokee

18   "with an incredible 730-mile highway driving range, you can find hundreds of miles of discovered

19   roads and be confident you'll find your way back."[20]

20          59.    Without cheating emissions, FCA could not achieve the fuel economy and range that

21   it promises.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the EcoDiesel

22   engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff

23   and Class members will be required to spend additional sums on fuel and will not obtain the

---

25        [18] *2014 Ram 1500 EcoDiesel Orders Top More Than 8,000 Units in Three Days, Filling Initial*
     *Allocation*, Chrysler Group LLC (FCA) (Feb. 19, 2014),  http://www.fcanorthamerica.com/News/
26   ChryslerDocuments/ChryslerGroupLLC_Sustain2014Feb19.pdf.
         [19] *EcoDiesel*, Jeep (FCA), http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/ (last
27   accessed Nov. 30, 2016).
         [20] *Id.*

28

performance characteristics of their vehicles when purchased.  And Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their vehicles' engines.

**E.      FCA Advertised and Promoted EcoDiesel as Powerful**

60.      Another major concern for consumers of trucks and SUVs is power, including torque and towing capacity.  FCA claims that the 2015 Jeep Grand Cherokee equipped with a 3.0-liter EcoDiesel V6 engine has best-in-class towing capability of up to 7,400 pounds.[21]

61.      FCA also claims that the EcoDiesel engine has best-in-class torque:  "The EcoDiesel engine delivers best-in-class 420 lb-ft of torque.  Paired with an impressive 240 horsepower, this engine has serious muscle."[22]

62.      Without cheating emissions, FCA could not achieve the power and performance that it boasts about.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the EcoDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not retain the towing capacity advertised.  And Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and increased wear on their vehicles' engine.

**F.      Worldwide Diesel Emissions Cheating**

63.      As noted, the world was shocked to learn that Volkswagen had manufactured over 11 million cars that were on the road in violation of European emissions standards, and over 480,000 vehicles were operating in the U.S. in violation of EPA and state standards.  But Volkswagen was not the only manufacturer of vehicles that exceeded emissions standards.

64.      In the wake of a major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emissions controls

---

[21] *Id.*

[22] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

(called "defeat devices"),[23] scientific literature and reports and testing indicate that most of the diesel car manufactures of so called Clean Diesel vehicles emit far more pollution on the road than in lab tests.  The EPA has widened its probe of auto emissions to include, for example, the Mercedes E250 BlueTEC.

65.     In May 2015, a study conducted on behalf of the Dutch Ministry of Infrastructure and the Environment found that all sixteen vehicles made by a variety of manufacturers, when tested, emitted significantly more NOx on real-world trips while they passed laboratory tests.  The report concluded that "[i]n most circumstances arising in normal situations on the road, the system scarcely succeeded in any effective reduction of NOx emissions."[24]

66.     The report further remarked:[25]

> It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice. In other words:  ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***.

The lack of any "effective reduction of NOx emissions" is a complete contradiction of FCA's claim that its vehicles are clean.

67.     Other organizations are beginning to take notice of the emissions deception.  The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe."  T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that models tested emitted more pollutants on the road than in their laboratory

---

[23] EPA's Sept. 18, 2015 Notice of Violation ("NOV") to Volkswagen Group of America, Inc. available at https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf.  As detailed in the NOV, software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  But otherwise, while the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or at the state testing station, but during normal operation they emit NOx at up to 40 times the standard allowed under U.S. laws and regulations.  Volkswagen has admitted to installing a defeat device in its diesel vehicles.

[24] *Detailed investigations and real-world emission performance of Euro 6 diesel passenger cars*, TNO (May 18, 2015), http://publications.tno.nl/publication/34616868/a1Ug1a/TNO-2015-R10702.pdf.

[25] *Id.* at 6 (emphasis added).

1  tests.  "For virtually every new model that comes onto the market the gap between test and real-

2  world performance leaps," the report asserts.[26]

3       68.    In a summary report, T&E graphically depicted the widespread failure of most

4  manufacturers:[27]



### 2. The problem is endemic across the car industry – but the performance of individual models and manufacturers varies widely

In tests by the ICCT[1] 12 out of 13 modern diesel cars failed to achieve the Euro 6 limit in on the road. The worst vehicle, an Audi, emitted 22 times the allowed limit. Emissions are highest in urban areas where most people are exposed to the pollution. On average a new diesel car emits **over** 800mg/km of nitrogen oxides driving in town compared to the limit of 80mg/km. Data obtained on around 20 modern diesel cars by T&E shows every major manufacturer is selling cars that fail to meet Euro 6 limits on the road.  A minority of vehicles do meet the limits – but most don't. This is because the industry uses cheaper less effective exhaust treatment systems or fails to configure the best systems in a way that minimizes emissions. The cost of a modern diesel after treatment system is just €300.

**Above and beyond the safe limit**

Source: T&E                                        Transport & Environment

23       69.    The T&E report found that the current system for testing cars in a laboratory produces

24  "meaningless results."[28]

---

[26] *VW's cheating is just the tip of the iceberg*, Transport & Environment (Sept. 21, 2015), http://www.transportenvironment.org/publications/vw%E2%80%99s-cheating-just-tip-iceberg.

[27] *Five facts about diesel the car industry would rather not tell you*, Transport & Environment (Sept. 2015), http://www.transportenvironment.org/sites/te/files/publications/2015_09_Five_facts_about_diesel_FINAL.pdf.

70.     Emissions Analytics is a U.K. company which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles."  With regard to its recent on-road emissions testing, the company explains:[29]

> [I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory.  Real-world emissions of carbon dioxide are almost one-third above that suggested by official figures.  For car buyers, this means that fuel economy on average is one quarter worse than advertised.  This matters, even if no illegal activity is found.

## G.     Defendants' Dirty "Cheat Device" Scheme

71.     All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, such as an electronic diesel control ("EDC").  Bosch tested, manufactured and sold the EDC system used by Volkswagen, Mercedes, and FCA in the Affected Vehicles.  This system is more formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17").  Upon its introduction, EDC Unit 17 was publicly-touted by Bosch as follows:[30]

> EDC17 … controls every parameter that is important for effective, low-emission combustion.
>
> Because the computing power and functional scope of the new EDC17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets.  In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides.  The Bosch EDC17 determines the injection parameters for each cylinder, making specific adaptations if necessary.  This improves the precision of injection throughout the vehicle's entire service life.  The system therefore makes an important contribution to observing future exhaust gas emission limits.

72.     Bosch worked with each vehicle manufacturer that utilized EDC Unit 17 to create a unique set of specifications and software code to manage the vehicles' engine operation.

---

[28] *Id.*

[29] Emissions Analytics Press Release (Sept. 28, 2015), *available at* http://www.abvwc.com/home/emissions-analytics.

[30] *See* Bosch Press Release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

1    73.    With respect to the Affected Vehicles, however, EDC Unit 17 was also enabled by

2    Bosch and FCA to surreptitiously evade emissions regulations.  Bosch and FCA worked together to

3    develop and implement a specific set of software algorithms for implementation in the Affected

4    Vehicles, which enabled FCA to adjust fuel levels, exhaust gas recirculation, air pressure levels, and

5    even urea injection rates (for applicable vehicles).[31]  When carmakers test their vehicles against EPA

6    emission standards, they place their cars on dynamometers (large rollers) and then perform a series

7    of specific maneuvers prescribed by federal regulations.  Bosch's EDC Unit 17 gave Volkswagen,

8    FCA, and other manufacturers the power to detect test scenarios by monitoring vehicle speed,

9    acceleration, engine operation, air pressure, and even the position of the steering wheel.  When the

10   EDC Unit 17's detection algorithm detected that the vehicle was on a dynamometer (and undergoing

11   an emission test), additional software code within the EDC Unit 17 downgraded the engine's power

12   and performance and upgraded the emissions control systems' performance by switching to a "dyno

13   calibration" to cause a subsequent reduction in emissions to legal levels.  Once the EDC Unit 17

14   detected that the emission test was complete, the EDC Unit would then enable a different "road

15   calibration" that caused the engine to return to full power while reducing the emissions control

16   systems' performance, and consequently caused the car to spew the full amount of illegal NOx

17   emissions out on the road.[32]  This process is illustrated in the following diagram, applicable to FCA

18   as well:

19

20

21

22

23

24

25

_____

26   [31] *See, e.g., Engine management*, Bosch Auto Parts, http://de.bosch-automotive.com/en/parts_
     and_accessories/motor_and_sytems/diesel/engine_management_2/engine_control_unit_1 (last
27   accessed Nov. 30, 2016).
     [32] Russell Hotten, *Volkswagen: The scandal explained*, BBC (Dec. 10, 2015), http://www.bbc.
28   com/news/business-34324772.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



**How Volkswagen's defeat device works**

'SWITCH' SOFTWARE

Software in the car's electronic control module (ECM) determines where the car is being driven (i.e. highway, road, testing) by analysing a series of factors.

FACTORS ANALYSED

Position of steering    Speed    Duration of engine operation    Barometric pressure

MODE OF THE VEHICLE?

BEING TESTED

Mode switches to "dyno calibration," as software recognises vehicle is taking emission test.

RESULT

EPA compliant emission levels produced.

NORMAL OPERATION

Mode switches to "road calibration," as software recognises vehicle is in normal operation.

RESULT

Effectiveness of emission control system reduced, increasing Nitrogen oxide levels to 10 to 40 times above standards.

Source: U.S. Environmental Protection Agency

J. Wang, 22/09/2015                                                     REUTERS

74.    This workaround was illegal.  The Clean Air Act expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use."  40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device.").  Moreover, the Clean Air Act prohibits the sale of components used as defeat devices, "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3).  Finally, in order to obtain a certificate of compliance ("COC"), automakers must submit an application, which lists all auxiliary emission control devices installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

75.    Thus, in order to obtain the COCs necessary to sell their vehicles, FCA did not disclose, and affirmatively concealed, the presence of the test-detecting and performance-altering software code that it developed with Bosch from government regulators, thus making that software an illegal defeat device.  In other words, FCA lied to the government, its customers, its dealers, and the public at large.

76.    Because the COCs were fraudulently obtained, and because the Affected Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Affected Vehicles were never covered by a valid COC, and thus, were never legal for sale, nor were they EPA and/or CARB compliant, as represented.  FCA and Bosch hid these facts from the EPA, other regulators, its dealers and consumers, and it continued to sell and lease the Affected Vehicles to the driving public, despite their illegality, and with the complicity of Bosch.

77.    FCA's illegal workaround was enabled by its close partnership with Bosch, which enjoyed a sizable portion of its annual revenue from manufacturing parts used in FCA's and other manufacturers' diesel vehicles.[33]  Bosch was well aware that FCA was using its emissions control components as a defeat device and, in fact, worked with FCA to develop the software algorithm specifically tailored for the Affected Vehicles.

78.    Because the COCs were fraudulently obtained, the Affected Vehicles were never covered by valid COCs, and thus, were never offered legally for sale.  FCA hid these facts from the EPA, CARB and other state regulators, and consumers, and it continued to sell and lease the Affected Vehicles despite their illegality, and with the complicity of Bosch.

**H.    Bosch Played a Critical Role in the Defeat Device Scheme**

79.    Discovery of Bosch has just begun, but the evidence already proves that Bosch played a critical role in the scheme to evade U.S. emissions requirements for diesel vehicles, including

---

[33] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world.  *See Bosch probes whether its staff helped VW's emissions rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

CLASS ACTION COMPLAINT - 22
Case No.:
010635-11  918538 V1

Volkswagen and FCA vehicles.[34]  ***In 2008, Bosch wrote Volkswagen and expressly demanded that Volkswagen indemnify Bosch for anticipated liability arising from the use of the Bosch-created "defeat device" (Bosch's words), which Bosch knew was "prohibited pursuant to … US Law***."[35] Volkswagen apparently refused to indemnify Bosch, but Bosch nevertheless continued to develop the so-called "akustikfunktion" (the code name used for the defeat device) for Volkswagen for another seven years.  During that period, Bosch concealed the defeat device in communications with U.S. regulators once questions were raised about the emission control system in the Affected Vehicles, and went so far as to actively lobby lawmakers to promote Volkswagen's "Clean Diesel" system in the U.S.  Bosch's efforts, taken together with evidence of Bosch's actual knowledge that the "akustikfunktion" operated as an illegal defeat device, demonstrate that Bosch was a knowing and active participant in the decade-long illegal enterprise to defraud U.S. consumers.

80.     Although this case is not about Volkswagen, Bosch's history with Volkswagen provides background and support for its participation in the RICO enterprise alleged herein, of which Bosch and FCA were participants.

**1.     Volkswagen and Bosch conspire to develop the illegal defeat device.**

81.     Bosch tightly controlled development of the control units in the Affected Vehicles, and actively participated in the development of the defeat device.

82.     As discussed above, Bosch introduced a new generation of diesel ECUs for Volkswagen.  The development of the EDC17 was a massive undertaking, which began years before Volkswagen began its push into the U.S. market.  At least twenty Bosch engineers were working full-time on writing the code for the EDC17 in the 2001 time frame.  By 2004, long before the November 20, 2006 meeting at which Volkswagen apparently decided to use the defeat device to "pass" emission certification standards in the U.S., Bosch and Volkswagen had already entered into preliminary agreements for further development of the EDC17.[36]

---

[34] Plaintiff's detailed and specific allegations against Bosch are based almost entirely on publicly-available documents, Plaintiff's own research, and information produced by Volkswagen.

[35] VW-MDL2672-02570091 (English translation) (emphasis added).

[36] *See* PowerPoint presentation at VW-MDL2672-02559528.  This internal Volkswagen PowerPoint describes the "akustikfunktion" as activated in "recognition of emission related

CLASS ACTION COMPLAINT - 23
Case No.:
010635-11  918538 V1

83.     A February 28, 2006 Bosch press release introduced the "New Bosch EDC17 engine management system" as the "brain of diesel injection" which "controls every parameter that is important for effective, low-emission combustion."  The EDC17 offered "[e]ffective control of combustion" and a "[c]oncept tailored for all vehicle classes and markets."  In the press release, Bosch touted the EDC17 as follows:[37]

> **EDC17: Ready for future demands**
> Because the computing power and functional scope of the new EDC17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets.  In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides.  The Bosch EDC17 determines the injection parameters for each cylinder, making specific adaptations if necessary.  This improves the precision of injection throughout the vehicle's entire service life.  The system therefore makes an important contribution to observing future exhaust gas emission limits.

84.     Bosch's EDC17 was the technology behind Volkswagen's ambition.  The EDC17 and the development of its underlying software were integral to Volkswagen's entire diesel strategy, which by late 2006 included creating software to sense when the vehicles were in test mode and then manipulate the emission control system at that time.  This could not have been accomplished without years of collaborative work with Bosch.

85.     As early as February 2005, an internal feasibility study drafted by Ulrich Hackenberg (Audi Development Chief) mentioned Bosch's EDC17 as part of a strategy to reduce diesel vehicle emissions of nitrogen oxides ("NOx") by creating a change in engine electronics.[38]  The study discussed diesel strategies in the U.S. market in light of tightening U.S. emission standards.  As discussed above, shortly after the cheating scandal became public, Volkswagen suspended Hackenberg, and he later resigned.[39]

---

environment conditions" and proposed it as a solution to the "registration/certification [problem] in the US."

[37] *See* Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-resse.de/presseforum/details.htm?txtID=2603&locale=en.

[38] VW-MDL2672-00744825.

[39] Jack Ewing, *Audi Executive Resigns After Suspension over VW Emissions Scandal*, NY Times (Dec. 4, 2015), http://www.nytimes.com/2015/12/05/business/international/ulrich-hackenberg-suspended-over-volkswagen-emissions-scandal-resigns.html.

86.     Bosch made clear that the EDC17 was not one-size-fits-all.  Instead, it was a "[c]oncept tailored for all vehicle classes and markets" that could "be adapted to match particular requirements [and] … be used very flexibly in any vehicle segment on all the world's markets." The EDC17 was tailored and adapted by modifying the sophisticated software embedded within the electronic control unit ("ECU").  Bosch manufactured, developed, and provided the ECU and its base of software to Volkswagen, Mercedes, FCA, and others.

87.     Bosch and FCA worked together closely to modify the software, and to create specifications for each vehicle model.  Indeed, customizing a road-ready ECU is an intensive three- to five-year endeavor involving a full-time Bosch presence at an automaker's facility.  Bosch and its customers work so closely that Bosch purposefully locates its component part manufacturing facilities close to its customers' manufacturing plants.

88.     All Bosch ECUs, including the EDC17, run on complex, highly proprietary engine management software over which Bosch exerts near-total control.  In fact, the software is typically locked to prevent customers, like FCA, from making significant changes on their own.  The defeat device was just such a software change—one that would allow modifications to the vehicle's emission control to turn on only under certain circumstances—that FCA could not have made without Bosch's participation.

89.     Bosch's security measures further confirm that its customers cannot make significant changes to Bosch software without Bosch involvement.  Bosch boasts that its security modules protect vehicle systems against unauthorized access in every operating phase, meaning that no alteration could have been made without either a breach of that security—and no such claims have been advanced—or Bosch's knowing participation.[40]

90.     Unsurprisingly, then, at least one car company engineer has confirmed that Bosch maintains absolute control over its software as part of its regular business practices:[41]

_____

[40] *Reliable Protection for ECUs*, ESCRYPT (May 12, 2016), https://www.escrypt.com/company/single-news/detail/reliable-protection-for-ecus/.

[41] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software/.

> I've had many arguments with Bosch, and they certainly own the dataset software and let their customers tune the curves.  Before each dataset is released it goes back to Bosch for its own validation.
>
> Bosch is involved in all the development we ever do.  They insist on being present at all our physical tests and they log all their own data, so someone somewhere at Bosch will have known what was going on.
>
> All software routines have to go through the software verification of Bosch, and they have hundreds of milestones of verification, that's the structure ….
>
> The car company is *never* entitled by Bosch to do something on their own.

Thus, Bosch cannot convincingly argue that the development of the "akustik" device was the work of a small group of rogue engineers.

91.    In fact, Volkswagen's and Bosch's work on the EDC17 reflected a highly unusual degree of coordination.  It was a massive project that required the work of numerous Bosch coders for a period of more than ten years, or perhaps more.[42]  Although Bosch publicly introduced the EDC17 in 2006, it had started to develop the engine management system years before.[43]

92.    The size and complexity of the undertaking is captured by a spreadsheet that lists entries for work done by Volkswagen and Bosch employees on the EDC17 from late 2003 to 2009.  Each entry is given one of six descriptors: enhancement, new feature, service, support, integration, or bug/defect.  In total, the spreadsheet contains 8,565 entries and lists hundreds of Bosch individuals.[44]

93.    The joint enterprise is also memorialized in a series of agreements between Bosch and Volkswagen dating back to as early as mid-2005, reflecting negotiations that date prior to January 2005.  On April 7, 2005, for example, Bosch GmbH's Ulrich Gralka and Dr. Holfelder executed the "Framework Development Agreement for Software Sharing in EDC/MED17 Control Unit Projects from the Robert Bosch (RB) Diesel Systems (DS) And Gasoline Systems (GS) Motor Vehicle

---

[42] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world.  *See Bosch Probes Whether Its Staff Helped VW's Emissions Rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

[43] Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

[44] VW-MDL2672-02559780.

1    Units." VWAG countersigned the agreement on September 26, 2005. Importantly, the agreement

2    defined software sharing as "the handing over of BOSCH software in the form of object code by

3    BOSCH to VW, so that VW can use this BOSCH software as a basis for developing VW modules

4    for specific EDC/ME(D)17 projects using software development environments from BOSCH." The

5    agreement states that "[p]roviding the VW modules and integrating them to form a complete

6    software product requires close cooperation between the Parties."

7           94.     The contract also outlined responsibilities for software sharing and co-development.

8    Throughout development, the contract dictated Bosch was to retain control over the software. While

9    Bosch provided (and owned) the object code, and Volkswagen developed (and owned) the modules,

10   the parties agreed that "BOSCH carries out any modifications to the BOSCH software that are

11   necessary in order to integrate the intended VW modules at the expense of VW." The agreement

12   further specifies that Bosch would monitor the software, test the implementation of Volkswagen

13   modules, and grant written approval to Volkswagen modules. Only if everything met Bosch's

14   standards would it then "deliver[] the final complete software product for VW to use in combination

15   with a BOSCH control unit."[45] Thus, Bosch needed to conduct extensive testing before delivering

16   the product to VW.

17          95.     Yet another document demonstrates the tight grip that Bosch maintained over EDC17

18   software and any modifications made to it. On February 20, 2006, VWAG and Bosch (signed by

19   Bosch GmbH's Dr. Steffen Berns, Senior Vice President of the Diesel Systems division), entered

20   into a supplemental agreement concerning the use of "expanded software" documentation for the

21   EDC17 and EDC16 (its predecessor).[46] Pursuant to this agreement, Bosch identified 35 named

22   individuals, affiliated with either VWAG or IAV (Ingenieurgesellschaft Auto und Verkehr), who

23   were granted access to expanded documentation for the EDC17 for specific functions relating to

24   emissions. Any changes to the list of persons to be given access required the explicit consent of

25   Bosch GmbH, and the access was temporary and non-transferable. Critically, the agreement stated

26   that "[t]his right of use shall not include the right to the change, modify or use the

27   _____
     [45] Volkswagen produced an English translation of the agreement at VW-MDL2672-03752699.

28   [46] Volkswagen produced an English translation of the agreement at VW-MDL2672-03752757.

CLASS ACTION COMPLAINT - 27
Case No.:
010635-11  918538 V1

DOCUMENTATION with third-party control units."[47]  Bosch thereby tightly controlled both who could access the expanded documentation and the scope of their use of such materials.

96.     A later agreement between Bosch GmbH and Volkswagen, this one from June 12, 2006, governed the implementation, integration, project management, and delivery of certain EDC 17 software functions for diesel vehicles that VWAG had requested from Bosch.  This agreement, too, made clear that any changes not explicitly detailed in the agreement would require further approval from Bosch.

97.     Along the same lines, several years later, in a February 5, 2011 agreement, Bosch granted VWAG a license to further develop Bosch Denoxtronic functions for the treatment of exhaust from diesel engines.  Again, the contract is clear that Bosch maintains rights over the Denoxtronic functions.

98.     To recap, as the EA 189 project moved to series production in 2009, Bosch's documented role was to provide to Volkswagen executable software for installation in the EDC17 controller at the VW production line.[48]  Bosch insisted that Bosch control the definition of the EDC17 software, that Bosch test the software using bench top and vehicle testing, that Bosch produce the final software release for series production, and that Bosch deliver the software to Volkswagen for installation in the EA 189 engines used in the Affected Vehicles.  Bosch's firm control over the development of and modifications to EDC17 is undeniable.  It is inconceivable, then, that Bosch did not know that the software it was responsible for defining, developing, testing, maintaining and delivering contained an illegal defeat device.

99.     In fact, Bosch was in on the secret and knew that Volkswagen was using Bosch's software algorithm as an "on/off" switch for emission controls when the Class Vehicle was undergoing testing.  As noted above, it has been said the decision to cheat was an "open secret" at Volkswagen.[49]  It was an "open secret" at Bosch as well.

---

[47] VW-MDL2672-03752757.

[48] VW-MDL2672-03752699.

[49] Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, Reuters (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7.  *See also* Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

100.     Volkswagen and Bosch personnel employed code language for the defeat device, referring to it as the "acoustic function" (in German, "akustikfunktion").  As described above, the roots of the "akustikfunktion"—and likely the cheating—can be traced back to the late 1990s when Audi devised software called the "akustikfunktion" that could switch off certain functions when the vehicle was in a test mode.[50]  The "akustik" term is derived from the function's ability to modify the noise and vibration produced by the engine.  News articles report that, in 2006, VWAG further developed this "akustikfunktion" for the Affected Vehicles.[51]

101.     Written communications between and within Bosch and Volkswagen describe the "akustikfunktion" in surprising detail.  In emails sent as early as July 2005 from VWAG's Andreas Specht to Bosch's Kilian Bucher, Tobias Lang, Michael Moeker, and Carlos Alvarez, Specht discussed emissions measurements from vehicles using the "akustikfunktion" in connection with U.S. emission compliance.[52]  A February 2014 PowerPoint prepared by VWAG explained that the akustikfunktion measured speed, acceleration, and engine operation to determine whether a vehicle is undergoing testing.[53]

102.     On November 13, 2006, VWAG's Dieter Mannigel (Software Design, U.S. Diesel Engines, Drivetrain Electronics) circulated via email a PowerPoint presentation prepared for VWAG's Rudolf Krebs (who joined Volkswagen from Audi in 2005) about how the "akustikfunktion" is activated and deactivated in recognition of emissions-related environmental

_____

*rules'*, Autoweek (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules (it was necessary for the "EA 189 engine to pass U.S. diesel emissions limits within the budget and time frame allotted").

[50] Martin Murphy, *Dieselgate's Roots Stretch Back to Audi*, Handelsblatt Global (Apr. 19, 2016), https://global.handelsblatt.com/edition/413/ressort/companies-markets/article/dieselgates-roots-stretch-back-to-audi?ref=MTI5ODU1.

[51] *Volkswagen Probe Finds Manipulation Was Open Secret in Department: Newspaper*, Reuters (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7.  VW Group Chairman, Hans Dieter Poetsch, explained that a small group of engineers and managers were involved in the creation of the manipulating software.  *See VW Chairman Poetsch: Company 'Tolerated Breaches of Rules'*, Auto Week (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules.  *See also Scandal Explained*, BBC (Dec. 10, 2015), http://www.bbc.com/news/business-34324772; Sept. 18, 2015, http://www.autocar.co.uk/car-news/industry/vw-emissions-scandal-how-volkswagens-defeat-device-works.

[52] VW-MDL2672-02559611.

[53] VW-MDL2672-02572122.

conditions, such as temperature and pressure.  The presentation explained that the existing vehicles functioning with different drive cycles could not pass U.S. emission tests, and thus proposed the release of the "akustikfunktion" to be driving dependent.[54]

103.     On November 20, 2006, Mannigel emailed his colleagues to summarize a meeting with Krebs, at which the PowerPoint described above was likely presented.  Krebs had emphasized the importance of not getting caught by U.S. regulators using the "akustikfunktion," and warned that the function must be explainable to regulators.  Krebs was skeptical about using the akustikfunktion in the U.S. market due to potential regulatory and legal exposure, and Mannigel was nervous that regulators would be able to detect the "akustikfunktion."  Nevertheless, Mannigel reported, Volkswagen was going ahead with the expanded "akustikfunktion" with Bosch.[55]  It is likely this was the meeting at which VW decided to use the "akustikfunktion" as a defeat device to evade compliance with U.S. emission requirements.

104.     Well after the defeat device was developed and integrated into hundreds of thousands of Affected Vehicles, Volkswagen and Bosch continued to work together to refine and maintain it.  For example, both Bosch and Volkswagen were involved in the calibration of the defeat devices for the Affected Vehicles.  A November 2014 email from VWAG's Juergen Hintz, entitled "Akustikfunktion," relayed a telephone call with Bosch's Kratt about the "akustikfunktion" and Volkswagen's role.  VWAG's C. Arenz responded that while he had been responsible for the operation of the "akustikfunktion," Bosch was responsible for its calibration.  In fact, Arenz disclosed that he planned to meet with Bosch (along with Michael Brand) about calibrating the "akustikfunktion" the following week.[56]  In another email, Hintz wrote that Bosch's Kratt told him that Bosch would be making certain changes to the "akustikfunktion" based on Volkswagen's specifications.[57]

---

[54] VW-MDL2672-02559527.  The email attached an internal Volkswagen PowerPoint that describes the "akustikfunktion" as activated in recognition of emission related environment conditions and proposed it as a solution to the registration emissions certification problems in the U.S.  VW-MDL2672-02559528.

[55] VW-MDL2672-02559526.

[56] VW-MDL2672-02569895.

[57] Translation at 00387135.

105.    In sum, Bosch worked hand-in-glove with Volkswagen to develop and maintain the akustikfunktion/defeat device.[58]  On information and belief, it did so with FCA as well.

### 2.    Volkswagen and Bosch conspire to conceal the illegal "akustikfunktion".

106.    By 2007, and likely earlier, Bosch was critical not only in developing the "akustikfunktion," but also in concealing it.  On March 9, 2007, Bosch's Guenther Berger emailed VW AG's Mathias Klaproth (a technical developer) and Mannigel with the subject of "Erweiterungen Akustikfunktion" (in English, "Further Development of the Acoustic Function").[59]  *Berger confirmed that Bosch would remove the description of the enhanced "akustikfunktion" from Volkswagen's fuel pump specification sheets D2250 and D2278*.  Klaproth and Mannigel agreed not to list the function in documentation in the U.S., but disagreed whether to disclose it in Europe.  Klaproth then took Berger off the email chain and insisted the "akustikfunktion" would be applied to the European projects, to which Mannigel responded that he would contact Klaproth off-line.

107.    Bosch was concerned about getting caught participating in the defeat device fraud.  As reported in the German newspaper, *Bild am Sonntag*, and a French publication, a Volkswagen internal inquiry found that in 2007, Bosch warned Volkswagen by letter that using the emissions-altering software in production vehicles would constitute an "offense."[60]

108.    Bosch expressed similar concerns that use of the defeat device it had created would violate U.S. law.  These concerns culminated in a June 2, 2008 letter from Bosch's Dieter Schuetz to Volkswagen's Thorsten Schmidt in which Bosch demanded that Volkswagen indemnify Bosch for any liability arising from the creation of a "defeat device," as Bosch itself called it in English.

---

[58] From the information available to date, it appears that at least nine individuals from Bosch were involved in the scheme to develop the illegal defeat device:  Bucher, Lang, Moeker, and Alvarez (based on a July 2005 email from VWAG's Specht); Berger (based on a March 2007 email with VWAG's Klaproth and Mannigel); Schuetz, Pfeifle, and Richardt (based on a June 2, 2008 letter attempting to limit Bosch's liability); and Kratt (recipient of the letter attached to VWAG's June 6, 2008 response).  VW-MDL2672-02570091; VW-MDL2672-02559611; VW-MDL2672-02559515.

[59] VW-MDL2672-02559515.

[60] *Bosch warned VW about illegal software use in diesel cars, report says*, Automotive News (Sept. 27, 2015), http://www.autonews.com/article/20150927/COPY01/309279989/bosch-warned-vw-about-illegal-software-use-in-diesel-cars-report-says; *VW Scandal: Company Warned over Test Cheating Years Ago*, BBC (Sept. 27, 2015), http://www.bbc.com/news/business-34373637.

Through the letter, Bosch sought to clarify the roles and responsibilities of Volkswagen and Bosch regarding the development of the EDC 17, and demanded that Volkswagen indemnify Bosch for any legal exposure arising from work on the defeat device:[61]

> The further development [of the EDC17] requested by your company will result, in addition to the already existing possibility of activating enriched data manually, *in an additional path for the potential to reset data to act as a "defeat device."* We ask you to have the attached disclaimers executed by your company.

The letter uses the words "defeat device" in English, and further explained that "**[t]he usage of a defeat device is prohibited pursuant to … US Law (CARB/EPA)** (see definition footnote 2)."[62]

109.    Bosch's June 2, 2008 letter also warned Volkswagen that the software modifications Volkswagen requested could allow "the certified dataset [to be] replaced with another, possibly non-certified data set[,]" which could, in turn, cause "the vehicle's general operating license (registration) [to] become void."[63]  Creating two data sets on emission compliance was illegal under U.S. law. Bosch knew this, and that is why it requested indemnification from Volkswagen.

110.    Helmut Pfeifle and Heike Richardt at Bosch signed the proposed indemnification; the signature lines for Volkswagen were left blank.  When Volkswagen's Hermann Middendorf responded to Alfred Kratt at Bosch.  He did not deny the existence of a defeat device, but instead attacked Bosch for involving "the lawyers."

111.    Discovery is ongoing, and Plaintiff does not have a full record of what unfolded in response to Bosch's June 2, 2008 letter.  However, it is indisputable that Bosch continued to develop and sell to Volkswagen hundreds of thousands of the defeat devices for U.S. vehicles following Bosch's express, written recognition that its software was being used in the Affected Vehicles as a "defeat device" that was "prohibited pursuant to … US Law."

112.    VWAG and Bosch continued over the next few years to refine the defeat device.  This was a lengthy and complicated process that required concealing its existence from the onboard

---

[61] VW-MDL2672-02570091 (English translation) (emphasis added).

[62] *Id.* at 92 (emphasis added).

[63] *Id.* at 93.

diagnostic system, which was intended to report emission controls to comply with U.S., and particularly California's, requirements. In a July 18, 2011 email, Audi's Olaf Busse proposed tying the activation of the "akustikfunktion" more directly to steering angle, instead of vehicle temperature, which was proving to be problematic. This request coincided with inquiries from CARB about on-board diagnostics issues. VWAG's Hanno Jelden (Head of Powertrain Electronics), worried that the change would be too obvious and could not be explained to regulators.[64]

113.    Denner and others were also in on the secret. Notes from a May 28, 2014 meeting between Bosch and Volkswagen executives at VW headquarters reflect that the topic of "akustikfunktion" was discussed in the context of Volkswagen's and Bosch's partnership in the U.S. market. VWAG's Friedrich Eichler (Powertrain Development Chief) mentioned the importance of the "akustikfunktion" in Bosch diesel engines. Bosch participants at the meeting included Denner, as well as Rolf Bulander, Dirk Hoheisel, Markus Heyn, Scheider, Kampmann, Fetzer, Philipp, Hammer, Mader, Hubner, Karakas, Schirm, and Frese. For VWAG, Winterkorn was also present.[65]

### 3. Volkswagen and Bosch conspire in the U.S. and Germany to elude U.S. regulators who regulated not just Volkswagen diesels, but all diesels.

114.    The purpose of the defeat device was to evade stringent U.S. emissions standards. Once Bosch and VW perfected the defeat device, therefore, their attention turned to deceiving U.S. regulators.

115.    Evidence already shows that Bosch GmbH employees expressly conspired with VW to hide the function of the defeat device. Shortly after the March 2007 email exchange detailed above, in which VWAG's Klaproth and Mannigel confirmed to Bosch GmbH's Berger that the "akustikfunktion" would not be listed in the U.S. documentation for the Affected Vehicles, an internal email from VWAG's Frank Alich (Development, OBD Diesel) to various individuals at VWAG about scheduling a May 9, 2007 meeting, lamented the trouble distinguishing between

---

[64] VW-MDL2672-0259489. Jelden was subsequently suspended in connection with the emissions scandal.
[65] VW-MDL2672-02569909.

CLASS ACTION COMPLAINT - 33
Case No.:
010635-11  918538 V1

1    acoustic and non-acoustic modes relating to soot simulation.  Alich complained that he did not know

2    how he would explain the problem to CARB.[66]

3         116.    Bosch's North American subsidiary, Defendant Bosch LLC, was also part of and

4    essential to the fraud.  Bosch LLC worked closely with Bosch GmbH and Volkswagen, in the United

5    States and in Germany, to ensure that the non-compliant Affected Vehicles passed U.S. emission

6    tests.  As set forth below, Bosch LLC employees frequently communicated with U.S. regulators, and

7    actively worked to ensure the Affected Vehicles were approved by regulators.

8         117.    Employees of Bosch LLC, Bosch GmbH, and IAV provided specific information to

9    U.S. regulators about how Volkswagen's vehicles functioned and unambiguously stated that the

10   vehicles met emissions standards.  Bosch LLC regularly communicated to its colleagues and clients

11   in Germany about ways to deflect and diffuse questions from US regulators about the Affected

12   Vehicles—particularly CARB.  For example, in a May 15, 2008 email from Audi AG's Martin

13   Hierse to Bosch GmbH's Markus Schroeder (Diesel Systems, Engineering Powertrain Diagnosis),

14   copying Audi's Stefan Forthmann, Hierse noted that auxiliary emission control devices ("AECDs")

15   were a very important subject for certification of U.S. diesels, and admitted discrepancies with the

16   U.S. authorities in AECD documentation.[67]  The regulators' questions were chipping away at the

17   discrepancies between on board diagnostic systems, and the emission controls.

18        118.    Accordingly, Hierse worried that there was a possibility that one of the Volkswagen

19   Group's representatives in the U.S. was providing the regulators too much information and data

20   concerning AECD disclosure.  He then asked to discuss the matter with Bosch's Schroeder either by

21   telephone or in private at one of their offices due to the confidentiality of the issue.

22        119.    Bosch and VW worked together to craft responses to CARB's questions.  For

23   example, in an April 2009 email, Suanne Thomas (VW America Regulatory Strategist) and Bosch

24   LLC's Bernie Carr discussed results from tests sent from an individual at IAV showing defects in the

25   Affected Vehicles' in-use ratios and missing readiness information.

26

27   ────────────
       [66] VW-MDL2672-02555825.
28       [67] VW-MDL2672-11873274.

120.    On July 1, 2009, VWGoA's Thomas emailed colleagues, again raising concerns about documenting AECDs in Model Year 2010–2011 Affected Vehicles to U.S. authorities.  At issue was the "low level of detail in the AECD documents [so that] ARB is not able to confirm which strategies are for component protection."  Thomas then relayed that CARB asked whether there was a problem getting Bosch to disclose its strategy.[68]  In a related email, Thomas commented:  "I was not involved in the discussions … with ARB on diesel, however I get the impression that there is a misunderstanding at VW regarding AECDs.  That this misunderstanding is the root of the issue – why ARB is not satisfied with the AECD disclosure for diesels."[69]  CARB was asking the right questions, and not getting honest answers.

121.    Nor can Bosch persuasively distance Bosch GmbH from the communications with regulators, as Bosch GmbH employees directly participated in meetings with CARB.  For example, in January 2015, Bosch GmbH (specifically, Bosch LLC's Adam Wienner, Senior Legal Counsel, Dennis Froehlich, Quality Control, and Axel Boeringer, Sales Quality and Warranty) conferred about setting up a conference call with Audi and CARB to explain problems with the diagnostics relating to faulty fuel pumps, issues that likely arose because the defeat device was causing problems with the onboard diagnostic system in certain Affected Vehicles.  Suanne Thomas of VW coordinated the call between Bosch and CARB.

122.    Volkswagen and Bosch held CARB and the EPA at bay with finesse (and fraud) to obtain the necessary COCs and EOs to keep Affected Vehicles on the road.  In an August 2009 email from VWGoA shared a comment from CARB regarding 2009 Volkswagen Jetta TDIs test results that "VW 'blatantly did the wrong thing'" and asking Volkswagen if this "is a base strategy from Bosch."  Volkswagen responded, "yes."[70]

123.    This is not the only document crediting Bosch strategies to obtain regulatory approval.  A May 17, 2011 email from CARB to Thomas regarding Volkswagen 2014 TDIs referenced a 2010 conference call where they discussed "the bosch ZFC [Zero Fuel Calibration]

_____

[68] VW-MDL2672-02469411.
[69] VW-MDL2672-02120937.
[70] VW-MDL2672-00912096.

CLASS ACTION COMPLAINT - 35
Case No.:
010635-11  918538 V1

strategy and a possible fuel rail pressure disablement." VWAG's Alich then relayed that "ARB accepted our proposal to implement the ZFC 'time to closed loop' monitor with MY [model year] 2013."[71] And in a May 31, 2013 email regarding 2.0-liter Affected Vehicles, Thomas referenced a "[p]roposed strategy" to "get the executive order [from CARB] based on the 'Bosch' strategy."[72] These communications demonstrate Bosch's deep understanding of what regulators allowed and would not allow, and what Bosch did to help VW obtain approval.

124.    In short, there can be no argument that Bosch left communications with the regulators to VW, or that Bosch did not understand the regulatory implications of the defeat device software VW paid Bosch to develop. Employees of Bosch GmbH and Bosch LLC worked together with VW to convince U.S. regulators to approve the Affected Vehicles for sale and use in this country. The examples below identify at least six additional instances in which Bosch communicated directly with U.S. regulators to discuss concerns with emissions detection and compliance in the Affected Vehicles. During each communication, Bosch LLC provided specific information about how Volkswagen's vehicles functioned and unambiguously stated that the vehicles met emissions standards:

a.    In December 2009, Bosch presented CARB with a strategy to allow usage of Injection Quantity Adjustment codes in 2013 Volkswagen diesel models.[73]

b.    In or around December 2012, Volkswagen and Bosch submitted separate written responses, including requested documents, to the U.S. National Highway Traffic Safety Administration in response to its investigation into high-pressure fuel pump failures in certain Affected Vehicles.[74]

c.    A January 15, 2014 email from CARB to Thomas with the subject, "RE: VW response Re: V6TDI clarifications," CARB's Peter Ho referenced "previous discussions with Bosch," and inquired about false detections in the field.[75]

d.    July 23, 2014 notes from Volkswagen referenced a phone call between Volkswagen, Bosch, CARB, and other automakers

---

[71] VW-MDL-2672-02464246.
[72] VW-MDL2672-00530556.
[73] VW-MDL2672-07235955.
[74] VW-MDL2672-00762181.
[75] VW-MDL2672-00465156 (emphasis added). These discussions began in 2011.

CLASS ACTION COMPLAINT - 36
Case No.:
010635-11  918538 V1

during which Bosch raised the issue of pin-pointing of wire faults of NOx and particulate matter sensors with a separate control unit.[76]

    e.    A February 9, 2015 email from VWAG's Steffen Vieser relayed an update from Bosch GmbH about a discussion between CARB and Bosch LLC's Wienner re: a "non-erasable permanent fault code issue of the fuel pump electronic driver stage diagnostic," which Volkswagen suggested could be fixed by a "software update" requiring Bosch's assistance, which CARB approved.[77]

    f.    Notes from a June 10-11, 2015 meeting between CARB and Volkswagen reference a "Bosch discussion with ARB regarding PM [particulate matter] sensor introduction with Fe-doping." The meeting notes also record that CARB told Volkswagen that CARB did not want the emission monitors in a "contrived condition."[78]

125.    Bosch did not disclose its knowledge of the illegal defeat device in any of these meetings or communications with U.S. regulators, or disclose that its software enabled other manjufacuters to covertly exceed U.S. emissions standards.

**4.    Bosch keeps Volkswagen's secret safe and pushes "clean" diesel in the U.S.**

126.    Bosch not only kept Volkswagen's dirty secret safe, it went a step further and actively lobbied lawmakers to push "Clean Diesel" in the U.S., including making Affected Vehicles available for regulators to drive.

127.    As early as 2004, Bosch announced a push to convince U.S. automakers that its diesel technology could meet tougher 2007 U.S. emission standards.[79] Its efforts ended up being a multiple-year, multi-million dollar effort, involving key players from both Bosch in Germany and Bosch in the U.S. Following the launch of its new EDC systems in 2006, Bosch hired mcapitol Managers, a lobbying firm to promote its "Clean Diesel" products on Capitol Hill and with the EPA. In Washington, DC, mcapitol Managers lobbied on Bosch's behalf to defeat a proposal that would have favored hybrid vehicle technology over "Clean Diesel" vehicles.

---

[76] VW-MDL2672-00887996.

[77] VW-MDL2672-00902633; VW-MDL2672-02449923.

[78] VW-MDL2672-02296983.

[79] Edmund Chew, *Bosch boosts US diesel lobbying*, Autonews (Mar. 8, 2004), http://www.auto news.com/article/20040308/SUB/403080876/bosch-boosts-us-diesel-lobbying.

128.    Bosch also coordinated studies to advance diesel technology in the U.S.  In September 2006, Bosch's Bill Rutecki reached out to Volkswagen and Audi to request their participation in the "Martec Light Duty Diesel Market Opportunity Assessment."  The study's goal was to develop coordinated strategies to accelerate advancements of light duty diesel technology in the U.S.[80]

129.    Bosch's promotion of diesel technology specifically targeted the U.S.  For example, Bosch put on "Diesel Days in California," "Deer Conference: EGT Focus," and "SAE World Congress in Detroit."  In 2008, Bosch LLC and VW America co-sponsored the "Future Motion Made in Germany-Second Symposium on Modern Drive Technologies" at the German Embassy in Washington, D.C., with the aim of providing a venue for "stakeholders to gain insight into the latest technology trends and engage in a vital dialogue with industry leaders and policymakers."[81]

130.    Bosch LLC hosted multi-day conferences open to many regulators and legislators and held private meetings with regulators, in which it proclaimed extensive knowledge of the specifics of Volkswagen technology, including calibrations necessary for the Affected Vehicles to comply with emissions regulations.

131.    For example, in April 2009, Bosch organized and hosted a two-day "California Diesel Days" event in Sacramento, California.  Bosch invited a roster of lawmakers, journalists, executives, regulators, and NGOs with the aim of changing perceptions of diesel from "dirty" to "clean."  The event featured Affected Vehicles as ambassadors of "Clean Diesel" technology, including a 2009 VW Jetta "green car."  The stated goals were to "generat[e] a positive perception of Clean Diesel in passenger vehicles" and to "educate California stakeholders about the immediate benefits [of] Clean Diesel passenger vehicles" in reducing emissions.  A key feature of the event included "Bosch Vehicles Being Deployed."[82]  Attendees included Bernd Boisten (Bosch Regional President, Diesel Systems, Bosch LLC); Dr. Joerg Reuger (Senior Vice President, Diesel Engineering, Bosch Support Staff, Bosch GmbH); Brad Warner (Manager, Marketing, Diesel Systems, Robert Bosch LLC); and Norman Johnson (Director, External Affairs, Robert Bosch LLC).

---

[80] VW-MDL2672-06136031.

[81] VW-MDL2672-00234383.

[82] *Id.* at 115-45; VW-MDL2672-03331605.

CLASS ACTION COMPLAINT - 38
Case No.:
010635-11  918538 V1

132.     In 2009, Bosch also became a founding member of the U.S. Coalition for Advanced Diesel Cars.  One of this advocacy group's purposes included "generating awareness to legislators and regulators on the benefits of "Clean Diesel" technology for passenger cars, through engagement in policy, regulatory and advocacy activities."

133.     Another example of Bosch's U.S. lobbying is the 2009 "California Green Summit." As part of its "Clean Diesel" partnership with Volkswagen, Bosch deployed two 2009 Jetta TDI Volkswagens to attendees with the express purpose of "Influencing California," and inviting CARB, the Western Automotive Journalist Organization, and many others.

134.     In September 2009, Bosch held a Diesel Technology Forum in California.  Dirk Naber (Diesel Systems/Engineering; Vehicle and Engine Laboratory of Bosch) attended, as did VW's Stuart Johnson, R. Dorenkamp and G. Pamio, along with Juergen Peter.  Following this forum, in October 2009, Mightycomm (Bosch's California lobbyist) outlined a proposal for "OEM Vehicle Placement Program targeting influential California NGOs and Regulators."[83]  This memo was addressed to Bosch's Lars Ulrich, Joerg Rueger, and Bosch Diesel Systems.  **Mightycomm specifically stated "[v]ehicles placed with CARB would have to be … *newer models that can withstand possible dynamometer testing.  While we do not anticipate a vehicle placed with CARB would be inspected, examined, or tested on a dynamometer, there is no assurance some CARB staff won't want to do this.*"**[84]  On the other hand, Mightycomm advised not to worry about a vehicle being tested by the California Energy Commission ("CEC") "as the CEC is not equipped to conduct such inspections."[85]

135.     In 2010, Bosch sponsored the Virginia International Raceway with the support of the 2010 Volkswagen Jetta Cup Series.  This included the 2009 "Sidewinder" which Bosch featured for its "performance exhaust system."

136.     In its lobbying on behalf of "Clean Diesel," Bosch had to continually cover up the dirty secret of the defeat device in the Affected Vehicles.  In a January 13, 2010 memo addressed to

---

[83] VW-MDL2672-15182932
[84] *Id.* (emphasis added).
[85] *Id.*

Bosch's Lars Ullrich and Brad Warner, Mightycomm noted that "Clean Diesel has been ranked the green car of the year" two years in a row—2009 and 2010.  And yet Bosch knew the Affected Vehicles could not obtain the results being advertised without activating the defeat device.

137.    Bosch's Andreas Sambel (Director of Marketing and Business Excellence) presented on "Clean Diesel" technology before the CEC on June 19, 2013, specifically pinpointing "key influencers," such as specific NGOs that have not traditionally engaged CARB, "who we need to reach, rally and motivate."[86]

138.    In its efforts to promote "Clean Diesel," including the Affected Vehicles, Bosch acted on behalf of its global group.  As an example, Bosch put on a two-day presentation on June 27-28, 2007, about meeting the demands of U.S. emission legislation, where it focused on lowering emissions in diesel vehicles.  Each of the presentation's 30 pages bears both the "Bosch" name and "Bosch Engineering GmbH" but makes no mention of Bosch LLC.[87]  The aforementioned memo from Mightycomm was addressed to "Bosch Diesel Systems."  And each page of the presentation for California Diesel Days bears the label "BOSCH' in emboldened red type.[88]  This is consistent with the ongoing representations that the Bosch entities, overseas and in the U.S. were "one-for-all-and-all-for-one" in promoting "Clean Diesel" technology to U.S. stakeholders.

## I.    The Deception Involving FCA's "EcoDiesels"

139.    Plaintiff has tested the 2015 Dodge Ram 1500 pickup using a Portable Emissions Measurement System ("PEMS").  Testing revealed that the Ram 1500 fails to meet U.S. emissions standards, as promised, and fails to meet the "no NOx" out of the tailpipe promise.

140.    The applicable standard both at the federal and state level is 50 mg/mile of NOx for "FTP Style" driving—*i.e.*, city driving.  Testing was conducted with a PEMS unit to simulate driving conditions under both the FTP certification cycle and the highway certification cycle.  The Ram 1500 emits an average of 159 mg/mile of NOx and a maximum of 1,283 mg/mile on flat roads, and 222 mg/mile of NOx with a maximum of 1,859 mg/mile on hills.  For highway driving, the average was

---

[86] VW-MDL2672-00885348.
[87] VW-MDL2672-05676990.
[88] VW-MDL2672-03331605.

232 mg/mile and a maximum of 1,615 mg/mile, compared to the 70 mg/mile standard.  On hills, the numbers are 353 mg/mile and 3,240 mg/mile.  Testing also revealed a defeat device triggered by ambient temperature that significantly derates the performance of the NOx emission reduction system, with ambient threshold temperatures above approximately 95ºF and below 40–50ºF.  The resulting NOx emissions increase by a factor of 10 when above or below these threshold temperatures.  Testing also revealed the presence of a defeat device when ascending hills, as the emissions control system appears to be significantly derated after a short period of steady driving on hills.  As a result, NOx emissions increase after about 500–1000 seconds on hills with grades as low as 1%, where emissions are often 10 times the standard.  For grades as little as 0.4%, emissions were found to be as high as 6 times the highway standard.

141.     The Dodge Ram 1500 emissions software is a "Bosch EDC17,"as is the Grand Cherokee.  The same basic emissions system is in the Grand Cherokee EcoDiesel and the engines are identical.

142.     Although the Dodge Ram 2500 and 3500 are built with a different engine design, these models also fail to meet emissions standards, and such failure adds to the plausibility of FCA's deception with respect to the Ram 1500.

143.     Testing was performed on a 2012 Dodge Ram 2500 powered by a Cummins 6.7 diesel engine using a PEMS.  The vehicle had accumulated approximately 70,000 miles at the time of testing.  The results show that the vehicle does not meet the relevant emission standards, as follows: During on-road testing designed to simulate the driving profile of the Federal Test Procedure (FTP) certification cycle, emissions were found to be 702 mg/mile on average, 3.5 times the federal and California standard of 200 mg/mile.  Over significant distances, emissions were found to be as high as 1,100 to 2,800 mg/mile for periods lasting as long as 21% of the total drive time.  That is 5.5 to 14 times the relevant standard.  During on-road PEMS testing designed to simulate the driving profile of the highway certification cycle, average emissions were found to be 756 mg/mile, or 1.9 times the California (and Section 177 state) standard.  Over significant distances, emissions were found to be as high as 1,200 to 2,250 mg/mile for periods lasting as long as 16% of the total drive time.  That equates to 3.0 to 5.6 times the relevant standard.

144.    The vehicle was also found to be particularly sensitive to hills, where steady speed emissions could spike as high as 2,100 mg/mile (5.5 times the standard) on a steady 1.5% grade.

145.    These facts puts the lie to FCA's claims that EcoDiesel is a "clean diesel" with "ultralow emissions," or that "no NOx" is emitted through the tailpipe.  FCA misrepresents the emissions performance of its vehicles equipped with EcoDiesel engines because the Affected Vehicles spew NOx into the air at levels that far exceed U.S. emissions standards.

**J.     The Damage**

146.    FCA will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and efficiency.  As a result, even if FCA is able to make the Affected Vehicles EPA-compliant, Plaintiff and Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle, and it will cause owners of Affected Vehicles to pay more for fuel while using their Affected Vehicles.

147.    As a result of FCA's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles are not "clean" diesels and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiff and Class members known of the higher emissions at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the EcoDiesel Clean Diesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased.  Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their vehicles' engines.

# VI.    TOLLING OF THE STATUTE OF LIMITATIONS

## A.    Discovery Rule Tolling

148.    Class members had no way of knowing about FCA's deception with respect to the unlawfully high emissions of its EcoDiesel Clean Diesel engine system in Affected Vehicles.  To be sure, FCA continues to market the Affected Vehicles as "clean" diesels and also continues to claim that Affected Vehicles comply with EPA emissions standards.

149.    Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that FCA was concealing the conduct complained of herein and misrepresenting FCA's true position with respect to the emission qualities of the Affected Vehicles.

150.    Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the true emissions of the Affected Vehicles, which was discovered by Plaintiff only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiff and other Class members have disclosed that FCA valued profits over truthful marketing and compliance with federal and state law.

151.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

## B.    Fraudulent Concealment Tolling

152.    All applicable statutes of limitation have also been tolled by FCA's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

153.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Affected Vehicles were far worse than represented, and of its disregard of federal and state law, FCA falsely represented that the Affected Vehicles complied with federal and state emissions standards, that the diesel engines were "clean," and that it was a reputable manufacturer whose representations could be trusted.

C.  **Estoppel**

154.  FCA was under a continuous duty to disclose to Plaintiff and Class members the true character, quality, and nature of emissions from the Affected Vehicles, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

155.  FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Affected Vehicles.

156.  FCA was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the conduct complained of herein contrary to federal and state emissions and clean air standards, and that it systematically devalued compliance with federal and state law regulating vehicle emissions and clean air.

157.  Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

# VII.  CLASS ALLEGATIONS

158.  Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

**Nationwide RICO Class**

All persons or entities in the United States who owned or leased an "Affected Vehicle." Affected Vehicles include, without limitation, the diesel-powered 2014–2016 Jeep Grand Cherokee EcoDiesel, and the diesel-powered 2014–2016 Dodge Ram EcoDiesel.

**California Class**

All persons or entities in California who owned or leased an "Affected Vehicle." Affected Vehicles include, without limitation, the diesel-powered 2014–2016 Jeep Grand Cherokee EcoDiesel, and the diesel-powered 2014–2016 Dodge Ram EcoDiesel.

**The Multistate Class**

All persons who purchased an Affected Vehicle in the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New

York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and District of Columbia. Affected Vehicles include, without limitation, the diesel-powered 2014–2016 Jeep Grand Cherokee EcoDiesel, and the diesel-powered 2014–2016 Dodge Ram EcoDiesel.

159.     Excluded from the Classes are individuals who have personal injury claims resulting from the unlawfully high emissions in the EcoDiesel system of Affected Vehicles.  Also excluded from the Classes are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.  Plaintiff reserves the right to revise the Class definitions based upon information learned through discovery.

160.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

161.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

162.     **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are at least 140,000 owners of Dodge Ram 1500s and tens of thousands of owners of Grand Cherokees, the precise number of Class members is unknown to Plaintiff, but may be ascertained from FCA's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

163.     **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether FCA and Bosch engaged in the conduct alleged herein;

1        b.    Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

2

3        c.    Whether the EcoDiesel Clean Diesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements and federal and state emissions regulations;

4

5        d.    Whether the EcoDiesel Clean Diesel engine system in Affected Vehicles can be made to comply with EPA and state standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

6

7

8        e.    Whether FCA and Bosch knew about the defeat device and, if so, how long FCA has known;

9        f.    Whether Bosch designed and manufactured a defeat device;

10        g.    Whether Bosch supplied the defeat device to FCA with the knowledge that FCA would use it in production of Affected Vehicles;

11

12        h.    Whether Bosch acted in concert with FCA and aided and abetted FCA's fraud;

13

14        i.    Whether FCA marketed, and distributed Affected Vehicles with a defeat device;

15        j.    Whether FCA's and Bosch's conduct violates RICO and other laws as asserted herein;

16

17        k.    Whether FCA's and Bosch's conduct violates consumer protection statutes and false advertising laws;

18        l.    Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

19

20        m.    Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the U.S.;

21

22        n.    Whether the EcoDiesel Clean Diesel engine system in the Affected Vehicles emits pollutants at levels that do not make them "clean" diesels and that do not comply with EPA requirements;

23

24        o.    Whether the EcoDiesel Clean Diesel engine system in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

25

26

27        p.    Whether FCA knew about the unlawfully high emissions and, if so, how long FCA has known;

28

CLASS ACTION COMPLAINT - 46
Case No.:
010635-11  918538 V1

q.  Whether FCA designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls;

r.  Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

s.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

t.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

164.  **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

165.  **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

166.  **Declaratory and Injunctive Relief**:  Federal Rule of Civil Procedure 23(b)(2):  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

167.  **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By

CLASS ACTION COMPLAINT - 47
Case No.:
010635-11  918538 V1

1     contrast, the class action device presents far fewer management difficulties, and provides the benefits

2     of single adjudication, economy of scale, and comprehensive supervision by a single court.

3     <div align="center">**VIII.   CLAIMS**</div>

4     **A.    Claims Brought on Behalf of the Nationwide RICO Class**

<div align="center">

**COUNT I**
**VIOLATIONS OF RACKETEER INFLUENCED AND**
**CORRUPT ORGANIZATIONS ACT (RICO)**
**VIOLATION OF 18 U.S.C. § 1962(C) - (D)**

</div>

168.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

169.    Plaintiff brings this Count individually and on behalf of the Nationwide RICO Class against Defendants FCA, Robert Bosch GmbH, and Robert Bosch LLC (collectively, "RICO Defendants").

170.    The RICO Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

171.    Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d), in turn, makes it unlawful for "any person to conspire to violate."

172.    For many years now, the RICO Defendants have aggressively sought to increase the sales of Affected Vehicles in an effort to bolster revenue, augment profits and increase FCA's share of the diesel vehicle market. Finding it impossible to achieve their goals lawfully, however, the RICO Defendants resorted instead to orchestrating a fraudulent scheme and conspiracy. In particular, the RICO Defendants, along with other entities and individuals, created and/or participated in the affairs of an illegal enterprise ("Emissions Fraud Enterprise") whose direct purpose was to deceive the regulators and the public into believing the Affected Vehicles were "clean" and "environmentally friendly." As explained in greater detail below, the RICO Defendants' acts in furtherance of the Emissions Fraud Enterprise violate § 1962(c) and (d).

1        **1.      The Members of the Emissions Fraud Enterprise**

2        173.    Upon information and belief, the Emissions Fraud Enterprise consisted of the

3    following entities and individuals: FCA, Robert Bosch GmbH, and Robert Bosch LLC.

4        174.    Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch" or "Bosch

5    Defendants") tested, manufactured, and sold the electronic control module ("ECM") that managed

6    the emissions control system used by FCA in the Affected Vehicles.  This particular ECM is more

7    formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17").[89]

8        175.    Defendant Bosch GmbH is a multinational engineering and electronics company

9    headquartered in Gerlingen, Germany, which has hundreds of subsidiaries and companies.  It wholly

10   owns defendant Bosch LLC, a Delaware limited liability company headquartered in Farmington

11   Hills, Michigan.  As explained above, Bosch's sectors and divisions are grouped by subject matter,

12   not location.  The Mobility Solutions (formerly Automotive Technology) is the Bosch sector at issue,

13   particularly its Diesel Services division, and it encompasses employees of Bosch GmbH and Bosch

14   LLC.  These individuals were responsible for the design, manufacture, development, customization,

15   and supply of the defeat device to FCA for use in the Affected Vehicles.

16       176.    Bosch worked with FCA, Volkswagen, and Mercedes to develop and implement a

17   specific and unique set of software algorithms to surreptitiously evade emissions regulations.  Bosch

18   customized their EDC Unit 17s for installation in the Affected Vehicles with unique software code to

19   detect when it was undergoing emissions testing, as described above, and did so for other vehicles

20   with defeat devices in Volkswagen and Mercedes vehicles.[90]

21       177.    Bosch's conduct with respect to Volkswagen, outlined below, adds plausibility to its

22   participation in the enterprise herein.  For example, Bosch was well aware that the EDC Unit 17

23   would be used by Volkswagen to cheat on emissions testing.  As described above, on June 2, 2008,

24   Bosch's Dieter Schütz wrote to his counterparts at Volkswagen, seeking legal indemnification from

25

26   _____

     [89] http://www.bosch-presse.de/presseforum/details.htm?txtID=7421&tk_id=108.

27   [90] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver
     (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-
28   software.

Volkswagen for the "expanded use" of the EDC Unit 17s which it called a "defeat device."[91]  Schütz explained that "[t]he usage of a defeat device is prohibited pursuant to … US Law (CARB/EPA) (see definition footnote 2),"[92] and warned that the agreed-to software modifications would allow "the certified dataset [to be] replaced with another, possibly non-certified data set," which could cause "the vehicle's general operating license (registration) [to] become void."[93]  Volkswagen rebuffed Bosch's request, yet Bosch nonetheless shipped the modified software to Volkswagen for use in the Affected Vehicles for another seven years.  Bosch was also critical to the concealment of the defeat device in communications with U.S. regulators and went even further to actively lobby U.S. lawmakers on behalf of Volkswagen and its "Clean Diesel" vehicles.

178.    EDC Unit 17 could not effectively lower $NO_X$ emissions to legal levels during normal operating conditions.  In order to pass the emissions test, then, EDC Unit 17 is equipped with a "defeat device," which is software that allows the vehicle to determine whether it is being operated under normal conditions or testing conditions.

179.    As was publicly reported, the Bosch Defendants, seeking to conceal their involvement in the unlawful Emissions Fraud Enterprise, sent a letter to Volkswagen AG in 2007 stating that Volkswagen Diesels *could not be lawfully operated* if the LNT or SCR after-treatment system was disabled.[94]  The exact same logic applies to the FCA Affected Vehicles.

180.    Indeed, notwithstanding their knowledge that the Volkswagen Diesels *could not be lawfully operated* if the emissions system was disabled, the Bosch Defendants, driven to cement their position as a leading supplier of diesel emissions equipment, went on to sell approximately *eleven*

---

[91] VW-MDL2672-02570091 (English translation).

[92] *Id.* at 92.

[93] *Id.* at 93.

[94] Stef Shrader, *Feds Are Now Investigating Volkswagen Supplier Bosch Over Dieselgate*, Jalopnik (Nov. 19, 2015), http://jalopnik.com/feds-are-now-investigating-volkswagen-supplier-bosch-ov-1743624448.

1    *million* EDC Unit 17s to Volkswagen over an eight year period, and hundreds of thousands of FCA

2    Affected Vehicles.[95]

3        181.    The persons and entities described in the preceding section are members of and

4    constitute an "association-in-fact" enterprise.

5        182.    At all relevant times, the Emissions Fraud Enterprise:  (a) had an existence separate

6    and distinct from each Defendant; (b) was separate and distinct from the pattern of racketeering in

7    which the RICO Defendants engaged; and (c) was an ongoing organization consisting of legal

8    entities, including the FCA Defendants, the Bosch Defendants, and other entities and individuals

9    associated for the common purpose of designing, manufacturing, distributing, testing, and selling the

10   Affected Vehicles through fraudulent COCs and EOs, false emissions tests, deceptive and misleading

11   marketing and materials, and deriving profits and revenues from those activities.  Each member of

12   the Emissions Fraud Enterprise shared in the bounty generated by the enterprise, *i.e.*, by sharing the

13   benefit derived from increased sales revenue generated by the scheme to defraud consumers and

14   franchise dealers alike nationwide.[96]

15       183.    The Emissions Fraud Enterprise functioned by selling vehicles and component parts

16   to the consuming public.  Many of these products are legitimate, including vehicles that do not

17   contain defeat devices.  However, the RICO Defendants and their co-conspirators, through their

18   illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme

19   to increase revenue for Defendants and the other entities and individuals associated-in-fact with the

20   Enterprise's activities through the illegal scheme to sell the Affected Vehicles.

21       184.    The Emissions Fraud Enterprise engaged in, and its activities affected interstate and

22   foreign commerce, because it involved commercial activities across state boundaries, such as the

---

[95] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software.

[96] Volkswagen sold more Affected Vehicles by utilizing an emissions control system that was cheaper than SCRs, all the while charging consumers a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" vehicles.  Bosch, in turn, sold more EDC Units because Volkswagen manufactured and sold more Affected Vehicles.

marketing, promotion, advertisement and sale or lease of the Affected Vehicles throughout the country, and the receipt of monies from the sale of the same.

185.   Within the Emissions Fraud Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis.  The Emissions Fraud Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Affected Vehicles to the general public nationwide.

186.   Each participant in the Emissions Fraud Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities.  Through the Emissions Fraud Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

187.   The RICO Defendants participated in the operation and management of the Emissions Fraud Enterprise by directing its affairs, as described herein.  While the RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

188.   FCA exerted substantial control and participated in the affairs of the Emissions Fraud Enterprise by:

      a.    Designing the Affected Vehicles with defeat devices;

      b.    Failing to correct or disable the defeat devices when warned;

      c.    Manufacturing, distributing, and selling the Affected Vehicles that emitted greater pollution than allowable under the applicable regulations;

      d.    Misrepresenting and omitting (or causing such misrepresentations and omissions to be made) vehicle specifications on COC and EO applications;

      e.    Introducing the Affected Vehicles into the stream of U.S. commerce without a valid EPA COC and/or CARB EO;

      f.    Concealing the existence of the defeat devices and the unlawfully high emissions from regulators and the public;

g. Persisting in the manufacturing, distribution, and sale of the Affected Vehicles even after questions were raised about the emissions testing and discrepancies concerning the same;

h. Misleading government regulators as to the nature of the defeat devices and the defects in the Affected Vehicles;

i. Misleading the driving public as to the nature of the defeat devices and the defects in the Affected Vehicles;

j. Designing and distributing marketing materials that misrepresented and concealed the defect in the vehicles;

k. Otherwise misrepresenting or concealing the defective nature of the Affected Vehicles from the public and regulators; and

l. Illegally selling and/or distributing the Affected Vehicles; collecting revenues and profits from the sale of such products; and ensuring that the other RICO Defendants and unnamed co-conspirators complied with the fraudulent scheme.

189. Bosch also participated in, operated and/or directed the Emissions Fraud Enterprise. Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and supplying the EDC Unit 17 which operated as a "defeat device" in the Affected Vehicles. Bosch exercised tight control over the coding and other aspects of the defeat device software and was closely collaborated with FCA to develop, customize, and calibrate the defeat devices. Additionally, Bosch continuously cooperated with the FCA to ensure that the EDC Unit 17 was fully integrated into the Affected Vehicles. Bosch also participated in the affairs of the Enterprise by concealing the defeat devices on U.S. documentation and in communications with U.S. regulators. Bosch collected tens of millions of dollars in revenues and profits from the hidden defeat devices installed in the Affected Vehicles.

190. Without the RICO Defendants' willing participation, including Bosch's active involvement in developing and supplying the critical defeat devices for the Affected Vehicles, the Emissions Fraud Enterprise's scheme and common course of conduct would not have been successful.

191. The RICO Defendants directed and controlled the ongoing organization necessary to implement the scheme at meetings and through communications of which Plaintiff cannot fully know at present, because such information lies in the Defendants' and others' hands.

CLASS ACTION COMPLAINT - 53
Case No.:
010635-11 918538 V1

192.    The members of the Emissions Fraud Enterprise all served a common purpose; namely, to outsell their law-abiding competitors and increase their revenues through the sale of as many Affected Vehicles (including the emissions components made and sold by Bosch) as possible. Each member of the Emissions Fraud Enterprise shared the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud. FCA sold more Affected Vehicles by utilizing an emissions control system that was cheaper to install and allowed for generous performance and efficiency tuning, all the while charging consumers a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" Affected Vehicles.  The Bosch Defendants, in turn, sold more EDC Units because FCA manufactured and sold more Affected Vehicles.  The RICO Defendants achieved their common purpose by repeatedly misrepresenting and concealing the nature of the Affected Vehicles and the ability of the emissions control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during normal operating conditions.

**2.    The Predicate Acts**

193.    To carry out, or attempt to carry out the scheme to defraud, the RICO Defendants conducted or participated in the conduct of the affairs of the Emissions Fraud Enterprise through a pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

194.    Specifically, the RICO Defendants participated in the scheme to defraud by using mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

195.    The RICO Defendants' use of the mails and wires include, but are not limited to, the transmission, delivery, or shipment of the following by the RICO Defendants or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

      a.    Application for certificates submitted to the EPA and CARB;

      b.    The Affected Vehicles themselves;

      c.    Component parts for the defeat devices;

      d.    Essential hardware for the Affected Vehicles;

      e.    Falsified emission tests;

1           f.      Fraudulently-obtained EPA COCs and CARB EOs;

           g.      Vehicle registrations and plates as a result of the fraudulently-obtained EPA COCs and CARB EOs;

           h.      Documents and communications that facilitated the falsified emission tests;

           i.      False or misleading communications intended to lull the public and regulators from discovering the defeat devices and/or other auxiliary devices;

           j.      Sales and marketing materials, including advertising, websites, product packaging, brochures, and labeling, which misrepresented and concealed the true nature of the Affected Vehicles;

           k.      Documents intended to facilitate the manufacture and sale of the Affected Vehicles, including bills of lading, invoices, shipping records, reports and correspondence;

           l.      Documents to process and receive payment for the Affected Vehicles by unsuspecting franchise dealers, including invoices and receipts;

           m.     Payments to Bosch;

           n.      Deposits of proceeds; and

           o.      Other documents and things, including electronic communications.

196.    The RICO Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described therein.

197.    The RICO Defendants also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.  Specifically, FCA made misrepresentations about the Affected Vehicles on their websites, YouTube, and through ads online, all of which were intended to mislead regulators and the public about the fuel efficiency, emissions standards, and other performance metrics.

198.    The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships and other third-party entities in furtherance of the scheme.

199.   The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Affected Vehicles, which Defendants knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Affected Vehicles were "clean" diesel cars.

200.   Many of the precise dates of the fraudulent uses of the U.S. Mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records.  However, Plaintiff has described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred.  They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

201.   The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.  In violation of 18 U.S.C. § 1962(d), the RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein.  Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

202.   The RICO Defendants aided and abetted others in the violations of the above laws, thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

203.   To achieve their common goals, the RICO Defendants hid from the general public the unlawfulness and emission dangers of the Affected Vehicles and obfuscated the true nature of the defect even after regulators raised concerns.  The RICO Defendants suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the discrepancies in emissions testing and the defeat devices present in the Affected Vehicles.

204.   The RICO Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy and participated in the common course

1    of conduct to commit acts of fraud and indecency in designing, manufacturing, distributing,

2    marketing, testing, and/or selling the Affected Vehicles (and the defeat devices contained therein).

3          205.    Indeed, for the conspiracy to succeed each of the RICO Defendants and their co-

4    conspirators had to agree to implement and use the similar devices and fraudulent tactics—

5    specifically complete secrecy about the defeat devices in the Affected Vehicles.

6          206.    The RICO Defendants knew and intended that government regulators, as well as

7    Plaintiff and Class members, would rely on the material misrepresentations and omissions made by

8    them about the Affected Vehicles.  The RICO Defendants knew and intended Plaintiff and the Class

9    would incur costs and damages as a result.  As fully alleged herein, Plaintiff and the Class relied

10   upon Defendants' representations and omissions that were made or caused by them.  Plaintiff's

11   reliance is made obvious by the fact that: (1) they purchased hundreds of thousands of vehicles that

12   never should have been introduced into the U.S. stream of commerce and whose worth is far less.  In

13   addition, the EPA, CARB, and other regulators relied on the misrepresentations and material

14   omissions made or caused to be made by the RICO Defendants; otherwise FCA could not have

15   obtained valid COCs and EOs to sell the Affected Vehicles.

16         207.    The RICO Defendants' conduct in furtherance of this scheme was intentional.

17   Plaintiff and the Class were harmed as a result of the RICO Defendants' intentional conduct.

18   Plaintiff, the Class, regulators and consumers, among others, relied on the RICO Defendants'

19   material misrepresentations and omissions.

20         208.    As described herein, the RICO Defendants engaged in a pattern of related and

21   continuous predicate acts for many years.  The predicate acts constituted a variety of unlawful

22   activities, each conducted with the common purpose of defrauding Plaintiff and other Class members

23   and obtaining significant monies and revenues from them and through them while providing

24   Affected Vehicles worth significantly less than the invoice price paid.  The predicate acts also had

25   the same or similar results, participants, victims, and methods of commission.  The predicate acts

26   were related and not isolated events.

27         209.    The predicate acts all had the purpose of generating significant revenue and profits for

28   the RICO Defendants at the expense of Plaintiff and the Class, and consumers.  The predicate acts

CLASS ACTION COMPLAINT - 57
Case No.:
010635-11  918538 V1

1   were committed or caused to be committed by the RICO Defendants through their participation in

2   the Emissions Fraud Enterprise and in furtherance of its fraudulent scheme, and were interrelated in

3   that they involved obtaining Plaintiff's and Class members' funds, artificially inflating the brand and

4   dealership goodwill values, and avoiding the expenses associated with remediating the Affected

5   Vehicles.

6          210.    During the design, manufacture, testing, marketing and sale of the Affected Vehicles,

7   the RICO Defendants shared technical, marketing and financial information that plainly revealed the

8   emissions control systems in the Affected Vehicles as the ineffective, illegal and fraudulent piece of

9   technology they were and are.  Nevertheless, the RICO Defendants shared and disseminated

10   information that deliberately represented Affected Vehicles as "clean," "environmentally friendly,"

11   and "fuel efficient."

12          211.    By reason of and as a result of the conduct of the RICO Defendants, and, in particular,

13   its pattern of racketeering activity, Plaintiff and the Class have been injured in multiple ways,

14   including, but not limited to:

15                  a.    Overpayment for Affected Vehicles, in that Plaintiff and the Class believed

16                       they were paying for vehicles that met certain emission and fuel efficiency

17                       standards and obtained vehicles that were not legal to sell in the U.S.; and

18                  b.    The value of the Affected Vehicles has diminished, thus reducing their sale

19                       and resale value.

20          212.    The RICO Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and

21   proximately caused injuries and damages to Plaintiff and the Class, and Plaintiff and the Class are

22   entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief,

23   costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).  Each of the RICO defendants

24   knew, understood and intended for members of the Class to purchase the Affected Vehicles, and

25   knew, understood, and foresaw that revelation of the truth would injure members of the Class.

26

27

28

**B.** **Claims Brought on Behalf of the California Class**

**COUNT I**

**FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW**

213. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

214. This claim is brought on behalf of the California Class against FCA and Bosch.

215. FCA designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the California Class members. FCA represented to Plaintiff and the California Class members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage. Bosch was aware of FCA's representations and their falsity.

216. The Affected Vehicles purchased or leased by Plaintiff and the California Class members were, in fact, defective, non-EPA compliant, and unreliable, because the NOx reduction system in the Affected Vehicles does not effectively mitigate emissions.

217. FCA intentionally concealed, suppressed, and failed to disclose the facts that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

218. As alleged in this complaint, at all relevant times, FCA has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles. FCA disclosed certain details about the EcoDiesel Clean Diesel engine, but nonetheless, FCA intentionally failed to disclose the important facts that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

219. The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to FCA; Plaintiff and the California Class members did not know of these facts and FCA actively concealed these facts from Plaintiff and California Class members.

220.    Plaintiff and California Class members reasonably relied upon FCA's deception. They had no way of knowing that FCA's representations were false and/or misleading.  As consumers, Plaintiff and California Class members did not and could not unravel FCA's deception on their own.  Rather, FCA intended to deceive Plaintiff and California Class members by concealing the true facts about the Affected Vehicles' emissions.

221.    FCA also concealed and suppressed material facts concerning what is evidently the true culture of FCA—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and members placed in its representations.  Consumers buy diesel cars from FCA because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing during real-world driving conditions.

222.    FCA's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the omissions played a significant role in the value of the vehicles.  As FCA well knew, its customers, including Plaintiff and California Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

223.    FCA had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to FCA, because FCA had exclusive knowledge as to such facts, and because FCA knew these facts were not known to or reasonably discoverable by Plaintiff or California Class members.  FCA also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices

CLASS ACTION COMPLAINT - 60
Case No.:
010635-11  918538 V1

with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and California Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  FCA represented to Plaintiff and California Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

224.    FCA actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost FCA money, and it did so at the expense of Plaintiff and California Class members.

225.    On information and belief, FCA has still not made full and adequate disclosures and continues to defraud Plaintiff and California Class members by concealing material information regarding the emissions qualities of the Affected Vehicles.

226.    Plaintiff and California Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by FCA, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and members' actions were justified.  FCA was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or California Class members.

227.    Because of the concealment and/or suppression of the facts, Plaintiff and California Class members have sustained damage because they own vehicles that are diminished in value as a result of FCA's concealment of the true quality and quantity of those vehicles' emissions and FCA's

1  failure to timely disclose the defect or defective design of the EcoDiesel Clean Diesel engine system,

2  the actual emissions qualities and quantities of FCA-branded vehicles, and the serious issues

3  engendered by FCA's corporate policies.  Had Plaintiff and California Class members been aware of

4  the true emissions facts with regard to the Affected Vehicles, and FCA's disregard for the truth and

5  compliance with applicable federal and state laws and regulations, Plaintiff and members who

6  purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or

7  would not have purchased or leased them at all.

8          228.    The value of Plaintiff's and California Class members' vehicles has diminished as a

9  result of FCA's fraudulent concealment of the defective emissions controls of the Affected Vehicles,

10 the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA

11 emissions requirements, all of which has greatly tarnished the FCA brand name, which is attached to

12 Plaintiff's and California Class members' vehicles, and made any reasonable consumer reluctant to

13 purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market

14 value for the vehicles.

15         229.    Bosch aided and abetted FCA's fraudulent concealment.

16         230.    Accordingly, FCA is liable to Plaintiff and California Class members for damages in

17 an amount to be proven at trial.

18         231.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to

19 defraud, and in reckless disregard of Plaintiff's and California Class members' rights and the

20 representations that FCA made to them, in order to enrich FCA.  FCA's conduct warrants an

21 assessment of punitive damages in an amount sufficient to deter such conduct in the future, which

22 amount is to be determined according to proof.

23                                    **COUNT II**

24               **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
                 **(CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**
25
           232.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.
26
           233.    This claim is brought on behalf of the California Class against FCA and Bosch.
27

28

234.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

235.     FCA's conduct, as described herein, was and is in violation of the UCL.  FCA's conduct violates the UCL in at least the following ways:

    a.     By failing to disclose that the NOx reduction system in the Affected Vehicles does not effectively mitigate emissions;

    b.     By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

    c.     By knowingly and intentionally concealing from Plaintiff and the California Class members that the Affected Vehicles suffer from a defective emissions control system and emit unlawfully high levels of pollutants under normal driving conditions;

    d.     By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

    e.     By deceptively obtaining EPA certification for Affected Vehicles;

    f.     By violating federal laws, including the Clean Air Act; and

    g.     By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

236.     FCA's misrepresentations and omissions alleged herein caused Plaintiff and the California Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the California Class members would not have purchased or leased these vehicles, would not have purchased or leased Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective EcoDiesel Clean Diesel engine systems that failed to comply with EPA and California emissions standards.

CLASS ACTION COMPLAINT - 63
Case No.:
010635-11  918538 V1

237.     Accordingly, Plaintiff and the California Class members have suffered injury in fact, including lost money or property, as a result of FCA's misrepresentations and omissions.

238.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by FCA under Cal. Bus. & Prof. Code § 17200.

239.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin FCA from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the California Class any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief set forth below.

### COUNT III

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)

240.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

241.     This claim is brought on behalf of the California Class against FCA and Bosch.

242.     California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

243.     The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

244.     Plaintiff and the California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the California Class members, and FCA are "persons" as defined in Cal. Civ. Code § 1761(c).

245.     As alleged above, FCA made representations concerning the benefits, efficiency, performance and safety features of the EcoDiesel Clean Diesel engine systems that were misleading.

246.     In purchasing or leasing the Affected Vehicles, Plaintiff and the California Class members were deceived by FCA's failure to disclose that the Affected Vehicles were equipped with defective EcoDiesel Clean Diesel engine systems that failed EPA and California emissions standards.

CLASS ACTION COMPLAINT - 64
Case No.:
010635-11  918538 V1

247.    FCA's conduct, as described herein, was and is in violation of the CLRA.  FCA's conduct violates at least the following enumerated CLRA provisions:

    a.    Cal. Civ. Code § 1770(a)(2): misrepresenting the approval or certification of goods.

    b.    Cal. Civ. Code § 1770(a)(3): misrepresenting the certification by another.

    c.    Cal. Civ. Code § 1770(a)(5): representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

    d.    Cal. Civ. Code § 1770(a)(7): representing that goods are of a particular standard, quality, or grade, if they are of another.

    e.    Cal. Civ. Code § 1770(a)(9): advertising goods with intent not to sell them as advertised.

    f.    Cal. Civ. Code § 1770(a)(16): representing that goods have been supplied in accordance with a previous representation when they have not.

248.    Plaintiff and the California Class members have suffered injury in fact and actual damages resulting from FCA's material omissions and misrepresentations and sale of Affected Vehicles with defective emissions controls because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with FCA's promises.

249.    FCA knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the EcoDiesel Clean Diesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

250.    The facts concealed and omitted by FCA to Plaintiff and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the California Class members known about the defective nature of the Affected Vehicles, and their non-compliance with EPA requirements, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

251.    Plaintiff and the California Class members have provided FCA with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to FCA on November 28, 2016.

252.     Plaintiff's and the California Class members' injuries were proximately caused by FCA's unlawful and deceptive business practices.

253.     In accordance with Cal. Civ. Code § 1780(a), Plaintiff and members of the California Class seek injunctive relief for FCA's violations of the CLRA.

254.     While Plaintiff and the California Class members do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

<div align="center">

**COUNT IV**

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)**

</div>

255.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

256.     This claim is brought on behalf of the California Class against FCA and Bosch.

257.     Cal. Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

258.     FCA caused to be made or disseminated through California and the U.S., through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known, to FCA to be untrue and misleading to consumers, including Plaintiff and the California Class members.

259.     FCA has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the functionality, reliability, environmental-friendliness, lawfulness, and safety of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

260.   Plaintiff and the California Class members have suffered injury in fact, including the loss of money or property, as a result of FCA's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Affected Vehicles, Plaintiff and the California Class members relied on the misrepresentations and/or omissions of FCA with respect to the functionality, reliability, environmental-friendliness, lawfulness, and safety of the Affected Vehicles.  FCA's representations turned out not to be true because the Affected Vehicles are distributed with EcoDiesel engine systems that include defective emissions controls.  Had Plaintiff and the California Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiff and the California Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

261.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of FCA's business.  FCA's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

262.   Plaintiff, individually and on behalf of the California Class, requests that this Court enter such orders or judgments as may be necessary to enjoin FCA from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other members any money FCA acquired by unfair competition, including restitution and/or disgorgement, and for such other relief set forth below.

**C.      Claims Brought on Behalf of the Alabama Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE ALABAMA DECEPTIVE
TRADE PRACTICES ACT
(ALA. CODE § 8-19-1 *ET SEQ.*)**

</div>

263.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

264.   Plaintiff brings this Count on behalf of the Alabama Subclass against FCA.

265.   Plaintiff and the Subclass members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

266.   Plaintiff, the Subclass members, and Defendant are "persons" within the meaning of Ala. Code § 8-19-3(5).

267.    The Affected Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

268.    Defendant was and is engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

269.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several specific actions to be unlawful, including:  "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

270.    Plaintiff intends to assert a claim under the Alabama DTPA.  Plaintiff will make a demand in satisfaction of Ala. Code § 8-19-3 and may amend this Complaint to assert claims under the Alabama DTPA once the required 15 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alabama DTPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ALABAMA LAW)

271.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

272.    This claim is brought on behalf of the Alabama Subclass against FCA.

273.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

274.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

275.     Defendant knew these representations were false when made.

276.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

277.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

278.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

279.     The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

280.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

281.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

282.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

283.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

284.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

285.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

286.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

287.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

288.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

289.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

290.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1    **D.**      **Claims Brought on Behalf of the Alaska Subclass**

2    <div align="center">**COUNT I**</div>

3    <div align="center">**VIOLATION OF THE ALASKA UNFAIR TRADE**</div>
     <div align="center">**PRACTICES AND CONSUMER PROTECTION ACT**</div>
4    <div align="center">**(ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*)**</div>

5           198.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

6           291.     Plaintiff brings this Count on behalf of the Alaska Subclass against FCA.

7           292.     The Alaska Consumer Protection Act ("Alaska CPA") proscribes unfair methods of

8    competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful,

9    including: "(4) representing that goods or services have sponsorship, approval, characteristics,

10   ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

11   approval, status, affiliation, or connection that the person does not have;" "(6) representing that

12   goods or services are of a particular standard, quality, or grade, or that goods are of a particular style

13   or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as

14   advertised;" or "(12) using or employing deception, fraud, false pretense, false promise,

15   misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that

16   others rely upon the concealment, suppression, or omission in connection with the sale or

17   advertisement of goods or services whether or not a person has in fact been misled, deceived or

18   damaged." Alaska Stat. Ann. § 45.50.471. Plaintiff will make a demand in satisfaction of Alaska

19   Stat. Ann. § 45.50.535, and may amend this Complaint to assert claims under the Alaska CPA once

20   the required notice period has elapsed. This paragraph is included for purposes of notice only and is

21   not intended to actually assert a claim under the Alaska CPA.

22   <div align="center">**COUNT II**</div>

23   <div align="center">**FRAUDULENT CONCEALMENT**</div>
     <div align="center">**(BASED ON ALASKA LAW)**</div>

24          293.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set

25   forth herein.

26          294.     This claim is brought on behalf of the Alaska Subclass against FCA.

27

28

295.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

296.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

297.    Defendant knew these representations were false when made.

298.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

299.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

300.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

301.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

302.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

303.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

304.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

305.    Defendant had a duty to disclose the emissions defect, defective design of emissions

controls, and violations with respect to the Affected Vehicles because details of the true facts were

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

facts, and because Defendant knew these facts were not known to or reasonably discoverable by

Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with

references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

respect to compliance with federal and state clean air laws and emissions regulations, and

Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

truth, but the entire truth.  These omitted and concealed facts were material because they directly

impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

or non-compliance, are material concerns to a consumer, including with respect to the emissions

certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

306.    Defendant actively concealed and/or suppressed these material facts, in whole or in

part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

vehicles and did not or could not comply with federal and state laws governing clean air and

emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

at the expense of Plaintiff and Subclass members.

307.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

308.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

309.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

310.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

311.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

312.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**E.      Claims Brought on Behalf of the Arizona Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
(ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)**

</div>

313.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

314.     Plaintiff brings this Count on behalf of the Arizona Subclass against FCA.

315.     The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A).

316.     In the course of Defendant's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that

CLASS ACTION COMPLAINT - 78
Case No.:
010635-11  918538 V1

others rely upon such concealment, suppression, or omission, in connection with the sale of Affected Vehicles.

317.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

318.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

319.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

320.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

321.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

322.    Defendant knew or should have known that its conduct violated the Arizona CFA.

323.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

CLASS ACTION COMPLAINT - 79
Case No.:
010635-11  918538 V1

324.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

325.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

326.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

327.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

328.    Plaintiff and the Subclass seek monetary relief against Defendant in an amount to be determined at trial.  Plaintiff and the Subclass also seek punitive damages because Defendant engaged in aggravated and outrageous conduct with an evil mind.

329.    Plaintiff also seeks attorneys' fees and any other just and proper relief available.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ARIZONA LAW)

330.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

331.    This claim is brought on behalf of the Arizona Subclass against FCA.

332.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

1   emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

2   advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

3   compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

4   and denied Plaintiff and the other Subclass members information that is highly relevant to their

5   purchasing decision.

6          333.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

7   advertising and other forms of communication, including standard and uniform material provided

8   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth friendly

9   and low-emission vehicles, complied with EPA regulations, and would perform and operate properly

10  when driven in normal usage.

11         334.    Defendant knew these representations were false when made.

12         335.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

13  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

14  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

15  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

16  Affected Vehicles turns off or is limited during normal driving conditions.

17         336.    Defendant had a duty to disclose that the NOx reduction system in the Affected

18  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

19  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

20  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

21  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

22  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

23  emission vehicles, efficient, and free from defects.

24         337.    As alleged in this Complaint, at all relevant times, Defendant has held out the

25  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

26  details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important

27  facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal

28  driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat

CLASS ACTION COMPLAINT - 81
Case No.:
010635-11  918538 V1

device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

338. The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

339. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

340. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

341. Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

342. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

343.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

344.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

345.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

346.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

347.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

348.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

349.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

1    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

2    future, which amount is to be determined according to proof.

3    **F.        Claims Brought on Behalf of the Arkansas Subclass**

4                                    **COUNT I**

5                **VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
                  **(ARK. CODE ANN. § 4-88-101 *ET SEQ.*)**

6

7        350.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

8    herein.

9        351.    This claim is brought on behalf of the Arkansas Subclass against FCA.

10       352.    Defendant, Plaintiff, and Arkansas Subclass members are "persons" within the

11   meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-

12   88-102(5).

13       353.    The "Affected Vehicles" are "goods" within the meaning of Ark. Code Ann. § 4-88-

14   102(4).

15       354.    The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices,"

16   which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other

17   unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann.

18   § 4-88-107(a)(10).  The Arkansas DTPA also prohibits the following when utilized in connection

19   with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any

20   deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material

21   fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. §

22   4-88-108.

23       355.    In the course of Defendant's business, Defendant willfully failed to disclose and

24   actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

25   during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

26   gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

27   consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

28   emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

356.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

357.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

358.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

359.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

360.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

361.    Defendant knew or should have known that its conduct violated the Arkansas DTPA.

362.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

  a.  Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

  b.  Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

  c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

363. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

364. Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

365. Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

366. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

367. Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial; (b) statutory damages in the amount of $250 for Plaintiff and each Arkansas Subclass member; (c) reasonable attorneys' fees; and (d) any other just and proper relief available under Arkansas law. Plaintiff also seeks punitive damages against Defendant because it

1   carried out despicable conduct with willful and conscious disregard of the rights of others.

2   Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive

3   damages.

4                                      **COUNT II**

5                          **FRAUDULENT CONCEALMENT**
                           **(BASED ON ARKANSAS LAW)**

6       368.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

7       369.    This claim is brought on behalf of the Arkansas Subclass against FCA.

8       370.    Defendant intentionally concealed that the NOx reduction system in the Affected

9
10  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

11  defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants

12  at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable

13  consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels

14  of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant

15  acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members

16  information that is highly relevant to their purchasing decision.

17      371.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

18  advertising and other forms of communication, including standard and uniform material provided

19  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

20  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

21  properly when driven in normal usage.

22      372.    Defendant knew these representations were false when made.

23      373.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

24  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

25  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

26  advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had

27  to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction

28  system in the Affected Vehicles turns off or is limited during normal driving conditions.

CLASS ACTION COMPLAINT - 88
Case No.:
010635-11  918538 V1

374.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

375.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

376.     The truth about the defective emissions controls and Defendant's manipulations of those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

377.     Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

378.     Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above

compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

379. Defendant's false representations were material to consumers because they concerned the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

380. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with

respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

381.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

382.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

383.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

384.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth

and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

385.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

386.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

387.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.     Claims Brought on Behalf of the California Subclass**

**COUNT I**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**

388.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

389.    This claim is brought on behalf of the California Subclass against FCA.

390.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

391.     Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following ways:

      a.    By failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions;

      b.    By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

      c.    By knowingly and intentionally concealing from Plaintiff and the other Subclass members that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles suffer from a defective emissions control system and emit unlawfully high levels of pollutants under normal driving conditions;

      d.    By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

      e.    By advertising and posting a miles per gallon ("MPG") rate that the Affected Vehicles do not meet and maintain;

      f.    By violating federal laws, including the Clean Air Act; and

      g.    By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

392.     Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

393.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the Affected Vehicles would not meet and maintain the advertised MPG rate; and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

CLASS ACTION COMPLAINT - 93
Case No.:
010635-11  918538 V1

394.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

395.    Defendant knew or should have known that its conduct violated the UCL.

396.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

397.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and that the Affected Vehicles would not meet and maintain their advertised MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

398.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

399.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  They also were required to pay more for fuel than they reasonably anticipated based on Defendant's material representations.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

400.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

401.    Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these vehicles, would not have purchased or leased Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective engines that failed to comply with EPA and California emissions standards.

402.    Accordingly, Plaintiff and the other Subclass members have suffered injury in fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

403.    Plaintiff request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and members of the Subclass any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as may be appropriate.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)

404.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

405.    This claim is brought on behalf of the California Subclass against FCA.

406.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

407.   The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

408.   Plaintiff and the other Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, Subclass members, and Defendant are "persons" as defined in Cal. Civ. Code § 1761(c).

409.   As alleged above, Defendant made representations concerning the benefits, efficiency, performance, and safety features of the Affected Vehicles that were misleading.

410.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles were equipped with defective EcoDiesel that failed EPA and California emissions standards, and that the Affected Vehicles would not meet and maintain the advertised MPG rate.

411.   Defendant's conduct, as described herein, was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

   a.   Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods.

   b.   Cal. Civ. Code § 1770(a)(3): Misrepresenting the certification by another.

   c.   Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

   d.   Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another.

   e.   Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

   f.   Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

412.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

413.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the

Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  They were also deceived by Defendant's failure to disclose that the Affected Vehicles would not meet and maintain their advertised MPG rate.

414.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

415.   Defendant knew or should have known that its conduct violated the CLRA.

416.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

417.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and would not meet and maintain the Affected Vehicles' posted MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

418.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

419.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  They also were required to pay more for fuel than they reasonably anticipated based on Defendant's material representations.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

420.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

421.    Defendant knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the EcoDiesel engines, and that the Affected Vehicles were not suitable for their intended use.

422.    The facts concealed and omitted by Defendant from Plaintiff and the other Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the other Subclass members known about the defective nature of the Affected Vehicles, and their non-compliance with EPA requirements, and the failure of the Affected Vehicles to meet and maintain their posted MPG rate, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

423.    Plaintiff and the Subclass have provided Defendant with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).

424.    Plaintiff's and the other Subclass members' injuries were proximately caused by Defendant's unlawful and deceptive business practices.

425.    While Plaintiff do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Cal. Civil Code

1
2

§ 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

3

<div align="center">

**COUNT III**

</div>

4
5

<div align="center">

**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)**

</div>

6

426.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

7

427.    This claim is brought on behalf of the California Subclass against FCA.

8
9
10
11
12
13

428.    Cal. Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

14
15
16
17
18
19

429.    Defendant caused to be made or disseminated through California and the U.S., through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Subclass members.

20
21
22
23

430.    Defendant has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the functionality, reliability, environmental-friendliness, lawfulness, fuel efficiency, and safety of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

24
25
26
27
28

431.    Plaintiff and the other Subclass members have suffered injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Affected Vehicles, Plaintiff and the other Subclass members relied on the misrepresentations and/or omissions of Defendant with respect to the functionality, reliability, environmental-friendliness, fuel efficiency, and lawfulness of the Affected Vehicles.  Defendant's

representations turned out not to be true because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the Affected Vehicles are distributed with EcoDiesel engines that include defective emissions controls and a "defeat device." The Affected Vehicles also do not meet and maintain the posted MPG rate. Had Plaintiff and the other Subclass members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

432. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

433. Plaintiff, individually and on behalf of the other Subclass members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the other Subclass members any money Defendant acquired by unfair competition, including restitution and/or disgorgement, and for such other relief as may be appropriate.

**COUNT IV**

**FRAUDULENT CONCEALMENT
(BASED ON CALIFORNIA LAW)**

434. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

435. This claim is brought on behalf of the California Subclass against FCA.

436. Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

437.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

438.    Defendant knew these representations were false when made.

439.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

440.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

441.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

442.    The truth about the defective emissions controls and Defendant's manipulations of those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

443.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

444.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

445.    Defendant's false representations were material to consumers because they concerned the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

446.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these

CLASS ACTION COMPLAINT - 102
Case No.:
010635-11  918538 V1

facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

447.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

448.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

449.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

450.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

451.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

452.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

453.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

CLASS ACTION COMPLAINT - 104
Case No.:
010635-11  918538 V1

1    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

2    future, which amount is to be determined according to proof.

3    **H.**      **Claims Brought on Behalf of the Colorado Subclass**

4                                          **COUNT I**

5         **VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
                 **(COLO. REV. STAT. § 6-1-101 *ET SEQ.*)**

6       454.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

7       455.     Plaintiff brings this Count on behalf of the Colorado Subclass against FCA.

8       456.     Colorado's Consumer Protection Act (the "Colorado CPA") prohibits a person from

9    engaging in a "deceptive trade practice," which includes knowingly making "a false representation as

10    to the source, sponsorship, approval, or certification of goods," or "a false representation as to the

11    characteristics, ingredients, uses, benefits, alterations, or quantities of goods."  Colo. Rev. Stat. § 6-

12    1-105(1)(b), (e).  The Colorado CPA further prohibits "represent[ing] that goods … are of a

13    particular standard, quality, or grade … if he knows or should know that they are of another," and

14    "advertis[ing] goods … with intent not to sell them as advertised."  Colo. Rev. Stat. § 6-1-105(1)(g),

15    (i).

16       457.     Defendant is a "person" under § 6-1-102(6) of the Colorado CPA, Colo. Rev. Stat.

17    § 6-1-101 *et seq*.

18       458.     Plaintiff and Colorado Subclass members are "consumers" for the purpose of Colo.

19    Rev. Stat. § 6-1-113(1)(a) who purchased or leased one or more Affected Vehicles.

20       459.     In the course of Defendant's business, Defendant willfully failed to disclose and

21    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

22    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

23    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

24    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

25    emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

26    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

27    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

28

uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

460.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

461.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

462.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

463.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

464.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

465.    Defendant knew or should have known that its conduct violated the Colorado CPA.

466.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

467.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

468.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

469.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

470.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

471.    Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff and the Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each Subclass member.

472.    Plaintiff and the Subclass also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

1

**COUNT II**

2

**FRAUDULENT CONCEALMENT
(BASED ON COLORADO LAW)**

3

473.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

4

474.    Plaintiff brings this Count on behalf of the Colorado Subclass against FCA.

5

475.    Defendant intentionally concealed that the NOx reduction system in the Affected

6

Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

7

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

8

emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

9

advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

10

compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

11

and denied Plaintiff and the other Subclass members information that is highly relevant to their

12

purchasing decision.

13

476.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

14

advertising and other forms of communication, including standard and uniform material provided

15

with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

16

friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

17

properly when driven in normal usage.

18

477.    Defendant knew these representations were false when made.

19

478.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

20

members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

21

vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

22

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

23

Affected Vehicles turns off or is limited during normal driving conditions.

24

479.    Defendant had a duty to disclose that the NOx reduction system in the Affected

25

Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

26

defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

27

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

28

1    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

2    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

3    emission vehicles, efficient, and free from defects.

4          480.    As alleged in this Complaint, at all relevant times, Defendant has held out the

5    Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

6    details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

7    important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

8    normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

9    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

10   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

11   making other disclosures about the emission system deceptive.

12         481.    The truth about the defective emissions controls and Defendant's manipulations of

13   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

14   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

15   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

16   members.

17         482.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

18   had no way of knowing that Defendant's representations were false and/or misleading.  As

19   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

20   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

21   true facts about the Affected Vehicles' emissions.

22         483.    Defendant also concealed and suppressed material facts concerning what is evidently

23   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

24   compliance with federal and state clean air laws and emissions regulations that are meant to protect

25   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

26   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

27   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

28   environment.  And yet, that is precisely what the Affected Vehicles are doing.

CLASS ACTION COMPLAINT - 109
Case No.:
010635-11  918538 V1

484.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

485.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

486.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

487.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

488.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

489.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

490.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

1    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

2    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

3    vehicles.

4           491.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

5    amount to be proven at trial.

6           492.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

7    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

8    representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

9    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

10   future, which amount is to be determined according to proof.

11   **I.      Claims Brought on Behalf of the Connecticut Subclass**

12                                    **COUNT I**

13   **VIOLATIONS OF THE CONNECTICUT UNFAIR
     TRADE PRACTICES ACT
14   (CONN. GEN. STAT. ANN. § 42-110A *ET SEQ.*)**

15          493.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

16          494.    Plaintiff brings this Count on behalf of the Connecticut Subclass against FCA.

17          495.    Defendant and Plaintiff are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-

18   110a(3).

19          496.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that

20   "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices

21   in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. § 42-110b(a).  The Connecticut

22   UTPA further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a).  In the

23   course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the

24   NOx reduction system in the Affected Vehicles turns off or is limited during normal driving

25   conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles,

26   that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light

27   of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels

28   of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair and

CLASS ACTION COMPLAINT - 112
Case No.:
010635-11  918538 V1

deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons.  The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Defendant fraudulently concealed the defective nature of the Affected Vehicles from consumers.

497.    Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct.

498.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

499.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

500.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

501.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

502.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

503.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

504.    Defendant knew or should have known that its conduct violated the Connecticut UTPA.

505.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

506.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

CLASS ACTION COMPLAINT - 114
Case No.:
010635-11  918538 V1

were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

507.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

508.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

509.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

510.    Plaintiff and the other Subclass members sustained damages as a result of Defendant's unlawful acts, and are therefore entitled to damages and other relief as provided under the Connecticut UTPA.

511.    Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violation of the Connecticut UTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

## COUNT II

### FRAUDULENT NON-DISCLOSURE
### (BASED ON CONNECTICUT LAW)

512.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

513.    Plaintiff brings this Count on behalf of the Connecticut Subclass against FCA.

514.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

515.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

516.    Defendant knew these representations were false when made.

517.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

518.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

519.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

1    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

2    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

3    making other disclosures about the emission system deceptive.

4         520.   The truth about the defective emissions controls and Defendant's manipulations of

5    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

6    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

7    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

8    members.

9         521.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

10   had no way of knowing that Defendant's representations were false and/or misleading.  As

11   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

12   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

13   true facts about the Affected Vehicles' emissions.

14        522.   Defendant also concealed and suppressed material facts concerning what is evidently

15   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

16   compliance with federal and state clean air laws and emissions regulations that are meant to protect

17   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

18   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

19   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

20   environment.  And yet, that is precisely what the Affected Vehicles are doing.

21        523.   Defendant's false representations were material to consumers because they concerned

22   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

23   state laws and regulations regarding clean air and emissions, and also because the representations

24   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

25   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

26   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

27        524.   Defendant had a duty to disclose the emissions defect, defective design of emissions

28   controls, and violations with respect to the Affected Vehicles because details of the true facts were

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

525.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

526.     Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

527.     Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

528.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

529.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

530.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

531.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**J.      Claims Brought on Behalf of the Delaware Subclass**

### COUNT I

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
(DEL. CODE § 2513 *ET SEQ.*)**

532.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

533.    Plaintiff brings this Count on behalf of the Delaware Subclass against FCA.

534.    Defendant is a "person" within the meaning of 6 Del. Code § 2511(7).

535.    The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaigns, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendant has engaged in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of the Affected Vehicles.

536.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

CLASS ACTION COMPLAINT - 120
Case No.:
010635-11  918538 V1

1    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

2    emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

3    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

4    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

5    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

6    particular standard and quality when they are not; failing to reveal a material fact, the omission of

7    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

8    the consumer; making a representation of fact or statement of fact material to the transaction such

9    that a person reasonably believes the represented or suggested state of affairs to be other than it

10   actually is; and failing to reveal facts that are material to the transaction in light of representations of

11   fact made in a positive manner.

12        537.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

13   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

14   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

15   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

16   including NOx, as described above.

17        538.    Plaintiff and Subclass members reasonably relied upon Defendant's false

18   misrepresentations.  They had no way of knowing that Defendant's representations were false and

19   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

20   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

21   their own.

22        539.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

23        540.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

24   reasonable consumers.

25        541.    Defendant intentionally and knowingly misrepresented material facts regarding the

26   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

27        542.    Defendant knew or should have known that its conduct violated the Delaware CFA.

28

543.     Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

   a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

   b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

   c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

544.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

545.     Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

546.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

547.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

548.     Plaintiff seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct.  *See, e.g.*, *Stephenson v. Capano Dev.*,

1   *Inc.*, 462 A.2d 1069, 1077 (Del. 1983).  Plaintiff also seeks declaratory relief, attorneys' fees, and

2   any other just and proper relief available under the Delaware CFA.

3         549.     Defendant engaged in gross, oppressive, or aggravated conduct justifying the

4   imposition of punitive damages.

5   <div align="center">**COUNT II**</div>

6   <div align="center">**FRAUDULENT CONCEALMENT**
**(BASED ON DELAWARE LAW)**</div>

7         550.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

8         551.     Plaintiff brings this Count on behalf of the Delaware Subclass against FCA.

9         552.     Defendant intentionally concealed that the NOx reduction system in the Affected

10  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

11  defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

12  emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

13  advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

14  compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

15  and denied Plaintiff and the other Subclass members information that is highly relevant to their

16  purchasing decision.

17        553.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

18  advertising and other forms of communication, including standard and uniform material provided

19  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

20  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

21  properly when driven in normal usage.

22        554.     Defendant knew these representations were false when made.

23        555.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

24  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

25  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

26  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

27  Affected Vehicles turns off or is limited during normal driving conditions.

28

CLASS ACTION COMPLAINT - 123
Case No.:
010635-11  918538 V1

556.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

557.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

558.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

559.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

560.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

1   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

2   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

3   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

4   environment.  And yet, that is precisely what the Affected Vehicles are doing.

5       561.   Defendant's false representations were material to consumers because they concerned

6   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

7   state laws and regulations regarding clean air and emissions, and also because the representations

8   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

9   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

10  leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

11      562.   Defendant had a duty to disclose the emissions defect, defective design of emissions

12  controls, and violations with respect to the Affected Vehicles because details of the true facts were

13  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

14  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

15  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

16  affirmative representations about the qualities of its vehicles with respect to emissions, starting with

17  references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

18  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

19  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

20  respect to compliance with federal and state clean air laws and emissions regulations, and

21  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

22  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

23  truth, but the entire truth.  These omitted and concealed facts were material because they directly

24  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

25  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

26  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

27  or non-compliance, are material concerns to a consumer, including with respect to the emissions

28  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

CLASS ACTION COMPLAINT - 125
Case No.:
010635-11  918538 V1

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

563.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that the Affected Vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

564.    Defendant has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

565.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

566.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of the vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

567.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

568.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

569.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**K.      Claims Brought on Behalf of the District of Columbia Subclass**

**COUNT I**

**VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
**(D.C. CODE § 28-3901 *ET SEQ.*)**

570.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

571.    Plaintiff brings this Count on behalf of the D.C. Subclass against FCA.

572.    Defendant is a "person" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. Code § 28-3901(a)(1).

573.    Subclass members are "consumers," as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more Affected Vehicles.

574.    Defendant's actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

575.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

576.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

577.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

578.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

579.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

580.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

CLASS ACTION COMPLAINT - 128
Case No.:
010635-11  918538 V1

581.    Defendant knew or should have known that its conduct violated the District of Columbia CPPA.

582.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

583.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

584.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

585.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

586.    As a direct and proximate result of Defendant's violations of the District of Columbia CPPA, Plaintiff and D.C. Subclass members have suffered injury in fact and/or actual damage.

587.    Plaintiff and D.C. Subclass members are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. Code § 28-3901.

588.   Plaintiff seeks punitive damages against Defendant because Defendant's conduct evidences malice and/or egregious conduct. Defendant maliciously and egregiously misrepresented the safety, cleanliness, efficiency and reliability of the Affected Vehicles, deceived Subclass members, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting their defective and environmentally dirty engines.

589.   Defendant's unlawful conduct constitutes malice warranting punitive damages.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON DISTRICT OF COLUMBIA LAW)

590.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

591.   This claim is brought on behalf of the District of Columbia Subclass against FCA.

592.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

593.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

594.   Defendant knew these representations were false when made.

595.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

1    advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had

2    to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction

3    system in the Affected Vehicles turns off or is limited during normal driving conditions.

4         596.    Defendant had a duty to disclose that the NOx reduction system in the Affected

5    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

6    defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted

7    pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded

8    those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because

9    Plaintiff and the other Subclass members relied on Defendant's material representations that the

10   Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from

11   defects.

12        597.    As alleged in this Complaint, at all relevant times, Defendant has held out the

13   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

14   details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important

15   facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal

16   driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat

17   device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

18   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

19   making other disclosures about the emission system deceptive.

20        598.    The truth about the defective emissions controls and Defendant's manipulations of

21   those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the

22   "defeat device," and non-compliance with EPA emissions requirements was known only to

23   Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively

24   concealed these facts from Plaintiff and Subclass members.

25        599.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

26   had no way of knowing that Defendant's representations were false and/or misleading.  As

27   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

28

their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

600.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

601.    Defendant's false representations were material to consumers because they concerned the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

602.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the

1     duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were

2     material because they directly impact the value of the Affected Vehicles purchased or leased by

3     Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal

4     and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with

5     respect to such compliance or non-compliance, are material concerns to a consumer, including with

6     respect to the emissions certifications testing their vehicles must pass.  Defendant represented to

7     Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel

8     vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with

9     unlawfully high emissions.

10         603.    Defendant actively concealed and/or suppressed these material facts, in whole or in

11     part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

12     vehicles and did not or could not comply with federal and state laws governing clean air and

13     emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

14     at the expense of Plaintiff and Subclass members.

15         604.    Defendant still has not made full and adequate disclosures, and continues to defraud

16     Plaintiff and Subclass members by concealing material information regarding the emissions qualities

17     of the Affected Vehicles.

18         605.    Plaintiff and Subclass members were unaware of the omitted material facts referenced

19     herein, and they would not have acted as they did if they had known of the concealed and/or

20     suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

21     manufactured by Defendant, and/or would not have continued to drive their heavily polluting

22     vehicles, or would have taken other affirmative steps in light of the information concealed from

23     them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

24     of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

25     members.

26         606.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

27     members have sustained damage because they own vehicles that are diminished in value as a result

28     of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel

efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

607.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

608.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

609.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**L.      Claims Brought on Behalf of the Florida Subclass**

**COUNT I**

**VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**
**(FLA. STAT. § 501.201 *ET SEQ.*)**

610.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

CLASS ACTION COMPLAINT - 134
Case No.:
010635-11  918538 V1

611.    Plaintiff brings this Count on behalf of the Florida Subclass against FCA.

612.    Plaintiff and Subclass members are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA"), Fla. Stat. § 501.203(7).

613.    Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

614.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Defendant participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Fla. Stat. § 501.204(1). Defendant's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is likely to mislead consumers.

615.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

616.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

617.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

618.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

619.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

620.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

621.    Defendant knew or should have known that its conduct violated the Florida UDTPA.

622.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

623.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

624.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

625.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

626.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

627.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON FLORIDA LAW)**

628.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

629.    Plaintiff brings this Count on behalf of the Florida Subclass against FCA.

630.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

631.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

632.     Defendant knew these representations were false when made.

633.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

634.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

635.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

1    details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

2    important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

3    normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

4    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

5    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

6    making other disclosures about the emission system deceptive.

7    636.    The truth about the defective emissions controls and Defendant's manipulations of

8    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

9    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

10   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

11   members.

12   637.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

13   had no way of knowing that Defendant's representations were false and/or misleading.  As

14   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

16   true facts about the Affected Vehicles' emissions.

17   638.    Defendant also concealed and suppressed material facts concerning what is evidently

18   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

19   compliance with federal and state clean air laws and emissions regulations that are meant to protect

20   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

21   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

22   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

23   environment.  And yet, that is precisely what the Affected Vehicles are doing.

24   639.    Defendant's false representations were material to consumers because they concerned

25   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

26   state laws and regulations regarding clean air and emissions, and also because the representations

27   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

28

CLASS ACTION COMPLAINT - 139
Case No.:
010635-11  918538 V1

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

640.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

641.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

642.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

643.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

644.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

645.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

646.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

647.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.    Claims Brought on Behalf of the Georgia Subclass**

**COUNT I**

**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**(GA. CODE ANN. § 10-1-390 *ET SEQ.*)**

648.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

649.    This claim is made on behalf of the Georgia Subclass against FCA.

650.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  Ga. Code. Ann. § 10-1-393(b).  Plaintiff will make a demand in satisfaction of Ga. Code. Ann. § 10-1-399(b), and may amend this Complaint to assert claims under the Georgia FBPA once the required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON GEORGIA LAW)**

651.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

652. This claim is brought on behalf of the Georgia Subclass against FCA.

653. Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

654. Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

655. Defendant knew these representations were false when made.

656. The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

657. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

CLASS ACTION COMPLAINT - 143
Case No.:
010635-11 918538 V1

658.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

659.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

660.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

661.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

662.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations

played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

663.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

664.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

665.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

666.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

667.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

668.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

669.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

670.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**N.    Claims Brought on Behalf of the Hawaii Subclass**

**COUNT I**

**UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
(HAW. REV. STAT. § 480 *ET SEQ.*)**

556.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

557.   This claim is brought on behalf of the Hawaii Subclass against FCA.

569.   Defendant is a "person" under Haw. Rev. Stat. § 480-1.

570.   Subclass members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Affected Vehicles.

571. Defendant's acts or practices as set forth above occurred in the conduct of trade or commerce.

572. Haw. Rev. Stat. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

671.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

672.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

673.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

674.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

675.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

676.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

677.    Defendant knew or should have known that its conduct violated Haw. Rev. Stat. § 480 *et seq.*

678.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

679.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

680.    Pursuant to Haw. Rev. Stat. § 480-13, Plaintiff and the Hawaii Subclass seek monetary relief against Defendant measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

681.    Under Haw. Rev. Stat. § 480-13.5, Plaintiff seeks an additional award against Defendant of up to $10,000 for each violation directed at a Hawaiian elder. Defendant knew or should have known that its conduct was directed to one or more Subclass members who are elders. Defendant's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Hawaii Subclass members who are elders are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendant's conduct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON HAWAII LAW)**

682.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

683.    This claim is brought on behalf of the Hawaii Subclass against FCA.

684.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

685.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

686.    Defendant knew these representations were false when made.

687.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

688.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

689. As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles. Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

690. The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

691. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

692. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

693.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

694.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

695.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

696.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

697.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

698.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

699.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

700.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

701.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**O.      Claims Brought on Behalf of the Idaho Subclass**

**COUNT I**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CODE § 48-601 *ET SEQ.*)**

702.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

703.    Plaintiff brings this Count on behalf of the Idaho Subclass against FCA.

704.    Defendant is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

705.    Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

706.    Idaho Code § 48-603 prohibits the following conduct in trade or commerce:  engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer; and engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C.

707.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

708.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

709.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

710.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

711.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

712.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

CLASS ACTION COMPLAINT - 155
Case No.:
010635-11  918538 V1

713.    Defendant knew or should have known that its conduct violated the Idaho CPA.

714.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

715.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

716.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

717.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

718.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

CLASS ACTION COMPLAINT - 156
Case No.:
010635-11  918538 V1

719.     Plaintiff also seeks attorneys' fees and any other just and proper relief available under the Idaho CPA.

720.     Plaintiff also seeks punitive damages against Defendant because Defendant's conduct evidences an extreme deviation from reasonable standards.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON IDAHO LAW)**

</div>

721.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

722.     This claim is brought on behalf of the Idaho Subclass against FCA.

723.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

724.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

725.     Defendant knew these representations were false when made.

726.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

727.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

728.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

729.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

730.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

CLASS ACTION COMPLAINT - 158
Case No.:
010635-11  918538 V1

731.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

732.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

733.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

734.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

735.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

736.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

737.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

738.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

739.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

740.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**P.    Claims Brought on Behalf of the Illinois Subclass**

**COUNT I**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT
(815 ILL. COMP. STAT. 505/1 *ET SEQ*. AND
720 ILL. COMP. STAT. 295/1A)**

741.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

742.    This claim is brought on behalf of the Illinois Subclass against FCA.

743.    Defendant is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

744.    Plaintiff and the Subclass members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

745.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 Ill. Comp. Stat. 505/2.

746.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

747.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

748.     Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

749.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

750.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

751.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

752.    Defendant knew or should have known that its conduct violated the Illinois CFA.

753.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

754.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

755.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

CLASS ACTION COMPLAINT - 163
Case No.:
010635-11  918538 V1

756.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

757.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

758.     Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff and the Subclass members seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

759.     Plaintiff also seeks punitive damages, attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et seq.*

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ILLINOIS LAW)

760.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

761.     This claim is brought on behalf of the Illinois Subclass against FCA.

762.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

763.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided

1   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

2   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

3   properly when driven in normal usage.

4        764.    Defendant knew these representations were false when made.

5        765.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

6   members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

7   vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

8   advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

9   Affected Vehicles turns off or is limited during normal driving conditions.

10       766.    Defendant had a duty to disclose that the NOx reduction system in the Affected

11  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

12  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

13  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

14  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

15  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

16  emission vehicles, efficient, and free from defects.

17       767.    As alleged in this Complaint, at all relevant times, Defendant has held out the

18  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

19  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

20  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

21  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

22  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

23  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

24  making other disclosures about the emission system deceptive.

25       768.    The truth about the defective emissions controls and Defendant's manipulations of

26  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

27  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

28

CLASS ACTION COMPLAINT - 165
Case No.:
010635-11  918538 V1

1    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

2    members.

3         769.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

4    had no way of knowing that Defendant's representations were false and/or misleading.  As

5    consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

6    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

7    true facts about the Affected Vehicles' emissions.

8         770.    Defendant also concealed and suppressed material facts concerning what is evidently

9    the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

10   compliance with federal and state clean air laws and emissions regulations that are meant to protect

11   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

12   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

13   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

14   environment.  And yet, that is precisely what the Affected Vehicles are doing.

15        771.    Defendant's false representations were material to consumers because they concerned

16   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

17   state laws and regulations regarding clean air and emissions, and also because the representations

18   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

19   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

20   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

21        772.    Defendant had a duty to disclose the emissions defect, defective design of emissions

22   controls, and violations with respect to the Affected Vehicles because details of the true facts were

23   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

24   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

25   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

26   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

27   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

28   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

CLASS ACTION COMPLAINT - 166
Case No.:
010635-11  918538 V1

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

773.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

774.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

775.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

CLASS ACTION COMPLAINT - 167
Case No.:
010635-11  918538 V1

776.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

777.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

778.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

779.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Q.      Claims Brought on Behalf of the Kansas Subclass**

**COUNT I**

**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(KAN. STAT. ANN. § 50-623 *ET SEQ.*)**

780.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

781.     Plaintiff brings this Count on behalf of the Kansas Subclass against FCA.

645.     Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas CPA"), Kan. Stat. Ann. § 50-624(l).

750.     Kansas Subclass members are "consumers," within the meaning of Kan. Stat. Ann. § 50-624(b), who purchased or leased one or more Affected Vehicles.

751.     The sale of the Affected Vehicles to the Kansas Subclass members was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

752.     The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or practices include: (1) knowingly making representations or with reason to know that "(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" and "(D) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation;" "(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful concealment, suppression, or omission of a material fact."  The Kansas CPA also provides that "[n]o supplier shall engage in any unconscionable act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-627(a).

753.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

782.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

783.     Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

784.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

785.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

786.     Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

787.     Defendant knew or should have known that its conduct violated the Kansas CPA.

788.     Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

789.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

790.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

791.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

792.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

754.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiff and the Kansas Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiff and each Kansas Subclass member.

772. Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 *et seq.*

## COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON KANSAS LAW)

793. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

794. This claim is brought on behalf of the Kansas Subclass against FCA.

795. Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

796. Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

797. Defendant knew these representations were false when made.

798. The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

799.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

800.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

801.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

802.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

803.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

1    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

2    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

3    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

4    environment.  And yet, that is precisely what the Affected Vehicles are doing.

5         804.    Defendant's false representations were material to consumers because they concerned

6    the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

7    state laws and regulations regarding clean air and emissions, and also because the representations

8    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

9    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

10   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

11        805.    Defendant had a duty to disclose the emissions defect, defective design of emissions

12   controls, and violations with respect to the Affected Vehicles because details of the true facts were

13   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

14   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

15   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

16   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

17   references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

18   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

19   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

20   respect to compliance with federal and state clean air laws and emissions regulations, and

21   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

22   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

23   truth, but the entire truth.  These omitted and concealed facts were material because they directly

24   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

25   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

26   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

27   or non-compliance, are material concerns to a consumer, including with respect to the emissions

28   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

CLASS ACTION COMPLAINT - 174
Case No.:
010635-11  918538 V1

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

806.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

807.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

808.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

809.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

810.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

811.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

812.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**R.     Claims Brought on Behalf of the Kentucky Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)**

</div>

813.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

814.     Plaintiff brings this Count on behalf of the Kentucky Subclass against FCA.

815.     Defendant, Plaintiff, and each member of the Kentucky Subclass is a "person" within the meaning of the Ky. Rev. Stat. Ann. § 367.110(1).

816.     Defendant engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

817.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. § 367.170(1).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in deceptive business practices prohibited by the Kentucky CPA.

818.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

819.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

820.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.

3         821.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4         822.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5    reasonable consumers.

6         823.    Defendant intentionally and knowingly misrepresented material facts regarding the

7    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8         824.    Defendant knew or should have known that its conduct violated the Kentucky CPA.

9         825.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11            a.    Possessed exclusive knowledge that it manipulated the emissions system in the

12                  Affected Vehicles to turn off or limit effectiveness in normal driving

13                  conditions;

14            b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15            c.    Made incomplete representations that it manipulated the emissions system in

16                  the Affected Vehicles to turn off or limit effectiveness in normal driving

17                  conditions, while purposefully withholding material facts from Plaintiff and

18                  the Subclass that contradicted these representations.

19        826.    Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26        827.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

CLASS ACTION COMPLAINT - 178
Case No.:
010635-11  918538 V1

828.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

829.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

830.     Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiff and the Subclass seek to recover actual damages in an amount to be determined at trial; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT II

### FRAUD BY OMISSION
### (BASED ON KENTUCKY LAW)

831.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

832.     This claim is brought on behalf of the Kentucky Subclass against FCA.

833.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

834.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

835.   Defendant knew these representations were false when made.

836.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

837.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

838.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

839.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

840.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

CLASS ACTION COMPLAINT - 180
Case No.:
010635-11 918538 V1

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

841.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

842.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

843.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

1   truth, but the entire truth. These omitted and concealed facts were material because they directly

2   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

3   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

4   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

5   or non-compliance, are material concerns to a consumer, including with respect to the emissions

6   certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass

7   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

8   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

9        844.    Defendant actively concealed and/or suppressed these material facts, in whole or in

10  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

11  vehicles and did not or could not comply with federal and state laws governing clean air and

12  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

13  at the expense of Plaintiff and Subclass members.

14       845.    Defendant still has not made full and adequate disclosures, and continues to defraud

15  Plaintiff and Subclass members by concealing material information regarding the emissions qualities

16  of the Affected Vehicles.

17       846.    Plaintiff and Subclass members were unaware of the omitted material facts referenced

18  herein, and they would not have acted as they did if they had known of the concealed and/or

19  suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

20  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

21  vehicles, or would have taken other affirmative steps in light of the information concealed from

22  them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control

23  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

24  members.

25       847.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

26  members have sustained damage because they own vehicles that are diminished in value as a result

27  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

28  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

1   actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

2   by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

3   emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

4   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

5   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

6   or would not have purchased or leased them at all.

7       848.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

8   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

9   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

10  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

11  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

12  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

13  vehicles.

14      849.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

15  amount to be proven at trial.

16      850.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

17  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

18  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

19  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

20  future, which amount is to be determined according to proof.

21  **S.     Claims Brought on Behalf of the Louisiana Subclass**

22                                  **COUNT I**

23  **VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND**
    **CONSUMER PROTECTION LAW**
24  **(LA. STAT. ANN. § 51:1401 *ET SEQ.*)**

25      851.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

26  herein.

27      852.    This claim is brought only on behalf of members of the Louisiana Subclass against

28  FCA.

CLASS ACTION COMPLAINT - 183
Case No.:
010635-11  918538 V1

689.    Defendant, Plaintiff, and Louisiana Subclass members are "persons" within the meaning of the La. Stat. Ann. § 51:1402(8).

836.    Plaintiff and Louisiana Subclass members are "consumers" within the meaning of La. Stat. Ann. § 51:1402(1).

837.    Defendant engaged in "trade" or "commerce" within the meaning of La. Stat. Ann. § 51:1402(9).

838.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405(A).

853.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

854.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

855.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

856.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

857.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

858.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

859.    Defendant knew or should have known that its conduct violated the Louisiana CPL.

860.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

861.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

862.    As a direct and proximate result of Defendant's violations of the Louisiana CPL, Plaintiff and the Louisiana Subclass have suffered injury in fact and/or actual damage.

863.    Pursuant to La. Stat. Ann. § 51:1409, Plaintiff and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Defendant's knowing violations of the Louisiana CPL; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Stat. Ann. § 51:1409.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON LOUISIANA LAW)

864.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

865.    This claim is brought on behalf of the Louisiana Subclass against FCA.

866.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

867.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

868.    Defendant knew these representations were false when made.

869.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

870.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

871.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

872.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

873.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

874.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

875.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

876.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

877.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

878.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

879.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

880.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

CLASS ACTION COMPLAINT - 189
Case No.:
010635-11  918538 V1

actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

881.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

882.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

883.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**T.    Claims Brought on Behalf of the Maine Subclass**

<div align="center">

**COUNT I**

**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
**(ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)**

</div>

884.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

885.    This claim is brought on behalf of the Maine Subclass against FCA.

886.     Plaintiff intends to assert a claim under the Maine Unfair Trade Practices Act ("Maine UTPA") which makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207.  Plaintiff will make a demand in satisfaction of Me. Rev. Stat. Ann. tit. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Maine UTPA.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON MAINE LAW)**

</div>

887.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

888.     This claim is brought on behalf of the Maine Subclass against FCA.

889.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

890.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

891.     Defendant knew these representations were false when made.

892.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

893.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

894.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

895.     The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

896.     Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

897.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

898.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

899.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly

impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

900. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

901. Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

902. Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

903. Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

904.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

905.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

906.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**U.      Claims Brought on Behalf of the Maryland Subclass**

**COUNT I**

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
(MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*)**

907.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

908.    This claim is brought only on behalf of members of the Maryland Subclass against FCA.

909.    Defendant, Plaintiff, and the Maryland Subclass members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

910.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Code Ann., Com. Law Code § 13-303.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the vehicles have a "defeat device," and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair and deceptive trade practices.  Defendant's acts and practices offend public policy; were immoral, unethical, oppressive, or unscrupulous; caused substantial injury to consumers; had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

911.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it

CLASS ACTION COMPLAINT - 196
Case No.:
010635-11  918538 V1

1    actually is; and failing to reveal facts that are material to the transaction in light of representations of

2    fact made in a positive manner.

3          912.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

4    members were deceived by Defendant's failure to disclose that the NOx reduction system in the

5    Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

6    controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

7    including NOx, as described above.

8          913.    Plaintiff and Subclass members reasonably relied upon Defendant's false

9    misrepresentations.  They had no way of knowing that Defendant's representations were false and

10   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

11   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

12   their own.

13         914.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

14         915.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

15   reasonable consumers.

16         916.    Defendant intentionally and knowingly misrepresented material facts regarding the

17   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

18         917.    Defendant knew or should have known that its conduct violated the Maryland CPA.

19         918.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

20   emissions systems manipulation because Defendant:

21              a.    Possessed exclusive knowledge that it manipulated the emissions system in the

22                    Affected Vehicles to turn off or limit effectiveness in normal driving

23                    conditions;

24              b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

25              c.    Made incomplete representations that it manipulated the emissions system in

26                    the Affected Vehicles to turn off or limit effectiveness in normal driving

27                    conditions, while purposefully withholding material facts from Plaintiff and

28                    the Subclass that contradicted these representations.

CLASS ACTION COMPLAINT - 197
Case No.:
010635-11  918538 V1

919.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

920.     Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

921.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

922.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

923.     Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiff and the Maryland Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MARYLAND LAW)

924.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

925.     This claim is brought on behalf of the Maryland Subclass against FCA.

926.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

CLASS ACTION COMPLAINT - 198
Case No.:
010635-11  918538 V1

emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

927.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

928.    Defendant knew these representations were false when made.

929.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

930.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

931.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

"defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

932.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

933.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

934.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

935.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

936.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

937.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

938.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

939.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

940.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

941.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

942.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

943.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

CLASS ACTION COMPLAINT - 202
Case No.:
010635-11  918538 V1

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**V.      Claims Brought on Behalf of the Massachusetts Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT (MASS. GEN. LAWS CH. 93A)**

</div>

944.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

945.      This claim is brought on behalf of the Massachusetts Subclass against FCA.

946.      Plaintiff intends to assert a claim under the Massachusetts Consumer Protection Act ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(1). Plaintiff will make a demand in satisfaction of Mass. Gen. Laws ch. 93A, § 9(3), and may amend this Complaint to assert claims under the MCPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the MCPA.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS LAW)**

</div>

947.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

948.      This claim is brought on behalf of the Massachusetts Subclass against FCA.

949.      Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

1   and denied Plaintiff and the other Subclass members information that is highly relevant to their

2   purchasing decision.

3          950.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

4   advertising and other forms of communication, including standard and uniform material provided

5   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

6   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

7   properly when driven in normal usage.

8          951.    Defendant knew these representations were false when made.

9          952.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

10  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

11  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

12  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

13  Affected Vehicles turns off or is limited during normal driving conditions.

14         953.    Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21         954.    As alleged in this Complaint, at all relevant times, Defendant has held out the

22  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

23  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

24  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

25  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

26  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

27  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

28  making other disclosures about the emission system deceptive.

CLASS ACTION COMPLAINT - 204
Case No.:
010635-11  918538 V1

955.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

956.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

957.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

958.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

959.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

CLASS ACTION COMPLAINT - 205
Case No.:
010635-11  918538 V1

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

960.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

961.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

962.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

963.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

964.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

965.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

966.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**W.     Claims Brought on Behalf of the Michigan Subclass**

### COUNT I

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MICH. COMP. LAWS § 445.903 *ET SEQ.*)

967.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

968.     This claim is brought on behalf of the Michigan Subclass against FCA.

969.     Plaintiff and the Michigan Subclass members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

970.     The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have … characteristics … that they do not have;" "(e) Representing that goods or services are of a particular standard … if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. Laws § 445.903(1).

971.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of

which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

972.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unexpectedly high levels of pollutants, including NOx, as described above.

973.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

974.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

975.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

976.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

977.   Defendant knew or should have known that its conduct violated the Michigan CPA.

978.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

979. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, and had emissions that far exceeded those expected by a reasonable consumer.

980. Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

981. Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

982. Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

983. Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp.  Laws § 445.911.  Plaintiff also seeks punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights of others.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON MICHIGAN LAW)**

</div>

984. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1    985.    This claim is brought on behalf of the Michigan Subclass against FCA.

2    986.    Defendant intentionally concealed that the NOx reduction system in the Affected

3    Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

4    defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

5    emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

6    advertising campaign, and emitted unlawfully high levels of pollutants such as NOx, or Defendant

7    acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members

8    information that is highly relevant to their purchasing decision.

9    987.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

10   advertising and other forms of communication, including standard and uniform material provided

11   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

12   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

13   properly when driven in normal usage.

14   988.    Defendant knew these representations were false when made.

15   989.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

16   members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

17   vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

18   advertising campaign, and were unreliable because the NOx reduction system in the Affected

19   Vehicles turns off or is limited during normal driving conditions.

20   990.    Defendant had a duty to disclose that the NOx reduction system in the Affected

21   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

22   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

23   powered vehicles, and had emissions that far exceeded those expected by a reasonable consumer, and

24   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

25   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

26   emission vehicles, efficient, and free from defects.

27   991.    As alleged in this Complaint, at all relevant times, Defendant has held out the

28   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

CLASS ACTION COMPLAINT - 211
Case No.:
010635-11  918538 V1

1   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

2   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

3   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

4   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, and

5   emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions

6   requirements, making other disclosures about the emission system deceptive.

7          992.   The truth about the defective emissions controls and Defendant's manipulations of

8   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

9   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

10  know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

11  members.

12         993.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

13  had no way of knowing that Defendant's representations were false and/or misleading.  As

14  consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15  their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

16  true facts about the Affected Vehicles' emissions.

17         994.   Defendant also concealed and suppressed material facts concerning what is evidently

18  the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

19  compliance with federal and state clean air laws and emissions regulations that are meant to protect

20  the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

21  and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

22  because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

23  environment.  And yet, that is precisely what the Affected Vehicles are doing.

24         995.   Defendant's false representations were material to consumers because they concerned

25  the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

26  state laws and regulations regarding clean air and emissions, and also because the representations

27  played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

28

CLASS ACTION COMPLAINT - 212
Case No.:
010635-11 918538 V1

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

996.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

997.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

998.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

999.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1000.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1001.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and the unlawfully high emissions of the Affected Vehicles, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1002.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

CLASS ACTION COMPLAINT - 214
Case No.:
010635-11  918538 V1

1003.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## X.    Claims Brought on Behalf of the Minnesota Subclass

### COUNT I

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET SEQ.*)

1004.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1005.   This claim is brought on behalf of the Minnesota Subclass against FCA.

1006.   The Affected Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

1007.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  Minn. Stat. § 325F.69(1).  The Minnesota CFA also prohibits the dissemination, directly or indirectly, of an advertisement "of any sort regarding merchandise," where that advertisement contains "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."  Minn. Stat. § 325F.67.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant used or employed a fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon

in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby and disseminated advertisements containing material assertions, representations, or statements of fact which were untrue, deceptive, or misleading, all in violation of the Minnesota CFA.

1008.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1009.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1010.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2  their own.

3        1011.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4        1012.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5  reasonable consumers.

6        1013.   Defendant intentionally and knowingly misrepresented material facts regarding the

7  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8        1014.   Defendant knew or should have known that its conduct violated the Minnesota CFA.

9        1015.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10  emissions systems manipulation because Defendant:

11            a.    Possessed exclusive knowledge that it manipulated the emissions system in the

12                  Affected Vehicles to turn off or limit effectiveness in normal driving

13                  conditions;

14            b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15            c.    Made incomplete representations that it manipulated the emissions system in

16                  the Affected Vehicles to turn off or limit effectiveness in normal driving

17                  conditions, while purposefully withholding material facts from Plaintiff and

18                  the Subclass that contradicted these representations.

19        1016.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25  emission vehicles, efficient, and free from defects.

26        1017.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27  members.

28

CLASS ACTION COMPLAINT - 217
Case No.:
010635-11  918538 V1

1018.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1019.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1020.   Pursuant to Minn. Stat. § 8.31(3a), Plaintiff and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

1021.   Plaintiff also seeks punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendant's acts show deliberate disregard for the rights of others.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MINNESOTA LAW)

1022.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1023.   This claim is brought on behalf of the Minnesota Subclass against FCA.

1024.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1025.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

1  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

2  properly when driven in normal usage.

3      1026.  Defendant knew these representations were false when made.

4      1027.  The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

5  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

6  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

7  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

8  Affected Vehicles turns off or is limited during normal driving conditions.

9      1028.  Defendant had a duty to disclose that the NOx reduction system in the Affected

10  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

11  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

12  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

13  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

14  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

15  emission vehicles, efficient, and free from defects.

16      1029.  As alleged in this Complaint, at all relevant times, Defendant has held out the

17  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

18  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

19  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

20  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

21  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

22  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

23  making other disclosures about the emission system deceptive.

24      1030.  The truth about the defective emissions controls and Defendant's manipulations of

25  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

26  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

27  know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

28  members.

CLASS ACTION COMPLAINT - 219
Case No.:
010635-11  918538 V1

1031. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1032. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1033. Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1034. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and

Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1035. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1036. Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1037. Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1038. Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result

1   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

2   Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

3   actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

4   by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

5   emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

6   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

7   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

8   or would not have purchased or leased them at all.

9        1039.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

10  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

11  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

12  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

13  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

14  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

15  vehicles.

16       1040.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

17  amount to be proven at trial.

18       1041.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

19  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

20  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

21  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

22  future, which amount is to be determined according to proof.

23  **Y.    Claims Brought on Behalf of the Missouri Subclass**

24                                    **COUNT I**

25  **VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**
    **(MO. REV. STAT. § 407.010 *ET SEQ.*)**

26       1042.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

27       1043.   Plaintiff brings this Count on behalf of the Missouri Subclass against FCA.

28

1044.   Defendant, Plaintiff, and the Missouri Subclass members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

1045.   Defendant engaged in "trade" or "commerce" in the State of Missouri within the meaning of Mo. Rev. Stat. § 407.010(7).

1046.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant used or employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce, in violation of the Missouri MPA.  Defendant's conduct offends public policy; is unethical, oppressive, or unscrupulous; and presents a risk of, or causes, substantial injury to consumers.

1047.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1048.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1049.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1050.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1051.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1052.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1053.   Defendant knew or should have known that its conduct violated the Missouri MPA.

1054.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

CLASS ACTION COMPLAINT - 224
Case No.:
010635-11  918538 V1

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1055.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1056.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1057.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1058.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1059.   Defendant is liable to Plaintiff and the Missouri Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MISSOURI LAW)

1060.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1061.   This claim is brought on behalf of the Missouri Subclass against FCA.

1062.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1063.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1064.   Defendant knew these representations were false when made.

1065.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1066.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1     1067.   As alleged in this Complaint, at all relevant times, Defendant has held out the

2  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

3  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

4  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

5  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

6  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

7  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

8  making other disclosures about the emission system deceptive.

9     1068.   The truth about the defective emissions controls and Defendant's manipulations of

10  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

11  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

12  know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

13  members.

14     1069.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

15  had no way of knowing that Defendant's representations were false and/or misleading.  As

16  consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

17  their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

18  true facts about the Affected Vehicles' emissions.

19     1070.   Defendant also concealed and suppressed material facts concerning what is evidently

20  the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

21  compliance with federal and state clean air laws and emissions regulations that are meant to protect

22  the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

23  and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

24  because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

25  environment.  And yet, that is precisely what the Affected Vehicles are doing.

26     1071.   Defendant's false representations were material to consumers because they concerned

27  the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

28  state laws and regulations regarding clean air and emissions, and also because the representations

CLASS ACTION COMPLAINT - 227
Case No.:
010635-11  918538 V1

played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1072.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1073.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1074.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1075.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1076.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1077.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1078.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1079.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Z.      Claims Brought on Behalf of the Montana Subclass**

**COUNT I**

**VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973**
**(MONT. CODE ANN. § 30-14-101 *ET SEQ.*)**

1080.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1081.   This claim is brought only on behalf of the Montana Subclass against FCA.

1082.   Defendant, Plaintiff, and the Montana Subclass members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

1083.   Montana Subclass members are "consumer[s]" under Mont. Code Ann. § 30-14-102(1).

1084.   The sale or lease of the Affected Vehicles to Montana Subclass members occurred within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and Defendant committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in that statutory section.

1085.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mont. Code Ann. § 30-14-103.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit

far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the Montana CPA.

1086.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1087.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1088.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.

3        1089.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4        1090.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5    reasonable consumers.

6        1091.   Defendant intentionally and knowingly misrepresented material facts regarding the

7    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8        1092.   Defendant knew or should have known that its conduct violated the Montana CPA.

9        1093.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11       a.    Possessed exclusive knowledge that it manipulated the emissions system in the

12             Affected Vehicles to turn off or limit effectiveness in normal driving

13             conditions;

14       b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15       c.    Made incomplete representations that it manipulated the emissions system in

16             the Affected Vehicles to turn off or limit effectiveness in normal driving

17             conditions, while purposefully withholding material facts from Plaintiff and

18             the Subclass that contradicted these representations.

19       1094.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26       1095.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

CLASS ACTION COMPLAINT - 232
Case No.:
010635-11  918538 V1

1096.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1097.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1098.   Because Defendant's unlawful methods, acts, and practices have caused Plaintiff and Montana Subclass members to suffer an ascertainable loss of money and property, Plaintiff and the Subclass seek from Defendant actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MONTANA LAW)

1099.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1100.   This claim is brought on behalf of the Montana Subclass against FCA.

1101.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1102.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided

CLASS ACTION COMPLAINT - 233
Case No.:
010635-11  918538 V1

1  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-
2  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate
3  properly when driven in normal usage.

4  1103.  Defendant knew these representations were false when made.

5  1104.  The Affected Vehicles purchased or leased by Plaintiff and the other Subclass
6  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered
7  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's
8  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the
9  Affected Vehicles turns off or is limited during normal driving conditions.

10  1105.  Defendant had a duty to disclose that the NOx reduction system in the Affected
11  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were
12  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-
13  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and
14  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on
15  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-
16  emission vehicles, efficient, and free from defects.

17  1106.  As alleged in this Complaint, at all relevant times, Defendant has held out the
18  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain
19  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the
20  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during
21  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a
22  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted
23  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,
24  making other disclosures about the emission system deceptive.

25  1107.  The truth about the defective emissions controls and Defendant's manipulations of
26  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA
27  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

28

CLASS ACTION COMPLAINT - 234
Case No.:
010635-11  918538 V1

know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1108.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1109.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1110.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1111.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1112.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1113.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1114.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

CLASS ACTION COMPLAINT - 236
Case No.:
010635-11  918538 V1

1      1115.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

2    members have sustained damage because they own vehicles that are diminished in value as a result

3    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

4    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

5    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

6    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

7    emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

8    compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

9    who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

10   or would not have purchased or leased them at all.

11     1116.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

12   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

13   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

14   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

15   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

16   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

17   vehicles.

18     1117.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

19   amount to be proven at trial.

20     1118.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

21   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

22   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

23   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

24   future, which amount is to be determined according to proof.

25

26

27

28

**AA.   Claims Brought on Behalf of the Nebraska Subclass**

<div align="center">

**COUNT I**

**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(NEB. REV. STAT. § 59-1601 *ET SEQ.*)**

</div>

1119.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1120.   This claim is brought on behalf of the Nebraska Subclass against FCA.

1121.   Defendant, Plaintiff and Nebraska Subclass members are "person[s]" under the Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

1122.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under Neb. Rev. Stat. § 59-1601(2).

1123.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602. Defendant's conduct as set forth herein constitutes unfair or deceptive acts or practices.

1124.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it

1  actually is; and failing to reveal facts that are material to the transaction in light of representations of
2  fact made in a positive manner.

3       1125.  In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass
4  members were deceived by Defendant's failure to disclose that the NOx reduction system in the
5  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions
6  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,
7  including NOx, as described above.

8       1126.  Plaintiff and Subclass members reasonably relied upon Defendant's false
9  misrepresentations.  They had no way of knowing that Defendant's representations were false and
10  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of
11  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on
12  their own.

13       1127.  Defendant's actions as set forth above occurred in the conduct of trade or commerce.

14       1128.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive
15  reasonable consumers.

16       1129.  Defendant intentionally and knowingly misrepresented material facts regarding the
17  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

18       1130.  Defendant knew or should have known that its conduct violated the Nebraska CPA.

19       1131.  Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its
20  emissions systems manipulation because Defendant:

21            a.  Possessed exclusive knowledge that it manipulated the emissions system in the
22                Affected Vehicles to turn off or limit effectiveness in normal driving
23                conditions;

24            b.  Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

25            c.  Made incomplete representations that it manipulated the emissions system in
26                the Affected Vehicles to turn off or limit effectiveness in normal driving
27                conditions, while purposefully withholding material facts from Plaintiff and
28                the Subclass that contradicted these representations.

1132.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1133.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1134.   Because Defendant's conduct caused injury to Nebraska Subclass members' property through violations of the Nebraska CPA, Plaintiff and the Nebraska Subclass seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendant's unfair or deceptive acts and practices, court costs, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEBRASKA LAW)

1135.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1136.   Plaintiff brings this Count on behalf of the Nebraska Subclass against FCA.

1137.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1138.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1139.   Defendant knew these representations were false when made.

1140.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1141.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1142.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1143.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1144.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1145.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1146.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1147.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1148.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1149.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1150.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1151.  Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1152.  The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1153.  Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1154.  Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**BB.     Claims Brought on Behalf of the Nevada Subclass**

2

## COUNT I

3

**VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
**(NEV. REV. STAT. § 598.0903 *ET SEQ.*)**

4

5

1155.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

6

1156.    Plaintiff brings this Count on behalf of the Nevada Subclass against FCA.

7

1157.    The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat.

8

§ 598.0903 *et seq.*, prohibits deceptive trade practices.  Nev. Rev. Stat. § 598.0915 provides that a

9

person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:

10

"5.  Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits,

11

alterations or quantities of goods or services for sale or lease or a false representation as to the

12

sponsorship, approval, status, affiliation or connection of a person therewith"; "7.  Represents that

13

goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are

14

of a particular style or model, if he or she knows or should know that they are of another standard,

15

quality, grade, style or model"; "9.  Advertises goods or services with intent not to sell or lease them

16

as advertised"; or "15.  Knowingly makes any other false representation in a transaction."

17

Accordingly, Defendant has violated the Nevada DTPA by knowingly representing that the Affected

18

Vehicles have uses and benefits which they do not have; representing that the Affected Vehicles are

19

of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the

20

intent not to sell or lease them as advertised; representing that the subject of a transaction involving

21

Affected Vehicles has been supplied in accordance with a previous representation when it has not;

22

and knowingly making other false representations in a transaction.

23

1158.    In the course of Defendant's business, Defendant willfully failed to disclose and

24

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

25

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

26

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

27

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

28

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

1    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

2    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

3    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

4    particular standard and quality when they are not; failing to reveal a material fact, the omission of

5    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

6    the consumer; making a representation of fact or statement of fact material to the transaction such

7    that a person reasonably believes the represented or suggested state of affairs to be other than it

8    actually is; and failing to reveal facts that are material to the transaction in light of representations of

9    fact made in a positive manner.

10          1159.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

11   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

12   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

13   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

14   including NOx, as described above.

15          1160.   Plaintiff and Subclass members reasonably relied upon Defendant's false

16   misrepresentations.  They had no way of knowing that Defendant's representations were false and

17   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

18   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

19   their own.

20          1161.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

21          1162.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

22   reasonable consumers.

23          1163.   Defendant intentionally and knowingly misrepresented material facts regarding the

24   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

25          1164.   Defendant knew or should have known that its conduct violated the Nevada DTPA.

26          1165.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

27   emissions systems manipulation because Defendant:

28

CLASS ACTION COMPLAINT - 246
Case No.:
010635-11  918538 V1

a. Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b. Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c. Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1166.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1167.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1168.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1169.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1170.   Accordingly, Plaintiff and the Nevada Subclass seek their actual damages, punitive damages, court costs, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA.  Nev. Rev. Stat. § 41.600.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON NEVADA LAW)**

1171.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1172.   This claim is brought on behalf of the Nevada Subclass against FCA.

1173.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1174.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1175.   Defendant knew these representations were false when made.

1176.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1177.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1178.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1179.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1180.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1181.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

CLASS ACTION COMPLAINT - 249
Case No.:
010635-11  918538 V1

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1182.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1183.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1184.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1185.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1186.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1187.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1188.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1189.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1190.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## CC.   Claims Brought on Behalf of the New Hampshire Subclass under New Hampshire Law

### COUNT I

### VIOLATION OF N.H. CONSUMER PROTECTION ACT
(N.H. REV. STAT. § 358-A:1 *ET SEQ.*)

1191.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1192.   Plaintiff brings this claim on behalf of the New Hampshire Subclass against FCA.

1193.   Plaintiff, New Hampshire Subclass members, and Defendant are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

1194.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

1195.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular

standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

1196.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1197.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1198.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1199.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

CLASS ACTION COMPLAINT - 253
Case No.:
010635-11  918538 V1

1    1200.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

2  reasonable consumers.

3    1201.   Defendant intentionally and knowingly misrepresented material facts regarding the

4  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

5    1202.   Defendant knew or should have known that its conduct violated the New Hampshire

6  CPA.

7    1203.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

8  emissions systems manipulation because Defendant:

9          a.   Possessed exclusive knowledge that it manipulated the emissions system in the

10              Affected Vehicles to turn off or limit effectiveness in normal driving

11              conditions;

12         b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

13         c.   Made incomplete representations that it manipulated the emissions system in

14              the Affected Vehicles to turn off or limit effectiveness in normal driving

15              conditions, while purposefully withholding material facts from Plaintiff and

16              the Subclass that contradicted these representations.

17   1204.   Defendant had a duty to disclose that the NOx reduction system in the Affected

18  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

19  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

20  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

21  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

22  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

23  emission vehicles, efficient, and free from defects.

24   1205.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

25  members.

26   1206.   Because Defendant's willful conduct caused injury to New Hampshire Subclass

27  members' property through violations of the New Hampshire CPA, Plaintiff and the New Hampshire

28  Subclass seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and

CLASS ACTION COMPLAINT - 254
Case No.:
010635-11  918538 V1

1  reasonable attorneys' fees, an order enjoining Defendant's unfair and/or deceptive acts and practices,

2  and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

3  <div align="center">**COUNT II**</div>

4  <div align="center">**FRAUDULENT CONCEALMENT**
**(BASED ON NEW HAMPSHIRE LAW)**</div>

5

6  1207.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

   herein.

7

8  1208.   Plaintiff brings this claim on behalf of the New Hampshire Subclass against FCA.

9  1209.   Defendant intentionally concealed that the NOx reduction system in the Affected

10  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

11  defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

12  emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

13  advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

14  compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

15  and denied Plaintiff and the other Subclass members information that is highly relevant to their

   purchasing decision.

16

17  1210.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

18  advertising and other forms of communication, including standard and uniform material provided

19  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

20  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

   properly when driven in normal usage.

21

22  1211.   Defendant knew these representations were false when made.

23  1212.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

   members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

24

25  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

26  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

   Affected Vehicles turns off or is limited during normal driving conditions.

27

28

CLASS ACTION COMPLAINT - 255
Case No.:
010635-11  918538 V1

1213.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1214.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1215.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1216.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1217.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1218.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1219.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1220.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1221.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1222.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1223.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

CLASS ACTION COMPLAINT - 258
Case No.:
010635-11  918538 V1

1224.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1225.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1226.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**DD.**   **Claims Brought on Behalf of the New Jersey Subclass Under New Jersey Law**

### COUNT I

### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)

1227.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1228.   Plaintiff brings this Count on behalf of the New Jersey Subclass against FCA.

1229.   The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("N.J. CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

1230.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1231.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1232.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1233.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1234.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1235.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1236.   Defendant knew or should have known that its conduct violated the N.J. CFA.

1237.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

CLASS ACTION COMPLAINT - 260
Case No.:
010635-11  918538 V1

      a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.     Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1238.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1239.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1240.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass and Subclass members.

1241.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1242.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1243.   Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

CLASS ACTION COMPLAINT - 261
Case No.:
010635-11  918538 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON NEW JERSEY LAW)**

1244.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1245.   Plaintiff brings this Count on behalf of the New Jersey Subclass against FCA.

1246.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1247.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1248.   Defendant knew these representations were false when made.

1249.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1250.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1251.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1252.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1253.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1254.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1255.  Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1256.  Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1257.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1258.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1259.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1260.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1261.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

CLASS ACTION COMPLAINT - 265
Case No.:
010635-11  918538 V1

1    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5    vehicles.

6          1262.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7    amount to be proven at trial.

8          1263.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12   future, which amount is to be determined according to proof.

13   **EE.**     **Claims Brought on Behalf of the New Mexico Subclass**

14                                   **COUNT I**

15                   **VIOLATIONS OF THE NEW MEXICO UNFAIR**
                     **TRADE PRACTICES ACT**
16                   **(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)**

17         1264.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

18   herein.

19         1265.   This claim is brought on behalf of the New Mexico Subclass against FCA.

20         1266.   Defendant, Plaintiff, and New Mexico Subclass members are or were "person[s]"

21   under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-

22   2. 010549-11 816608 V1

23         1267.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce

24   as defined under N.M. Stat. Ann. § 57-12-2.

25         1268. The New Mexico UTPA makes unlawful "a false or misleading oral or written

26   statement, visual description or other representation of any kind knowingly made in connection with

27   the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's

28   trade or commerce, that may, tends to or does deceive or mislead any person," including but not

CLASS ACTION COMPLAINT - 266
Case No.:
010635-11  918538 V1

limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12- 2(D).  Defendant's acts and omissions described herein constitute unfair or deceptive acts or practices under N.M. Stat. Ann. § 57-12-2(D).  In addition, Defendant's actions constitute unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since they took advantage of the lack of knowledge, ability, experience, and capacity of the New Mexico Subclass members to a grossly unfair degree.

1269.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1270.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1271.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and

CLASS ACTION COMPLAINT - 267
Case No.:
010635-11  918538 V1

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1272.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1273.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1274.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1275.   Defendant knew or should have known that its conduct violated the New Mexico UTPA.

1276.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.     Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1277.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1278.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1279.  Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1280.  As a direct and proximate result of Defendant's violations of the New Mexico UTPA, Plaintiff and the New Mexico Subclass have suffered injury in fact and/or actual damage.

1281.  New Mexico Subclass members seek punitive damages against Defendant because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.  Because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

1282.  Because Defendant's unconscionable, willful conduct caused actual harm to New Mexico Subclass members, Plaintiff and the New Mexico Subclass seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON NEW MEXICO LAW)**

</div>

1283.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1284.  Plaintiff brings this Count on behalf of the New Mexico Subclass against FCA.

1285.  Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

1   and denied Plaintiff and the other Subclass members information that is highly relevant to their

2   purchasing decision.

3       1286.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

4   advertising and other forms of communication, including standard and uniform material provided

5   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

6   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

7   properly when driven in normal usage.

8       1287.   Defendant knew these representations were false when made.

9       1288.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

10  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

11  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

12  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

13  Affected Vehicles turns off or is limited during normal driving conditions.

14      1289.   Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21      1290.   As alleged in this Complaint, at all relevant times, Defendant has held out the

22  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

23  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

24  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

25  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

26  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

27  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

28  making other disclosures about the emission system deceptive.

CLASS ACTION COMPLAINT - 270
Case No.:
010635-11  918538 V1

1    1291.   The truth about the defective emissions controls and Defendant's manipulations of

2    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

3    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

4    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

5    members.

6    1292.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

7    had no way of knowing that Defendant's representations were false and/or misleading.  As

8    consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

9    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

10   true facts about the Affected Vehicles' emissions.

11   1293.   Defendant also concealed and suppressed material facts concerning what is evidently

12   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

13   compliance with federal and state clean air laws and emissions regulations that are meant to protect

14   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

15   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

16   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

17   environment.  And yet, that is precisely what the Affected Vehicles are doing.

18   1294.   Defendant's false representations were material to consumers because they concerned

19   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

20   state laws and regulations regarding clean air and emissions, and also because the representations

21   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

22   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

23   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

24   1295.   Defendant had a duty to disclose the emissions defect, defective design of emissions

25   controls, and violations with respect to the Affected Vehicles because details of the true facts were

26   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

27   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

28   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1296.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1297.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1298.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

1    them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

2    of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

3    members.

4         1299.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

5    members have sustained damage because they own vehicles that are diminished in value as a result

6    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

7    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

8    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

9    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

10   emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

11   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

12   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

13   or would not have purchased or leased them at all.

14        1300.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

15   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

16   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

17   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

18   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

19   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

20   vehicles.

21        1301.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

22   amount to be proven at trial.

23        1302.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

24   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

25   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

26   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

27   future, which amount is to be determined according to proof.

28

CLASS ACTION COMPLAINT - 273
Case No.:
010635-11  918538 V1

1  **FF.    Claims Brought on Behalf of the New York Subclass**

2  **COUNT I**

3  **VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
   **(N.Y. GEN. BUS. LAW § 349)**

4
5  1303.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

6  1304.   This claim is brought on behalf of the New York Subclass against FCA.

7  1305.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or

8  practices in the conduct of any business, trade or commerce."  In the course of Defendant's business,

9  Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the

10  Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles

11  emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more

12  pollution than a reasonable consumer would expect in light of Defendant's advertising campaign,

13  and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as

14  described above.  The challenged act or practice was "consumer-oriented;" (2) that the act or practice

15  was misleading in a material way; and (3) Plaintiff suffered injury as a result of the deceptive act or

16  practice.  Accordingly, Defendant has violated General Business Law § 349.

17  1306.   In the course of Defendant's business, Defendant willfully failed to disclose and

18  actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

19  during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

20  gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

21  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

22  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

23  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

24  deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

25  uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

26  particular standard and quality when they are not; failing to reveal a material fact, the omission of

27  which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

28

the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1307. In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1308. Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading. As alleged herein, Defendant engaged in extremely sophisticated methods of deception. Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1309. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1310. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1311. Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1312. Defendant knew or should have known that its conduct violated New York's General Business Law § 349.

1313. Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1314.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1315.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1316.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1317.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1318.    Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and each Subclass member may recover actual damages, in addition to three times actual damages up to $1,000 for Defendant's willful and knowing violation of N.Y. Gen. Bus. Law § 349.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
### (N.Y. GEN. BUS. LAW § 350)

1319.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1320.    This claim is brought on behalf of the New York Subclass against FCA.

1321.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity."  N.Y. Gen. Bus. Law § 350-a.

1322.   Defendant caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Subclass members.

1323.   Defendant has violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1324.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1325.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1326.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1327.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1328.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1329.   Defendant knew or should have known that its conduct violated General Business Law § 350.

1330.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1331.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1332.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1333.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1334.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1335.   Plaintiff and the other Subclass members are entitled to recover their actual damages or $500, whichever is greater.  Because Defendant acted willfully or knowingly, Plaintiff and the other Subclass members are entitled to recover three times actual damages, up to $10,000.

<div align="center">

**COUNT III**

**FRAUDULENT CONCEALMENT**
**(BASED ON NEW YORK LAW)**

</div>

1336.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1337.   This claim is brought on behalf of the New York Subclass against FCA.

1338.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1339.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1340.   Defendant knew these representations were false when made.

1341.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1342.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1343.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1344.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1345.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1346.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1347.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1348.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1349. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1350. Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1351. Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1352. Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies. Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1353.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1354.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1355.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**GG.    Claims Brought on Behalf of the North Carolina Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)**

</div>

1356.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1357.   Plaintiff brings this Count on behalf of the North Carolina Subclass against FCA.

1358.   Defendant engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

1359.   The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1(a).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as

described above.  Accordingly, Defendant engaged in unfair and deceptive trade practices because it (1) had the capacity or tendency to deceive, (2) offend public policy, (3) are immoral, unethical, oppressive, or unscrupulous, or (4) cause substantial injury to consumers.

1360.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1361.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1362.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

CLASS ACTION COMPLAINT - 284
Case No.:
010635-11  918538 V1

1363.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1364.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1365.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1366.   Defendant knew or should have known that its conduct violated the North Carolina UDTPA.

1367.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1368.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1369.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1370.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1371.  Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1372.  Plaintiff seeks an order for treble his actual damages, court costs, attorney's fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

1373.  Plaintiff also seeks punitive damages against Defendant because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH CAROLINA LAW)

1374.  Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1375.  This claim is brought on behalf of the North Carolina Subclass against FCA.

1376.  Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1377.  Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

CLASS ACTION COMPLAINT - 286
Case No.:
010635-11  918538 V1

1378.   Defendant knew these representations were false when made.

1379.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1380.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1381.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1382.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1383.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

CLASS ACTION COMPLAINT - 287
Case No.:
010635-11  918538 V1

1  consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2  their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

3  true facts about the Affected Vehicles' emissions.

4      1384.  Defendant also concealed and suppressed material facts concerning what is evidently

5  the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

6  compliance with federal and state clean air laws and emissions regulations that are meant to protect

7  the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

8  and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

9  because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

10  environment.  And yet, that is precisely what the Affected Vehicles are doing.

11      1385.  Defendant's false representations were material to consumers because they concerned

12  the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

13  state laws and regulations regarding clean air and emissions, and also because the representations

14  played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

15  including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

16  leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

17      1386.  Defendant had a duty to disclose the emissions defect, defective design of emissions

18  controls, and violations with respect to the Affected Vehicles because details of the true facts were

19  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

20  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

21  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

22  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

23  references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

24  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

25  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

26  respect to compliance with federal and state clean air laws and emissions regulations, and

27  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

28  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1387.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1388.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1389.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1390.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1391.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1392.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1393.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**HH.    Claims Brought on Behalf of the North Dakota Subclass**

<div align="center">

**COUNT I**

**VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT**
**(N.D. CENT. CODE § 51-15-02)**

</div>

1394.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1395.   This claim is brought on behalf of the North Dakota Subclass against FCA.

1396.   Plaintiff, North Dakota Subclass members, and Defendant are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1397.   Defendant engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

1398.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise."  N.D. Cent. Code § 51-15-02.  As set forth above and below, Defendant committed deceptive acts or practices, with the intent that North Dakota Subclass members rely thereon in connection with their purchase or lease of the Affected Vehicles.

1399.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1400.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1401.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1402.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1403.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1404.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1405.   Defendant knew or should have known that its conduct violated the North Dakota CFA.

1406.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1407.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1408.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1409.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1410.   As a direct and proximate result of Defendant's violations of the North Dakota CFA, Plaintiff and the North Dakota Subclass have suffered injury in fact and/or actual damage.

1411.   North Dakota Subclass members seek punitive damages against Defendant because Defendant's conduct was egregious. Defendant's egregious conduct warrants punitive damages.

1412.   Further, Defendant knowingly committed the conduct described above, and thus, under N.D. Cent. Code § 51-15-09, Defendant is liable to Plaintiff and the North Dakota Subclass for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiff further seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, and other just and proper available relief under the North Dakota CFA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH DAKOTA LAW)

1413.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1414.   Plaintiff brings this Count on behalf of the North Dakota Subclass against FCA.

1415.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

CLASS ACTION COMPLAINT - 293
Case No.:
010635-11  918538 V1

1   and denied Plaintiff and the other Subclass members information that is highly relevant to their

2   purchasing decision.

3        1416.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

4   advertising and other forms of communication, including standard and uniform material provided

5   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

6   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

7   properly when driven in normal usage.

8        1417.   Defendant knew these representations were false when made.

9        1418.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

10  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

11  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

12  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

13  Affected Vehicles turns off or is limited during normal driving conditions.

14       1419.   Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21       1420.   As alleged in this Complaint, at all relevant times, Defendant has held out the

22  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

23  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

24  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

25  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

26  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

27  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

28  making other disclosures about the emission system deceptive.

CLASS ACTION COMPLAINT - 294
Case No.:
010635-11  918538 V1

1421. The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1422. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1423. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1424. Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1425. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1426.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1427.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1428.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1429.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1430.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1431.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1432.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.      Claims Brought on Behalf of the Ohio Subclass**

**COUNT I**

**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE § 1345.01 *ET SEQ.*)**

1433.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1434.    This claim is brought on behalf of the Ohio Subclass against FCA.

1435.    Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA").  Defendant is a "supplier" as defined by the Ohio CSPA.  Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1436.    The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.  *Id.*  Defendant's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

1437.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

uses, benefits, and qualities which they do not have; representing the that Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1438.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1439.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1440.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1441.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1442.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1443.   Defendant knew or should have known that its conduct violated the Ohio CSPA.

1444.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1445.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1446.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1447.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1448.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1449.   Plaintiff and the Subclass sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under the Ohio CSPA.

1450.   Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNT II

## FRAUDULENT CONCEALMENT
### (BASED ON OHIO LAW)

1451.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1452.   This claim is brought on behalf of the Ohio Subclass against FCA.

1453.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1454.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1455.   Defendant knew these representations were false when made.

1456.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1457.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1458.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1459.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1460.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1461.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

1   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

2   environment.  And yet, that is precisely what the Affected Vehicles are doing.

3       1462.   Defendant's false representations were material to consumers because they concerned

4   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

5   state laws and regulations regarding clean air and emissions, and also because the representations

6   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

7   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

8   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

9       1463.   Defendant had a duty to disclose the emissions defect, defective design of emissions

10  controls, and violations with respect to the Affected Vehicles because details of the true facts were

11  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

12  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

13  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

14  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

15  references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

16  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

17  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

18  respect to compliance with federal and state clean air laws and emissions regulations, and

19  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

20  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

21  truth, but the entire truth.  These omitted and concealed facts were material because they directly

22  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

23  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

24  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

25  or non-compliance, are material concerns to a consumer, including with respect to the emissions

26  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

27  members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

28  were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1464.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1465.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1466.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1467.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1468.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1469.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1470.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**JJ.     Claims Brought on Behalf of the Oklahoma Subclass**

<div align="center">

**COUNT I**

**VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
(OKLA. STAT. TIT. 15 § 751 *ET SEQ.*)**

</div>

1471.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1472.   Plaintiff brings this Count on behalf of the Oklahoma Subclass against FCA.

1473.   Plaintiff and the Oklahoma Subclass members are "persons" under the Oklahoma Consumer Protection Act ("Oklahoma CPA"), Okla. Stat. tit. 15 § 752.

1474.   Defendant is a "person," "corporation," or "association" within the meaning of Okla. Stat. tit. 15 § 15-751(1).

1475.   The sale or lease of the Affected Vehicles to the Oklahoma Subclass members was a "consumer transaction" within the meaning of Okla. Stat. tit. 15 § 752, and Defendant's actions as set forth herein occurred in the conduct of trade or commerce.

1476.   The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices when committed in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics, … uses, [or] benefits, of the subject of a

consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." *See* Okla. Stat. tit. 15, § 753.

1477.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1478.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1479.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.

3        1480.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4        1481.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5    reasonable consumers.

6        1482.   Defendant intentionally and knowingly misrepresented material facts regarding the

7    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8        1483.   Defendant knew or should have known that its conduct violated the Oklahoma CPA.

9        1484.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11           a.   Possessed exclusive knowledge that it manipulated the emissions system in the

12                Affected Vehicles to turn off or limit effectiveness in normal driving

13                conditions;

14           b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15           c.   Made incomplete representations that it manipulated the emissions system in

16                the Affected Vehicles to turn off or limit effectiveness in normal driving

17                conditions, while purposefully withholding material facts from Plaintiff and

18                the Subclass that contradicted these representations.

19       1485.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26       1486.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

CLASS ACTION COMPLAINT - 307
Case No.:
010635-11  918538 V1

1487.   Plaintiff and the Oklahoma Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information.

1488.   Defendant's unlawful acts and practices complained of herein affect the public interest.

1489.   As a direct and proximate result of Defendant's violations of the Oklahoma CPA, Plaintiff and the Oklahoma Subclass have suffered injury in fact and/or actual damage.

1490.   Defendant's conduct as alleged herein was unconscionable because (1) Defendant, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Defendant knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Defendant knew or had reason to know that the transaction Defendant induced the consumer to enter into was excessively one-sided in favor of Defendant.

1491.   Because Defendant's unconscionable conduct caused injury to Oklahoma Subclass members, Plaintiff and the Oklahoma Subclass seek recovery of actual damages, discretionary penalties up to $2,000 per violation, punitive damages, and reasonable attorneys' fees, under Okla. Stat. tit. 15 § 761.1.  Plaintiff and the Oklahoma Subclass further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON OKLAHOMA LAW)

1492.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1493.   Plaintiff brings this Count on behalf of the Oklahoma Subclass against FCA.

1494.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1495.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1496.   Defendant knew these representations were false when made.

1497.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1498.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1499.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1500.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1501.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1502.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1503.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1504.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1505.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1506.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1507.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1508.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1509.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1510.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1511.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**KK.    Claims Brought on Behalf of the Pennsylvania Subclass**

**COUNT I**

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1 *ET SEQ.*)**

1512.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1513.   Plaintiff brings this Count on behalf of the Pennsylvania Subclass against FCA.

1514.   Plaintiff purchased his Affected Vehicle primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1515.   All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1516.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, … [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

1517.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1518.  In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1519.  Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1520.  Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1521.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1522.  Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1523.  Defendant knew or should have known that its conduct violated the Pennsylvania CPL.

1524.  Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

CLASS ACTION COMPLAINT - 314
Case No.:
010635-11  918538 V1

a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1525.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1526.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1527.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1528.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1529.   Defendant is liable to Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).  Plaintiff and the Pennsylvania Subclass members are also entitled to an award of punitive damages given that

Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON PENNSYLVANIA LAW)

1530.  Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1531.  This claim is brought on behalf of the Pennsylvania Subclass against FCA.

1532.  Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1533.  Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1534.  Defendant knew these representations were false when made.

1535.  The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1536.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1537.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1538.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1539.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1540.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1541.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1542.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1       1543.  Defendant actively concealed and/or suppressed these material facts, in whole or in

2   part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

3   vehicles and did not or could not comply with federal and state laws governing clean air and

4   emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

5   at the expense of Plaintiff and Subclass members.

6       1544.  Defendant still has not made full and adequate disclosures, and continues to defraud

7   Plaintiff and Subclass members by concealing material information regarding the emissions qualities

8   of the Affected Vehicles.

9       1545.  Plaintiff and Subclass members were unaware of the omitted material facts referenced

10  herein, and they would not have acted as they did if they had known of the concealed and/or

11  suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

12  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

13  vehicles, or would have taken other affirmative steps in light of the information concealed from

14  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

15  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

16  members.

17      1546.  Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

18  members have sustained damage because they own vehicles that are diminished in value as a result

19  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

20  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

21  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

22  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

23  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

24  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

25  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

26  or would not have purchased or leased them at all.

27      1547.  The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

28  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

CLASS ACTION COMPLAINT - 319
Case No.:
010635-11  918538 V1

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1548.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1549.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

LL.     **Claims Brought on Behalf of the Rhode Island Subclass**

### COUNT I

### VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)

1550.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1551.   Plaintiff brings this Count on behalf of the Rhode Island Subclass against FCA.

1552.   Plaintiff is a person who purchased an Affected Vehicle primarily for personal, family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

1553.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: "(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another"; "(ix) Advertising goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or

practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

1554.   Defendant engaged in unlawful trade practices, including: (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Affected Vehicles are of a particular standard and quality when they are not; (3) advertising the Affected Vehicles with the intent not to sell them as advertised; and (4) otherwise engaging in conduct that is unfair or deceptive and likely to deceive.

1555.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1556.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1557.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1558.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1559.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1560.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1561.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1562.   Defendant knew or should have known that its conduct violated the Rhode Island CPA.

1563.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

       a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

       b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

       c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1564.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1565.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1566.   Plaintiff and the Rhode Island Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information. Plaintiff who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1654. Defendant's unlawful acts and practices complained of herein affect the public interest.

1655. As a direct and proximate result of Defendant's violations of the Rhode Island CPA, Plaintiff and the Rhode Island Subclass have suffered injury in fact and/or actual damage.

1656. Plaintiff and Rhode Island Subclass members are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a).  Plaintiff also seeks punitive damages in the discretion of the Court because of Defendant's egregious disregard of consumer and public safety and their long-running concealment of the serious safety defects and their tragic consequences.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON RHODE ISLAND LAW)

1567.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1568.   Plaintiff brings this Count on behalf of the Rhode Island Subclass against FCA.

1569.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

CLASS ACTION COMPLAINT - 323
Case No.:
010635-11  918538 V1

1  and denied Plaintiff and the other Subclass members information that is highly relevant to their

2  purchasing decision.

3      1570.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

4  advertising and other forms of communication, including standard and uniform material provided

5  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

6  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

7  properly when driven in normal usage.

8      1571.   Defendant knew these representations were false when made.

9      1572.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

10  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

11  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

12  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

13  Affected Vehicles turns off or is limited during normal driving conditions.

14      1573.   Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21      1574.   As alleged in this Complaint, at all relevant times, Defendant has held out the

22  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

23  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

24  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

25  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

26  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

27  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

28  making other disclosures about the emission system deceptive.

CLASS ACTION COMPLAINT - 324
Case No.:
010635-11  918538 V1

1575.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1576.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1577.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1578.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1579.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1580.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1581.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1582.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1583.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1584.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1585.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1586.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1     **MM.   Claims Brought on Behalf of the South Carolina Subclass**

2                                   **COUNT I**

3                        **VIOLATIONS OF THE SOUTH CAROLINA**
                           **UNFAIR TRADE PRACTICES ACT**
4                        **(S.C. CODE ANN. § 39-5-10 *ET SEQ.*)**

5            1587.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

6     herein.

7            1588.   This claim is brought on behalf of the South Carolina Subclass against FCA.

8            1589.   Defendant is a "person" under S.C. Code Ann. § 39-5-10.

9            1590.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits

10    "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. §

11    39-5-20(a).

12           1591.   In the course of Defendant's business, Defendant willfully failed to disclose and

13    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

14    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

15    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

16    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

17    emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

18    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

19    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

20    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

21    particular standard and quality when they are not; failing to reveal a material fact, the omission of

22    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

23    the consumer; making a representation of fact or statement of fact material to the transaction such

24    that a person reasonably believes the represented or suggested state of affairs to be other than it

25    actually is; and failing to reveal facts that are material to the transaction in light of representations of

26    fact made in a positive manner.

27           1592.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

28    members were deceived by Defendant's failure to disclose that the NOx reduction system in the

CLASS ACTION COMPLAINT - 328
Case No.:
010635-11  918538 V1

1  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

2  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

3  including NOx, as described above.

4  1593.   Plaintiff and Subclass members reasonably relied upon Defendant's false

5  misrepresentations.  They had no way of knowing that Defendant's representations were false and

6  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

7  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

8  their own.

9  1594.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

10  1595.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

11  reasonable consumers.

12  1596.   Defendant intentionally and knowingly misrepresented material facts regarding the

13  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

14  1597.   Defendant knew or should have known that its conduct violated the South Carolina

15  UTPA.

16  1598.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

17  emissions systems manipulation because Defendant:

18  a.   Possessed exclusive knowledge that it manipulated the emissions system in the

19  Affected Vehicles to turn off or limit effectiveness in normal driving

20  conditions;

21  b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

22  c.   Made incomplete representations that it manipulated the emissions system in

23  the Affected Vehicles to turn off or limit effectiveness in normal driving

24  conditions, while purposefully withholding material facts from Plaintiff and

25  the Subclass that contradicted these representations.

26  1599.   Defendant had a duty to disclose that the NOx reduction system in the Affected

27  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

28  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

CLASS ACTION COMPLAINT - 329
Case No.:
010635-11  918538 V1

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1600.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1601.   Plaintiff and the South Carolina Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information. Plaintiff who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1602. Defendant's unlawful acts and practices complained of herein affect the public interest.

1603.   As a direct and proximate result of Defendant's violations of the South Carolina UTPA, Plaintiff and the South Carolina Subclass have suffered injury in fact and/or actual damage.

1604.   Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff seeks monetary relief against Defendant to recover for economic losses.  Because Defendant's actions were willful and knowing, Plaintiff's damages should be trebled.  *Id.*

1605.   Plaintiff further alleges that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Subclass to cruel and unjust hardship as a result.

## COUNT II

**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE ANN. § 56-15-10 *ET SEQ.*)**

1606.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

1607.   This claim is brought only on behalf of the South Carolina Subclass against FCA.

1608.   Defendant was a "manufacturer" as set forth in S.C. Code Ann. § 56-15-10, as each was engaged in the business of manufacturing or assembling new and unused motor vehicles.

1609.   Defendant committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

1610.   Defendant engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiff, the South Carolina Subclass, and to the public.

1611.   Defendant's bad faith and unconscionable actions include, but are not limited to: (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Affected Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Affected Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Affected Vehicles has been supplied in accordance with a previous representation when it has not.

<div align="center">

**COUNT III**

**FRAUDULENT CONCEALMENT**
**(BASED ON SOUTH CAROLINA LAW)**

</div>

1612.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1613.   Plaintiff brings this Count on behalf of the South Carolina Subclass against FCA.

1614.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1615.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1616.   Defendant knew these representations were false when made.

1617.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1618.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1619.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1620.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1621.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1622.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1623.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1624.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1625.  Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1626.  Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1627.  Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1628.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1629.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1630.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1631.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**NN.   Claims Brought on Behalf of the Tennessee Subclass**

## COUNT I

**VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. § 47-18-101 *ET SEQ.*)**

1632.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1633.   Plaintiff brings this Count on behalf of the Tennessee Subclass against FCA.

1634.   Plaintiff and Tennessee Subclass members are "natural persons" and "consumers" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1635.   Defendant is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

1636.   Defendant's conduct complained of herein affected "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

1637.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not have…;" "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" "Advertising goods or services with intent not to sell them as advertised;" and "Engaging in any other act or practice which is deceptive to the consumer or any other person." Tenn. Code Ann. § 47-18-104.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant violated the Tennessee CPA by engaging in unfair or deceptive acts, including representing that the Affected Vehicles have characteristics or benefits that they did not have; representing that the Affected Vehicles are of a particular standard, quality, or grade when they are of another; advertising the Affected Vehicles with intent not to sell them as advertised; and engaging in acts or practices that are deceptive to consumers.

1638.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1639.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1640.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1641.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1642.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

CLASS ACTION COMPLAINT - 337
Case No.:
010635-11  918538 V1

1643.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1644.   Defendant knew or should have known that its conduct violated the Tennessee CPA.

1645.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1646.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1647.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1648.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1649.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1650.   Pursuant to Tenn. Code § 47-18-109(a), Plaintiff and the Tennessee Subclass seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON TENNESSEE LAW)**

</div>

1651.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1652.   This claim is brought on behalf of the Tennessee Subclass against FCA.

1653.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1654.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1655.   Defendant knew these representations were false when made.

1656.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

1    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

2    Affected Vehicles turns off or is limited during normal driving conditions.

3        1657.   Defendant had a duty to disclose that the NOx reduction system in the Affected

4    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

5    defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

6    powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

7    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

8    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

9    emission vehicles, efficient, and free from defects.

10        1658.   As alleged in this Complaint, at all relevant times, Defendant has held out the

11    Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

12    details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

13    important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

14    normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

15    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

16    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

17    making other disclosures about the emission system deceptive.

18        1659.   The truth about the defective emissions controls and Defendant's manipulations of

19    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

20    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

21    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

22    members.

23        1660.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

24    had no way of knowing that Defendant's representations were false and/or misleading.  As

25    consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

26    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

27    true facts about the Affected Vehicles' emissions.

28

CLASS ACTION COMPLAINT - 340
Case No.:
010635-11  918538 V1

1661.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1662.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1663.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1664.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1665.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1666.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1667.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1668.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1669.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1670.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**OO.    Claims Brought on Behalf of the Texas Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**(TEX. BUS. & COM. CODE § 17.41 *ET SEQ.*)**

</div>

1671.   The Texas Deceptive Trade Practices Act ("Texas DTPA") declares "[f]alse, misleading, or deceptive acts" to be unlawful Tex. Bus. & Com. Code § 17.46.

1672.   This claim is brought on behalf of the Texas Subclass against FCA.

1673.    Plaintiff will make a demand in satisfaction of Tex. Bus. & Com. Code § 17.505(a), and may amend this Complaint to assert claims under the Texas DTPA once the required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Texas DTPA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON TEXAS LAW)

1674.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1675.   This claim is brought on behalf of the Texas Subclass against FCA.

1676.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, failed to meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1677.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, met and maintained the advertised MPG rate, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1678.   Defendant knew these representations were false when made.

1679.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, not meeting and maintaining the advertised MPG rate, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1680.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and failed to meet and maintain the advertised MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1681.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1682.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," failure to meet and maintain the advertised MPG rate, and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

1683.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1684.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  They also emphasized profits and sales above the trust that Plaintiff and

Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1685. Defendant's false representations were material to consumers because they concerned the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1686. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the Affected Vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, meets and maintains the advertised MPG rate, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.

Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing fuel-efficient, reduced-emissions diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1687.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1688.   Defendant had still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1689.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1690.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or

certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1691.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1692.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1693.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**PP.**   **Claims Brought on Behalf of the Utah Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT**
**(UTAH CODE ANN. § 13-11-1 *ET SEQ.*)**

</div>

1694.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1695.   Plaintiff brings this Count on behalf of the Utah Subclass against FCA.

1696.   Defendant qualifies as a "supplier" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code Ann. § 13-11-3.

1697.   Plaintiff and the Subclass members are "persons" under Utah Code Ann. § 13-11-3.

1698.   Sales of the Affected Vehicles to Plaintiff and the Subclass were "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3.

1699.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:  (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not."  Utah Code Ann. § 13-11-4.  "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. § 13-11-5.

1700.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1701.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

CLASS ACTION COMPLAINT - 349
Case No.:
010635-11  918538 V1

1702.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1703.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1704.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1705.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1706.   Defendant knew or should have known that its conduct violated the Utah CSPA.

1707.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1708.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1709.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1710.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1711.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1712.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and the Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiff and each Utah Subclass member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON UTAH LAW)

1713.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1714.   Plaintiff brings this Count on behalf of the Utah Subclass against FCA.

1715.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1     1716.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

2     advertising and other forms of communication, including standard and uniform material provided

3     with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

4     friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

5     properly when driven in normal usage.

6     1717.   Defendant knew these representations were false when made.

7     1718.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

8     members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

9     vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

10    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

11    Affected Vehicles turns off or is limited during normal driving conditions.

12    1719.   Defendant had a duty to disclose that the NOx reduction system in the Affected

13    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

14    defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

15    powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

16    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

17    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

18    emission vehicles, efficient, and free from defects.

19    1720.   As alleged in this Complaint, at all relevant times, Defendant has held out the

20    Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

21    details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

22    important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

23    normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

24    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

25    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

26    making other disclosures about the emission system deceptive.

27    1721.   The truth about the defective emissions controls and Defendant's manipulations of

28    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

CLASS ACTION COMPLAINT - 352
Case No.:
010635-11  918538 V1

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1722.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1723.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1724.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1725.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1726.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1727.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1728.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

CLASS ACTION COMPLAINT - 354
Case No.:
010635-11  918538 V1

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1729.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1730.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1731.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1732.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**QQ.** **Claims Brought on Behalf of the Vermont Subclass**

## COUNT I

### VIOLATION OF VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ*.)

1733. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1734. This claim is brought on behalf of the Vermont Subclass against FCA.

1735. Defendant is a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

1736. The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Vt. Stat. Ann. tit. 9, § 2453(a).

1737. In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1738. In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the

1  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

2  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

3  including NOx, as described above.

4       1739.   Plaintiff and Subclass members reasonably relied upon Defendant's false

5  misrepresentations.  They had no way of knowing that Defendant's representations were false and

6  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

7  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

8  their own.

9       1740.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

10       1741.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

11  reasonable consumers.

12       1742.   Defendant intentionally and knowingly misrepresented material facts regarding the

13  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

14       1743.   Defendant knew or should have known that its conduct violated the Vermont CFA.

15       1744.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

16  emissions systems manipulation because Defendant:

17           a.   Possessed exclusive knowledge that it manipulated the emissions system in the

18              Affected Vehicles to turn off or limit effectiveness in normal driving

19              conditions;

20           b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

21           c.   Made incomplete representations that it manipulated the emissions system in

22              the Affected Vehicles to turn off or limit effectiveness in normal driving

23              conditions, while purposefully withholding material facts from Plaintiff and

24              the Subclass that contradicted these representations.

25       1745.   Defendant had a duty to disclose that the NOx reduction system in the Affected

26  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

27  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

28  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

CLASS ACTION COMPLAINT - 357
Case No.:
010635-11  918538 V1

were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1746.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1747.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the EcoDiesel engine, the quality of Defendant's brands, the devaluing of environmental cleanliness and integrity at Defendant's company, and the true value of the Affected Vehicles.

1748.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Vermont Subclass. Defendant's fraudulent use of the "defeat device" and concealment of the true characteristics of the Clean Diesel engine system were material to Plaintiff and the Vermont Subclass.  A vehicle made by a reputable manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the amount its vehicles pollute rather than make environmentally friendly vehicles.

1749.   Plaintiff and the Vermont Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information.  Plaintiff who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1750.   Defendant had an ongoing duty to all its customers to refrain from unfair and deceptive acts or practices under the Vermont CFA.  All owners of Affected Vehicles suffered ascertainable loss in the form of the diminished value of their vehicles as a result of Defendant's deceptive and unfair acts and practices that occurred In the course of Defendant's business.

1751.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

1447.   As a direct and proximate result of Defendant's violations of the Vermont CFA, Plaintiff and the Vermont Subclass have suffered injury in fact and/or actual damage.

1448.   Plaintiff and Vermont Subclass members are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VERMONT LAW)

1752.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1753.   Plaintiff brings this Count on behalf of the Vermont Subclass against FCA.

1754.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1755.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1756.   Defendant knew these representations were false when made.

1757.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1758.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1759.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1760.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1761.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1762.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1763.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1764.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1765.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1766.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1767.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1768.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

1    compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

2    who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

3    or would not have purchased or leased them at all.

4          1769.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

5    Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

6    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

7    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

8    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

9    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

10   vehicles.

11         1770.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

12   amount to be proven at trial.

13         1771.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

14   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

15   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

16   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

17   future, which amount is to be determined according to proof.

18   **RR.    Claims Brought on Behalf of the Virginia Subclass**

19                                      **COUNT I**

20           **VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
                      **(VA. CODE ANN. § 59.1-196 *ET SEQ.*)**

21         1772.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

22         1773.   This claim is brought on behalf of the Virginia Subclass against FCA.

23         1774.   Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.  The transactions

24   between Plaintiff and the other Subclass members on the one hand and Defendant on the other,

25   leading to the purchase or lease of the Affected Vehicles by Plaintiff and the other Subclass

26   members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the

27   Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

28

1775.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised; … [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).

1776.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1777.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1778.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1779.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1780.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1781.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1782.   Defendant knew or should have known that its conduct violated the Virginia CPA.

1783.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1784.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1785.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

CLASS ACTION COMPLAINT - 365
Case No.:
010635-11  918538 V1

1       1786.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss,

2   injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

3   the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

4   their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

5   direct and natural consequence of Defendant's misrepresentations and omissions.

6       1787.   Defendant's violations present a continuing risk to Plaintiff as well as to the general

7   public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8       1788.   Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Subclass seek monetary relief

9   against Defendant measured as the greater of (a) actual damages in an amount to be determined at

10  trial and (b) statutory damages in the amount of $500 for Plaintiff and each Subclass member.

11  Because Defendant's conduct was committed willfully and knowingly, Plaintiff is entitled to recover,

12  for himself and each Subclass member, the greater of (a) three times actual damages or (b) $1,000.

13      1789.   Plaintiff also seeks punitive damages, and attorneys' fees, and any other just and

14  proper relief available under General Business Law § 59.1-204 *et seq.*

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VIIRGINIA LAW)

17      1790.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

18  herein.

19      1791.   Plaintiff brings this Count on behalf of the Virginia Subclass against FCA.

20      1792.   Defendant intentionally concealed that the NOx reduction system in the Affected

21  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

22  defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

23  emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

24  advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

25  compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

26  and denied Plaintiff and the other Subclass members information that is highly relevant to their

27  purchasing decision.

28

CLASS ACTION COMPLAINT - 366
Case No.:
010635-11  918538 V1

1793.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1794.   Defendant knew these representations were false when made.

1795.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1796.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1797.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1798.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1799.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1800.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1801.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1802.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1803.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1804.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1805.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control

1    of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

2    members.

3         1806.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

4    members have sustained damage because they own vehicles that are diminished in value as a result

5    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

6    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

7    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

8    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

9    emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

10   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

11   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

12   or would not have purchased or leased them at all.

13        1807.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

14   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

15   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

16   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

17   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

18   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

19   vehicles.

20        1808.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

21   amount to be proven at trial.

22        1809.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

23   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

24   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

25   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

26   future, which amount is to be determined according to proof.

27

28

1   **SS.**     **Claims Brought on Behalf of the Washington Subclass**

2                            **COUNT I**

3   **VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
       **(WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)**

4

5     1810.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

6

7     1811.   Plaintiff brings this Count on behalf of the Washington Subclass against FCA.

8     1812.   Defendant, Plaintiff, and each member of the Washington Subclass is a "person"

under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

9

10     1813.   Defendant engaged in "trade" or "commerce" under Wash. Rev. Code Ann. §

19.86.010(2).

11

12     1814.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade

13

or commerce." Wash. Rev. Code. Wash. Ann. § 19.96.010.

14     1815.   In the course of Defendant's business, Defendant willfully failed to disclose and

15 actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

16 during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

17 gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

18 consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

19 emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly,

20 Defendant engaged in unfair and deceptive business practices prohibited by the Washington CPA.

21 Defendant's conduct was unfair because it (1) offends public policy as it has been established by

22 statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3)

23 causes substantial injury to consumers. Defendant's conduct is deceptive because it has the capacity

24 or tendency to deceive.

25     1816.   In the course of Defendant's business, Defendant willfully failed to disclose and

26 actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

27 during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

28

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1817.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1818.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1819.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1820.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1821.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1822.   Defendant knew or should have known that its conduct violated the Washington CPA.

CLASS ACTION COMPLAINT - 372
Case No.:
010635-11  918538 V1

1823.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

  a. Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

  b. Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

  c. Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1824.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1825.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1826.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1827.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

CLASS ACTION COMPLAINT - 373
Case No.:
010635-11  918538 V1

1828.   Defendant is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON WASHINGTON LAW)**

</div>

1829.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1830.   Plaintiff brings this Count on behalf of the Washington Subclass against FCA.

1831.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1832.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1833.   Defendant knew these representations were false when made.

1834.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1835.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1836.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1837.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1838.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1839.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

1   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

2   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

3   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

4   environment.  And yet, that is precisely what the Affected Vehicles are doing.

5          1840.   Defendant's false representations were material to consumers because they concerned

6   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

7   state laws and regulations regarding clean air and emissions, and also because the representations

8   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

9   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

10  leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

11         1841.   Defendant had a duty to disclose the emissions defect, defective design of emissions

12  controls, and violations with respect to the Affected Vehicles because details of the true facts were

13  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

14  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

15  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

16  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

17  references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

18  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

19  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

20  respect to compliance with federal and state clean air laws and emissions regulations, and

21  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

22  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

23  truth, but the entire truth.  These omitted and concealed facts were material because they directly

24  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

25  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

26  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

27  or non-compliance, are material concerns to a consumer, including with respect to the emissions

28  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1842.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1843.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1844.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1845.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1846.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1847.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1848.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**TT.    Claims Brought on Behalf of the West Virginia Subclass**

<div align="center">

**COUNT I**

**VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT
AND PROTECTION ACT
(W. VA. CODE § 46A-1-101 *ET SEQ.*)**

</div>

1849.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1850.   Plaintiff brings this Count on behalf of the West Virginia Subclass against FCA.

1851.   Plaintiff intends to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." W. VA. CODE § 46A-6-104. Plaintiff will make a demand in satisfaction of W. VA. CODE § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WEST VIRGINIA LAW)

1852.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1853.   Plaintiff brings this Count on behalf of the West Virginia Subclass against FCA.

1854.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1855.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1856.   Defendant knew these representations were false when made.

1857.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1858.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1859. As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles. Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1860. The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1861. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1862. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1863.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1864.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1865.  Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1866.  Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1867.  Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1868.  Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1869.  The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

1   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5   vehicles.

6       1870.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7   amount to be proven at trial.

8       1871.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12  future, which amount is to be determined according to proof.

13  **UU.     Claims Brought on Behalf of the Wisconsin Subclass**

14                              **COUNT I**

15                  **VIOLATIONS OF THE WISCONSIN**
                    **DECEPTIVE TRADE PRACTICES ACT**
16                      **(WIS. STAT. § 110.18)**

17      1872.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

18  herein.

19      1873.   Plaintiff brings this claim on behalf of the Wisconsin Subclass against FCA.

20      1874.   Defendant is a "person, firm, corporation or association" within the meaning of Wis.

21  Stat. § 100.18(1).

22      1875.   Plaintiff and Wisconsin Subclass members are members of "the public" within the

23  meaning of Wis. Stat. § 100.18(1).  Plaintiff and Wisconsin Subclass members purchased or leased

24  one or more Affected Vehicles.

25      1876.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a

26  "representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat.

27  § 100.18(1).  In the course of Defendant's business, Defendant willfully failed to disclose and

28  actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in deceptive business practices prohibited by the Wisconsin DTPA.

1877.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1878.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1879.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1880.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1881.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1882.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1883.   Defendant knew or should have known that its conduct violated the Wisconsin DTPA.

1884.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1885.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1886.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1887.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1888.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1889.   Plaintiff and Wisconsin Subclass members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2).  Because Defendant's conduct was committed knowingly and/or intentionally, Plaintiff and Wisconsin Subclass members are entitled to treble damages.

1890.   Plaintiff and Wisconsin Subclass members also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

<div align="center">

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON WISCONSIN LAW)**

</div>

1891.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1892.   Plaintiff brings this Count on behalf of the Wisconsin Subclass against FCA.

1893.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1894.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1895.   Defendant knew these representations were false when made.

1896.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1897.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1898.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1899.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1900.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1901.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1902.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1903.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1904.  Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1905.  Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1906.  Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1907.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1908.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1909.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1910.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**PRAYER FOR RELIEF**

2          WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide RICO

3   Class, California Class, and Multistate Class, respectfully requests that the Court enter judgment in

4   Plaintiff's favor and against Defendants, as follows:

5          A.       Certification of the proposed Nationwide RICO Class, California Class, and

6   Multistate Class, including appointment of Plaintiff's counsel as Class Counsel;

7          B.       An order temporarily and permanently enjoining FCA and Bosch from continuing the

8   unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

9          C.       Injunctive relief in the form of a recall or free replacement program;

10         D.       Restitution, including at the election of Class members, recovery of the purchase price

11  of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

12         E.       Damages, including punitive damages, costs, and disgorgement in an amount to be

13  determined at trial, except that monetary relief under certain consumer protection statutes, as stated

14  above, shall be limited prior to completion of the applicable notice requirements;

15         F.       An order requiring FCA and Bosch to pay both pre- and post-judgment interest on any

16  amounts awarded;

17         G.       An award of costs and attorneys' fees; and

18         H.       Such other or further relief as may be appropriate.

19                                    **DEMAND FOR JURY TRIAL**

20         Plaintiff hereby demands a jury trial for all claims so triable.

21

22  DATED: December 1, 2016                    HAGENS BERMAN SOBOL SHAPIRO LLP

23                                             By:  */s/ Shana E. Scarlett*
                                                    Shana E. Scarlett (217895)
24                                             715 Hearst Avenue, Suite 202
                                               Berkeley, CA 94710
25                                             Telephone: (510) 725-3000
                                               Facsimile: (510) 725-3001
26                                             shanas@hbsslaw.com

27

28

CLASS ACTION COMPLAINT - 391
Case No.:
010635-11  918538 V1

1    Steve W. Berman (*pro hac vice pending*)
     Jessica M. Thompson (*pro hac vice pending*)
2    HAGENS BERMAN SOBOL SHAPIRO LLP
     1918 Eighth Avenue, Suite 3300
3    Seattle, WA 98101
     Telephone: (206) 623-7292
4    Facsimile: (206) 623-0594
     steve@hbsslaw.com
5    jessicat@hbsslaw.com

6    Peter B. Fredman (189097)
     LAW OFFICE OF PETER FREDMAN PC
7    125 University Ave, Suite 102
     Berkeley, CA 94710
8    Telephone: (510) 868-2626
     Facsimile: (510) 868-2627
9    peter@peterfredmanlaw.com

10   Christopher A. Seeger (*pro hac vice pending*)
     SEEGER WEISS LLP
11   77 Water Street
     New York, NY 10005
12   Telephone: (212) 584-0700
     Facsimile: (212) 584-0799
13   cseeger@seegerweiss.com

14   James E. Cecchi (*pro hac vice pending*)
     CARELLA, BYRNE, CECCHI, OLSTEIN,
15   BRODY & AGNELLO, P.C.
     5 Becker Farm Road
16   Roseland, NJ 07068
     Telephone: (973) 994-1700
17   Facsimile: (973) 994-1744
     jcecchi@carellabyrne.com

18
     Robert C. Hilliard (*pro hac vice pending*)
19   HILLIARD MUNOZ GONZALES LLP
     719 S. Shoreline Blvd., Suite 500
20   Corpus Christi, TX 78401
     Telephone: (361) 882-1612
21   bobh@hmglawfirm.com

22   *Attorneys for Plaintiff and the Proposed Classes*

23

24

25

26

27

28