Steve W. Berman (*pro hac vice*)
Jessica M. Thompson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jessicat@hbsslaw.com

Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*Chavez, et al. v. FCA US LLC, et al.*,<br>Case No. 3:16-cv-06909-EMC<br><br>JOSE CHAVEZ, ROBERT CORNETT, BENJAMIN GREENBERG, WAYNE TONNESEN, MIGUEL FRAGOSO, JEFF SCHOLZ, and ANDREW LOESCHER, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br>  v.<br><br>FCA US LLC, a Delaware Limited Liability Company; ROBERT BOSCH GMBH, a corporation organized under the laws of Germany; and ROBERT BOSCH LLC, a Delaware Limited Liability Company,<br><br>          Defendants. | No.  3:17-md-02777-EMC<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     JURISDICTION ................................................................................................5

III.    VENUE................................................................................................................6

IV.     PARTIES ............................................................................................................6

    A.      Plaintiffs ................................................................................................6

        1.      California Plaintiff ................................................................6

        2.      Florida Plaintiff ....................................................................7

        3.      Massachusetts Plaintiff ........................................................8

        4.      New Jersey Plaintiff .............................................................9

        5.      North Carolina Plaintiff .....................................................10

        6.      Oregon Plaintiff ..................................................................11

        7.      Washington & North Dakota Plaintiff................................11

    B.      Defendants ............................................................................................12

        1.      FCA US LLC .....................................................................12

        2.      The Bosch Defendants........................................................13

V.      FACTUAL ALLEGATIONS ...........................................................................15

    A.      The Environmental Challenges Posed by Diesel Engines and the U.S.
        Regulatory Response Thereto...............................................................15

    B.      The EcoDiesel Technology ...................................................................16

    C.      FCA Advertised and Promoted EcoDiesel as Clean and EPA-Compliant................16

    D.      FCA Advertised and Promoted EcoDiesel as Fuel Efficient.....................................18

    E.      FCA Advertised and Promoted EcoDiesel as Powerful ...........................................22

    F.      Worldwide Diesel Emissions Cheating ................................................22

    G.      Defendants' Dirty "Cheat Device" Scheme .........................................25

    H.      Bosch Played a Critical Role in the Defeat Device Scheme ...................................28

        1.      Volkswagen and Bosch conspire to develop the illegal defeat
        device....................................................................................29

2. Volkswagen and Bosch conspire to conceal the illegal "akustikfunktion." ................................................................31

3. Volkswagen and Bosch conspire in the U.S. and Germany to elude U.S. regulators who regulated not just Volkswagen diesels, but all diesels. ............................................................................32

4. Bosch keeps Volkswagen's secret safe and pushes "clean" diesel in the U.S. .........................................................................32

I. The Deception Involving FCA's "EcoDiesels"................................35

J. The Damage...................................................................................38

VI. TOLLING OF THE STATUTE OF LIMITATIONS ..............................38

A. Discovery Rule Tolling ..................................................................38

B. Fraudulent Concealment Tolling ....................................................39

C. Estoppel .......................................................................................40

VII. CLASS ALLEGATIONS ......................................................................40

VIII. CLAIMS ..............................................................................................44

A. Claims Brought on Behalf of the Nationwide RICO Class ...............44

COUNT I VIOLATIONS OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) VIOLATION OF 18 U.S.C. § 1962(C)–(D) ................44

1. The Members of the Emissions Fraud Enterprise .........................45

2. The Predicate Acts........................................................................50

B. Claims Brought on Behalf of the California Class ............................54

COUNT I FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW....................54

COUNT II VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*).................................58

COUNT III VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)......................................60

COUNT IV VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*).................................62

C. Claims Brought on Behalf of the Alabama Subclass .........................63

COUNT I VIOLATIONS OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT (ALA. CODE § 8-19-1 *ET SEQ.*).........................................63

COUNT II FRAUDULENT CONCEALMENT (BASED ON ALABAMA LAW)......................64

D.       Claims Brought on Behalf of the Alaska Subclass.................................68

COUNT I  VIOLATION OF THE ALASKA UNFAIR TRADE PRACTICES AND
         CONSUMER PROTECTION ACT (ALASKA STAT. ANN. § 45.50.471 *ET
         SEQ.*) ..................................................................................................68

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ALASKA LAW)...........................69

E.       Claims Brought on Behalf of the Arizona Subclass.................................73

COUNT I  VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT (ARIZ.
         REV. STAT. § 44-1521 *ET SEQ.*) ....................................................73

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ARIZONA LAW) ......................76

F.       Claims Brought on Behalf of the Arkansas Subclass...............................80

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT (ARK.
         CODE ANN. § 4-88-101 *ET SEQ.*)....................................................80

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ARKANSAS LAW)....................83

G.       Claims Brought on Behalf of the California Subclass...............................88

COUNT I  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
         (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)................................88

COUNT II  VIOLATIONS OF THE CALIFORNIA CONSUMER  LEGAL REMEDIES
         ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)..........................................91

COUNT III  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
         (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)................................94

COUNT IV  FRAUDULENT CONCEALMENT (BASED ON CALIFORNIA LAW) ...............96

H.       Claims Brought on Behalf of the Colorado Subclass..............................101

COUNT I  VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT
         (COLO. REV. STAT. § 6-1-101 *ET SEQ.*).........................................101

COUNT II  FRAUDULENT CONCEALMENT (BASED ON COLORADO LAW)..................104

I.       Claims Brought on Behalf of the Connecticut Subclass .........................108

COUNT I  VIOLATIONS OF THE CONNECTICUT UNFAIR  TRADE PRACTICES
         ACT (CONN. GEN. STAT. ANN. § 42-110A *ET SEQ.*)......................108

COUNT II  FRAUDULENT NON-DISCLOSURE (BASED ON CONNECTICUT
         LAW)....................................................................................................111

J.       Claims Brought on Behalf of the Delaware Subclass .............................116

COUNT I  VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT (DEL.
         CODE § 2513 *ET SEQ.*)....................................................................116

COUNT II  FRAUDULENT CONCEALMENT (BASED ON DELAWARE LAW)..................119

      K.     Claims Brought on Behalf of the District of Columbia Subclass...........................123

COUNT I  VIOLATION OF THE CONSUMER PROTECTION  PROCEDURES ACT
      (D.C. CODE § 28-3901 *ET SEQ.*)......................................................................123

COUNT II  FRAUDULENT CONCEALMENT (BASED ON DISTRICT OF
      COLUMBIA LAW) .........................................................................126

      L.     Claims Brought on Behalf of the Florida Subclass .................................................130

COUNT I  VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE
      PRACTICES ACT (FLA. STAT. § 501.201 *ET SEQ.*) .......................................130

COUNT II  FRAUDULENT CONCEALMENT (BASED ON FLORIDA LAW).......................133

      M.     Claims Brought on Behalf of the Georgia Subclass .................................................138

COUNT I  VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (GA.
      CODE ANN. § 10-1-390 *ET SEQ.*).......................................................138

COUNT II  FRAUDULENT CONCEALMENT (BASED ON GEORGIA LAW) ......................138

      N.     Claims Brought on Behalf of the Hawaii Subclass .................................................143

COUNT I  UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
      (HAW. REV. STAT. § 480 *ET SEQ.*)......................................................143

COUNT II  FRAUDULENT CONCEALMENT (BASED ON HAWAII LAW) ......................146

      O.     Claims Brought on Behalf of the Idaho Subclass..................................................150

COUNT I  VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT (IDAHO
      CODE § 48-601 *ET SEQ.*)...............................................................150

COUNT II  FRAUDULENT CONCEALMENT (BASED ON IDAHO LAW) ..........................153

      P.     Claims Brought on Behalf of the Illinois Subclass .................................................157

COUNT I  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND  DECEPTIVE
      BUSINESS PRACTICES ACT (815 ILL. COMP. STAT. 505/1 *ET SEQ.* AND
      720 ILL. COMP. STAT. 295/1A) .........................................................157

COUNT II  FRAUDULENT CONCEALMENT (BASED ON ILLINOIS LAW) .......................160

      Q.     Claims Brought on Behalf of the Kansas Subclass .................................................165

COUNT I  VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT (KAN.
      STAT. ANN. § 50-623 *ET SEQ.*).........................................................165

COUNT II  FRAUDULENT CONCEALMENT (BASED ON KANSAS LAW) ......................168

      R.     Claims Brought on Behalf of the Kentucky Subclass .............................................172

COUNT I  VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. ANN. § 367.110 *ET SEQ.*) .................................................. 172

COUNT II  FRAUD BY OMISSION (BASED ON KENTUCKY LAW) .................................... 175

S.        Claims Brought on Behalf of the Louisiana Subclass ............................ 179

COUNT I  VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW (LA. STAT. ANN. § 51:1401 *ET SEQ.*) ................. 179

COUNT II  FRAUDULENT CONCEALMENT (BASED ON LOUISIANA LAW) .................. 182

T.        Claims Brought on Behalf of the Maine Subclass .................................. 186

COUNT I  VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (ME. REV.
STAT. ANN. TIT. 5, § 205-A *ET SEQ.*) .......................................................... 186

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MAINE LAW) .......................... 187

U.        Claims Brought on Behalf of the Maryland Subclass ............................ 191

COUNT I  VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
(MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*) ....................................... 191

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MARYLAND LAW) ................. 194

V.        Claims Brought on Behalf of the Massachusetts Subclass ..................... 199

COUNT I  VIOLATIONS OF THE MASSACHUSETTS CONSUMER  PROTECTION
ACT (MASS. GEN. LAWS CH. 93A) ............................................................ 199

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MASSACHUSETTS
LAW) ...................................................................................................... 199

W.       Claims Brought on Behalf of the Michigan Subclass ............................ 204

COUNT I  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
(MICH. COMP. LAWS § 445.903 *ET SEQ.*) ................................................. 204

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MICHIGAN LAW) ................... 206

X.        Claims Brought on Behalf of the Minnesota Subclass ........................... 211

COUNT I  VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER
FRAUD ACT  (MINN. STAT. § 325F.68 *ET SEQ.*) .......................................... 211

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MINNESOTA LAW) ................. 214

Y.        Claims Brought on Behalf of the Missouri Subclass .............................. 218

COUNT I  VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT
(MO. REV. STAT. § 407.010 *ET SEQ.*) ........................................................ 218

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MISSOURI LAW) ..................... 221

Z.      Claims Brought on Behalf of the Montana Subclass...............................................226

COUNT I  VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND
        CONSUMER PROTECTION ACT OF 1973 (MONT. CODE ANN. § 30-14-101
        *ET SEQ.*).........................................................................................................................226

COUNT II  FRAUDULENT CONCEALMENT (BASED ON MONTANA LAW)....................229

AA.     Claims Brought on Behalf of the Nebraska Subclass..............................................234

COUNT I  VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT
        (NEB. REV. STAT. § 59-1601 *ET SEQ.*) ..................................................................234

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEBRASKA LAW)..................236

BB.     Claims Brought on Behalf of the Nevada Subclass..................................................241

COUNT I  VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
        (NEV. REV. STAT. § 598.0903 *ET SEQ.*) ...............................................................241

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEVADA LAW) ......................244

CC.     Claims Brought on Behalf of the New Hampshire Subclass under New
        Hampshire Law ........................................................................................................248

COUNT I  VIOLATION OF N.H. CONSUMER PROTECTION ACT (N.H. REV.
        STAT. § 358-A:1 *ET SEQ.*) ......................................................................................248

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW HAMPSHIRE
        LAW)............................................................................................................................251

DD.     Claims Brought on Behalf of the New Jersey Subclass ..........................................255

COUNT I  VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.
        STAT. ANN. § 56:8-1 *ET SEQ.*).................................................................................255

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW JERSEY LAW)................258

EE.     Claims Brought on Behalf of the New Mexico Subclass ........................................262

COUNT I  VIOLATIONS OF THE NEW MEXICO UNFAIR  TRADE PRACTICES
        ACT (N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)..................................................................262

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NEW MEXICO LAW) .............265

FF.     Claims Brought on Behalf of the New York Subclass .............................................270

COUNT I  VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y.
        GEN. BUS. LAW § 349)................................................................................................270

COUNT II  VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y.
        GEN. BUS. LAW § 350)................................................................................................272

COUNT III  FRAUDULENT CONCEALMENT (BASED ON NEW YORK LAW) .................275

GG.     Claims Brought on Behalf of the North Carolina Subclass....................................279

COUNT I  VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND  DECEPTIVE
        ACTS AND PRACTICES ACT (N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)...........................279

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH CAROLINA
        LAW).........................................................................................................282

HH.     Claims Brought on Behalf of the North Dakota Subclass...................................286

COUNT I  VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
        (N.D. CENT. CODE § 51-15-02)................................................................286

COUNT II  FRAUDULENT CONCEALMENT (BASED ON NORTH DAKOTA LAW) ........289

II.     Claims Brought on Behalf of the Ohio Subclass....................................................294

COUNT I  VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
        (OHIO REV. CODE § 1345.01 *ET SEQ.*)..................................................294

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OHIO LAW) ..............................297

JJ.     Claims Brought on Behalf of the Oklahoma Subclass ..........................................301

COUNT I  VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT (OKLA.
        STAT. TIT. 15 § 751 *ET SEQ.*)...............................................................301

COUNT II  FRAUDULENT CONCEALMENT (BASED ON OKLAHOMA LAW)..................304

KK.     Claims Brought on Behalf of the Pennsylvania Subclass ....................................309

COUNT I  VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
        AND CONSUMER PROTECTION LAW (73 P.S. § 201-1 *ET SEQ.*)...............................309

COUNT II  FRAUDULENT CONCEALMENT (BASED ON PENNSYLVANIA LAW) .........312

LL.     Claims Brought on Behalf of the Rhode Island Subclass......................................316

COUNT I  VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
        AND CONSUMER PROTECTION ACT (R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)..............316

COUNT II  FRAUDULENT CONCEALMENT (BASED ON RHODE ISLAND LAW)...........319

MM.     Claims Brought on Behalf of the South Carolina Subclass...................................324

COUNT I  VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE
        PRACTICES ACT (S.C. CODE ANN. § 39-5-10 *ET SEQ.*)...............................324

COUNT II  VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF
        MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. CODE
        ANN. § 56-15-10 *ET SEQ.*) ...................................................................326

COUNT III  FRAUDULENT CONCEALMENT (BASED ON SOUTH CAROLINA
        LAW).........................................................................................................327

NN.    Claims Brought on Behalf of the Tennessee Subclass ............................332

COUNT I  VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT
(TENN. CODE ANN. § 47-18-101 *ET SEQ.*)...............................................332

COUNT II  FRAUDULENT CONCEALMENT (BASED ON TENNESSEE LAW)..................335

OO.    Claims Brought on Behalf of the Texas Subclass .....................................339

COUNT I  VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT (TEX.
BUS. & COM. CODE § 17.41 *ET SEQ.*)......................................................339

COUNT II  FRAUDULENT CONCEALMENT (BASED ON TEXAS LAW) ...........................340

PP.    Claims Brought on Behalf of the Utah Subclass ......................................344

COUNT I  VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT
(UTAH CODE ANN. § 13-11-1 *ET SEQ.*) ...................................................344

COUNT II  FRAUDULENT CONCEALMENT (BASED ON UTAH LAW) ............................347

QQ.    Claims Brought on Behalf of the Vermont Subclass................................352

COUNT I  VIOLATION OF VERMONT CONSUMER FRAUD ACT (VT. STAT.
ANN. TIT. 9, § 2451 *ET SEQ.*)................................................................352

COUNT II  FRAUDULENT CONCEALMENT (BASED ON VERMONT LAW) ....................355

RR.    Claims Brought on Behalf of the Virginia Subclass ...............................359

COUNT I  VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA.
CODE ANN. § 59.1-196 *ET SEQ.*)............................................................359

COUNT II  FRAUDULENT CONCEALMENT (BASED ON VIIRGINIA LAW).....................362

SS.    Claims Brought on Behalf of the Washington Subclass .........................367

COUNT I  VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
(WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*) .........................................367

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WASHINGTON LAW) ..............370

TT.    Claims Brought on Behalf of the West Virginia Subclass ......................374

COUNT I  VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND
PROTECTION ACT (W. VA. CODE § 46A-1-101 *ET SEQ.*)............................374

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WEST VIRGINIA LAW) ..........375

UU.    Claims Brought on Behalf of the Wisconsin Subclass................................379

COUNT I  VIOLATIONS OF THE WISCONSIN  DECEPTIVE TRADE PRACTICES
ACT (WIS. STAT. § 110.18) ........................................................................379

COUNT II  FRAUDULENT CONCEALMENT (BASED ON WISCONSIN LAW)..................382

PRAYER FOR RELIEF.................................................................................................................387

DEMAND FOR JURY TRIAL....................................................................................................387

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    Plaintiffs Jose Chavez, Robert Cornett, Benjamin Greenberg, Wayne Tonnesen, Miguel

2    Fragoso, Jeff Scholz, and Andrew Loescher, individually and on behalf of all others similarly

3    situated (the "Class"), allege the following based upon the investigation of counsel, the review of

4    scientific papers, and the investigation of experts:

## I.    INTRODUCTION

6    1.    This case involves trucks sold as EcoDiesels, which—like the infamous Volkswagen

7    diesels—are hardly "Eco" and in fact belch out harmful pollutants far in excess of both U.S. and

8    State of California emissions standards, but also in excess of what a reasonable consumer would

9    expect from an "Eco" vehicle.

10    2.    The world is besieged by a scandal involving tens of millions of diesel cars that

11    violate relevant emissions standards and were sold under false pretenses that they were "clean" or

12    "cleaner than gas vehicles," or environmentally friendly.  The United States, most European

13    countries, and other nations have implemented strict emissions standards for diesel engines designed

14    to protect all of us from the harmful byproducts found in the exhaust of diesel engines.

15    3.    Diesel engines pose a difficult challenge to the environment because they have an

16    inherent trade-off between power, fuel efficiency, and emissions.  Compared to gasoline engines,

17    diesel engines generally produce greater torque, low-end power, better drivability, and much higher

18    fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

19    4.    One byproduct of diesel combustion is oxides of nitrogen ("NOx"), which generally

20    describes several compounds comprised of nitrogen and oxygen atoms.  These compounds are

21    formed in the cylinder of the engine during the high temperature combustion process.  NOx pollution

22    contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the

23    atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers,

24    including serious respiratory illnesses and premature death due to respiratory-related or

25    cardiovascular-related effects.  The U.S. government, through the Environmental Protection Agency

26    (EPA), and many states, like California, have passed and enforced laws designed to protect U.S.

27    citizens from these pollutants and certain chemicals and agents known to cause disease in humans.

28    Automobile manufacturers must abide by these laws and must adhere to EPA rules and regulations.

5.      Seeing a major opportunity for growth, almost all of the major automobile manufacturers rushed to develop "clean diesel" and promoted new diesel vehicles as environmentally friendly and clean.  Volkswagen, Mercedes, GM, Fiat Chrysler America (FCA), and other manufacturers began selling diesel cars and trucks as more powerful, yet also as an environmentally friendly alternative to gasoline vehicles.  And the marketing worked, as millions of diesel vehicles were purchased between 2007 and 2016.

6.      The green bubble with respect to diesel vehicles popped on September 18, 2015, when the EPA issued a Notice of Violation of the Clean Air Act (the "First NOV") to Volkswagen Group of America, Audi AG, and Volkswagen America for installing illegal "defeat devices" in 2009–2015 Volkswagen and Audi diesel cars equipped with 2.0-liter diesel engines.  A defeat device, as defined by the EPA, is any apparatus that unduly reduces the effectiveness of emissions control systems under conditions a vehicle may reasonably be expected to experience.  The EPA found that the Volkswagen/Audi defeat device allowed the vehicles to pass emissions testing while in the real world these vehicles polluted far in excess of emissions standards.  The California Air Resources Board also announced that it had initiated an enforcement investigation of Volkswagen pertaining to the vehicles at issue in the First NOV.

7.      On September 22, 2015, Volkswagen announced that 11 million diesel cars worldwide were installed with the same defeat device software that had evaded emissions testing by U.S. regulators.  Contemporaneously, Volkswagen announced that it had set aside reserves of 6.5 billion euros ($7.3 billion) in the third quarter to address the matter.[1]

8.      Volkswagen wasn't alone—soon, government agencies began to reveal that many manufacturers had produced dozens of models that were exceeding emissions standards.

9.      The "Dieselgate" issue is not limited to passenger vehicles, and hence this case.  In 2001, the EPA announced stringent emissions standards for heavy-duty diesel engines, slated to take

---

[1] *See* Nathan Bomey, *Volkswagen Emission Scandal Widens: 11 Million Cars Affected*, USA Today (Sept. 22, 2015), http://www.usatoday.com/story/money/cars/2015/09/22/volkswagen-emissions-scandal/72605874/.

effect in 2010.  Cummins Inc. and Chrysler (now known as FCA US LLC[2]) saw a golden business opportunity and worked together to build a truck that, at least on paper, met these standards, three years ahead of schedule.  Cummins announced the new truck as the:[3]

> [S]trongest, cleanest, quietest best-in-class 2007 Cummins Turbo Diesel.  Leapfrogging the competition, the Cummins 6.7-liter Turbo Diesel engine, used exclusively in Dodge Ram 2500 and 3500 Heavy Duty pickup trucks, has increased displacement[,] providing increased horsepower and torque[,] while achieving the world's lowest 2010 Environmental Protection Agency (EPA) NOx standard a full three years ahead of the requirements.

10.     FCA decided to push into this market beyond the Dodge Ram 2500 and 3500 and, in 2014, it introduced the Dodge Ram "EcoDiesel" and the Grand Cherokee Overland "EcoDiesel."

11.     To appeal to environmentally conscious consumers, FCA *vigorously* markets its EcoDiesel vehicles as "clean diesel" with ultra-low emissions, high fuel economy, and powerful torque and towing capacity.  FCA calls its EcoDiesel "ultra clean," "emissions compliant," and claims that "**no NOx**" exits the tailpipe.  FCA charges a premium for EcoDiesel-equipped vehicles.  For example, selecting the 3.0-liter EcoDiesel engine for the 2016 Dodge Ram 1500 Laramie adds $4,770 to the purchase price.  And the 2016 Jeep Grand Cherokee Overland EcoDiesel costs $4,500 more than its gasoline counterpart.

12.     These representations are deceptive and false.  FCA has programmed its EcoDiesel vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions.  The EPA has determined that the Affected Vehicles contain defeat devices.  On January 12, 2017, the EPA issued a notice of violation against FCA because FCA "failed to disclose Auxiliary Emission Control Devices (AECDs)" in the Affected Vehicles.[4]  The EPA identified eight specific devices that cause the vehicle to perform effectively when being tested for compliance, and then reduce the effectiveness of the emissions control system during normal operation and use.

---

[2] FCA stands for Fiat Chrysler Automobiles.

[3] *Cummins Reveals Best-In-Class 2007 Turbo Diesel Engine*, Cummins Inc. (Jan. 23, 2007), http://investor.cummins.com/phoenix.zhtml?c=112916&p=irol-newsArticle_pf&ID=953050.

[4] EPA's January 12, 2017 Notice of Violation ("NOV") to Fiat Chrysler Automobiles, available at https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf.

13.     "Once again," said CARB Chair Mary D. Nichols about FCA's cheating, "a major automaker made the business decision to skirt the rules and got caught."[5]

14.     And Plaintiffs' on-road testing has confirmed that FCA's so-called EcoDiesel cars produced NOx emissions at an average of 222 mg/mile in city driving (four times the FTP standard of 50 mg/mile) and 353 mg/mile in highway driving (five times higher than the U.S. highway standard of 70 mg/mile).  In many instances, NOx values were in excess of 1,600 mg/mile, more than 20 times the standards.

15.     Thus, FCA manufactures, designs, markets, sells, and leases certain "EcoDiesel" vehicles as if they are "reduced emissions" cars that are cleaner than gasoline cars, when, in fact, these FCA vehicles are not "Eco" and emit far more pollutants than their gasoline-fueled counterparts.  Plaintiffs allege that the following FCA models powered by EcoDiesel engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by FCA:  2014–2016 Dodge Ram 1500 and 2014–2016 Jeep Grand Cherokee (the "Affected Vehicles").

16.     In addition, FCA markets the vehicles as fuel efficient, if not the "best" of any full-sized pickup.  Without cheating emissions, FCA could not achieve the fuel economy and range it promises.

17.     FCA did not previously disclose to Plaintiffs or Class members that in real-world driving conditions, the Affected Vehicles can only achieve high fuel economy and powerful towing by spewing unmitigated NOx into the air.  FCA never disclosed that it prioritizes engine power and profits over people.

18.     FCA never disclosed to consumers that the Affected Vehicles may be "clean" diesels in very limited circumstances, but are "dirty" diesels under most driving conditions.  FCA never disclosed that it prioritizes engine power and profits over the environment and people's time and money.  FCA never disclosed that the Affected Vehicles' emissions materially exceed the emissions from gasoline-powered vehicles, that the emissions exceed what a reasonable consumer would expect from a "clean diesel," and that the emissions materially exceed applicable emissions limits in

---

[5] EPA News Release, *EPA Notifies Fiat Chrysler of Clean Air Act Violations* (Jan.12, 2017), available at https://www.epa.gov/newsreleases/epa-notifies-fiat-chrysler-clean-air-act-violations.

1    real-world driving conditions.  And FCA collected a premium for these trucks by selling them at

2    thousands of dollars over the cost of a comparable gas truck.

3        19.    FCA did not act alone.  At the heart of the diesel scandal in the United States and

4    Europe are Bosch GmbH and Bosch LLC (together, "Bosch").  Bosch was an active and knowing

5    participant in the scheme to evade U.S. emissions requirements.  Bosch manufactured and tested the

6    electronic diesel control ("EDC") that allowed FCA to implement the defeat device.

7        20.    Plaintiffs bring this action individually and on behalf of all other current and former

8    owners or lessees of the Affected Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable

9    relief for FCA's misconduct related to the design, manufacture, marketing, sale, and lease of the

10   Affected Vehicles, as alleged in this Complaint.

11                               **II.    JURISDICTION**

12       21.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331

13   because Plaintiffs' claims arise under the RICO Act, 18 U.S.C. § 1962.  The Court also has diversity

14   jurisdiction because Plaintiffs and Defendants reside in different states.  The Court has supplemental

15   jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.  This Court also has original

16   jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a)(1), as modified by the Class Action

17   Fairness Act of 2005, because Plaintiffs and Defendants are citizens of different states; there are

18   more than 100 members of the Class (as defined herein); the aggregate amount in controversy

19   exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and Class members reside across

20   the United States.  The citizenship of each party is described further below in the "Parties" section.

21       22.    This Court has personal jurisdiction over each Defendant pursuant to 18 U.S.C.

22   § 1965(b) & (d), and/or Cal. Code Civ. P. § 410.10.  This Court has personal jurisdiction over

23   Defendants because they have minimum contacts with the United States, this judicial district, and

24   this State, and intentionally availed themselves of the laws of the United States and this state by

25   conducting a substantial amount of business throughout the state, including the design, manufacture,

26   distribution, testing, sale, lease, and/or warranty of FCA vehicles in this State and District.  At least

27   in part because of Defendants' misconduct as alleged in this lawsuit, Affected Vehicles ended up on

28   this state's roads and in dozens of franchise dealerships.

SECOND AMENDED CLASS ACTION COMPLAINT - 5
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.     VENUE

23.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.  Moreover, FCA has marketed, advertised, sold, and leased the Affected Vehicles within this District.

### IV.     PARTIES

**A.     Plaintiffs**

**1.     California Plaintiff**

24.      Plaintiff Jose Chavez (for the purpose of this paragraph, "Plaintiff") is an individual residing in Antioch, California.  On August 26, 2016, Plaintiff purchased a new model year 2016 Dodge Ram 1500 EcoDiesel from Hilltop Chrysler Jeep Dodge, an authorized FCA dealer in Richmond, California.  Plaintiff purchased, and still owns, this vehicle.  Unknown to Plaintiff at the time the vehicle was purchased, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.  Plaintiff selected and ultimately purchased his vehicle, in part, because of the EcoDiesel system, as represented through advertisements and representations made by FCA.  Plaintiff recalls that before he purchased the vehicle, he reviewed advertisements on FCA's website and representations from FCA's authorized dealer touting the efficiency, fuel economy, and power and performance of the engine.  He also recalls that before purchasing the vehicle, he reviewed advertisements on FCA's website and representations from FCA's authorized dealer that the Dodge Ram 1500 complied with U.S. emissions standards and was a low-emitting vehicle.  None of the advertisements reviewed or

1    representations received by Plaintiff contained any disclosure relating to the unlawfully high

2    emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 actually emitted

3    unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have

4    paid less for it.  Plaintiff and each Class member has suffered an ascertainable loss as a result of

5    FCA's omissions and/or misrepresentations associated with the EcoDiesel engine system, including,

6    but not limited to, a high premium for the EcoDiesel engine compared to what they would have paid

7    for a gas-powered engine, out-of-pocket losses, and future attempted repairs, future additional fuel

8    costs, decreased performance of the vehicles, and diminished value of the vehicles.  Neither FCA nor

9    any of its agents, dealers, or other representatives informed Plaintiff or Class members of the

10   existence of the unlawfully high emissions and/or defective nature of the EcoDiesel engine system of

11   the Affected Vehicles prior to purchase.

### 2.    Florida Plaintiff

13       25.    Plaintiff Robert Cornett (for the purpose of this paragraph, "Plaintiff") is a citizen of

14   Florida domiciled in Port Charlotte, Florida.  On or about April 24, 2016, Plaintiff purchased a 2016

15   Ram 1500 EcoDiesel (for the purpose of this paragraph, the "Affected Vehicle") from Galeana

16   Chrysler Dodge Jeep, an authorized FCA dealership in Ft. Meyers, Florida.  Plaintiff purchased, and

17   still owns, this vehicle.  Plaintiff conducted extensive research regarding the Affected Vehicle's

18   emissions system by reading the Ram website.  He specifically recalls reading about the high fuel

19   mileage, the low emissions, and the overall performance of the vehicle.  None of the advertisements

20   reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully

21   high emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 EcoDiesel actually

22   emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle.  Plaintiff

23   selected and ultimately purchased his vehicle because of the EcoDiesel system, as represented

24   through advertisements and representations made by FCA and its authorized dealers.  Unknown to

25   Plaintiff at the time the vehicle was purchased, it only achieved its promised fuel economy and

26   performance because it was equipped with an emissions system that, during normal driving

27   conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair,

28   unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

1   vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted

2   repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the

3   inadequate emission controls during normal driving conditions, but did not disclose such facts or

4   their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that

5   his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-

6   certified, and would retain all of its promised fuel economy and performance throughout its useful

7   life.

8           **3.      Massachusetts Plaintiff**

9           26.      Plaintiff Benjamin Greenberg (for the purpose of this paragraph, "Plaintiff") is a

10  citizen of Massachusetts, domiciled in Maynard, Massachusetts.  On or about March 24, 2015,

11  Plaintiff leased a new 2015 Jeep Grand Cherokee EcoDiesel Overland edition (for the purpose of this

12  paragraph, the "Affected Vehicle") from Kelly Jeep Chrysler, an FCA-authorized dealer in

13  Lynnfield, Massachusetts.  Plaintiff leased, and still possesses, this vehicle.  Prior to his purchase,

14  Plaintiff extensively researched the Affected Vehicle's emissions system by reading the official Jeep

15  website and speaking with authorized dealer representatives.  He specifically recalls reading that the

16  EcoDiesel V6 engine delivered superior efficiency, fuel economy, and durability with low emissions,

17  and was properly EPA-certified and complied with EPA emissions requirements and standards.

18  None of the advertisements reviewed or representations received by Plaintiff contained any

19  disclosure relating to the unlawfully high emissions.  Had FCA disclosed this design, and the fact

20  that the Jeep Grand Cherokee EcoDiesel actually emitted unlawfully high levels of pollutants,

21  Plaintiff would not have leased the vehicle, or would have paid less for it.  Plaintiff selected and

22  ultimately leased his vehicle, in part, because of the EcoDiesel system, as represented through

23  advertisements and representations made by FCA and its authorized dealers.  Unknown to Plaintiff at

24  the time the vehicle was leased, it only achieved its promised fuel economy and performance because

25  it was equipped with an emissions system that, during normal driving conditions, emitted many

26  multiples of the allowed level of pollutants such as NOx.  FCA's unfair, unlawful, and deceptive

27  conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper

28  emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished

value of his vehicle.  FCA knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff leased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.

### 4.    New Jersey Plaintiff

27.    Plaintiff Wayne Tonnesen (for the purpose of this paragraph, "Plaintiff") is a citizen of New Jersey domiciled in Tuckerton, New Jersey.  On or about November 24, 2016, Plaintiff purchased a new 2016 Ram 1500 EcoDiesel (for the purpose of this paragraph, the "Affected Vehicle") from Johnson Motors, an authorized FCA dealership in Columbia, Wisconsin.  Plaintiff purchased, and still owns, this vehicle.  Plaintiff conducted extensive research regarding the Affected Vehicle's emissions system by reading the Ram website.  He specifically recalls reading about the high gas mileage, the low emissions, and the overall performance of the vehicle.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 EcoDiesel actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle.  Plaintiff selected and ultimately purchased his vehicle because of the EcoDiesel system, as represented through advertisements and representations made by FCA and its authorized dealers.  Unknown to Plaintiff at the time the vehicle was purchased, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-

1   certified, and would retain all of its promised fuel economy and performance throughout its useful

2   life.

3   **5.    North Carolina Plaintiff**

4   28.    Plaintiff Miguel Fragoso (for the purpose of this paragraph, "Plaintiff") is a citizen of

5   North Carolina domiciled in Cary, North Carolina.  On or about August 4, 2016, Plaintiff leased a

6   new 2016 Jeep Grand Cherokee EcoDiesel (for the purpose of this paragraph, the "Affected

7   Vehicle") from Leith Jeep, an FCA-authorized dealer in Cary, North Carolina.  Plaintiff purchased,

8   and still owns, this vehicle.  Plaintiff researched the Affected Vehicle's emissions system by reading

9   FCA's official website and speaking with authorized dealer representatives.  He specifically recalls

10  reading on FCA's website that his gas mileage would exceed 26 miles per gallon.  None of the

11  advertisements reviewed or representations received by Plaintiff contained any disclosure relating to

12  the unlawfully high emissions.  Had FCA disclosed this design, and the fact that the Jeep Grand

13  Cherokee actually emitted unlawfully high levels of pollutants, Plaintiff would not have leased the

14  vehicle, or would have paid less for it.  Plaintiff selected and ultimately leased his vehicle, in part,

15  because of the EcoDiesel system, as represented through advertisements and representations made by

16  FCA and its authorized dealers.  Unknown to Plaintiff at the time the vehicle was leased, it only

17  achieved its promised fuel economy and performance because it was equipped with an emissions

18  system that, during normal driving conditions, emitted many multiples of the allowed level of

19  pollutants such as NOx.  FCA's unfair, unlawful, and deceptive conduct in designing, manufacturing,

20  marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-

21  of-pocket loss, future attempted repairs, and diminished value of his vehicle.  FCA knew about, or

22  recklessly disregarded, the inadequate emission controls during normal driving conditions, but did

23  not disclose such facts or their effects to Plaintiff, so Plaintiff leased his vehicle on the reasonable,

24  but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards,

25  was properly EPA-certified, and would retain all of its promised fuel economy and performance

26  throughout its useful life.

27

28

1

**6.      Oregon Plaintiff**

2

29.      Plaintiff Jeff Scholz (for the purpose of this paragraph, "Plaintiff") is a citizen of

3      Oregon domiciled in Terrebonne, Oregon.  On or about September 23, 2015, Plaintiff purchased a

4      2015 Ram 1500 EcoDiesel (for the purpose of this paragraph, the "Affected Vehicle") from Smolich

5      Motors, an authorized FCA dealership in Bend, Oregon.  Plaintiff purchased, and still owns, this

6      vehicle.  Plaintiff conducted extensive research regarding the Affected Vehicle's emissions system

7      by reading the Ram website.  He specifically recalls reading about the high fuel mileage, towing

8      capacity, and the overall performance of the vehicle.  None of the advertisements reviewed or

9      representations received by Plaintiff contained any disclosure relating to the unlawfully high

10      emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 EcoDiesel actually

11      emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle.  Plaintiff

12      selected and ultimately purchased his vehicle because of the EcoDiesel system, as represented

13      through advertisements and representations made by FCA and its authorized dealers.  Unknown to

14      Plaintiff at the time the vehicle was purchased, it only achieved its promised fuel economy and

15      performance because it was equipped with an emissions system that, during normal driving

16      conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair,

17      unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the

18      vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted

19      repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the

20      inadequate emission controls during normal driving conditions, but did not disclose such facts or

21      their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that

22      his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-

23      certified, and would retain all of its promised fuel economy and performance throughout its useful

24      life.

25

**7.      Washington & North Dakota Plaintiff**

26

30.      Plaintiff Andrew Loescher (for the purpose of this paragraph, "Plaintiff") is a citizen

27      of Washington domiciled in Vancouver, Washington.  On or about December 28, 2016, Plaintiff

28      purchased a 2015 Ram 1500 EcoDiesel Bighorn Edition (for the purpose of this paragraph, the

"Affected Vehicle") from Marketplace Motors in Devils Lake, North Dakota.  Plaintiff purchased, and still owns, this vehicle.  Plaintiff conducted extensive research regarding the Affected Vehicle's emissions system by reading the Ram website.  He specifically recalls reading about the high gas mileage, the low emissions, and the overall performance of the vehicle.  None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions.  Had FCA disclosed this design, and the fact that the Ram 1500 EcoDiesel actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle.  Plaintiff selected and ultimately purchased his vehicle over the Chevy Colorado because of the EcoDiesel system, as represented through advertisements and representations made by FCA and its authorized dealers.  Unknown to Plaintiff at the time the vehicle was purchased, it only achieved its promised fuel economy and performance because it was equipped with an emissions system that, during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx.  FCA's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the vehicle without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  FCA knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with U.S. emissions standards, was properly EPA-certified, and would retain all of its promised fuel economy and performance throughout its useful life.

**B.      Defendants**

      **1.      FCA US LLC**

      31.      FCA US LLC ("FCA") is a limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom.  FCA's principal place of business and headquarters is in Auburn Hills, Michigan.

      32.      FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles.  FCA's Chrysler brand is one of the

1    "Big Three" American automobile brands.  FCA engages in commerce by distributing and selling

2    new and unused passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.

3    Other major divisions of FCA include Mopar, its automotive parts and accessories division, and

4    SRT, its performance automobile division.  As of 2015, FCA is the seventh largest automaker in the

5    world by unit production.

6         33.    FCA, through its various entities, designs, manufactures, markets, distributes, and

7    sells automobiles in California and multiple other locations in the U.S. and worldwide.  FCA and/or

8    its agents designed, manufactured, and installed the EcoDiesel engine systems in the Affected

9    Vehicles.  FCA also developed and disseminated the owner's manuals and warranty booklets,

10   advertisements, and other promotional materials relating to the Affected Vehicles.

11        **2.    The Bosch Defendants**

12        34.    From at least 2005 to 2015, Robert Bosch GmbH, Robert Bosch LLC, and currently

13   unnamed Bosch employees (together, "Bosch") were knowing and active participants in the creation,

14   development, marketing, and sale of illegal defeat devices specifically designed to evade U.S.

15   emissions requirements in vehicles sold solely in the United States.  These vehicles include the

16   Dodge Ram 1500 EcoDiesel and Jeep Grand Cherokee EcoDiesel, as well as diesels made by

17   Volkswagen, Audi, Porsche, and Mercedes.  Bosch participated not just in the development of the

18   defeat device, but in the scheme to prevent U.S. regulators from uncovering the device's true

19   functionality.  Moreover, Bosch's participation was not limited to engineering the defeat device (in a

20   collaboration described as unusually close).  Rather, Bosch marketed "Clean Diesel" in the United

21   States and lobbied U.S. regulators to approve "Clean Diesel," another highly unusual activity for a

22   mere supplier.  These lobbying efforts, taken together with evidence of Bosch's actual knowledge

23   that the "akustikfunktion" operated as a defeat device, and participation in concealing the true

24   functionality of the device from U.S. regulators, can be interpreted only one way under U.S. law:

25   Bosch was a knowing and active participant in a massive, decade-long conspiracy with Volkswagen,

26   FCA, and others to defraud U.S. consumers, regulators, and diesel car purchasers or lessees.

27        35.    Robert Bosch GmbH is a German multinational engineering and electronics company

28   headquartered in Gerlingen, Germany.  Robert Bosch GmbH is the parent company of Robert Bosch

SECOND AMENDED CLASS ACTION COMPLAINT - 13
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

LLC.  Robert Bosch GmbH, directly and/or through its North American subsidiary Robert Bosch LLC, at all material times, designed, manufactured, and supplied elements of the defeat device to Volkswagen for use in the Affected Vehicles.  Bosch GmbH is subject to the personal jurisdiction of this Court because it has availed itself of the laws of the United States through its management and control over Bosch, LLC, and over the design, development, manufacture, distribution, testing, and sale of hundreds of thousands of the defeat devices installed in the Affected Vehicles sold or leased in the U.S.

36.     Robert Bosch LLC is a Delaware limited liability company with its principal place of business located at 38000 Hills Tech Drive, Farmington Hills, Michigan 48331.  Robert Bosch LLC is a wholly-owned subsidiary of Robert Bosch GmbH.  Robert Bosch LLC, directly and/or in conjunction with its parent Robert Bosch GmbH, at all material times, designed, manufactured, and supplied elements of the defeat device to FCA for use in the Affected Vehicles.

37.     Both Robert Bosch GmbH and Robert Bosch LLC operate under the umbrella of the Bosch Group, which encompasses some 340 subsidiaries and companies.  The Bosch Group is divided into four business sectors:  Mobility Solutions (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology.  The Mobility Solutions sector, which supplies parts to the automotive industry, and its Diesel Systems division, which develops, manufacturers, and supplies diesel systems, are particularly at issue here and include the relevant individuals at both Bosch GmbH and Bosch LLC.  Bosch's sectors and divisions are grouped not by location, but by subject matter.  Mobility Solutions includes the relevant individuals at both Bosch GmbH and Bosch LLC.  Regardless of whether an individual works for Bosch in Germany or the U.S., the individual holds him or herself out as working for Bosch.  This collective identity is captured by Bosch's mission statement:  "We are Bosch," a unifying principle that links each entity and person within the Bosch Group.[6]

---

[6] Bosch 2014 Annual Report, *Experiencing quality of life*, available at http://www.bosch.com/media/com/bosch_group/bosch_in_figures/publications/archive/GB2014_EN.pdf (last accessed Nov. 30, 2016).

1

## V.  FACTUAL ALLEGATIONS

2

**A.    The Environmental Challenges Posed by Diesel Engines and the U.S. Regulatory Response Thereto**

3

4        38.     The U.S. government, through the Environmental Protection Agency (EPA), has

5    passed and enforced laws designed to protect U.S. citizens from pollution and, in particular, certain

6    chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by

7    these laws and must adhere to EPA rules and regulations.

8        39.     The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires

9    vehicle manufacturers to certify to the EPA that the vehicles sold in the U.S. meet applicable federal

10   emissions standards to control air pollution.  Every vehicle sold in the U.S. must be covered by an

11   EPA-issued certificate of conformity.

12       40.     There is a very good reason that these laws and regulations exist, particularly in

13   regards to vehicles with diesel engines:  In 2012, the World Health Organization declared diesel

14   vehicle emissions to be carcinogenic and about as dangerous as asbestos.

15       41.     Diesel engines pose a particularly difficult challenge to the environment because they

16   have an inherent trade-off between power, fuel efficiency, and emissions: the greater the power and

17   fuel efficiency, the dirtier and more harmful the emissions.

18       42.     Instead of using a spark plug to combust highly refined fuel with short hydrocarbon

19   chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high

20   temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more

21   powerful compression of the pistons, which produces greater engine torque (that is, more power).

22       43.     The diesel engine is able to do this both because it operates at a higher compression

23   ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

24       44.     But this greater energy and fuel efficiency comes at a cost: diesel produces dirtier and

25   more dangerous emissions.  One byproduct of diesel combustion is oxides of nitrogen ("NOx"),

26   which includes a variety of nitrogen and oxygen chemical compounds that only form at high

27   temperatures.

28

45.     NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects.  Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

**B.      The EcoDiesel Technology**

46.     Vehicle manufacturers have struggled to produce diesel engines that have high power and strong fuel efficiency but also cleaner emissions.  Removing NOx from the untreated exhaust is difficult, and diesel vehicle makers have reacted by trying to remove NOx from vehicles' exhaust using catalysts.

47.     FCA's response to the challenge has been the EcoDiesel engine.

48.     Emission reductions start in the cylinder with advanced fuel injection strategies. After the byproducts of combustion leave the engine, the EcoDiesel technology treats these emissions using a diesel oxidation catalyst, diesel particulate filter, and selective catalyst reduction.

49.     The EcoDiesel approach, when it is operational, results in cleaner emissions without compromising power or fuel economy.

**C.      FCA Advertised and Promoted EcoDiesel as Clean and EPA-Compliant**

50.     In order to counter beliefs that diesel engines produce "dirty" emissions and to capitalize on consumers' desire to protect the environment, FCA aggressively markets the EcoDiesel engine as being environmentally friendly, using a leaf and green coloring in its logo:



51.     The central theme in FCA's diesel engine marketing is the promise of clean diesel:[7]



52.     In its EcoDiesel advertising, FCA specifically targets consumers "who want to drive an efficient, environmentally friendly truck without sacrificing capability or performance."[8]  Indeed, it claims that the Ram 1500 was "the NAFTA market's first and only light-duty pickup powered by clean diesel technology."[9]

53.     To convince these consumers, FCA expressly markets the Affected Vehicles as EcoDiesel vehicles, with EPA certifications throughout the U.S., claiming as follows throughout its advertising, specifications, and public-facing statements:

- "Thanks to advanced emissions-control technology … [EcoDiesel's] exhaust is ultra-clean, making this engine available in all 50 states."[10]

---

[7] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror… (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

[8] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[9] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*,  Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2013Dec12.pdf.

[10] *Id.*

- "Equipped with a diesel oxidation catalyst, diesel particulate filter and selective catalyst reduction, the EcoDiesel V6 engine will be emissions-compliant in all 50 states."[11]

- "Chrysler Group engineers adapted the engine—manufactured by Fiat-owned V.M. Motori—to meet the NAFTA region's stringent emissions and on-board diagnostic regulations.  The new EcoDiesel V-6 is Tier 2/Bin 5 compliant."[12]

- The emissions on the EcoDiesel engine data sheet meet Tier2 Bin5 requirements.[13]

54.     FCA further claims that "the Bosch emissions control system helps ensure that virtually no particulates and minimal oxides of nitrogen (NOx) exit the tailpipe."[14]

55.     And FCA holds itself out as a protector of the environment:  "We are in a race against time.  Climate change and the increasing scarcity of traditional sources of energy require new approaches to mobility.  Fiat Group is addressing this challenge head-on by ensuring individual freedom of movement with maximum consideration for the environment and local communities."[15] Step one, according to FCA, is to "minimize environmental impacts related to the use of our products."

**D.     FCA Advertised and Promoted EcoDiesel as Fuel Efficient**

56.     FCA promises that the EcoDiesel vehicles provide greater fuel economy, "30% better than a comparable gasoline engine."  According to FCA, "a Jeep Grand Cherokee or Ram 1500 with

---

[11] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[12] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*, Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2013Dec12.pdf.

[13] Specification Sheet, available at http://www.vmmotori.com/images/data_sheet/L630_DOHC-NEW.pdf (last accessed Nov. 30, 2016).

[14] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror… (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

[15] Fiat Chrysler's 2014 Sustainability Report at 4, available at http://www.fcanorthamerica.com/company/sustainability/Documents/Fiat%20Chrysler%20Sustainability%20Brochure%202014.pdf.

the EcoDiesel V-6 has a driving range of about 730 miles on one tank of fuel.  That's more than enough range to make the drive from Detroit to Traverse City and back without a refueling stop."[16]

57.     FCA's website claims that "[t]he 3.0-liter V-6 EcoDiesel engine available on the Jeep Grand Cherokee and Ram 1500 pickup has been listed among Ward's '10 Best Engines' for three consecutive years.  On the Ram 1500, the engine delivers the highest fuel economy among all full-size truck competitors – 12% higher than the next-closest competitor.  On the Jeep Grand Cherokee, it offers fuel economy of 30 miles per gallon highway with a driving range of more than 730 miles."[17]

58.     FCA further claims that the 2014 Ram 1500 "exceeds the EPA highway rating for the top-ranked small pickup.  The breakthrough results mean Ram keeps the half-ton fuel-economy record set last year by the 2013 Ram 1500."

59.     A chart on FCA's website claims that Ram 1500 has the "best fuel economy of any full-size pick-up:"[18]

---

[16] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror… (blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ecodiesel-an-essential-tool-for-every-outdoorsman/.

[17] *Fuel Efficiency*, FCA US LLC, http://www.fcanorthamerica.com/Innovation/Pages/Fuel-Efficiency2.aspx (last accessed Nov. 30, 2016).

[18] *EcoDiesel – Ram 1500 HFE*, Ram Trucks (FCA), http://www.ramtrucks.com/en/ecodiesel/# (last accessed Nov. 30, 2016).

1

2

3

4

5

6

7

8

9

10



11

12

60.     And FCA offers prospective Ram 1500 buyers a calculator to determine how much money they can save with "fewer fill-ups day-by-day":[19]

13

14

15

16

17

18

19

20

21

22

23

24



25

26

61.     FCA's advertising has been effective.  According to one press release, "[i]t's every truck manufacturer's dream to have this kind of initial order demand for a product.  Fuel economy is

27

28

---

[19] *Id.*

the No. 1 request of half-ton buyers and the Ram 1500 EcoDiesel delivers without compromising capability."[20]

62.     FCA's Jeep Grand Cherokee advertising is similarly deceptive, claiming that diesel technology reduces the number of fill-ups:[21]



63.     FCA further claims that the EcoDiesel fuel efficiency equips the Jeep Grand Cherokee "with an incredible 730-mile highway driving range, you can find hundreds of miles of discovered roads and be confident you'll find your way back."[22]

64.     Without cheating emissions, FCA could not achieve the fuel economy and range that it promises.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the EcoDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the

---

[20] *2014 Ram 1500 EcoDiesel Orders Top More Than 8,000 Units in Three Days, Filling Initial Allocation*, Chrysler Group LLC (FCA) (Feb. 19, 2014),  http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2014Feb19.pdf.

[21] *EcoDiesel*, Jeep (FCA), http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/ (last accessed Nov. 30, 2016).

[22] *Id.*

1    performance characteristics of their vehicles when purchased.  And Affected Vehicles will

2    necessarily be worth less in the marketplace because of their decrease in performance and efficiency

3    and increased wear on their vehicles' engines.

4    **E.      FCA Advertised and Promoted EcoDiesel as Powerful**

5              65.      Another major concern for consumers of trucks and SUVs is power, including torque

6    and towing capacity.  FCA claims that the 2015 Jeep Grand Cherokee equipped with a 3.0-liter

7    EcoDiesel V6 engine has best-in-class towing capability of up to 7,400 pounds.[23]

8              66.      FCA also claims that the EcoDiesel engine has best-in-class torque:  "The EcoDiesel

9    engine delivers best-in-class 420 lb-ft of torque.  Paired with an impressive 240 horsepower, this

10   engine has serious muscle."[24]

11             67.      Without cheating emissions, FCA could not achieve the power and performance that

12   it boasts about.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the

13   EcoDiesel engine performance in order to make the Affected Vehicles compliant with EPA

14   standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will

15   not retain the towing capacity advertised.  And Affected Vehicles will necessarily be worth less in

16   the marketplace because of their decrease in performance and increased wear on their vehicles'

17   engine.

18   **F.      Worldwide Diesel Emissions Cheating**

19             68.      As noted, the world was shocked to learn that Volkswagen had manufactured over

20   11 million cars that were on the road in violation of European emissions standards, and over 480,000

21   vehicles were operating in the U.S. in violation of EPA and state standards.  But Volkswagen was

22   not the only manufacturer of vehicles that exceeded emissions standards.

23             69.      In the wake of the major scandal involving Volkswagen and Audi diesel vehicles

24   evading emissions standards with the help of certain software that manipulates emissions controls

25

26   _____

         [23] *Id.*

27       [24] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone
     (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/

28   the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

(called "defeat devices"),[25] scientific literature and reports and testing indicate that most of the diesel vehicle manufactures of so-called "Clean Diesel" vehicles emit far more pollution on the road than in lab tests. The EPA has widened its probe of auto emissions to include, for example, the Mercedes E250 BlueTEC.

70.     In May 2015, a study conducted on behalf of the Dutch Ministry of Infrastructure and the Environment found that all sixteen vehicles made by a variety of manufacturers, when tested, emitted significantly more NOx on real-world trips while they passed laboratory tests. The report concluded that "[i]n most circumstances arising in normal situations on the road, the system scarcely succeeded in any effective reduction of NOx emissions."[26]

71.     The report further remarked:[27]

> It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much]. It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice. In other words: *In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions*.

The lack of any "effective reduction of NOx emissions" is a complete contradiction of FCA's claim that its vehicles are clean.

72.     Other organizations are beginning to take notice of the emissions deception. The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe." T&E stated in September 2015 that real-world emissions testing showed drastic differences from

---

[25] EPA's Sept. 18, 2015 Notice of Violation ("NOV") to Volkswagen Group of America, Inc., available at https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf.  As detailed in the NOV, software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, while the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or at the state testing station, but during normal operation they emit NOx at up to 40 times the standard allowed under U.S. laws and regulations. Volkswagen has admitted to installing a defeat device in its diesel vehicles.

[26] *Detailed investigations and real-world emission performance of Euro 6 diesel passenger cars*, TNO (May 18, 2015), http://publications.tno.nl/publication/34616868/a1Ug1a/TNO-2015-R10702.pdf.

[27] *Id.* at 6 (emphasis added).

laboratory tests such that models tested emitted more pollutants on the road than in their laboratory tests. "For virtually every new model that comes onto the market the gap between test and real-world performance leaps," the report asserts.[28]

73.    In a summary report, T&E graphically depicted the widespread failure of most manufacturers:[29]



**2. The problem is endemic across the car industry – but the performance of individual models and manufacturers varies widely**

In tests by the ICCT[1] 12 out of 13 modern diesel cars failed to achieve the Euro 6 limit in on the road. The worst vehicle, an Audi, emitted 22 times the allowed limit. Emissions are highest in urban areas where most people are exposed to the pollution. On average a new diesel car emits **over** 800mg/km of nitrogen oxides driving in town compared to the limit of 80mg/km. Data obtained on around 20 modern diesel cars by T&E shows every major manufacturer is selling cars that fail to meet Euro 6 limits on the road. A minority of vehicles do meet the limits – but most don't. This is because the industry uses cheaper less effective exhaust treatment systems or fails to configure the best systems in a way that minimizes emissions. The cost of a modern diesel after treatment system is just €300.

**Above and beyond the safe limit**

Source: T&E                                                        Transport & Environment

---

[28] *VW's cheating is just the tip of the iceberg*, Transport & Environment (Sept. 21, 2015), http://www.transportenvironment.org/publications/vw%E2%80%99s-cheating-just-tip-iceberg.

[29] *Five facts about diesel the car industry would rather not tell you*, Transport & Environment (Sept. 2015), http://www.transportenvironment.org/sites/te/files/publications/2015_09_Five_facts_about_diesel_FINAL.pdf.

74.     The T&E report found that the current system for testing cars in a laboratory produces "meaningless results."[30]

75.     Emissions Analytics is a U.K. company which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles."  With regard to its recent on-road emissions testing, the company explains:[31]

> [I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory.  Real-world emissions of carbon dioxide are almost one-third above that suggested by official figures.  For car buyers, this means that fuel economy on average is one quarter worse than advertised.  This matters, even if no illegal activity is found.

## G.     Defendants' Dirty "Cheat Device" Scheme

76.     All modern engines are integrated with sophisticated computer components to manage the vehicle's operation, such as an electronic diesel control ("EDC").  Bosch tested, manufactured, and sold the EDC system used by Volkswagen, Mercedes, and FCA in the Affected Vehicles.  This system is more formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17" or "ED17").  Upon its introduction, EDC Unit 17 was publicly-touted by Bosch as follows:[32]

> EDC17 … controls every parameter that is important for effective, low-emission combustion.
>
> Because the computing power and functional scope of the new EDC17 can be adapted to match particular requirements, it can be used very flexibly in any vehicle segment on all the world's markets.  In addition to controlling the precise timing and quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also offers a large number of options such as the control of particulate filters or systems for reducing nitrogen oxides.  The Bosch EDC17 determines the injection parameters for each cylinder, making specific adaptations if necessary.  This improves the precision of injection throughout the vehicle's entire service life.  The system therefore makes an important contribution to observing future exhaust gas emission limits.

---

[30] *Id.*

[31] Emissions Analytics Press Release (Sept. 28, 2015), available at http://www.abvwc.com/home/emissions-analytics.

[32] *See* Bosch Press Release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

77.     Bosch worked with each vehicle manufacturer that utilized EDC Unit 17 to create a unique set of specifications and software code to manage the vehicles' engine operation.

78.     With respect to the Affected Vehicles, however, EDC Unit 17 was also enabled by Bosch and FCA to surreptitiously evade emissions regulations.  Bosch and FCA worked together to develop and implement a specific set of software algorithms for implementation in the Affected Vehicles, which enabled FCA to adjust fuel levels, exhaust gas recirculation, air pressure levels, and even urea injection rates (for applicable vehicles).[33]  When carmakers test their vehicles against EPA emission standards, they place their cars on dynamometers (large rollers) and then perform a series of specific maneuvers prescribed by federal regulations.  Bosch's EDC Unit 17 gave Volkswagen, FCA, and other manufacturers the power to detect test scenarios by monitoring vehicle speed, acceleration, engine operation, air pressure, and even the position of the steering wheel.  When the EDC Unit 17's detection algorithm detected that the vehicle was on a dynamometer (and undergoing an emission test), additional software code within the EDC Unit 17 downgraded the engine's power and performance and upgraded the emissions control systems' performance by switching to a "dyno calibration" to cause a subsequent reduction in emissions to legal levels.  Once the EDC Unit 17 detected that the emission test was complete, the EDC Unit 17 would then enable a different "road calibration" that caused the engine to return to full power while reducing the emissions control systems' performance, and consequently caused the vehicle to spew the full amount of illegal NOx emissions out on the road.[34]  This process is illustrated in the following diagram, applicable to FCA as well:

---

[33] *See, e.g.*, *Engine management*, Bosch Auto Parts, http://de.bosch-automotive.com/en/parts_and_accessories/motor_and_sytems/diesel/engine_management_2/engine_control_unit_1 (last accessed Nov. 30, 2016).

[34] Russell Hotten, *Volkswagen: The scandal explained*, BBC (Dec. 10, 2015), http://www.bbc.com/news/business-34324772.

**How Volkswagen's defeat device works**

'SWITCH' SOFTWARE

Software in the car's electronic control module (ECM) determines where the car is being driven (i.e. highway, road, testing) by analysing a series of factors.

FACTORS ANALYSED

Position of steering

Speed

Duration of engine operation

Barometric pressure

MODE OF THE VEHICLE?

BEING TESTED

NORMAL OPERATION

Mode switches to "dyno calibration," as software recognises vehicle is taking emission test.

Mode switches to "road calibration," as software recognises vehicle is in normal operation.

RESULT

RESULT

EPA compliant emission levels produced.

Effectiveness of emission control system reduced, increasing Nitrogen oxide levels to 10 to 40 times above standards.

Source: U.S. Environmental Protection Agency

J. Wang, 22/09/2015

REUTERS

79.     This workaround was illegal.  The Clean Air Act expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use."  40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device.").  Moreover, the Clean Air Act prohibits the sale of components used as defeat devices, "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."  42 U.S.C. § 7522(a)(3).  Finally, in order to obtain a certificate of compliance ("COC"), automakers must submit an application, which lists all auxiliary emission control devices installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

80.     Thus, in order to obtain the COCs necessary to sell their vehicles, FCA did not disclose, and affirmatively concealed, the presence of the test-detecting and performance-altering software code that it developed with Bosch from government regulators, thus making that software an illegal defeat device.  In other words, FCA lied to the government, its customers, its dealers, and the public at large.

81.     Because the COCs were fraudulently obtained, and because the Affected Vehicles did not conform "in all material respects" to the specifications provided in the COC applications, the Affected Vehicles were never covered by a valid COC, and thus were never legal for sale, nor were they EPA and/or CARB compliant, as represented.  FCA and Bosch hid these facts from the EPA, CARB and other regulators, its dealers, and consumers, and it continued to sell and lease the Affected Vehicles to the driving public, despite their illegality, and with the complicity of Bosch.

82.     FCA's illegal workaround was enabled by its close partnership with Bosch, which enjoyed a sizable portion of its annual revenue from manufacturing parts used in FCA's and other manufacturers' diesel vehicles.[35]  Bosch was well aware that FCA was using its emissions control components as a defeat device and, in fact, worked with FCA to develop the software algorithm specifically tailored for the Affected Vehicles.

83.     Because the COCs were fraudulently obtained, the Affected Vehicles were never covered by valid COCs, and thus were never offered legally for sale.  FCA hid these facts from the EPA, CARB and other state regulators, and consumers, and it continued to sell and lease the Affected Vehicles despite their illegality, and with the complicity of Bosch.

**H.     Bosch Played a Critical Role in the Defeat Device Scheme**

84.     Although this case is not about Volkswagen, Bosch's history with Volkswagen provides background and support for its participation in the RICO enterprise alleged herein, of which Bosch and FCA were participants.

---

[35] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world.  *See Bosch probes whether its staff helped VW's emissions rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

1  **1.     Volkswagen and Bosch conspire to develop the illegal defeat device.**

2  85.     Bosch tightly controlled development of the control units in the Affected Vehicles and

3  actively participated in the development of the defeat device.

4  86.     As discussed above, Bosch introduced a new generation of diesel ECUs for

5  Volkswagen.

6  87.     A February 28, 2006 Bosch press release introduced the "New Bosch EDC17 engine

7  management system" as the "brain of diesel injection" which "controls every parameter that is

8  important for effective, low-emission combustion."  The EDC17 offered "[e]ffective control of

9  combustion" and a "[c]oncept tailored for all vehicle classes and markets."  In the press release,

10  Bosch touted the EDC17 as follows:[36]

11  **EDC17: Ready for future demands**
   Because the computing power and functional scope of the new EDC17
12  can be adapted to match particular requirements, it can be used very
   flexibly in any vehicle segment on all the world's markets.  In addition
13  to controlling the precise timing and quantity of injection, exhaust gas
   recirculation, and manifold pressure regulation, it also offers a large
14  number of options such as the control of particulate filters or systems
   for reducing nitrogen oxides.  The Bosch EDC17 determines the
15  injection parameters for each cylinder, making specific adaptations if
   necessary.  This improves the precision of injection throughout the
16  vehicle's entire service life.  The system therefore makes an important
   contribution to observing future exhaust gas emission limits.

17  88.     Bosch and Volkswagen worked together closely to modify the software and to create

18  specifications for each vehicle model.  Indeed, customizing a road-ready ECU is an intensive three-

19  to five-year endeavor involving a full-time Bosch presence at an automaker's facility.

20  89.     All Bosch ECUs, including the EDC17, run on complex, highly proprietary engine

21  management software over which Bosch exerts near-total control.  In fact, the software is typically

22  locked to prevent customers, like Volkswagen and FCA, from making significant changes on their

23  own.

24  90.     Bosch's security measures further confirm that its customers cannot make significant

25  changes to Bosch software without Bosch involvement.  Bosch boasts that its security modules

26

27  _____

   [36] *See* Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management
28  system* (Feb. 28, 2006), http://www.bosch-resse.de/presseforum/details.htm?txtID=2603&locale=en.

protect vehicle systems against unauthorized access in every operating phase, meaning that no alteration could have been made without either a breach of that security—and no such claims have been advanced—or Bosch's knowing participation.[37]

91.     Unsurprisingly, then, at least one car company engineer has confirmed that Bosch maintains absolute control over its software as part of its regular business practices:[38]

> I've had many arguments with Bosch, and they certainly own the dataset software and let their customers tune the curves.  Before each dataset is released it goes back to Bosch for its own validation.
>
> Bosch is involved in all the development we ever do.  They insist on being present at all our physical tests and they log all their own data, so someone somewhere at Bosch will have known what was going on.
>
> All software routines have to go through the software verification of Bosch, and they have hundreds of milestones of verification, that's the structure ….
>
> The car company is *never* entitled by Bosch to do something on their own.

Thus, Bosch cannot convincingly argue that the development of the "akustik" device was the work of a small group of rogue engineers.

92.     In fact, Volkswagen's and Bosch's work on the EDC17 reflected a highly unusual degree of coordination.  It was a massive project that required the work of numerous Bosch coders for a period of more than ten years, or perhaps more.[39]  Although Bosch publicly introduced the EDC17 in 2006, it had started to develop the engine management system years before.[40]

---

[37] *Reliable Protection for ECUs*, ESCRYPT (May 12, 2016), https://www.escrypt.com/company/single-news/detail/reliable-protection-for-ecus/.

[38] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software/.

[39] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch, and Volkswagen was the biggest diesel manufacturer in the world.  *See Bosch Probes Whether Its Staff Helped VW's Emissions Rigging*, Automotive News (Jan. 27, 2016), http://www.autonews.com/article/20160127/COPY01/301279955/bosch-probes-whether-its-staff-helped-vws-emissions-rigging.

[40] Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-presse.de/presseforum/details.htm?txtID=2603&locale=en.

93.     In fact, Bosch was in on the secret and knew that Volkswagen was using Bosch's software algorithm as an "on/off" switch for emission controls when the affected vehicle was undergoing testing.  As noted above, it has been said the decision to cheat was an "open secret" at Volkswagen.[41]  It was an "open secret" at Bosch as well.

94.     Volkswagen and Bosch personnel employed code language for the defeat device, referring to it as the "acoustic function" (in German, "akustikfunktion").  As described above, the roots of the "akustikfunktion"—and likely the cheating—can be traced back to the late 1990s when Audi devised software called the "akustikfunktion" that could switch off certain functions when the vehicle was in a test mode.[42]  The "akustik" term is derived from the function's ability to modify the noise and vibration produced by the engine.  News articles report that, in 2006, Volkswagen AG further developed this "akustikfunktion" for the Affected Vehicles.[43]

95.     In sum, Bosch worked hand-in-glove with Volkswagen to develop and maintain the akustikfunktion/defeat device.  On information and belief, it did so with FCA as well.

**2.     Volkswagen and Bosch conspire to conceal the illegal "akustikfunktion."**

96.     By 2007, and likely earlier, Bosch was critical not only in developing the "akustikfunktion," but also in concealing it.

---

[41] Georgina Prodham, *Volkswagen probe finds manipulation was open secret in department*, Reuters (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7.  *See also* Jay Ramey, *VW chairman Poetsch: Company 'tolerated breaches of rules'*, Autoweek (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules (it was necessary for the "EA 189 engine to pass U.S. diesel emissions limits within the budget and time frame allotted").

[42] Martin Murphy, *Dieselgate's Roots Stretch Back to Audi*, Handelsblatt Global (Apr. 19, 2016), https://global.handelsblatt.com/edition/413/ressort/companies-markets/article/dieselgates-roots-stretch-back-to-audi?ref=MTI5ODU1.

[43] *Volkswagen Probe Finds Manipulation Was Open Secret in Department: Newspaper*, Reuters (Jan. 23, 2016), http://www.reuters.com/article/us-volkswagen-emissions-investigation-idUSKCN0V02E7.  Volkswagen Group Chairman, Hans Dieter Poetsch, explained that a small group of engineers and managers was involved in the creation of the manipulating software.  *See VW Chairman Poetsch: Company 'Tolerated Breaches of Rules'*, Auto Week (Dec. 10, 2015), http://autoweek.com/article/vw-diesel-scandal/vw-chairman-poetsch-company-tolerated-breaches-rules.  *See also Scandal Explained*, BBC (Dec. 10, 2015), http://www.bbc.com/news/business-34324772; Sept. 18, 2015, http://www.autocar.co.uk/car-news/industry/vw-emissions-scandal-how-volkswagens-defeat-device-works.

97.     Bosch was concerned about getting caught participating in the defeat device fraud. As reported in the German newspaper, *Bild am Sonntag*, and a French publication, a Volkswagen internal inquiry found that in 2007, Bosch warned Volkswagen by letter that using the emissions-altering software in production vehicles would constitute an "offense."[44]

**3.      Volkswagen and Bosch conspire in the U.S. and Germany to elude U.S. regulators who regulated not just Volkswagen diesels, but all diesels.**

98.     The purpose of the defeat device was to evade stringent U.S. emissions standards. Once Bosch and Volkswagen perfected the defeat device, therefore, their attention turned to deceiving U.S. regulators.

99.     Bosch's North American subsidiary, Defendant Bosch LLC, was also part of and essential to the fraud. Bosch LLC worked closely with Bosch GmbH and Volkswagen, in the United States and in Germany, to ensure that the non-compliant Affected Vehicles passed U.S. emission tests. Bosch LLC employees frequently communicated with U.S. regulators, and actively worked to ensure the Affected Vehicles were approved by regulators.

100.    Employees of Bosch LLC, Bosch GmbH, and IAV provided specific information to U.S. regulators about how Volkswagen's vehicles functioned and unambiguously stated that the vehicles met emissions standards. Bosch LLC regularly communicated to its colleagues and clients in Germany about ways to deflect and diffuse questions from U.S. regulators about the Affected Vehicles—particularly CARB.

**4.      Bosch keeps Volkswagen's secret safe and pushes "clean" diesel in the U.S.**

101.    Bosch not only kept Volkswagen's dirty secret safe, it went a step further and actively lobbied lawmakers to push "Clean Diesel" in the U.S., including making Affected Vehicles available for regulators to drive.

---

[44] *Bosch warned VW about illegal software use in diesel cars, report says*, Automotive News (Sept. 27, 2015), http://www.autonews.com/article/20150927/COPY01/309279989/bosch-warned-vw-about-illegal-software-use-in-diesel-cars-report-says; *VW Scandal: Company Warned over Test Cheating Years Ago*, BBC (Sept. 27, 2015), http://www.bbc.com/news/business-34373637.

102.     As early as 2004, Bosch announced a push to convince U.S. automakers that its diesel technology could meet tougher 2007 U.S. emission standards.[45]  Its efforts ended up being a multiple-year, multi-million dollar effort involving key players from both Bosch in Germany and Bosch in the U.S.

103.     Bosch's promotion of diesel technology specifically targeted the U.S.  For example, Bosch put on "Diesel Days in California"[46] and "SAE World Congress in Detroit."[47]  In 2008, Bosch LLC and Volkswagen Group of America, Inc. co-sponsored the "Future Motion Made in Germany-Second Symposium on Modern Drive Technologies" at the German Embassy in Washington, D.C., with the aim of providing a venue for "stakeholders to gain insight into the latest technology trends, and to engage in a vital dialogue with industry leaders and policymakers."[48]

104.     Bosch LLC hosted multi-day conferences open to many regulators and legislators and held private meetings with regulators, in which it proclaimed extensive knowledge of the specifics of Volkswagen technology, including calibrations necessary for the Affected Vehicles to comply with emissions regulations.

105.     For example, in April 2009, Bosch organized and hosted a two-day "California Diesel Days" event in Sacramento, California.  Bosch invited a roster of lawmakers, journalists, executives, regulators, and NGOs[49] with the aim of changing perceptions of diesel from "dirty" to "clean."  The

---

[45] Edmund Chew, *Bosch boosts US diesel lobbying*, Autonews (Mar. 8, 2004), http://www.auto news.com/article/20040308/SUB/403080876/bosch-boosts-us-diesel-lobbying.

[46] *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/ html/734_4066.htm?section=28799C0E86C147799E02226E942307F2 (last accessed Mar. 28, 2017).

[47] *See, e.g.*, *Bosch Brings Innovation, Green Technology to SAE 2009 World Congress*, Bosch, http://www.bosch.us/content/language1/html/734_7432.htm?section=CDAF31A468D9483198ED85 77060384B3 (last accessed Mar. 28, 2017).

[48] *Bosch: Clean Diesel is Key Part of Future Technology Mix*, Bosch, http://us.bosch-press.com/ tbwebdb/bosch-usa/en-US/PressText.cfm?CFID=59743263&CFTOKEN=b0c61c28412924c-BCBB 064E-FD22-FC33-50650318A8803D2B&nh=00&Search=0&id=364 (last accessed Mar. 28, 2017).

[49] *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/html/ 734_4066.htm?section=28799C0E86C147799E02226E942307F2 (last accessed Mar. 28, 2017); *see also*, *California Diesel Days*, The U.S. Coalition for Advanced Diesel Cars, http://www.californiadieseldays.com/ (last accessed Mar. 28, 2017).

event featured Affected Vehicles as ambassadors of "Clean Diesel" technology, including a 2009 Volkswagen Jetta "green car."  The stated goals were to "build support for light-duty diesel as a viable solution for achieving California's petroleum and emission reduction objectives."

106.     In 2009, Bosch also became a founding member of the U.S. Coalition for Advanced Diesel Cars.[50]  One of this advocacy group's purposes included "promoting the energy efficiency and environmental benefits of advanced clean diesel technology for passenger vehicles in the U.S. marketplace."[51]  This group lobbies Congress, U.S. regulators, and the California Air Resources Board in connection with rules affecting "Clean Diesel" technology.[52]

107.     In 2010, Bosch sponsored the Virginia International Raceway with the support of the 2010 Volkswagen Jetta TDI Cup Series.  This event included TDI vehicles featuring Bosch technology.[53]

108.     In 2012, Audi, BMW, Bosch, Daimler, Porsche, and Volkswagen joined to form The Clearly Better Diesel initiative.[54]  The initiative was announced in Berlin by the German Association of the Automotive Industry.  Its stated goal was to promote the sale of clean diesel vehicles in the U.S.  The initiative's slogan was "Clean Diesel.  Clearly Better."

109.     In its efforts to promote "Clean Diesel," including the Affected Vehicles, Bosch GmbH acted on behalf of its global group.

---

[50] Chrissie Thompson, *New Coalition Aims To Promote Diesel Cars*, Automotive News (Feb. 2, 2009), http://www.autonews.com/article/20090202/OEM06/302029728/new-coalition-aims-to-promote-diesel-cars.

[51] *About the Coalition*, The U.S. Coalition for Advanced Diesel Cars, http://cleandieseldelivers.com/about/ (last accessed Mar. 28, 2017).

[52] *Id. See also, e.g.*, Letter to Mary T. Nichols & the California Air Resources Board concerning a statement made about diesel technology (Jan. 8, 2016), available at http://cleandieseldelivers.com/media/Mary-Nichols-Letter-01082016.pdf.

[53] *Volkswagen Jetta TDI Cup Drivers Take to the Track for the First Time in 2010 at VIR*, Volkswagen of America, Inc. (Apr. 23, 2010), available at http://www.prnewswire.com/news-releases/volkswagen-jetta-tdi-cup-drivers-take-to-the-track-for-the-first-time-in-2010-at-vir-91985604.html.

[54] *"Clean Diesel Clearly Better" Campaign for Clean Diesel Cars Welcomed*, Diesel Technology Forum (Dec. 12, 2012), http://www.dieselforum.org/news/clean-diesel-clearly-better-campaign-for-clean-diesel-cars-welcomed.

1

### I.  The Deception Involving FCA's "EcoDiesels"

2   110.   On January 12, 2017, the United States Environmental Protection Agency issued a

3   Notice of Violation against Fiat Chrysler Automobiles N.V. and FCA US LLC for failing to justify

4   or disclose defeat devices in model year 2014–2016 Dodge Ram 1500 EcoDiesel and 2014–2016

5   Jeep Grand Cherokee EcoDiesel vehicles.[55]  The EPA is currently working in coordination with the

6   California Air Resources Board (CARB), which has also issued a notice of violation to FCA.[56]  EPA

7   and CARB have both initiated investigations based on FCA's alleged actions.

8   111.   The Notice of Violation is based in part on emissions testing performed by the EPA at

9   the National Vehicle and Fuel Emissions Laboratory.  The EPA performed this testing "using driving

10   cycles and conditions that may reasonably be expected to be encountered in normal operation and

11   use, for the purposes of investigating a potential defeat device."[57]

12   112.   The EPA identified at least eight Auxiliary Emissions Control Devices (AECDs) in

13   the Affected Vehicles:

14   •   AECD 1 (Full EGR Shut-Off at Highway Speed)

15   •   AECD 2 (Reduced EGR with Increasing Vehicle Speed)

16   •   AECD 3 (EGR Shut-off for Exhaust Valve Cleaning)

17   •   AECD 4 (DEF Dosing Disablement during SCR Adaptation)

18   •   AECD 5 (EGR Reduction due to Modeled Engine Temperature)

19   •   AECD 6 (SCR Catalyst Warm-Up Disablement)

20   •   AECD 7 (Alternative SCR Dosing Modes)

21   •   AECD 8 (Use of Load Governor to Delay Ammonia Refill of SCR Catalyst)

22   113.   EPA testing found that "some of these AECDs appear to cause the vehicle to perform

23   differently when the vehicle is being tested for compliance with the EPA emission standards using

24   _____

25   [55] EPA Notice of Violation to FCA (Jan. 12, 2017), https://www.epa.gov/sites/production/files/
2017-01/documents/fca-caa-nov-2017-01-12.pdf.

26   [56] EPA news release, *EPA Notifies Fiat Chrysler of Clean Air Act Violations* (Jan. 12, 2017),
https://www.epa.gov/newsreleases/epa-notifies-fiat-chrysler-clean-air-act-violations.

27   [57] EPA Notice of Violation to FCA (Jan. 12, 2017), https://www.epa.gov/sites/production/files/
2017-01/documents/fca-caa-nov-2017-01-12.pdf.

28

the Federal emission test procedure (*e.g.*, FTP, US06) than in normal operation and use."[58]  For example:

      a.    AECD 3, when combined with either AECD 7 or AECD 8, disables the EGR system without increasing the effectiveness of SCR system.  Under some normal driving conditions, this disabling reduces the effectiveness of the overall emission control system.  The AECD 3 uses a timer to shut off the EGR, which does not appear to the EPA to meet any exceptions to the regulatory definition of "defeat device."

      b.    AECD 5 & 6 together reduce the effectiveness of the NOx emissions control system, using a timer to discontinue warming of the SCR after-treatment system, which reduces its effectiveness.

      c.    AECD 4, particularly when combined with AECD 8, increases emissions of tailpipe NOx during normal vehicle operation and use.  The operation of AECD 1, AECD 2, and/or AECD 5 increase the frequency of occurrence of AECD 4.

      d.    AECDs 7 & 8 work together to reduce NOx emissions during variable-grade and high-load conditions.

114.    The EPA further found that FCA did not disclose or justify these control devices in their Certificate of Conformity applications, as required by EPA regulations, and that FCA was therefore in violation of the Clean Air Act each time it sold, offered for sale, introduced in commerce, or imported approximately 103,828 vehicles.

115.    Plaintiffs have also tested the 2015 Dodge Ram 1500 pickup using a Portable Emissions Measurement System ("PEMS").  Testing revealed that the Ram 1500 fails to meet U.S. emissions standards, as promised, and fails to meet the "no NOx" out of the tailpipe promise.

116.    The applicable standard both at the federal and state level is 50 mg/mile of NOx for "FTP Style" driving—*i.e.*, city driving.  Testing was conducted with a PEMS unit to simulate driving conditions under both the FTP certification cycle and the highway certification cycle.  The Ram 1500 emits an average of 159 mg/mile of NOx and a maximum of 1,283 mg/mile on flat roads, and 222 mg/mile of NOx with a maximum of 1,859 mg/mile on hills.  For highway driving, the average was 232 mg/mile and a maximum of 1,615 mg/mile, compared to the 70 mg/mile standard.  On hills, the numbers are 353 mg/mile and 3,240 mg/mile.  Testing also revealed a defeat device triggered by

---

[58] *Id.*

1   ambient temperature that significantly derates the performance of the NOx emission reduction

2   system, with ambient threshold temperatures above approximately 95ºF and below 40–50ºF.  The

3   resulting NOx emissions increase by a factor of 10 when above or below these threshold

4   temperatures.  Testing also revealed the presence of a defeat device when ascending hills, as the

5   emissions control system appears to be significantly derated after a short period of steady driving on

6   hills.  As a result, NOx emissions increase after about 500–1000 seconds on hills with grades as low

7   as 1%, where emissions are often 10 times the standard.  For grades as little as 0.4%, emissions were

8   found to be as high as 6 times the highway standard.

9       117.    The Dodge Ram 1500's emissions software is a "Bosch EDC17," as is the Grand

10   Cherokee's.  The same basic emissions system is in the Grand Cherokee EcoDiesel and the engines

11   are identical.

12       118.    Although the Dodge Ram 2500 and 3500 are built with a different engine design,

13   these models also fail to meet emissions standards, and such failure adds to the plausibility of FCA's

14   deception with respect to the Ram 1500.

15       119.    Testing was performed on a 2012 Dodge Ram 2500 powered by a Cummins 6.7 diesel

16   engine using a PEMS.  The vehicle had accumulated approximately 70,000 miles at the time of

17   testing.  The results show that the vehicle does not meet the relevant emission standards, as follows:

18   During on-road testing designed to simulate the driving profile of the Federal Test Procedure (FTP)

19   certification cycle, emissions were found to be 702 mg/mile on average, 3.5 times the federal and

20   California standard of 200 mg/mile.  Over significant distances, emissions were found to be as high

21   as 1,100 to 2,800 mg/mile for periods lasting as long as 21% of the total drive time.  That is 5.5 to 14

22   times the relevant standard.  During on-road PEMS testing designed to simulate the driving profile of

23   the highway certification cycle, average emissions were found to be 756 mg/mile, or 1.9 times the

24   California (and Section 177 state) standard.  Over significant distances, emissions were found to be

25   as high as 1,200 to 2,250 mg/mile for periods lasting as long as 16% of the total drive time.  That

26   equates to 3.0 to 5.6 times the relevant standard.

27       120.    The vehicle was also found to be particularly sensitive to hills, where steady speed

28   emissions could spike as high as 2,100 mg/mile (5.5 times the standard) on a steady 1.5% grade.

1    121.    These facts put the lie to FCA's claims that EcoDiesel is a "clean diesel" with

2    "ultralow emissions," or that "no NOx" is emitted through the tailpipe.  FCA misrepresents the

3    emissions performance of its vehicles equipped with EcoDiesel engines because the Affected

4    Vehicles spew NOx into the air at levels that far exceed U.S. emissions standards.

5    **J.      The Damage**

6        122.    FCA will not be able to make the Affected Vehicles comply with emissions standards

7    without substantially degrading their performance characteristics, including their horsepower and

8    efficiency.  As a result, even if FCA is able to make the Affected Vehicles EPA-compliant, Plaintiffs

9    and Class members will nonetheless suffer actual harm and damages because their vehicles will no

10   longer perform as they did when purchased and as advertised.  This will necessarily result in a

11   diminution in value of every Affected Vehicle, and it will cause owners of Affected Vehicles to pay

12   more for fuel while using their Affected Vehicles.

13       123.    As a result of FCA's unfair, deceptive, and/or fraudulent business practices, and its

14   failure to disclose that under normal operating conditions the Affected Vehicles are not "clean"

15   diesels and emit more pollutants than permitted under federal and state laws, owners and/or lessees

16   of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiffs and Class

17   members known of the higher emissions at the time they purchased or leased their Affected Vehicles,

18   they would not have purchased or leased those vehicles, or would have paid substantially less for the

19   vehicles than they did.  Moreover, when and if FCA recalls the Affected Vehicles and degrades the

20   EcoDiesel Clean Diesel engine performance in order to make the Affected Vehicles compliant with

21   EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and

22   will not obtain the performance characteristics of their vehicles when purchased.  Moreover,

23   Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in

24   performance and efficiency and increased wear on their vehicles' engines.

25                   **VI.      TOLLING OF THE STATUTE OF LIMITATIONS**

26   **A.      Discovery Rule Tolling**

27       124.    Class members had no way of knowing about FCA's deception with respect to the

28   unlawfully high emissions of its EcoDiesel Clean Diesel engine system in Affected Vehicles.  To be

1    sure, FCA continues to market the Affected Vehicles as "clean" diesels and also continues to claim

2    that Affected Vehicles comply with EPA emissions standards.

3         125.    Within the time period of any applicable statutes of limitation, Plaintiffs and members

4    of the proposed classes could not have discovered through the exercise of reasonable diligence that

5    FCA was concealing the conduct complained of herein and misrepresenting FCA's true position with

6    respect to the emission qualities of the Affected Vehicles.

7         126.    Plaintiffs and the other Class members did not discover, and did not know of, facts

8    that would have caused a reasonable person to suspect that FCA did not report information within its

9    knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and

10   diligent investigation have disclosed that FCA had concealed information about the true emissions of

11   the Affected Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

12   Nor, in any event, would such an investigation on the part of Plaintiffs and other Class members

13   have disclosed that FCA valued profits over truthful marketing and compliance with federal and state

14   law.

15        127.    For these reasons, all applicable statutes of limitation have been tolled by operation of

16   the discovery rule with respect to claims as to the Affected Vehicles.

17   **B.      Fraudulent Concealment Tolling**

18        128.    All applicable statutes of limitation have also been tolled by FCA's knowing and

19   active fraudulent concealment and denial of the facts alleged herein throughout the time period

20   relevant to this action.

21        129.    Instead of disclosing its emissions scheme, or that the quality and quantity of

22   emissions from the Affected Vehicles were far worse than represented, and of its disregard of federal

23   and state law, FCA falsely represented that the Affected Vehicles complied with federal and state

24   emissions standards, that the diesel engines were "clean," and that it was a reputable manufacturer

25   whose representations could be trusted.

26

27

28

1

**C.      Estoppel**

2      130.    FCA was under a continuous duty to disclose to Plaintiffs and Class members the true

3 character, quality, and nature of emissions from the Affected Vehicles, and of those vehicles'

4 emissions systems, and of the compliance of those systems with applicable federal and state law.

5      131.    FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the

6 true nature, quality, and character of the emissions systems, and the emissions, of the Affected

7 Vehicles.

8      132.    FCA was also under a continuous duty to disclose to Plaintiffs and Class members

9 that it had engaged in the conduct complained of herein contrary to federal and state emissions and

10 clean air standards, and that it systematically devalued compliance with federal and state law

11 regulating vehicle emissions and clean air.

12     133.    Based on the foregoing, FCA is estopped from relying on any statutes of limitations in

13 defense of this action.

14                    **VII.      CLASS ALLEGATIONS**

15     134.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to

16 the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of

17 the following class and subclasses (collectively, the "Classes"):

18     **Nationwide RICO Class**

19     All persons or entities in the United States who owned or leased an "Affected
       Vehicle."  Affected Vehicles include, without limitation, the diesel-powered
20     2014–2016 Jeep Grand Cherokee EcoDiesel and the diesel-powered 2014–2016
       Dodge Ram EcoDiesel.

21
       **California Class**
22
       All persons or entities in California who owned or leased an "Affected Vehicle."
23     Affected Vehicles include, without limitation, the diesel-powered 2014–2016 Jeep
       Grand Cherokee EcoDiesel and the diesel-powered 2014–2016 Dodge Ram
24     EcoDiesel.

25     **The Multistate Class**

26     All persons who purchased an Affected Vehicle in the following states: Alabama,
       Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida,
27     Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana,
       Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,
28     Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New

York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and District of Columbia. Affected Vehicles include, without limitation, the diesel-powered 2014–2016 Jeep Grand Cherokee EcoDiesel and the diesel-powered 2014–2016 Dodge Ram EcoDiesel.

135.   Excluded from the Classes are individuals who have personal injury claims resulting from the unlawfully high emissions in the EcoDiesel system of Affected Vehicles.  Also excluded from the Classes are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Classes; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.  Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

136.   Certification of Plaintiffs' claims for classwide treatment is appropriate because Plaintiffs can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

137.   This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

138.   **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiffs are informed and believe that there are at least 140,000 owners of Dodge Ram 1500s and tens of thousands of owners of Grand Cherokees, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from FCA's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

139.   **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.    Whether FCA and Bosch engaged in the conduct alleged herein;

b.   Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c.   Whether the EcoDiesel Clean Diesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements and federal and state emissions regulations;

d.   Whether the EcoDiesel Clean Diesel engine system in Affected Vehicles can be made to comply with EPA and state standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e.   Whether FCA and Bosch knew about the defeat device and, if so, how long FCA has known;

f.   Whether Bosch designed and manufactured a defeat device;

g.   Whether Bosch supplied the defeat device to FCA with the knowledge that FCA would use it in production of Affected Vehicles;

h.   Whether Bosch acted in concert with FCA and aided and abetted FCA's fraud;

i.   Whether FCA marketed, and distributed Affected Vehicles with a defeat device;

j.   Whether FCA's and Bosch's conduct violates RICO and other laws as asserted herein;

k.   Whether FCA's and Bosch's conduct violates consumer protection statutes and false advertising laws;

l.   Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief;

m.   Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the U.S.;

n.   Whether the EcoDiesel Clean Diesel engine system in the Affected Vehicles emits pollutants at levels that do not make them "clean" diesels and that do not comply with EPA requirements;

o.   Whether the EcoDiesel Clean Diesel engine system in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

p.   Whether FCA knew about the unlawfully high emissions and, if so, how long FCA has known;

| | q. | Whether FCA designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls; |
| | r. | Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles; |
| | s. | Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and |
| | t. | Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount. |

140.     **Typicality**:  Federal Rule of Civil Procedure 23(a)(3):  Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described above.

141.     **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

142.     **Declaratory and Injunctive Relief**:  Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

143.     **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to individually seek redress for Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By

1   contrast, the class action device presents far fewer management difficulties, and provides the benefits

2   of single adjudication, economy of scale, and comprehensive supervision by a single court.

3   ## VIII.   CLAIMS

4   **A.      Claims Brought on Behalf of the Nationwide RICO Class**

5
   ### COUNT I
   ### VIOLATIONS OF RACKETEER INFLUENCED AND
6   ### CORRUPT ORGANIZATIONS ACT (RICO)
   ### VIOLATION OF 18 U.S.C. § 1962(C)–(D)
7
8       144.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as

   though fully set forth herein.
9
10      145.    Plaintiffs bring this Count individually and on behalf of the Nationwide RICO Class

11  against Defendants FCA, Robert Bosch GmbH, and Robert Bosch LLC (collectively, "RICO

   Defendants").
12
13      146.    The RICO Defendants are all "persons" under 18 U.S.C. § 1961(3) because they are

14  capable of holding, and do hold, "a legal or beneficial interest in property."

15      147.    Section 1962(c) makes it "unlawful for any person employed by or associated with

16  any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

17  conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

   pattern of racketeering activity."  Section 1962(d), in turn, makes it unlawful for "any person to
18
   conspire to violate."
19
20      148.    For many years now, the RICO Defendants have aggressively sought to increase the

21  sales of Affected Vehicles in an effort to bolster revenue, augment profits and increase FCA's share

22  of the diesel vehicle market.  Finding it impossible to achieve their goals lawfully, however, the

   RICO Defendants resorted instead to orchestrating a fraudulent scheme and conspiracy.  In
23
24  particular, the RICO Defendants, along with other entities and individuals, created and/or

25  participated in the affairs of an illegal enterprise ("Emissions Fraud Enterprise") whose direct

   purpose was to deceive the regulators and the public into believing the Affected Vehicles were
26
27  "clean" and "environmentally friendly."  As explained in greater detail below, the RICO Defendants'

   acts in furtherance of the Emissions Fraud Enterprise violate § 1962(c) and (d).
28

1

**1.      The Members of the Emissions Fraud Enterprise**

2      149.    Upon information and belief, the Emissions Fraud Enterprise consisted of the

3 following entities and individuals: FCA, Robert Bosch GmbH, and Robert Bosch LLC.

4      150.    Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch" or "Bosch

5 Defendants") tested, manufactured, and sold the electronic control module ("ECM") that managed

6 the emissions control system used by FCA in the Affected Vehicles.  This particular ECM is more

7 formally referred to as the Electronic Diesel Control Unit 17 ("EDC Unit 17").[59]

8      151.    Defendant Bosch GmbH is a multinational engineering and electronics company

9 headquartered in Gerlingen, Germany, which has hundreds of subsidiaries and companies.  It wholly

10 owns defendant Bosch LLC, a Delaware limited liability company headquartered in Farmington

11 Hills, Michigan.  As explained above, Bosch's sectors and divisions are grouped by subject matter,

12 not location.  The Mobility Solutions (formerly Automotive Technology) is the Bosch sector at issue,

13 particularly its Diesel Services division, and it encompasses employees of Bosch GmbH and Bosch

14 LLC.  These individuals were responsible for the design, manufacture, development, customization,

15 and supply of the defeat device to FCA for use in the Affected Vehicles.

16      152.    Bosch worked with FCA, Volkswagen, and Mercedes to develop and implement a

17 specific and unique set of software algorithms to surreptitiously evade emissions regulations.  Bosch

18 customized their EDC Unit 17s for installation in the Affected Vehicles with unique software code to

19 detect when it was undergoing emissions testing, as described above, and did so for other vehicles

20 with defeat devices in Volkswagen and Mercedes vehicles.[60]

21      153.    Bosch's conduct with respect to Volkswagen, outlined below, adds plausibility to its

22 participation in the enterprise herein.  For example, Bosch was well aware that the EDC Unit 17

23 would be used by FCA to cheat on emissions testing.  Bosch was also critical to the concealment of

24

25

26      [59] http://www.bosch-presse.de/presseforum/details.htm?txtID=7421&tk_id=108.

27      [60] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver
(Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-
28 software.

the defect device in communications with U.S. regulators and went even further to actively lobby U.S. lawmakers on behalf of Volkswagen and its "Clean Diesel" vehicles.

154.    EDC Unit 17 could not effectively lower $NO_X$ emissions to legal levels during normal operating conditions.  In order to pass the emissions test, then, EDC Unit 17 is equipped with a "defeat device," which is software that allows the vehicle to determine whether it is being operated under normal conditions or testing conditions.

155.    As was publicly reported, the Bosch Defendants, seeking to conceal their involvement in the unlawful Emissions Fraud Enterprise, sent a letter to Volkswagen AG in 2007 stating that Volkswagen diesels *could not be lawfully operated* if the LNT or SCR after-treatment system was disabled.[61]  The exact same logic applies to the FCA Affected Vehicles.

156.    Indeed, notwithstanding their knowledge that the Volkswagen diesels *could not be lawfully operated* if the emissions system was disabled, the Bosch Defendants, driven to cement their position as a leading supplier of diesel emissions equipment, went on to sell approximately *eleven million* EDC Unit 17s to Volkswagen over an eight year period, and hundreds of thousands of FCA Affected Vehicles.[62]

157.    The persons and entities described in the preceding section are members of and constitute an "association-in-fact" enterprise.

158.    At all relevant times, the Emissions Fraud Enterprise:  (a) had an existence separate and distinct from each Defendant; (b) was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and (c) was an ongoing organization consisting of legal entities, including the FCA Defendants, the Bosch Defendants, and other entities and individuals associated for the common purpose of designing, manufacturing, distributing, testing, and selling the Affected Vehicles through fraudulent COCs and EOs, false emissions tests, deceptive and misleading

---

[61] Stef Shrader, *Feds Are Now Investigating Volkswagen Supplier Bosch Over Dieselgate*, Jalopnik (Nov. 19, 2015), http://jalopnik.com/feds-are-now-investigating-volkswagen-supplier-bosch-ov-1743624448.

[62] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater-software.

marketing and materials, and deriving profits and revenues from those activities.  Each member of the Emissions Fraud Enterprise shared in the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud consumers and franchise dealers alike nationwide.[63]

159.    The Emissions Fraud Enterprise functioned by selling vehicles and component parts to the consuming public.  Many of these products are legitimate, including vehicles that do not contain defeat devices.  However, the RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell the Affected Vehicles.

160.    The Emissions Fraud Enterprise engaged in, and its activities affected interstate and foreign commerce, because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and sale or lease of the Affected Vehicles throughout the country, and the receipt of monies from the sale of the same.

161.    Within the Emissions Fraud Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis.  The Emissions Fraud Enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Affected Vehicles to the general public nationwide.

162.    Each participant in the Emissions Fraud Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing coordination of activities.  Through the Emissions Fraud Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share, and minimizing losses.

163.    The RICO Defendants participated in the operation and management of the Emissions Fraud Enterprise by directing its affairs, as described herein.  While the RICO Defendants

---

[63] Volkswagen sold more Affected Vehicles by utilizing an emissions control system that was cheaper than SCRs, all the while charging consumers a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" vehicles.  Bosch, in turn, sold more EDC Units because Volkswagen manufactured and sold more Affected Vehicles.

1    participated in, and are members of, the enterprise, they have a separate existence from the

2    enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers,

3    directors, employees, individual personhood, reporting requirements, and financial statements.

4           164.    FCA exerted substantial control and participated in the affairs of the Emissions Fraud

5    Enterprise by:

6           a.    Designing the Affected Vehicles with defeat devices;

7           b.    Failing to correct or disable the defeat devices when warned;

8           c.    Manufacturing, distributing, and selling the Affected Vehicles
9                 that emitted greater pollution than allowable under the
                  applicable regulations;

10          d.    Misrepresenting and omitting (or causing such
                  misrepresentations and omissions to be made) vehicle
11                specifications on COC and EO applications;

12          e.    Introducing the Affected Vehicles into the stream of U.S.
                  commerce without a valid EPA COC and/or CARB EO;
13

14          f.    Concealing the existence of the defeat devices and the
                  unlawfully high emissions from regulators and the public;

15          g.    Persisting in the manufacturing, distribution, and sale of the
                  Affected Vehicles even after questions were raised about the
16                emissions testing and discrepancies concerning the same;

17          h.    Misleading government regulators as to the nature of the defeat
                  devices and the defects in the Affected Vehicles;
18

19          i.    Misleading the driving public as to the nature of the defeat
                  devices and the defects in the Affected Vehicles;

20          j.    Designing and distributing marketing materials that
                  misrepresented and concealed the defect in the vehicles;
21

22          k.    Otherwise misrepresenting or concealing the defective nature
                  of the Affected Vehicles from the public and regulators; and

23          l.    Illegally selling and/or distributing the Affected Vehicles;
                  collecting revenues and profits from the sale of such products;
24                and ensuring that the other RICO Defendants and unnamed co-
                  conspirators complied with the fraudulent scheme.
25

26          165.    Bosch also participated in, operated and/or directed the Emissions Fraud Enterprise.

27   Bosch participated in the fraudulent scheme by manufacturing, installing, testing, modifying, and

28   supplying the EDC Unit 17 which operated as a "defeat device" in the Affected Vehicles.  Bosch

SECOND AMENDED CLASS ACTION COMPLAINT - 48
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    exercised tight control over the coding and other aspects of the defeat device software and was

2    closely collaborated with FCA to develop, customize, and calibrate the defeat devices.  Additionally,

3    Bosch continuously cooperated with the FCA to ensure that the EDC Unit 17 was fully integrated

4    into the Affected Vehicles.  Bosch also participated in the affairs of the Enterprise by concealing the

5    defeat devices on U.S. documentation and in communications with U.S. regulators.  Bosch collected

6    tens of millions of dollars in revenues and profits from the hidden defeat devices installed in the

7    Affected Vehicles.

8          166.    Without the RICO Defendants' willing participation, including Bosch's active

9    involvement in developing and supplying the critical defeat devices for the Affected Vehicles, the

10   Emissions Fraud Enterprise's scheme and common course of conduct would not have been

11   successful.

12         167.    The RICO Defendants directed and controlled the ongoing organization necessary to

13   implement the scheme at meetings and through communications of which Plaintiffs cannot fully

14   know at present, because such information lies in the Defendants' and others' hands.

15         168.    The members of the Emissions Fraud Enterprise all served a common purpose;

16   namely, to outsell their law-abiding competitors and increase their revenues through the sale of as

17   many Affected Vehicles (including the emissions components made and sold by Bosch) as possible.

18   Each member of the Emissions Fraud Enterprise shared the bounty generated by the enterprise, *i.e.*,

19   by sharing the benefit derived from increased sales revenue generated by the scheme to defraud.

20   FCA sold more Affected Vehicles by utilizing an emissions control system that was cheaper to

21   install and allowed for generous performance and efficiency tuning, all the while charging consumers

22   a premium for purportedly "clean," "environmentally friendly" and "fuel efficient" Affected

23   Vehicles.  The Bosch Defendants, in turn, sold more EDC Units because FCA manufactured and sold

24   more Affected Vehicles.  The RICO Defendants achieved their common purpose by repeatedly

25   misrepresenting and concealing the nature of the Affected Vehicles and the ability of the emissions

26   control systems (including the Bosch-supplied parts) to effectively reduce toxic emissions during

27   normal operating conditions.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 49
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1        **2.        The Predicate Acts**

2        169.     To carry out, or attempt to carry out the scheme to defraud, the RICO Defendants

3    conducted or participated in the conduct of the affairs of the Emissions Fraud Enterprise through a

4    pattern of racketeering activity that employed the use of the mail and wire facilities, in violation of

5    18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

6        170.     Specifically, the RICO Defendants participated in the scheme to defraud by using

7    mail, telephone, and the Internet to transmit writings travelling in interstate or foreign commerce.

8        171.     The RICO Defendants' use of the mails and wires include, but are not limited to, the

9    transmission, delivery, or shipment of the following by the RICO Defendants or third parties that

10   were foreseeably caused to be sent as a result of Defendants' illegal scheme:

11              a.      Application for certificates submitted to the EPA and CARB;

12              b.      The Affected Vehicles themselves;

13              c.      Component parts for the defeat devices;

14              d.      Essential hardware for the Affected Vehicles;

15              e.      Falsified emission tests;

16              f.      Fraudulently-obtained EPA COCs and CARB EOs;

17              g.      Vehicle registrations and plates as a result of the fraudulently-
                        obtained EPA COCs and CARB EOs;
18
                h.      Documents and communications that facilitated the falsified
19                      emission tests;

20              i.      False or misleading communications intended to lull the public
                        and regulators from discovering the defeat devices and/or other
21                      auxiliary devices;

22              j.      Sales and marketing materials, including advertising, websites,
                        product packaging, brochures, and labeling, which
23                      misrepresented and concealed the true nature of the Affected
                        Vehicles;
24
                k.      Documents intended to facilitate the manufacture and sale of
25                      the Affected Vehicles, including bills of lading, invoices,
                        shipping records, reports and correspondence;
26
                l.      Documents to process and receive payment for the Affected
27                      Vehicles by unsuspecting franchise dealers, including invoices
                        and receipts;
28

m.      Payments to Bosch;

n.      Deposits of proceeds; and

o.      Other documents and things, including electronic
communications.

172.    The RICO Defendants utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described therein.

173.    The RICO Defendants also used the internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.  Specifically, FCA made misrepresentations about the Affected Vehicles on their websites, YouTube, and through ads online, all of which were intended to mislead regulators and the public about the fuel efficiency, emissions standards, and other performance metrics.

174.    The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships and other third-party entities in furtherance of the scheme.

175.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Affected Vehicles, which Defendants knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Affected Vehicles were "clean" diesel cars.

176.    Many of the precise dates of the fraudulent uses of the U.S. Mail and interstate wire facilities have been deliberately hidden, and cannot be alleged without access to Defendants' books and records.  However, Plaintiffs have described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred.  They include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

177.    The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy.  In violation of 18 U.S.C. § 1962(d), the RICO

1    Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein.  Various other persons,

2    firms and corporations, including third-party entities and individuals not named as defendants in this

3    Complaint, have participated as co-conspirators with the RICO Defendants in these offenses and

4    have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase

5    market share, and/or minimize losses for the Defendants and their unnamed co-conspirators

6    throughout the illegal scheme and common course of conduct.

7            178.    The RICO Defendants aided and abetted others in the violations of the above laws,

8    thereby rendering them indictable as principals in the 18 U.S.C. §§ 1341 and 1343 offenses.

9            179.    To achieve their common goals, the RICO Defendants hid from the general public the

10   unlawfulness and emission dangers of the Affected Vehicles and obfuscated the true nature of the

11   defect even after regulators raised concerns.  The RICO Defendants suppressed and/or ignored

12   warnings from third parties, whistleblowers, and governmental entities about the discrepancies in

13   emissions testing and the defeat devices present in the Affected Vehicles.

14           180.    The RICO Defendants and each member of the conspiracy, with knowledge and

15   intent, have agreed to the overall objectives of the conspiracy and participated in the common course

16   of conduct to commit acts of fraud and indecency in designing, manufacturing, distributing,

17   marketing, testing, and/or selling the Affected Vehicles (and the defeat devices contained therein).

18           181.    Indeed, for the conspiracy to succeed each of the RICO Defendants and their co-

19   conspirators had to agree to implement and use the similar devices and fraudulent tactics—

20   specifically complete secrecy about the defeat devices in the Affected Vehicles.

21           182.    The RICO Defendants knew and intended that government regulators, as well as

22   Plaintiffs and Class members, would rely on the material misrepresentations and omissions made by

23   them about the Affected Vehicles.  The RICO Defendants knew and intended Plaintiffs and the Class

24   would incur costs and damages as a result.  As fully alleged herein, Plaintiffs and the Class relied

25   upon Defendants' representations and omissions that were made or caused by them.  Plaintiffs'

26   reliance is made obvious by the fact that: (1) they purchased hundreds of thousands of vehicles that

27   never should have been introduced into the U.S. stream of commerce and whose worth is far less.  In

28   addition, the EPA, CARB, and other regulators relied on the misrepresentations and material

SECOND AMENDED CLASS ACTION COMPLAINT - 52
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    omissions made or caused to be made by the RICO Defendants; otherwise FCA could not have

2    obtained valid COCs and EOs to sell the Affected Vehicles.

3         183.    The RICO Defendants' conduct in furtherance of this scheme was intentional.

4    Plaintiffs and the Class were harmed as a result of the RICO Defendants' intentional conduct.

5    Plaintiffs, the Class, regulators and consumers, among others, relied on the RICO Defendants'

6    material misrepresentations and omissions.

7         184.    As described herein, the RICO Defendants engaged in a pattern of related and

8    continuous predicate acts for many years.  The predicate acts constituted a variety of unlawful

9    activities, each conducted with the common purpose of defrauding Plaintiffs and other Class

10   members and obtaining significant monies and revenues from them and through them while

11   providing Affected Vehicles worth significantly less than the invoice price paid.  The predicate acts

12   also had the same or similar results, participants, victims, and methods of commission.  The

13   predicate acts were related and not isolated events.

14        185.    The predicate acts all had the purpose of generating significant revenue and profits for

15   the RICO Defendants at the expense of Plaintiffs and the Class, and consumers.  The predicate acts

16   were committed or caused to be committed by the RICO Defendants through their participation in

17   the Emissions Fraud Enterprise and in furtherance of its fraudulent scheme, and were interrelated in

18   that they involved obtaining Plaintiffs' and Class members' funds, artificially inflating the brand and

19   dealership goodwill values, and avoiding the expenses associated with remediating the Affected

20   Vehicles.

21        186.    During the design, manufacture, testing, marketing and sale of the Affected Vehicles,

22   the RICO Defendants shared technical, marketing and financial information that plainly revealed the

23   emissions control systems in the Affected Vehicles as the ineffective, illegal and fraudulent piece of

24   technology they were and are.  Nevertheless, the RICO Defendants shared and disseminated

25   information that deliberately represented Affected Vehicles as "clean," "environmentally friendly,"

26   and "fuel efficient."

27

28

1    187.    By reason of and as a result of the conduct of the RICO Defendants and, in particular,

2    its pattern of racketeering activity, Plaintiffs and the Class have been injured in multiple ways,

3    including, but not limited to:

4            a.    Overpayment for Affected Vehicles, in that Plaintiffs and the Class believed

5                  they were paying for vehicles that met certain emission and fuel efficiency

6                  standards and obtained vehicles that were not legal to sell in the U.S.; and

7            b.    The value of the Affected Vehicles has diminished, thus reducing their sale

8                  and resale value.

9    188.    The RICO Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and

10   proximately caused injuries and damages to Plaintiffs and the Class, and Plaintiffs and the Class are

11   entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief,

12   costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).  Each of the RICO defendants

13   knew, understood and intended for members of the Class to purchase the Affected Vehicles, and

14   knew, understood, and foresaw that revelation of the truth would injure members of the Class.

15   **B.    Claims Brought on Behalf of the California Class**

16                              **COUNT I**

17              **FRAUD BY CONCEALMENT UNDER CALIFORNIA LAW**

18   189.    Plaintiff Jose Chavez incorporates by reference all paragraphs as though fully set forth

19   herein.

20   190.    This claim is brought on behalf of the California Class against FCA and Bosch.

21   191.    FCA designed, manufactured, marketed, sold, and/or leased Affected Vehicles to

22   Plaintiff and the California Class members.  FCA represented to Plaintiff and the California Class

23   members in advertising and other forms of communication, including standard and uniform material

24   provided with each car, that the Affected Vehicles had no significant defects, complied with EPA

25   and state emissions regulations, and would perform and operate properly when driven in normal

26   usage.  Bosch was aware of FCA's representations and their falsity.

27

28

192.   The Affected Vehicles purchased or leased by Plaintiff and the California Class members were, in fact, defective, non-EPA compliant, and unreliable, because the NOx reduction system in the Affected Vehicles does not effectively mitigate emissions.

193.   FCA intentionally concealed, suppressed, and failed to disclose the facts that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

194.   As alleged in this complaint, at all relevant times, FCA has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  FCA disclosed certain details about the EcoDiesel Clean Diesel engine, but nonetheless, FCA intentionally failed to disclose the important facts that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

195.   The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to FCA; Plaintiff and the California Class members did not know of these facts and FCA actively concealed these facts from Plaintiff and California Class members.

196.   Plaintiff and California Class members reasonably relied upon FCA's deception.  They had no way of knowing that FCA's representations were false and/or misleading.  As consumers, Plaintiff and California Class members did not and could not unravel FCA's deception on their own.  Rather, FCA intended to deceive Plaintiff and California Class members by concealing the true facts about the Affected Vehicles' emissions.

197.   FCA also concealed and suppressed material facts concerning what is evidently the true culture of FCA—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and members placed in its representations.  Consumers buy diesel cars from FCA because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing during real-world driving conditions.

198.    FCA's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the omissions played a significant role in the value of the vehicles.  As FCA well knew, its customers, including Plaintiff and California Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

199.    FCA had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to FCA, because FCA had exclusive knowledge as to such facts, and because FCA knew these facts were not known to or reasonably discoverable by Plaintiff or California Class members.  FCA also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff, FCA had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and California Class members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  FCA represented to Plaintiff and California Class members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

200.    FCA actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles

and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost FCA money, and it did so at the expense of Plaintiff and California Class members.

201.    On information and belief, FCA has still not made full and adequate disclosures and continues to defraud Plaintiff and California Class members by concealing material information regarding the emissions qualities of the Affected Vehicles.

202.    Plaintiff and California Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by FCA, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and members' actions were justified.  FCA was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or California Class members.

203.    Because of the concealment and/or suppression of the facts, Plaintiff and California Class members have sustained damage because they own vehicles that are diminished in value as a result of FCA's concealment of the true quality and quantity of those vehicles' emissions and FCA's failure to timely disclose the defect or defective design of the EcoDiesel Clean Diesel engine system, the actual emissions qualities and quantities of FCA-branded vehicles, and the serious issues engendered by FCA's corporate policies.  Had Plaintiff and California Class members been aware of the true emissions facts with regard to the Affected Vehicles, and FCA's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

204.    The value of Plaintiff's and California Class members' vehicles has diminished as a result of FCA's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the FCA brand name, which is attached to Plaintiff's and California Class members' vehicles, and made any reasonable consumer reluctant to

purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

205.    Bosch aided and abetted FCA's fraudulent concealment.

206.    Accordingly, FCA is liable to Plaintiff and California Class members for damages in an amount to be proven at trial.

207.    FCA's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and California Class members' rights and the representations that FCA made to them, in order to enrich FCA.  FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT II

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

208.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

209.    This claim is brought on behalf of the California Class against FCA and Bosch.

210.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

211.    FCA's conduct, as described herein, was and is in violation of the UCL.  FCA's conduct violates the UCL in at least the following ways:

    a.    By failing to disclose that the NOx reduction system in the Affected Vehicles does not effectively mitigate emissions;

    b.    By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

    c.    By knowingly and intentionally concealing from Plaintiff and the California Class members that the Affected Vehicles suffer from a defective emissions

control system and emit unlawfully high levels of pollutants under normal driving conditions;

    d.    By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

    e.    By deceptively obtaining EPA certification for Affected Vehicles;

    f.    By violating federal laws, including the Clean Air Act; and

    g.    By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

212.    FCA's misrepresentations and omissions alleged herein caused Plaintiff and the California Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the California Class members would not have purchased or leased these vehicles, would not have purchased or leased Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective EcoDiesel Clean Diesel engine systems that failed to comply with EPA and California emissions standards.

213.    Accordingly, Plaintiff and the California Class members have suffered injury in fact, including lost money or property, as a result of FCA's misrepresentations and omissions.

214.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by FCA under Cal. Bus. & Prof. Code § 17200.

215.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin FCA from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the California Class any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief set forth below.

# COUNT III

## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750 *ET SEQ.*)

216.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

217.    This claim is brought on behalf of the California Class against FCA and Bosch.

218.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

219.    The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

220.    Plaintiff and the California Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the California Class members, and FCA are "persons" as defined in Cal. Civ. Code § 1761(c).

221.    As alleged above, FCA made representations concerning the benefits, efficiency, performance, and safety features of the EcoDiesel Clean Diesel engine systems that were misleading.

222.    In purchasing or leasing the Affected Vehicles, Plaintiff and the California Class members were deceived by FCA's failure to disclose that the Affected Vehicles were equipped with defective EcoDiesel Clean Diesel engine systems that failed EPA and California emissions standards.

223.    FCA's conduct, as described herein, was and is in violation of the CLRA.  FCA's conduct violates at least the following enumerated CLRA provisions:

      a.    Cal. Civ. Code § 1770(a)(2): misrepresenting the approval or certification of goods.

      b.    Cal. Civ. Code § 1770(a)(3): misrepresenting the certification by another.

      c.    Cal. Civ. Code § 1770(a)(5): representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

      d.    Cal. Civ. Code § 1770(a)(7): representing that goods are of a particular standard, quality, or grade, if they are of another.

      e.    Cal. Civ. Code § 1770(a)(9): advertising goods with intent not to sell them as advertised.

f.      Cal. Civ. Code § 1770(a)(16): representing that goods have been supplied in accordance with a previous representation when they have not.

224.    Plaintiff and the California Class members have suffered injury in fact and actual damages resulting from FCA's material omissions and misrepresentations and sale of Affected Vehicles with defective emissions controls because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with FCA's promises.

225.    FCA knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the EcoDiesel Clean Diesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

226.    The facts concealed and omitted by FCA to Plaintiff and the California Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and the California Class members known about the defective nature of the Affected Vehicles, and their non-compliance with EPA requirements, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

227.    Plaintiff and the California Class members have provided FCA with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to FCA on November 28, 2016.

228.    Plaintiff's and the California Class members' injuries were proximately caused by FCA's unlawful and deceptive business practices.

229.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and members of the California Class seek injunctive relief for FCA's violations of the CLRA.

230.    While Plaintiff and the California Class members do not seek to recover damages under the CLRA in this initial Complaint, after mailing appropriate notice and demand in accordance with Cal. Civ. Code § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for compensatory and punitive damages.

1

## COUNT IV

2

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

3

231.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

4

232.    This claim is brought on behalf of the California Class against FCA and Bosch.

5

233.    Cal. Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with

6

7 intent directly or indirectly to dispose of real or personal property … to induce the public to enter

8 into any obligation relating thereto, to make or disseminate or cause to be made or disseminated …

9 from this state before the public in any state, in any newspaper or other publication, or any

10 advertising device, … or in any other manner or means whatever, including over the Internet, any

11 statement … which is untrue or misleading, and which is known, or which by the exercise of

12 reasonable care should be known, to be untrue or misleading."

234.    FCA caused to be made or disseminated through California and the U.S., through

13 advertising, marketing, and other publications, statements that were untrue or misleading, and which

14 were known, or which by the exercise of reasonable care should have been known, to FCA to be

15 untrue and misleading to consumers, including Plaintiff and the California Class members.

16

235.    FCA has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and

17 omissions regarding the functionality, reliability, environmental-friendliness, lawfulness, and safety

18 of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable

19 consumer.

20

236.    Plaintiff and the California Class members have suffered injury in fact, including the

21 loss of money or property, as a result of FCA's unfair, unlawful, and/or deceptive practices.  In

22 purchasing or leasing their Affected Vehicles, Plaintiff and the California Class members relied on

23 the misrepresentations and/or omissions of FCA with respect to the functionality, reliability,

24 environmental-friendliness, lawfulness, and safety of the Affected Vehicles.  FCA's representations

25 turned out not to be true because the Affected Vehicles are distributed with EcoDiesel engine

26 systems that include defective emissions controls.  Had Plaintiff and the California Class members

27 known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for

28

1    them.  Accordingly, Plaintiff and the California Class members overpaid for their Affected Vehicles

2    and did not receive the benefit of their bargain.

3        237.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

4    conduct of FCA's business.  FCA's wrongful conduct is part of a pattern or generalized course of

5    conduct that is still perpetuated and repeated, both in the State of California and nationwide.

6        238.    Plaintiff, individually and on behalf of the California Class, requests that this Court

7    enter such orders or judgments as may be necessary to enjoin FCA from continuing their unfair,

8    unlawful, and/or deceptive practices and to restore to Plaintiff and the other members any money

9    FCA acquired by unfair competition, including restitution and/or disgorgement, and for such other

10   relief set forth below.

11   **C.     Claims Brought on Behalf of the Alabama Subclass**

12                                  **COUNT I**

13                  **VIOLATIONS OF THE ALABAMA DECEPTIVE
                          TRADE PRACTICES ACT**

14                    **(ALA. CODE § 8-19-1 *ET SEQ.*)**

15       239.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

16       240.    Plaintiff brings this Count on behalf of the Alabama Subclass against FCA.

17       241.    Plaintiff and the Subclass members are "consumers" within the meaning of Ala. Code

18   § 8-19-3(2).

19       242.    Plaintiff, the Subclass members, and Defendant are "persons" within the meaning of

20   Ala. Code § 8-19-3(5).

21       243.    The Affected Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

22       244.    Defendant was and is engaged in "trade or commerce" within the meaning of Ala.

23   Code § 8-19-3(8).

24       245.    The Alabama Deceptive Trade Practices Act ("Alabama DTPA") declares several

25   specific actions to be unlawful, including:  "(5) Representing that goods or services have

26   sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have,"

27   "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods

28   are of a particular style or model, if they are of another," and "(27) Engaging in any other

1   unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce."

2   Ala. Code § 8-19-5.

3      246.    Plaintiff intends to assert a claim under the Alabama DTPA.  Plaintiff will make a

4   demand in satisfaction of Ala. Code § 8-19-3 and may amend this Complaint to assert claims under

5   the Alabama DTPA once the required 15 days have elapsed.  This paragraph is included for purposes

6   of notice only and is not intended to actually assert a claim under the Alabama DTPA.

7                                    **COUNT II**

8                            **FRAUDULENT CONCEALMENT**
                             **(BASED ON ALABAMA LAW)**

9      247.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

10     248.    This claim is brought on behalf of the Alabama Subclass against FCA.

11     249.    Defendant intentionally concealed that the NOx reduction system in the Affected

12  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

13  defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

14  emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

15  advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

16  compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

17  and denied Plaintiff and the other Subclass members information that is highly relevant to their

18  purchasing decision.

19     250.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

20  advertising and other forms of communication, including standard and uniform material provided

21  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

22  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

23  properly when driven in normal usage.

24     251.    Defendant knew these representations were false when made.

25     252.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

26  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

27  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

28

SECOND AMENDED CLASS ACTION COMPLAINT - 64
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

253.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

254.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

255.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

256.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

257.     Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

258.     Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

259.     Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

260.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

261.     Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

262.     Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

263.     Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

1   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

2   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

3   or would not have purchased or leased them at all.

4   264.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

5   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

6   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

7   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

8   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

9   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

10  vehicles.

11  265.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

12  amount to be proven at trial.

13  266.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

14  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

15  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

16  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

17  future, which amount is to be determined according to proof.

18  **D.     Claims Brought on Behalf of the Alaska Subclass**

19  **COUNT I**

20  **VIOLATION OF THE ALASKA UNFAIR TRADE
    PRACTICES AND CONSUMER PROTECTION ACT**

21  **(ALASKA STAT. ANN. § 45.50.471 *ET SEQ.*)**

22  198.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

23  267.   Plaintiff brings this Count on behalf of the Alaska Subclass against FCA.

24  268.   The Alaska Consumer Protection Act ("Alaska CPA") proscribes unfair methods of

25  competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful,

26  including: "(4) representing that goods or services have sponsorship, approval, characteristics,

27  ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship,

28  approval, status, affiliation, or connection that the person does not have;" "(6) representing that

goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" "(8) advertising goods or services with intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. Ann. § 45.50.471.  Plaintiff will make a demand in satisfaction of Alaska Stat. Ann. § 45.50.535, and may amend this Complaint to assert claims under the Alaska CPA once the required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Alaska CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ALASKA LAW)

269.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

270.    This claim is brought on behalf of the Alaska Subclass against FCA.

271.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

272.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

1    friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

2    properly when driven in normal usage.

3        273.    Defendant knew these representations were false when made.

4        274.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

5    members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

6    vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

7    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

8    Affected Vehicles turns off or is limited during normal driving conditions.

9        275.    Defendant had a duty to disclose that the NOx reduction system in the Affected

10   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

11   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

12   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

13   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

14   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

15   emission vehicles, efficient, and free from defects.

16       276.    As alleged in this Complaint, at all relevant times, Defendant has held out the

17   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

18   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

19   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

20   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

21   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

22   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

23   making other disclosures about the emission system deceptive.

24       277.    The truth about the defective emissions controls and Defendant's manipulations of

25   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

26   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

27   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

28   members.

SECOND AMENDED CLASS ACTION COMPLAINT - 70
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1

278.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

2

had no way of knowing that Defendant's representations were false and/or misleading.  As

3

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

4

their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

5

true facts about the Affected Vehicles' emissions.

6

279.    Defendant also concealed and suppressed material facts concerning what is evidently

7

the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

8

compliance with federal and state clean air laws and emissions regulations that are meant to protect

9

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

10

and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

11

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

12

environment.  And yet, that is precisely what the Affected Vehicles are doing.

13

280.    Defendant's false representations were material to consumers because they concerned

14

the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

15

state laws and regulations regarding clean air and emissions, and also because the representations

16

played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

17

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

18

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

19

281.    Defendant had a duty to disclose the emissions defect, defective design of emissions

20

controls, and violations with respect to the Affected Vehicles because details of the true facts were

21

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

22

facts, and because Defendant knew these facts were not known to or reasonably discoverable by

23

Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

24

affirmative representations about the qualities of the vehicles with respect to emissions, starting with

25

references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

26

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

27

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

28

respect to compliance with federal and state clean air laws and emissions regulations, and

Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

282.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

283.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

284.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

285.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result

of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

286.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

287.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

288.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**E.    Claims Brought on Behalf of the Arizona Subclass**

**COUNT I**

**VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT**
**(ARIZ. REV. STAT. § 44-1521 *ET SEQ.*)**

289.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

290.    Plaintiff brings this Count on behalf of the Arizona Subclass against FCA.

1

2

3

4

5

6

291.    The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."  Ariz. Rev. Stat. § 44-1522(A).

7

8

9

10

11

12

13

14

15

16

292.    In the course of Defendant's business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Affected Vehicles.

17

18

19

20

21

293.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

22

23

24

25

26

294.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

27

295.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

28

296.    Defendant's deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers.

297.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

298.    Defendant knew or should have known that its conduct violated the Arizona CFA.

299.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

     a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

     b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

     c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

300.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

301.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

302.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

1    their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

2    direct and natural consequence of Defendant's misrepresentations and omissions.

3         303.    Defendant's violations present a continuing risk to Plaintiff as well as to the general

4    public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

5         304.    Plaintiff and the Subclass seek monetary relief against Defendant in an amount to be

6    determined at trial.  Plaintiff and the Subclass also seek punitive damages because Defendant

7    engaged in aggravated and outrageous conduct with an evil mind.

8         305.    Plaintiff also seeks attorneys' fees and any other just and proper relief available.

9                                    **COUNT II**

10                          **FRAUDULENT CONCEALMENT**
                              **(BASED ON ARIZONA LAW)**

11   306.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

12   307.    This claim is brought on behalf of the Arizona Subclass against FCA.

13   308.    Defendant intentionally concealed that the NOx reduction system in the Affected

14   Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

15   defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

16   emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

17   advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

18   compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

19   and denied Plaintiff and the other Subclass members information that is highly relevant to their

20   purchasing decision.

21   309.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

22   advertising and other forms of communication, including standard and uniform material provided

23   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth friendly

24   and low-emission vehicles, complied with EPA regulations, and would perform and operate properly

25   when driven in normal usage.

26   310.    Defendant knew these representations were false when made.

27

28

311.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

312.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

313.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

314.     The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

315.     Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

1    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

2    true facts about the Affected Vehicles' emissions.

3        316.    Defendant also concealed and suppressed material facts concerning what is evidently

4    the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

5    compliance with federal and state clean air laws and emissions regulations that are meant to protect

6    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

7    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

8    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

9    environment.  And yet, that is precisely what the Affected Vehicles are doing.

10       317.    Defendant's false representations were material to consumers because they concerned

11   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

12   state laws and regulations regarding clean air and emissions, and also because the representations

13   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

14   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

15   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

16       318.    Defendant had a duty to disclose the emissions defect, defective design of emissions

17   controls, and violations with respect to the Affected Vehicles because details of the true facts were

18   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

19   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

20   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

21   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

22   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

23   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

24   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

25   respect to compliance with federal and state clean air laws and emissions regulations, and

26   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

27   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

28   truth, but the entire truth.  These omitted and concealed facts were material because they directly

SECOND AMENDED CLASS ACTION COMPLAINT - 78
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

2   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

3   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

4   or non-compliance, are material concerns to a consumer, including with respect to the emissions

5   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

6   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

7   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

8        319.   Defendant actively concealed and/or suppressed these material facts, in whole or in

9   part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

10  vehicles and did not or could not comply with federal and state laws governing clean air and

11  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

12  at the expense of Plaintiff and Subclass members.

13       320.   Defendant still has not made full and adequate disclosures, and continues to defraud

14  Plaintiff and Subclass members by concealing material information regarding the emissions qualities

15  of the Affected Vehicles.

16       321.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

17  herein, and they would not have acted as they did if they had known of the concealed and/or

18  suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

19  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

20  vehicles, or would have taken other affirmative steps in light of the information concealed from

21  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

22  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

23  members.

24       322.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

25  members have sustained damage because they own vehicles that are diminished in value as a result

26  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

27  Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the

28  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

323.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

324.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

325.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**F.    Claims Brought on Behalf of the Arkansas Subclass**

**COUNT I**

**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
**(ARK. CODE ANN. § 4-88-101 *ET SEQ.*)**

326.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

327.    This claim is brought on behalf of the Arkansas Subclass against FCA.

328.     Defendant, Plaintiff, and Arkansas Subclass members are "persons" within the meaning of the Arkansas Deceptive Trade Practices Act ("Arkansas DTPA"), Ark. Code Ann. § 4-88-102(5).

329.     The "Affected Vehicles" are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

330.     The Arkansas DTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10).  The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

331.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

332.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

333.     Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

334.     Defendant's actions as set forth above occurred in the conduct of trade or commerce.

335.     Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

336.     Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

337.     Defendant knew or should have known that its conduct violated the Arkansas DTPA.

338.     Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.     Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.     Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

339.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

1   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

2   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

3   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

4   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

5   emission vehicles, efficient, and free from defects.

6       340.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

7   members.

8       341.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss,

9   injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

10  the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

11  their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

12  direct and natural consequence of Defendant's misrepresentations and omissions.

13      342.    Defendant's violations present a continuing risk to Plaintiff as well as to the general

14  public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

15      343.    Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an

16  amount to be determined at trial; (b) statutory damages in the amount of $250 for Plaintiff and each

17  Arkansas Subclass member; (c) reasonable attorneys' fees; and (d) any other just and proper relief

18  available under Arkansas law.  Plaintiff also seeks punitive damages against Defendant because it

19  carried out despicable conduct with willful and conscious disregard of the rights of others.

20  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive

21  damages.

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON ARKANSAS LAW)**

22  

23  

24      344.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

25      345.    This claim is brought on behalf of the Arkansas Subclass against FCA.

26      346.    Defendant intentionally concealed that the NOx reduction system in the Affected

27  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

28

defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

347.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

348.    Defendant knew these representations were false when made.

349.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

350.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

351.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

1   details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important

2   facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal

3   driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat

4   device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

5   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

6   making other disclosures about the emission system deceptive.

7       352.    The truth about the defective emissions controls and Defendant's manipulations of

8   those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the

9   "defeat device," and non-compliance with EPA emissions requirements was known only to

10   Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively

11   concealed these facts from Plaintiff and Subclass members.

12      353.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

13   had no way of knowing that Defendant's representations were false and/or misleading.  As

14   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

16   true facts about the Affected Vehicles' emissions.

17      354.    Defendant also concealed and suppressed material facts concerning what is evidently

18   the true culture of Defendant—one characterized by an emphasis on profits and sales above

19   compliance with federal and state clean air laws and emissions regulations that are meant to protect

20   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

21   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

22   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

23   environment.  And yet, that is precisely what the Affected Vehicles are doing.

24      355.    Defendant's false representations were material to consumers because they concerned

25   the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with

26   applicable federal and state laws and regulations regarding clean air and emissions, and also because

27   the representations played a significant role in the value of the vehicles.  As Defendant well knew, its

28   customers, including Plaintiff and Subclass members, highly valued that the vehicles they were

purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

356.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

357.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

358.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

359.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

360.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

361.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

362.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

363.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**G.    Claims Brought on Behalf of the California Subclass**

## COUNT I

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)**

364.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

365.    This claim is brought on behalf of the California Subclass against FCA.

366.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

367.    Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following ways:

    a.    By failing to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions;

    b.    By selling and leasing Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions;

    c.    By knowingly and intentionally concealing from Plaintiff and the other Subclass members that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected

Vehicles suffer from a defective emissions control system and emit unlawfully high levels of pollutants under normal driving conditions;

d.   By marketing Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA-compliant diesel engine systems;

e.   By advertising and posting a miles per gallon ("MPG") rate that the Affected Vehicles do not meet and maintain;

f.   By violating federal laws, including the Clean Air Act; and

g.   By violating other California laws, including California consumer protection laws and California laws governing vehicle emissions and emission testing requirements.

368.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

369.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the Affected Vehicles would not meet and maintain the advertised MPG rate; and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

370.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

371.   Defendant knew or should have known that its conduct violated the UCL.

372.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.  Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.  Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

373.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and that the Affected Vehicles would not meet and maintain their advertised MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

374.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

375.  Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  They also were required to pay more for fuel than they reasonably anticipated based on Defendant's material representations.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

376.  Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

377.    Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these vehicles, would not have purchased or leased Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain defective engines that failed to comply with EPA and California emissions standards.

378.    Accordingly, Plaintiff and the other Subclass members have suffered injury in fact, including lost money or property, as a result of Defendant's misrepresentations and omissions.

379.    Plaintiff request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and members of the Subclass any money it acquired by unfair competition, including restitution and/or disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345, and for such other relief as may be appropriate.

**COUNT II**

**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750 *ET SEQ.*)**

380.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

381.    This claim is brought on behalf of the California Subclass against FCA.

382.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

383.    The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

384.    Plaintiff and the other Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, Subclass members, and Defendant are "persons" as defined in Cal. Civ. Code § 1761(c).

385.    As alleged above, Defendant made representations concerning the benefits, efficiency, performance, and safety features of the Affected Vehicles that were misleading.

386.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles were equipped with defective EcoDiesel that failed EPA and California emissions standards, and that the Affected Vehicles would not meet and maintain the advertised MPG rate.

387.     Defendant's conduct, as described herein, was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

    a.     Cal. Civ. Code § 1770(a)(2): Misrepresenting the approval or certification of goods.

    b.     Cal. Civ. Code § 1770(a)(3): Misrepresenting the certification by another.

    c.     Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have.

    d.     Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another.

    e.     Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

    f.     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

388.     Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

389.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  They were also deceived by Defendant's failure to disclose that the Affected Vehicles would not meet and maintain their advertised MPG rate.

390.     Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and

SECOND AMENDED CLASS ACTION COMPLAINT - 92
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

391.    Defendant knew or should have known that its conduct violated the CLRA.

392.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.        Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.        Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.        Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

393.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and would not meet and maintain the Affected Vehicles' posted MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

394.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

395.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  They also were

1    required to pay more for fuel than they reasonably anticipated based on Defendant's material

2    representations.  These injuries are the direct and natural consequence of Defendant's

3    misrepresentations and omissions.

4    396.    Defendant's violations present a continuing risk to Plaintiff as well as to the general

5    public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6    397.    Defendant knew, should have known, or was reckless in not knowing of the defective

7    design and/or manufacture of the EcoDiesel engines, and that the Affected Vehicles were not

8    suitable for their intended use.

9    398.    The facts concealed and omitted by Defendant from Plaintiff and the other Subclass

10   members are material in that a reasonable consumer would have considered them to be important in

11   deciding whether to purchase or lease the Affected Vehicles or pay a lower price.  Had Plaintiff and

12   the other Subclass members known about the defective nature of the Affected Vehicles, and their

13   non-compliance with EPA requirements, and the failure of the Affected Vehicles to meet and

14   maintain their posted MPG rate, they would not have purchased or leased the Affected Vehicles or

15   would not have paid the prices they paid.

16   399.    Plaintiff and the Subclass have provided Defendant with notice of their violations of

17   the CLRA pursuant to Cal. Civ. Code § 1782(a).

18   400.    Plaintiff's and the other Subclass members' injuries were proximately caused by

19   Defendant's unlawful and deceptive business practices.

20   401.    While Plaintiff do not seek to recover damages under the CLRA in this initial

21   Complaint, after mailing appropriate notice and demand in accordance with Cal. Civil Code

22   § 1782(a) & (d), Plaintiff will subsequently amend this Complaint to also include a request for

23   compensatory and punitive damages.

### COUNT III

### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500 *ET SEQ.*)

402.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

403.    This claim is brought on behalf of the California Subclass against FCA.

404.     Cal. Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

405.     Defendant caused to be made or disseminated through California and the U.S., through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Subclass members.

406.     Defendant has violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations and omissions regarding the functionality, reliability, environmental-friendliness, lawfulness, fuel efficiency, and safety of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

407.     Plaintiff and the other Subclass members have suffered injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their Affected Vehicles, Plaintiff and the other Subclass members relied on the misrepresentations and/or omissions of Defendant with respect to the functionality, reliability, environmental-friendliness, fuel efficiency, and lawfulness of the Affected Vehicles.  Defendant's representations turned out not to be true because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and the Affected Vehicles are distributed with EcoDiesel engines that include defective emissions controls and a "defeat device."  The Affected Vehicles also do not meet and maintain the posted MPG rate.  Had Plaintiff and the other Subclass members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

408.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

409.    Plaintiff, individually and on behalf of the other Subclass members, request that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the other Subclass members any money Defendant acquired by unfair competition, including restitution and/or disgorgement, and for such other relief as may be appropriate.

## COUNT IV

### FRAUDULENT CONCEALMENT
### (BASED ON CALIFORNIA LAW)

410.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

411.    This claim is brought on behalf of the California Subclass against FCA.

412.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

413.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

414.    Defendant knew these representations were false when made.

415.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

416.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

417.     As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

418.     The truth about the defective emissions controls and Defendant's manipulations of those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

419.     Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

420.     Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

421.     Defendant's false representations were material to consumers because they concerned the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

422.     Defendant had a duty to disclose the emissions defect, defective design of emissions controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the

vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

423.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

424.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

425.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

426.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, and its failure to meet and maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

427.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

428.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

429.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**H.**     **Claims Brought on Behalf of the Colorado Subclass**

2

**COUNT I**

3

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(COLO. REV. STAT. § 6-1-101 *ET SEQ.*)**

4

430.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

5

431.     Plaintiff brings this Count on behalf of the Colorado Subclass against FCA.

6

432.     Colorado's Consumer Protection Act (the "Colorado CPA") prohibits a person from

7

engaging in a "deceptive trade practice," which includes knowingly making "a false representation as

8

to the source, sponsorship, approval, or certification of goods," or "a false representation as to the

9

characteristics, ingredients, uses, benefits, alterations, or quantities of goods."  Colo. Rev. Stat. § 6-

10

1-105(1)(b), (e).  The Colorado CPA further prohibits "represent[ing] that goods … are of a

11

particular standard, quality, or grade … if he knows or should know that they are of another," and

12

"advertis[ing] goods … with intent not to sell them as advertised."  Colo. Rev. Stat. § 6-1-105(1)(g),

13

(i).

14

433.     Defendant is a "person" under § 6-1-102(6) of the Colorado CPA, Colo. Rev. Stat.

15

§ 6-1-101 *et seq*.

16

434.     Plaintiff and Colorado Subclass members are "consumers" for the purpose of Colo.

17

Rev. Stat. § 6-1-113(1)(a) who purchased or leased one or more Affected Vehicles.

18

435.     In the course of Defendant's business, Defendant willfully failed to disclose and

19

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

20

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

21

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

22

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

23

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

24

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

25

deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

26

uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

27

particular standard and quality when they are not; failing to reveal a material fact, the omission of

28

which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

436.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

437.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

438.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

439.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

440.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

441.    Defendant knew or should have known that its conduct violated the Colorado CPA.

442.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

443.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

444.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

445.  Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

446.  Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

447.  Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff and the Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and the discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for Plaintiff and each Subclass member.

448.  Plaintiff and the Subclass also seek declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON COLORADO LAW)**

449. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

450. Plaintiff brings this Count on behalf of the Colorado Subclass against FCA.

451. Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

452. Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

453. Defendant knew these representations were false when made.

454. The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

455. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

456.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

457.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

458.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

459.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1       460.    Defendant's false representations were material to consumers because they concerned

2   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

3   state laws and regulations regarding clean air and emissions, and also because the representations

4   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

5   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

6   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

7       461.    Defendant had a duty to disclose the emissions defect, defective design of emissions

8   controls, and violations with respect to the Affected Vehicles because details of the true facts were

9   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

10  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

11  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

12  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

13  references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

14  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

15  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

16  respect to compliance with federal and state clean air laws and emissions regulations, and

17  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

18  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

19  truth, but the entire truth.  These omitted and concealed facts were material because they directly

20  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

21  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

22  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

23  or non-compliance, are material concerns to a consumer, including with respect to the emissions

24  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

25  members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

26  were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

27      462.    Defendant actively concealed and/or suppressed these material facts, in whole or in

28  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

1   vehicles and did not or could not comply with federal and state laws governing clean air and

2   emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

3   at the expense of Plaintiff and Subclass members.

4          463.   Defendant still has not made full and adequate disclosures, and continues to defraud

5   Plaintiff and Subclass members by concealing material information regarding the emissions qualities

6   of the Affected Vehicles.

7          464.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

8   herein, and they would not have acted as they did if they had known of the concealed and/or

9   suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

10  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

11  vehicles, or would have taken other affirmative steps in light of the information concealed from

12  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

13  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

14  members.

15         465.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

16  members have sustained damage because they own vehicles that are diminished in value as a result

17  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

18  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

19  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

20  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

21  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

22  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

23  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

24  or would not have purchased or leased them at all.

25         466.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

26  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

27  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

28  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

SECOND AMENDED CLASS ACTION COMPLAINT - 107
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

2    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

3    vehicles.

4        467.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

5    amount to be proven at trial.

6        468.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

7    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

8    representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

9    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

10   future, which amount is to be determined according to proof.

11   **I.    Claims Brought on Behalf of the Connecticut Subclass**

12   **COUNT I**

13   **VIOLATIONS OF THE CONNECTICUT UNFAIR**
     **TRADE PRACTICES ACT**
14   **(CONN. GEN. STAT. ANN. § 42-110A *ET SEQ.*)**

15       469.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

16       470.    Plaintiff brings this Count on behalf of the Connecticut Subclass against FCA.

17       471.    Defendant and Plaintiff are each "persons" as defined by Conn. Gen. Stat. Ann. § 42-

18   110a(3).

19       472.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides that

20   "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices

21   in the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. § 42-110b(a).  The Connecticut

22   UTPA further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a).  In the

23   course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the

24   NOx reduction system in the Affected Vehicles turns off or is limited during normal driving

25   conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles,

26   that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light

27   of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels

28   of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair and

deceptive trade practices because its conduct (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers, competitors, or other business persons.  The harm caused to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and Defendant fraudulently concealed the defective nature of the Affected Vehicles from consumers.

473.    Defendant has also engaged in deceptive conduct because (1) it made representations, omissions, or engaged in other conduct likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material—that is, likely to affect consumer decisions or conduct.

474.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

475.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

476.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

477.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

478.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

479.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

480.    Defendant knew or should have known that its conduct violated the Connecticut UTPA.

481.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

482.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

1   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

2   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

3   emission vehicles, efficient, and free from defects.

4       483.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

5   members.

6       484.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss,

7   injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

8   the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

9   their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

10   direct and natural consequence of Defendant's misrepresentations and omissions.

11       485.    Defendant's violations present a continuing risk to Plaintiff as well as to the general

12   public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

13       486.    Plaintiff and the other Subclass members sustained damages as a result of Defendant's

14   unlawful acts, and are therefore entitled to damages and other relief as provided under the

15   Connecticut UTPA.

16       487.    Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violation

17   of the Connecticut UTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d).  A copy of this

18   Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection

19   of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

**COUNT II**

**FRAUDULENT NON-DISCLOSURE
(BASED ON CONNECTICUT LAW)**

20

21

22       488.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

23   herein.

24       489.    Plaintiff brings this Count on behalf of the Connecticut Subclass against FCA.

25       490.    Defendant intentionally concealed that the NOx reduction system in the Affected

26   Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

27   defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

28

SECOND AMENDED CLASS ACTION COMPLAINT - 111
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

491.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

492.    Defendant knew these representations were false when made.

493.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

494.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

495.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

1    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

2    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

3    making other disclosures about the emission system deceptive.

4         496.    The truth about the defective emissions controls and Defendant's manipulations of

5    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

6    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

7    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

8    members.

9         497.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

10   had no way of knowing that Defendant's representations were false and/or misleading.  As

11   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

12   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

13   true facts about the Affected Vehicles' emissions.

14        498.    Defendant also concealed and suppressed material facts concerning what is evidently

15   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

16   compliance with federal and state clean air laws and emissions regulations that are meant to protect

17   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

18   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

19   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

20   environment.  And yet, that is precisely what the Affected Vehicles are doing.

21        499.    Defendant's false representations were material to consumers because they concerned

22   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

23   state laws and regulations regarding clean air and emissions, and also because the representations

24   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

25   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

26   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

27        500.    Defendant had a duty to disclose the emissions defect, defective design of emissions

28   controls, and violations with respect to the Affected Vehicles because details of the true facts were

SECOND AMENDED CLASS ACTION COMPLAINT - 113
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

2  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

3  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

4  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

5  references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

6  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

7  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

8  respect to compliance with federal and state clean air laws and emissions regulations, and

9  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

10  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

11  truth, but the entire truth.  These omitted and concealed facts were material because they directly

12  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

13  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

14  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

15  or non-compliance, are material concerns to a consumer, including with respect to the emissions

16  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

17  members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

18  were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

19  501.    Defendant actively concealed and/or suppressed these material facts, in whole or in

20  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

21  vehicles and did not or could not comply with federal and state laws governing clean air and

22  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

23  at the expense of Plaintiff and Subclass members.

24  502.    Defendant still has not made full and adequate disclosures, and continues to defraud

25  Plaintiff and Subclass members by concealing material information regarding the emissions qualities

26  of the Affected Vehicles.

27  503.    Plaintiff and Subclass members were unaware of the omitted material facts referenced

28  herein, and they would not have acted as they did if they had known of the concealed and/or

1   suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

2   manufactured by Defendant, and/or would not have continued to drive their heavily polluting

3   vehicles, or would have taken other affirmative steps in light of the information concealed from

4   them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

5   of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

6   members.

7          504.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

8   members have sustained damage because they own vehicles that are diminished in value as a result

9   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

10  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

11  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

12  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

13  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

14  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

15  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

16  or would not have purchased or leased them at all.

17         505.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

18  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

19  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

20  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

21  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

22  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

23  vehicles.

24         506.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

25  amount to be proven at trial.

26         507.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

27  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

28  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**J.      Claims Brought on Behalf of the Delaware Subclass**

**COUNT I**

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT
(DEL. CODE § 2513 *ET SEQ.*)**

508.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

509.     Plaintiff brings this Count on behalf of the Delaware Subclass against FCA.

510.     Defendant is a "person" within the meaning of 6 Del. Code § 2511(7).

511.     The Delaware Consumer Fraud Act ("Delaware CFA") prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaigns, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendant has engaged in deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of the Affected Vehicles.

512.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

513.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

514.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

515.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

516.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

517.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

518.   Defendant knew or should have known that its conduct violated the Delaware CFA.

519.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

520.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

521.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

522.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

523.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

524.    Plaintiff seeks damages under the Delaware CFA for injury resulting from the direct and natural consequences of Defendant's unlawful conduct.  *See, e.g.*, *Stephenson v. Capano Dev.*,

1   *Inc.*, 462 A.2d 1069, 1077 (Del. 1983).  Plaintiff also seeks declaratory relief, attorneys' fees, and

2   any other just and proper relief available under the Delaware CFA.

3        525.    Defendant engaged in gross, oppressive, or aggravated conduct justifying the

4   imposition of punitive damages.

5                                   **COUNT II**

6                           **FRAUDULENT CONCEALMENT**
                            **(BASED ON DELAWARE LAW)**

7        526.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

8        527.    Plaintiff brings this Count on behalf of the Delaware Subclass against FCA.

9        528.    Defendant intentionally concealed that the NOx reduction system in the Affected

10  Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

11  defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

12  emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

13  advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

14  compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

15  and denied Plaintiff and the other Subclass members information that is highly relevant to their

16  purchasing decision.

17       529.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

18  advertising and other forms of communication, including standard and uniform material provided

19  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

20  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

21  properly when driven in normal usage.

22       530.    Defendant knew these representations were false when made.

23       531.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

24  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

25  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

26  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

27  Affected Vehicles turns off or is limited during normal driving conditions.

28

532.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

533.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

534.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

535.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

536.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

1    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

2    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

3    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

4    environment.  And yet, that is precisely what the Affected Vehicles are doing.

5           537.    Defendant's false representations were material to consumers because they concerned

6    the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

7    state laws and regulations regarding clean air and emissions, and also because the representations

8    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

9    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

10   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

11          538.    Defendant had a duty to disclose the emissions defect, defective design of emissions

12   controls, and violations with respect to the Affected Vehicles because details of the true facts were

13   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

14   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

15   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

16   affirmative representations about the qualities of its vehicles with respect to emissions, starting with

17   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

18   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

19   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

20   respect to compliance with federal and state clean air laws and emissions regulations, and

21   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

22   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

23   truth, but the entire truth.  These omitted and concealed facts were material because they directly

24   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

25   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

26   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

27   or non-compliance, are material concerns to a consumer, including with respect to the emissions

28   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

539.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that the Affected Vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

540.   Defendant has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

541.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

542.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of the vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

543.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the brand name attached to Plaintiff's and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

544.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

545.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**K.     Claims Brought on Behalf of the District of Columbia Subclass**

### COUNT I

### VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT (D.C. CODE § 28-3901 *ET SEQ.*)

546.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

547.     Plaintiff brings this Count on behalf of the D.C. Subclass against FCA.

548.     Defendant is a "person" under the Consumer Protection Procedures Act ("District of Columbia CPPA"), D.C. Code § 28-3901(a)(1).

549.     Subclass members are "consumers," as defined by D.C. Code § 28-3901(1)(2), who purchased or leased one or more Affected Vehicles.

550.     Defendant's actions as set forth herein constitute "trade practices" under D.C. Code § 28-3901.

551.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

SECOND AMENDED CLASS ACTION COMPLAINT - 123
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

2    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

3    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

4    emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

5    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

6    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

7    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

8    particular standard and quality when they are not; failing to reveal a material fact, the omission of

9    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

10   the consumer; making a representation of fact or statement of fact material to the transaction such

11   that a person reasonably believes the represented or suggested state of affairs to be other than it

12   actually is; and failing to reveal facts that are material to the transaction in light of representations of

13   fact made in a positive manner.

14          552.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

15   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

16   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

17   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

18   including NOx, as described above.

19          553.    Plaintiff and Subclass members reasonably relied upon Defendant's false

20   misrepresentations.  They had no way of knowing that Defendant's representations were false and

21   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

22   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

23   their own.

24          554.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

25          555.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

26   reasonable consumers.

27          556.    Defendant intentionally and knowingly misrepresented material facts regarding the

28   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

SECOND AMENDED CLASS ACTION COMPLAINT - 124
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

557.     Defendant knew or should have known that its conduct violated the District of Columbia CPPA.

558.     Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

559.     Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

560.     Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

561.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

562.     As a direct and proximate result of Defendant's violations of the District of Columbia CPPA, Plaintiff and D.C. Subclass members have suffered injury in fact and/or actual damage.

563.     Plaintiff and D.C. Subclass members are entitled to recover treble damages or $1,500, whichever is greater, punitive damages, reasonable attorneys' fees, and any other relief the Court deems proper, under D.C. Code § 28-3901.

564.   Plaintiff seeks punitive damages against Defendant because Defendant's conduct evidences malice and/or egregious conduct.  Defendant maliciously and egregiously misrepresented the safety, cleanliness, efficiency and reliability of the Affected Vehicles, deceived Subclass members, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting their defective and environmentally dirty engines.

565.   Defendant's unlawful conduct constitutes malice warranting punitive damages.

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON DISTRICT OF COLUMBIA LAW)

566.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

567.   This claim is brought on behalf of the District of Columbia Subclass against FCA.

568.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, did not meet and maintain the advertised MPG rate, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

569.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

570.   Defendant knew these representations were false when made.

571.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

advertising campaign, non-EPA-compliant, costly in that Plaintiff and other Subclass members had to pay more for fuel than they reasonably expected, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

572.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

573.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about its EcoDiesel, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

574.    The truth about the defective emissions controls and Defendant's manipulations of those controls, failure to meet and maintain the advertised MPG rate, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

575.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

1    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

2    true facts about the Affected Vehicles' emissions.

3         576.    Defendant also concealed and suppressed material facts concerning what is evidently

4    the true culture of Defendant—one characterized by an emphasis on profits and sales above

5    compliance with federal and state clean air laws and emissions regulations that are meant to protect

6    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

7    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

8    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

9    environment.  And yet, that is precisely what the Affected Vehicles are doing.

10        577.    Defendant's false representations were material to consumers because they concerned

11   the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with

12   applicable federal and state laws and regulations regarding clean air and emissions, and also because

13   the representations played a significant role in the value of the vehicles.  As Defendant well knew, its

14   customers, including Plaintiff and Subclass members, highly valued that the vehicles they were

15   purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid

16   accordingly.

17        578.    Defendant had a duty to disclose the emissions defect, defective design of emissions

18   controls, failure to meet and maintain the advertised MPG rate, and violations with respect to the

19   Affected Vehicles because details of the true facts were known and/or accessible only to Defendant,

20   because Defendant had exclusive knowledge as to such facts, and because Defendant knew these

21   facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant

22   also had a duty to disclose because it made general affirmative representations about the qualities of

23   the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel*

24   *cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete

25   without the disclosure of the additional facts set forth above regarding the actual emissions of the

26   vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air

27   laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.

28   Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the

duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

579.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

580.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

581.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

582.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel

1    efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel

2    engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues

3    engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of

4    the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth

5    and compliance with applicable federal and state laws and regulations, and its failure to meet and

6    maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or

7    certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or

8    leased them at all.

9          583.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

10   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

11   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

12   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

13   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

14   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

15   vehicles.

16         584.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

17   amount to be proven at trial.

18         585.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

19   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

20   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

21   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

22   future, which amount is to be determined according to proof.

23   **L.       Claims Brought on Behalf of the Florida Subclass**

24                                              **COUNT I**

25           **VIOLATIONS OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE**
                                         **PRACTICES ACT**
26                                **(FLA. STAT. § 501.201 *ET SEQ.*)**

27         586.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

28   herein.

SECOND AMENDED CLASS ACTION COMPLAINT - 130
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

587.	Plaintiff brings this Count on behalf of the Florida Subclass against FCA.

588.	Plaintiff and Subclass members are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA"), Fla. Stat. § 501.203(7).

589.	Defendant engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

590.	Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  Defendant participated in unfair and deceptive trade practices that violated the Florida UDTPA as described herein.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Fla. Stat. § 501.204(1).  Defendant's conduct offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is likely to mislead consumers.

591.	In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

592.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

593.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

594.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

595.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

596.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

597.    Defendant knew or should have known that its conduct violated the Florida UDTPA.

598.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

599. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

600. Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

601. Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

602. Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

603. Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON FLORIDA LAW)**

604. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

605. Plaintiff brings this Count on behalf of the Florida Subclass against FCA.

606. Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

607. Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

608. Defendant knew these representations were false when made.

609. The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

610. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

611. As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles. Defendant disclosed certain

1    details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

2    important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

3    normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

4    "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

5    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

6    making other disclosures about the emission system deceptive.

7          612.    The truth about the defective emissions controls and Defendant's manipulations of

8    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

9    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

10   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

11   members.

12         613.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

13   had no way of knowing that Defendant's representations were false and/or misleading.  As

14   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

16   true facts about the Affected Vehicles' emissions.

17         614.    Defendant also concealed and suppressed material facts concerning what is evidently

18   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

19   compliance with federal and state clean air laws and emissions regulations that are meant to protect

20   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

21   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

22   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

23   environment.  And yet, that is precisely what the Affected Vehicles are doing.

24         615.    Defendant's false representations were material to consumers because they concerned

25   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

26   state laws and regulations regarding clean air and emissions, and also because the representations

27   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

28

SECOND AMENDED CLASS ACTION COMPLAINT - 135
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

2   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

3       616.    Defendant had a duty to disclose the emissions defect, defective design of emissions

4   controls, and violations with respect to the Affected Vehicles because details of the true facts were

5   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

6   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

7   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

8   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

9   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

10  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

11  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

12  respect to compliance with federal and state clean air laws and emissions regulations, and

13  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

14  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

15  truth, but the entire truth.  These omitted and concealed facts were material because they directly

16  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

17  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

18  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

19  or non-compliance, are material concerns to a consumer, including with respect to the emissions

20  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

21  members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

22  were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

23      617.    Defendant actively concealed and/or suppressed these material facts, in whole or in

24  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

25  vehicles and did not or could not comply with federal and state laws governing clean air and

26  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

27  at the expense of Plaintiff and Subclass members.

28

618.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

619.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

620.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

621.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

622.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

623.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**M.      Claims Brought on Behalf of the Georgia Subclass**

**COUNT I**

**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
(GA. CODE ANN. § 10-1-390 *ET SEQ.*)**

624.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

625.    This claim is made on behalf of the Georgia Subclass against FCA.

626.    The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised."  Ga. Code. Ann. § 10-1-393(b).  Plaintiff will make a demand in satisfaction of Ga. Code. Ann. § 10-1-399(b), and may amend this Complaint to assert claims under the Georgia FBPA once the required notice period has elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON GEORGIA LAW)**

627.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

628.    This claim is brought on behalf of the Georgia Subclass against FCA.

629.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

630.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

631.    Defendant knew these representations were false when made.

632.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

633.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

634.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

635.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

636.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

637.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

638.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations

1    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

2    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

3    leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4         639.    Defendant had a duty to disclose the emissions defect, defective design of emissions

5    controls, and violations with respect to the Affected Vehicles because details of the true facts were

6    known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

7    facts, and because Defendant knew these facts were not known to or reasonably discoverable by

8    Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

9    affirmative representations about the qualities of the vehicles with respect to emissions, starting with

10   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

11   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

12   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

13   respect to compliance with federal and state clean air laws and emissions regulations, and

14   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

15   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

16   truth, but the entire truth.  These omitted and concealed facts were material because they directly

17   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

18   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

19   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

20   or non-compliance, are material concerns to a consumer, including with respect to the emissions

21   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

22   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

23   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

24        640.    Defendant actively concealed and/or suppressed these material facts, in whole or in

25   part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

26   vehicles and did not or could not comply with federal and state laws governing clean air and

27   emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

28   at the expense of Plaintiff and Subclass members.

641.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

642.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

643.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

644.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

645.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

646.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**N.    Claims Brought on Behalf of the Hawaii Subclass**

## COUNT I

### UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII LAW
### (HAW. REV. STAT. § 480 *ET SEQ.*)

556.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

557.    This claim is brought on behalf of the Hawaii Subclass against FCA.

569.    Defendant is a "person" under Haw. Rev. Stat. § 480-1.

570.    Subclass members are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Affected Vehicles.

571.    Defendant's acts or practices as set forth above occurred in the conduct of trade or commerce.

572.    Haw. Rev. Stat. § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

647.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

648.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

649.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

650.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

651.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

652.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

653.   Defendant knew or should have known that its conduct violated Haw. Rev. Stat. § 480 *et seq.*

654.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

655.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

656.    Pursuant to Haw. Rev. Stat. § 480-13, Plaintiff and the Hawaii Subclass seek monetary relief against Defendant measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

657.    Under Haw. Rev. Stat. § 480-13.5, Plaintiff seeks an additional award against Defendant of up to $10,000 for each violation directed at a Hawaiian elder.  Defendant knew or should have known that its conduct was directed to one or more Subclass members who are elders.  Defendant's conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder.  One or more Hawaii Subclass members who are elders are substantially more vulnerable to Defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendant's conduct.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON HAWAII LAW)**

658.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

659.    This claim is brought on behalf of the Hawaii Subclass against FCA.

660.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

661.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

662.    Defendant knew these representations were false when made.

663.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

664.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

665.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

666.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

667.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

668.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

1    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

2    environment.  And yet, that is precisely what the Affected Vehicles are doing.

3        669.    Defendant's false representations were material to consumers because they concerned

4    the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

5    state laws and regulations regarding clean air and emissions, and also because the representations

6    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

7    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

8    leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

9        670.    Defendant had a duty to disclose the emissions defect, defective design of emissions

10   controls, and violations with respect to the Affected Vehicles because details of the true facts were

11   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

12   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

13   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

14   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

15   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

16   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

17   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

18   respect to compliance with federal and state clean air laws and emissions regulations, and

19   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

20   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

21   truth, but the entire truth.  These omitted and concealed facts were material because they directly

22   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

23   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

24   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

25   or non-compliance, are material concerns to a consumer, including with respect to the emissions

26   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

27   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

28   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

671.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

672.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

673.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

674.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

675.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

676.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

677.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**O.     Claims Brought on Behalf of the Idaho Subclass**

**COUNT I**

**VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT**
**(IDAHO CODE § 48-601 *ET SEQ.*)**

678.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

679.     Plaintiff brings this Count on behalf of the Idaho Subclass against FCA.

680.     Defendant is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Code § 48-602(1).

681.     Defendant's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Code § 48-602(2).

682.     Idaho Code § 48-603 prohibits the following conduct in trade or commerce:  engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer; and engaging in any unconscionable method, act or practice in the conduct of trade or commerce, as provided in section 48-603C.

683.     In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

1  during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

2  gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

3  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

4  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

5  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

6  deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

7  uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

8  particular standard and quality when they are not; failing to reveal a material fact, the omission of

9  which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

10  the consumer; making a representation of fact or statement of fact material to the transaction such

11  that a person reasonably believes the represented or suggested state of affairs to be other than it

12  actually is; and failing to reveal facts that are material to the transaction in light of representations of

13  fact made in a positive manner.

14  684.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

15  members were deceived by Defendant's failure to disclose that the NOx reduction system in the

16  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

17  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

18  including NOx, as described above.

19  685.   Plaintiff and Subclass members reasonably relied upon Defendant's false

20  misrepresentations.  They had no way of knowing that Defendant's representations were false and

21  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

22  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

23  their own.

24  686.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

25  687.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

26  reasonable consumers.

27  688.   Defendant intentionally and knowingly misrepresented material facts regarding the

28  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

SECOND AMENDED CLASS ACTION COMPLAINT - 151
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

689. Defendant knew or should have known that its conduct violated the Idaho CPA.

690. Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

691. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

692. Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

693. Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

694. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

695.     Plaintiff also seeks attorneys' fees and any other just and proper relief available under the Idaho CPA.

696.     Plaintiff also seeks punitive damages against Defendant because Defendant's conduct evidences an extreme deviation from reasonable standards.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON IDAHO LAW)

697.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

698.     This claim is brought on behalf of the Idaho Subclass against FCA.

699.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

700.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

701.     Defendant knew these representations were false when made.

702.     The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

1    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

2    Affected Vehicles turns off or is limited during normal driving conditions.

3        703.    Defendant had a duty to disclose that the NOx reduction system in the Affected

4    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

5    defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

6    powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

7    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

8    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

9    emission vehicles, efficient, and free from defects.

10       704.    As alleged in this Complaint, at all relevant times, Defendant has held out the

11   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

12   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

13   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

14   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

15   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

16   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

17   making other disclosures about the emission system deceptive.

18       705.    The truth about the defective emissions controls and Defendant's manipulations of

19   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

20   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

21   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

22   members.

23       706.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

24   had no way of knowing that Defendant's representations were false and/or misleading.  As

25   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

26   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

27   true facts about the Affected Vehicles' emissions.

28

707.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

708.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

709.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

710.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

711.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

712.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

713.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

714.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

715.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

716.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**P.      Claims Brought on Behalf of the Illinois Subclass**

**COUNT I**

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT
(815 ILL. COMP. STAT. 505/1 *ET SEQ.* AND
720 ILL. COMP. STAT. 295/1A)**

717.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

718.     This claim is brought on behalf of the Illinois Subclass against FCA.

719.     Defendant is a "person" as that term is defined in 815 Ill. Comp. Stat. 505/1(c).

720.     Plaintiff and the Subclass members are "consumers" as that term is defined in 815 Ill. Comp. Stat. 505/1(e).

721.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby."  815 Ill. Comp. Stat. 505/2.

722.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

723.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

724.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and

1  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

2  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

3  their own.

4     725.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

5     726.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

6  reasonable consumers.

7     727.    Defendant intentionally and knowingly misrepresented material facts regarding the

8  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

9     728.    Defendant knew or should have known that its conduct violated the Illinois CFA.

10    729.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

11 emissions systems manipulation because Defendant:

12       a.    Possessed exclusive knowledge that it manipulated the emissions system in the

13           Affected Vehicles to turn off or limit effectiveness in normal driving

14           conditions;

15       b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

16       c.    Made incomplete representations that it manipulated the emissions system in

17           the Affected Vehicles to turn off or limit effectiveness in normal driving

18           conditions, while purposefully withholding material facts from Plaintiff and

19           the Subclass that contradicted these representations.

20    730.    Defendant had a duty to disclose that the NOx reduction system in the Affected

21 Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

22 defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

23 powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

24 were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

25 Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

26 emission vehicles, efficient, and free from defects.

27    731.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

28 members.

732.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

733.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

734.     Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff and the Subclass members seek monetary relief against Defendant in the amount of actual damages, as well as punitive damages because Defendant acted with fraud and/or malice and/or was grossly negligent.

735.     Plaintiff also seeks punitive damages, attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et seq.*

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON ILLINOIS LAW)

736.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

737.     This claim is brought on behalf of the Illinois Subclass against FCA.

738.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

739.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided

1  with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

2  friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

3  properly when driven in normal usage.

4       740.   Defendant knew these representations were false when made.

5       741.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

6  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

7  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

8  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

9  Affected Vehicles turns off or is limited during normal driving conditions.

10       742.   Defendant had a duty to disclose that the NOx reduction system in the Affected

11  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

12  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

13  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

14  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

15  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

16  emission vehicles, efficient, and free from defects.

17       743.   As alleged in this Complaint, at all relevant times, Defendant has held out the

18  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

19  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

20  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

21  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

22  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

23  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

24  making other disclosures about the emission system deceptive.

25       744.   The truth about the defective emissions controls and Defendant's manipulations of

26  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

27  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

28

1    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

2    members.

3        745.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

4    had no way of knowing that Defendant's representations were false and/or misleading.  As

5    consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

6    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

7    true facts about the Affected Vehicles' emissions.

8        746.    Defendant also concealed and suppressed material facts concerning what is evidently

9    the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

10   compliance with federal and state clean air laws and emissions regulations that are meant to protect

11   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

12   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

13   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

14   environment.  And yet, that is precisely what the Affected Vehicles are doing.

15       747.    Defendant's false representations were material to consumers because they concerned

16   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

17   state laws and regulations regarding clean air and emissions, and also because the representations

18   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

19   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

20   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

21       748.    Defendant had a duty to disclose the emissions defect, defective design of emissions

22   controls, and violations with respect to the Affected Vehicles because details of the true facts were

23   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

24   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

25   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

26   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

27   references to them as *reduced-emissions diesel cars* and as compliant with all laws in each state,

28   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

749.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

750.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

751.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

SECOND AMENDED CLASS ACTION COMPLAINT - 163
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

752.     Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

753.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

754.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

755.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**Q.      Claims Brought on Behalf of the Kansas Subclass**

2

### COUNT I

3

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (KAN. STAT. ANN. § 50-623 *ET SEQ.*)

4

756.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

5

757.     Plaintiff brings this Count on behalf of the Kansas Subclass against FCA.

6

645.     Defendant is a "supplier" under the Kansas Consumer Protection Act ("Kansas

7

CPA"), Kan. Stat. Ann. § 50-624(l).

8

750.     Kansas Subclass members are "consumers," within the meaning of Kan. Stat. Ann. §

9

50-624(b), who purchased or leased one or more Affected Vehicles.

10

751.     The sale of the Affected Vehicles to the Kansas Subclass members was a "consumer

11

transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

12

752.     The Kansas CPA states "[n]o supplier shall engage in any deceptive act or practice in

13

connection with a consumer transaction," Kan. Stat. Ann. § 50-626(a), and that deceptive acts or

14

practices include: (1) knowingly making representations or with reason to know that "(A) Property or

15

services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or

16

quantities that they do not have;" and "(D) property or services are of particular standard, quality,

17

grade, style or model, if they are of another which differs materially from the representation;" "(2)

18

the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or

19

ambiguity as to a material fact;" and "(3) the willful failure to state a material fact, or the willful

20

concealment, suppression, or omission of a material fact."  The Kansas CPA also provides that "[n]o

21

supplier shall engage in any unconscionable act or practice in connection with a consumer

22

transaction." Kan. Stat. Ann. § 50-627(a).

23

753.     In the course of Defendant's business, Defendant willfully failed to disclose and

24

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

25

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

26

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

27

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

28

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

758.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

759.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

760.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

761.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

762.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

763.    Defendant knew or should have known that its conduct violated the Kansas CPA.

764.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

765.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

766.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

767.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

768.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

754.    Pursuant to Kan. Stat. Ann. § 50-634, Plaintiff and the Kansas Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $10,000 for Plaintiff and each Kansas Subclass member.

772.    Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623 *et seq*.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON KANSAS LAW)

769.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

770.    This claim is brought on behalf of the Kansas Subclass against FCA.

771.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

772.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

773.    Defendant knew these representations were false when made.

774.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

775.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

776.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

777.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

778.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

779.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

780.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

781.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

1    members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

2    were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

3           782.   Defendant actively concealed and/or suppressed these material facts, in whole or in

4    part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

5    vehicles and did not or could not comply with federal and state laws governing clean air and

6    emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

7    at the expense of Plaintiff and Subclass members.

8           783.   Defendant still has not made full and adequate disclosures, and continues to defraud

9    Plaintiff and Subclass members by concealing material information regarding the emissions qualities

10   of the Affected Vehicles.

11          784.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

12   herein, and they would not have acted as they did if they had known of the concealed and/or

13   suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

14   manufactured by Defendant, and/or would not have continued to drive their heavily polluting

15   vehicles, or would have taken other affirmative steps in light of the information concealed from

16   them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

17   of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

18   members.

19          785.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

20   members have sustained damage because they own vehicles that are diminished in value as a result

21   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

22   Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

23   actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

24   by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

25   emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

26   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

27   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

28   or would not have purchased or leased them at all.

786.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

787.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

788.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**R.     Claims Brought on Behalf of the Kentucky Subclass**

### COUNT I

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT
(KY. REV. STAT. ANN. § 367.110 *ET SEQ.*)**

789.     Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

790.     Plaintiff brings this Count on behalf of the Kentucky Subclass against FCA.

791.     Defendant, Plaintiff, and each member of the Kentucky Subclass is a "person" within the meaning of the Ky. Rev. Stat. Ann. § 367.110(1).

792.     Defendant engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. Ann. § 367.110(2).

793.     The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."  Ky. Rev. Stat. Ann. § 367.170(1).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in deceptive business practices prohibited by the Kentucky CPA.

794.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

795.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

796.    Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

797.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

798.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

799.    Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

800.    Defendant knew or should have known that its conduct violated the Kentucky CPA.

801.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

802.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

803.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

804.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

805.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

806.    Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiff and the Subclass seek to recover actual damages in an amount to be determined at trial; declaratory relief; attorneys' fees; and any other just and proper relief available under Ky. Rev. Stat. Ann. § 367.220.

## COUNT II

### FRAUD BY OMISSION
### (BASED ON KENTUCKY LAW)

807.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

808.    This claim is brought on behalf of the Kentucky Subclass against FCA.

809.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

810.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

SECOND AMENDED CLASS ACTION COMPLAINT - 175
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

811.    Defendant knew these representations were false when made.

812.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

813.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

814.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

815.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

816.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

817.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

818.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

819.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

1   truth, but the entire truth.  These omitted and concealed facts were material because they directly

2   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

3   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

4   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

5   or non-compliance, are material concerns to a consumer, including with respect to the emissions

6   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

7   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

8   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

9       820.    Defendant actively concealed and/or suppressed these material facts, in whole or in

10  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

11  vehicles and did not or could not comply with federal and state laws governing clean air and

12  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

13  at the expense of Plaintiff and Subclass members.

14      821.    Defendant still has not made full and adequate disclosures, and continues to defraud

15  Plaintiff and Subclass members by concealing material information regarding the emissions qualities

16  of the Affected Vehicles.

17      822.    Plaintiff and Subclass members were unaware of the omitted material facts referenced

18  herein, and they would not have acted as they did if they had known of the concealed and/or

19  suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

20  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

21  vehicles, or would have taken other affirmative steps in light of the information concealed from

22  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

23  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

24  members.

25      823.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

26  members have sustained damage because they own vehicles that are diminished in value as a result

27  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

28  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

SECOND AMENDED CLASS ACTION COMPLAINT - 178
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

824.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

825.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

826.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**S.      Claims Brought on Behalf of the Louisiana Subclass**

**COUNT I**

**VIOLATION OF THE LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (LA. STAT. ANN. § 51:1401 *ET SEQ.*)**

827.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

828.     This claim is brought only on behalf of members of the Louisiana Subclass against FCA.

689.    Defendant, Plaintiff, and Louisiana Subclass members are "persons" within the meaning of the La. Stat. Ann. § 51:1402(8).

836.    Plaintiff and Louisiana Subclass members are "consumers" within the meaning of La. Stat. Ann. § 51:1402(1).

837.    Defendant engaged in "trade" or "commerce" within the meaning of La. Stat. Ann. § 51:1402(9).

838.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Stat. Ann. § 51:1405(A).

829.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

830.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

1    controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

2    including NOx, as described above.

3        831.    Plaintiff and Subclass members reasonably relied upon Defendant's false

4    misrepresentations.  They had no way of knowing that Defendant's representations were false and

5    gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

6    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

7    their own.

8        832.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

9        833.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

10   reasonable consumers.

11       834.    Defendant intentionally and knowingly misrepresented material facts regarding the

12   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

13       835.    Defendant knew or should have known that its conduct violated the Louisiana CPL.

14       836.    Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

15   emissions systems manipulation because Defendant:

16       a.    Possessed exclusive knowledge that it manipulated the emissions system in the

17             Affected Vehicles to turn off or limit effectiveness in normal driving

18             conditions;

19       b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

20       c.    Made incomplete representations that it manipulated the emissions system in

21             the Affected Vehicles to turn off or limit effectiveness in normal driving

22             conditions, while purposefully withholding material facts from Plaintiff and

23             the Subclass that contradicted these representations.

24       837.    Defendant had a duty to disclose that the NOx reduction system in the Affected

25   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

26   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

27   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

28   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

838.    As a direct and proximate result of Defendant's violations of the Louisiana CPL, Plaintiff and the Louisiana Subclass have suffered injury in fact and/or actual damage.

839.    Pursuant to La. Stat. Ann. § 51:1409, Plaintiff and the Louisiana Subclass seek to recover actual damages in an amount to be determined at trial; treble damages for Defendant's knowing violations of the Louisiana CPL; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Stat. Ann. § 51:1409.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON LOUISIANA LAW)

840.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

841.    This claim is brought on behalf of the Louisiana Subclass against FCA.

842.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

843.    Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

844.    Defendant knew these representations were false when made.

845.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

846.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

847.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

848.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

849.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

1    consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

3    true facts about the Affected Vehicles' emissions.

4            850.    Defendant also concealed and suppressed material facts concerning what is evidently

5    the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

6    compliance with federal and state clean air laws and emissions regulations that are meant to protect

7    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

8    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

9    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

10   environment.  And yet, that is precisely what the Affected Vehicles are doing.

11           851.    Defendant's false representations were material to consumers because they concerned

12   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

13   state laws and regulations regarding clean air and emissions, and also because the representations

14   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

15   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

16   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

17           852.    Defendant had a duty to disclose the emissions defect, defective design of emissions

18   controls, and violations with respect to the Affected Vehicles because details of the true facts were

19   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

20   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

21   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

22   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

23   references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

24   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

25   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

26   respect to compliance with federal and state clean air laws and emissions regulations, and

27   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

28   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

SECOND AMENDED CLASS ACTION COMPLAINT - 184
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

853.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

854.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

855.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

856.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

857.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

858.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

859.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**T.      Claims Brought on Behalf of the Maine Subclass**

**COUNT I**

**VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT
(ME. REV. STAT. ANN. TIT. 5, § 205-A *ET SEQ.*)**

860.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

861.    This claim is brought on behalf of the Maine Subclass against FCA.

862.     Plaintiff intends to assert a claim under the Maine Unfair Trade Practices Act ("Maine UTPA") which makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. tit. 5, § 207.  Plaintiff will make a demand in satisfaction of Me. Rev. Stat. Ann. tit. 5, § 213(A), and may amend this Complaint to assert claims under the Maine UTPA once the required 30 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the Maine UTPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MAINE LAW)

863.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

864.     This claim is brought on behalf of the Maine Subclass against FCA.

865.     Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

866.     Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

867.     Defendant knew these representations were false when made.

868.    The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

869.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

870.    As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

871.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

872.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

1    their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

2    true facts about the Affected Vehicles' emissions.

3        873.    Defendant also concealed and suppressed material facts concerning what is evidently

4    the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

5    compliance with federal and state clean air laws and emissions regulations that are meant to protect

6    the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

7    and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

8    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

9    environment.  And yet, that is precisely what the Affected Vehicles are doing.

10       874.    Defendant's false representations were material to consumers because they concerned

11   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

12   state laws and regulations regarding clean air and emissions, and also because the representations

13   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

14   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

15   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

16       875.    Defendant had a duty to disclose the emissions defect, defective design of emissions

17   controls, and violations with respect to the Affected Vehicles because details of the true facts were

18   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

19   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

20   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

21   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

22   references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

23   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

24   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

25   respect to compliance with federal and state clean air laws and emissions regulations, and

26   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

27   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

28   truth, but the entire truth.  These omitted and concealed facts were material because they directly

impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

876. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

877. Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

878. Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

879. Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

880.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

881.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

882.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**U.    Claims Brought on Behalf of the Maryland Subclass**

**COUNT I**

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT
(MD. CODE ANN., COM. LAW § 13-101 *ET SEQ.*)**

883.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

884.    This claim is brought only on behalf of members of the Maryland Subclass against FCA.

885.    Defendant, Plaintiff, and the Maryland Subclass members are "persons" within the meaning of Md. Code Ann., Com. Law § 13-101(h).

886.    The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale of any consumer good.  Md. Code Ann., Com. Law Code § 13-303.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, that the vehicles have a "defeat device," and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair and deceptive trade practices.  Defendant's acts and practices offend public policy; were immoral, unethical, oppressive, or unscrupulous; caused substantial injury to consumers; had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

887.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it

1  actually is; and failing to reveal facts that are material to the transaction in light of representations of

2  fact made in a positive manner.

3  888.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

4  members were deceived by Defendant's failure to disclose that the NOx reduction system in the

5  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

6  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

7  including NOx, as described above.

8  889.   Plaintiff and Subclass members reasonably relied upon Defendant's false

9  misrepresentations.  They had no way of knowing that Defendant's representations were false and

10  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

11  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

12  their own.

13  890.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

14  891.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

15  reasonable consumers.

16  892.   Defendant intentionally and knowingly misrepresented material facts regarding the

17  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

18  893.   Defendant knew or should have known that its conduct violated the Maryland CPA.

19  894.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

20  emissions systems manipulation because Defendant:

21      a.   Possessed exclusive knowledge that it manipulated the emissions system in the

22          Affected Vehicles to turn off or limit effectiveness in normal driving

23          conditions;

24      b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

25      c.   Made incomplete representations that it manipulated the emissions system in

26          the Affected Vehicles to turn off or limit effectiveness in normal driving

27          conditions, while purposefully withholding material facts from Plaintiff and

28          the Subclass that contradicted these representations.

895.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

896.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

897.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

898.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

899.    Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiff and the Maryland Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MARYLAND LAW)

900.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

901.    This claim is brought on behalf of the Maryland Subclass against FCA.

902.    Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

SECOND AMENDED CLASS ACTION COMPLAINT - 194
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

903. Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

904. Defendant knew these representations were false when made.

905. The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

906. Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

907. As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles. Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

"defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

908.    The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

909.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

910.    Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

911.    Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

912.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

913.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

914.    Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

915.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or

suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

916.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies. Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

917.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

918.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

919.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant. Defendant's conduct

1    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

2    future, which amount is to be determined according to proof.

3    **V.    Claims Brought on Behalf of the Massachusetts Subclass**

4                                    **COUNT I**

5                **VIOLATIONS OF THE MASSACHUSETTS CONSUMER**
                               **PROTECTION ACT**
6                        **(MASS. GEN. LAWS CH. 93A)**

7           920.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

8    herein.

9           921.    This claim is brought on behalf of the Massachusetts Subclass against FCA.

10          922.    Plaintiff intends to assert a claim under the Massachusetts Consumer Protection Act

11   ("MCPA"), which makes it unlawful to engage in any "[u]nfair methods of competition or deceptive

12   acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(1).

13   Plaintiff will make a demand in satisfaction of Mass. Gen. Laws ch. 93A, § 9(3), and may amend this

14   Complaint to assert claims under the MCPA once the required 30 days have elapsed.  This paragraph

15   is included for purposes of notice only and is not intended to actually assert a claim under the

16   MCPA.

17                                   **COUNT II**

18                         **FRAUDULENT CONCEALMENT**
                         **(BASED ON MASSACHUSETTS LAW)**
19

20          923.    Plaintiff incorporates by reference all preceding allegations as though fully set forth

21   herein.

22          924.    This claim is brought on behalf of the Massachusetts Subclass against FCA.

23          925.    Defendant intentionally concealed that the NOx reduction system in the Affected

24   Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

25   defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

26   emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

27   advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

28   compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

1   and denied Plaintiff and the other Subclass members information that is highly relevant to their

2   purchasing decision.

3   926.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

4   advertising and other forms of communication, including standard and uniform material provided

5   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

6   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

7   properly when driven in normal usage.

8   927.   Defendant knew these representations were false when made.

9   928.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

10  members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

11  vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

12  advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

13  Affected Vehicles turns off or is limited during normal driving conditions.

14  929.   Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21  930.   As alleged in this Complaint, at all relevant times, Defendant has held out the

22  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

23  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

24  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

25  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

26  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

27  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

28  making other disclosures about the emission system deceptive.

SECOND AMENDED CLASS ACTION COMPLAINT - 200
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

931.     The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

932.     Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

933.     Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

934.     Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

935.     Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

SECOND AMENDED CLASS ACTION COMPLAINT - 201
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

936.     Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

937.     Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

938.     Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

939.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

940.    The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

941.    Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

942.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**W.     Claims Brought on Behalf of the Michigan Subclass**

2

**COUNT I**

3

**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**(MICH. COMP. LAWS § 445.903 *ET SEQ.*)**

4

943.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

5

944.    This claim is brought on behalf of the Michigan Subclass against FCA.

6

945.    Plaintiff and the Michigan Subclass members were "person[s]" within the meaning of

7

the Mich. Comp. Laws § 445.902(1)(d).

8

946.    The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair,

9

unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce,"

10

including: "(c) Representing that goods or services have … characteristics … that they do not have;"

11

"(e) Representing that goods or services are of a particular standard … if they are of another;"

12

"(i) Making false or misleading statements of fact concerning the reasons for, existence of, or

13

amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to

14

mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;"

15

"(bb) Making a representation of fact or statement of fact material to the transaction such that a

16

person reasonably believes the represented or suggested state of affairs to be other than it actually

17

is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of

18

fact made in a positive manner."  Mich. Comp. Laws § 445.903(1).

19

947.    In the course of Defendant's business, Defendant willfully failed to disclose and

20

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

21

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

22

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

23

consumer would expect in light of Defendant's advertising campaign.  Accordingly, Defendant

24

engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive

25

acts or practices, including representing that the Affected Vehicles have characteristics, uses,

26

benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

27

particular standard and quality when they are not; failing to reveal a material fact, the omission of

28

1    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

2    the consumer; making a representation of fact or statement of fact material to the transaction such

3    that a person reasonably believes the represented or suggested state of affairs to be other than it

4    actually is; and failing to reveal facts that are material to the transaction in light of representations of

5    fact made in a positive manner.

6          948.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

7    members were deceived by Defendant's failure to disclose that the NOx reduction system in the

8    Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

9    controls were defective, and that the Affected Vehicles emitted unexpectedly high levels of

10   pollutants, including NOx, as described above.

11         949.   Plaintiff and Subclass members reasonably relied upon Defendant's false

12   misrepresentations.  They had no way of knowing that Defendant's representations were false and

13   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

14   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15   their own.

16         950.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

17         951.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

18   reasonable consumers.

19         952.   Defendant intentionally and knowingly misrepresented material facts regarding the

20   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

21         953.   Defendant knew or should have known that its conduct violated the Michigan CPA.

22         954.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

23   emissions systems manipulation because Defendant:

24              a.   Possessed exclusive knowledge that it manipulated the emissions system in the

25                   Affected Vehicles to turn off or limit effectiveness in normal driving

26                   conditions;

27              b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

28

SECOND AMENDED CLASS ACTION COMPLAINT - 205
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

955.    Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, and had emissions that far exceeded those expected by a reasonable consumer.

956.    Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

957.    Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

958.    Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

959.    Plaintiff seeks monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under Mich. Comp.  Laws § 445.911.  Plaintiff also seeks punitive damages against Defendant because it carried out despicable conduct with willful and conscious disregard of the rights of others.  Defendant's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON MICHIGAN LAW)

960.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

961.  This claim is brought on behalf of the Michigan Subclass against FCA.

962.  Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, and emitted unlawfully high levels of pollutants such as NOx, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

963.  Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

964.  Defendant knew these representations were false when made.

965.  The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, and were unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

966.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, and had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

967.  As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

1   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

2   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

3   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

4   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, and

5   emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions

6   requirements, making other disclosures about the emission system deceptive.

7        968.    The truth about the defective emissions controls and Defendant's manipulations of

8   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

9   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

10   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

11   members.

12        969.    Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

13   had no way of knowing that Defendant's representations were false and/or misleading.  As

14   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

15   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

16   true facts about the Affected Vehicles' emissions.

17        970.    Defendant also concealed and suppressed material facts concerning what is evidently

18   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

19   compliance with federal and state clean air laws and emissions regulations that are meant to protect

20   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

21   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

22   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

23   environment.  And yet, that is precisely what the Affected Vehicles are doing.

24        971.    Defendant's false representations were material to consumers because they concerned

25   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

26   state laws and regulations regarding clean air and emissions, and also because the representations

27   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

28

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

972.    Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as *reduced-emissions* diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

973.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

SECOND AMENDED CLASS ACTION COMPLAINT - 209
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

974.     Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

975.     Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

976.     Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

977.     The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, and the unlawfully high emissions of the Affected Vehicles, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

978.     Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

979.    Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## X.    Claims Brought on Behalf of the Minnesota Subclass

### COUNT I

### VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MINN. STAT. § 325F.68 *ET SEQ.*)

980.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

981.    This claim is brought on behalf of the Minnesota Subclass against FCA.

982.    The Affected Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

983.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."  Minn. Stat. § 325F.69(1).  The Minnesota CFA also prohibits the dissemination, directly or indirectly, of an advertisement "of any sort regarding merchandise," where that advertisement contains "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."  Minn. Stat. § 325F.67.  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant used or employed a fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon

1    in connection with the sale of any merchandise, whether or not any person has in fact been misled,

2    deceived, or damaged thereby and disseminated advertisements containing material assertions,

3    representations, or statements of fact which were untrue, deceptive, or misleading, all in violation of

4    the Minnesota CFA.

5         984.    In the course of Defendant's business, Defendant willfully failed to disclose and

6    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

7    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

8    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

9    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

10   emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

11   Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

12   deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

13   uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

14   particular standard and quality when they are not; failing to reveal a material fact, the omission of

15   which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

16   the consumer; making a representation of fact or statement of fact material to the transaction such

17   that a person reasonably believes the represented or suggested state of affairs to be other than it

18   actually is; and failing to reveal facts that are material to the transaction in light of representations of

19   fact made in a positive manner.

20        985.    In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

21   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

22   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

23   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

24   including NOx, as described above.

25        986.    Plaintiff and Subclass members reasonably relied upon Defendant's false

26   misrepresentations.  They had no way of knowing that Defendant's representations were false and

27   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

28

deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

987.  Defendant's actions as set forth above occurred in the conduct of trade or commerce.

988.  Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

989.  Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

990.  Defendant knew or should have known that its conduct violated the Minnesota CFA.

991.  Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.  Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.  Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

992.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

993.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

994.     Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

995.     Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

996.     Pursuant to Minn. Stat. § 8.31(3a), Plaintiff and the Minnesota Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

997.     Plaintiff also seeks punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendant's acts show deliberate disregard for the rights of others.

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON MINNESOTA LAW)**

998.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

999.     This claim is brought on behalf of the Minnesota Subclass against FCA.

1000.  Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1001.  Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1002.   Defendant knew these representations were false when made.

1003.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1004.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1005.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1006.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1007.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1008.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1009.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1010.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and

Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1011.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1012.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1013.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1014.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result

1   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

2   Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

3   actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

4   by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

5   emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

6   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

7   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

8   or would not have purchased or leased them at all.

9       1015.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

10  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

11  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

12  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

13  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

14  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

15  vehicles.

16      1016.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

17  amount to be proven at trial.

18      1017.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

19  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

20  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

21  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

22  future, which amount is to be determined according to proof.

23  **Y.      Claims Brought on Behalf of the Missouri Subclass**

24                              **COUNT I**

25      **VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**
        **(MO. REV. STAT. § 407.010 *ET SEQ.*)**
26

27      1018.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

28      1019.   Plaintiff brings this Count on behalf of the Missouri Subclass against FCA.

1      1020.   Defendant, Plaintiff, and the Missouri Subclass members are "persons" within the

2   meaning of Mo. Rev. Stat. § 407.010(5).

3      1021.   Defendant engaged in "trade" or "commerce" in the State of Missouri within the

4   meaning of Mo. Rev. Stat. § 407.010(7).

5      1022.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the

6   "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation,

7   unfair practice, or the concealment, suppression, or omission of any material fact in connection with

8   the sale or advertisement of any merchandise."  Mo. Rev. Stat. § 407.020.  In the course of

9   Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx

10  reduction system in the Affected Vehicles turns off or is limited during normal driving conditions,

11  that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the

12  Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of

13  Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of

14  pollutants, including NOx, as described above.  Accordingly, Defendant used or employed

15  deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment,

16  suppression, or omission of any material fact in connection with the sale or advertisement of any

17  merchandise in trade or commerce, in violation of the Missouri MPA.  Defendant's conduct offends

18  public policy; is unethical, oppressive, or unscrupulous; and presents a risk of, or causes, substantial

19  injury to consumers.

20     1023.   In the course of Defendant's business, Defendant willfully failed to disclose and

21  actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

22  during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

23  gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

24  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

25  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

26  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

27  deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

28  uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1024.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1025.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1026.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1027.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1028.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1029.   Defendant knew or should have known that its conduct violated the Missouri MPA.

1030.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

     c.     Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1031.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1032.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1033.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1034.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1035.   Defendant is liable to Plaintiff and the Missouri Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MISSOURI LAW)

1036.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1037.   This claim is brought on behalf of the Missouri Subclass against FCA.

1038.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1039.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1040.   Defendant knew these representations were false when made.

1041.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1042.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1043.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1044.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1045.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1046.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1047.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations

1   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

2   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

3   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

4           1048.   Defendant had a duty to disclose the emissions defect, defective design of emissions

5   controls, and violations with respect to the Affected Vehicles because details of the true facts were

6   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

7   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

8   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

9   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

10  references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

11  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

12  forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

13  respect to compliance with federal and state clean air laws and emissions regulations, and

14  Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

15  information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

16  truth, but the entire truth.  These omitted and concealed facts were material because they directly

17  impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

18  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

19  emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

20  or non-compliance, are material concerns to a consumer, including with respect to the emissions

21  certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

22  members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

23  were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

24          1049.   Defendant actively concealed and/or suppressed these material facts, in whole or in

25  part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

26  vehicles and did not or could not comply with federal and state laws governing clean air and

27  emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

28  at the expense of Plaintiff and Subclass members.

SECOND AMENDED CLASS ACTION COMPLAINT - 224
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    1050.   Defendant still has not made full and adequate disclosures, and continues to defraud

2  Plaintiff and Subclass members by concealing material information regarding the emissions qualities

3  of the Affected Vehicles.

4    1051.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

5  herein, and they would not have acted as they did if they had known of the concealed and/or

6  suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

7  manufactured by Defendant, and/or would not have continued to drive their heavily polluting

8  vehicles, or would have taken other affirmative steps in light of the information concealed from

9  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

10  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

11  members.

12    1052.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

13  members have sustained damage because they own vehicles that are diminished in value as a result

14  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

15  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

16  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

17  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

18  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

19  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

20  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

21  or would not have purchased or leased them at all.

22    1053.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

23  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

24  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

25  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

26  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

27  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

28  vehicles.

1     1054.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

2  amount to be proven at trial.

3     1055.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

4  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

5  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

6  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

7  future, which amount is to be determined according to proof.

8  **Z.     Claims Brought on Behalf of the Montana Subclass**

9  **COUNT I**

10 **VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER
   PROTECTION ACT OF 1973**
11 **(MONT. CODE ANN. § 30-14-101 *ET SEQ.*)**

12    1056.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

13 herein.

14    1057.   This claim is brought only on behalf of the Montana Subclass against FCA.

15    1058.   Defendant, Plaintiff, and the Montana Subclass members are "persons" within the

16 meaning of Mont. Code Ann. § 30-14-102(6).

17    1059.   Montana Subclass members are "consumer[s]" under Mont. Code Ann. § 30-14-

18 102(1).

19    1060.   The sale or lease of the Affected Vehicles to Montana Subclass members occurred

20 within "trade and commerce" within the meaning of Mont. Code Ann. § 30-14-102(8), and

21 Defendant committed deceptive and unfair acts in the conduct of "trade and commerce" as defined in

22 that statutory section.

23    1061.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA")

24 makes unlawful any "unfair methods of competition and unfair or deceptive acts or practices in the

25 conduct of any trade or commerce."  Mont. Code Ann. § 30-14-103.  In the course of Defendant's

26 business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system

27 in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected

28 Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit

1  far more pollution than a reasonable consumer would expect in light of Defendant's advertising

2  campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including

3  NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition and

4  unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of the

5  Montana CPA.

6          1062.   In the course of Defendant's business, Defendant willfully failed to disclose and

7  actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

8  during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

9  gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

10  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

11  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

12  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

13  deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

14  uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

15  particular standard and quality when they are not; failing to reveal a material fact, the omission of

16  which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

17  the consumer; making a representation of fact or statement of fact material to the transaction such

18  that a person reasonably believes the represented or suggested state of affairs to be other than it

19  actually is; and failing to reveal facts that are material to the transaction in light of representations of

20  fact made in a positive manner.

21          1063.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

22  members were deceived by Defendant's failure to disclose that the NOx reduction system in the

23  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

24  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

25  including NOx, as described above.

26          1064.   Plaintiff and Subclass members reasonably relied upon Defendant's false

27  misrepresentations.  They had no way of knowing that Defendant's representations were false and

28  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

SECOND AMENDED CLASS ACTION COMPLAINT - 227
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2   their own.

3       1065.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4       1066.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5   reasonable consumers.

6       1067.   Defendant intentionally and knowingly misrepresented material facts regarding the

7   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8       1068.   Defendant knew or should have known that its conduct violated the Montana CPA.

9       1069.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11           a.   Possessed exclusive knowledge that it manipulated the emissions system in the

12                Affected Vehicles to turn off or limit effectiveness in normal driving

13                conditions;

14           b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15           c.   Made incomplete representations that it manipulated the emissions system in

16                the Affected Vehicles to turn off or limit effectiveness in normal driving

17                conditions, while purposefully withholding material facts from Plaintiff and

18                the Subclass that contradicted these representations.

19       1070.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26       1071.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

1072.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1073.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1074.   Because Defendant's unlawful methods, acts, and practices have caused Plaintiff and Montana Subclass members to suffer an ascertainable loss of money and property, Plaintiff and the Subclass seek from Defendant actual damages or $500, whichever is greater, discretionary treble damages, reasonable attorneys' fees, and any other relief the Court considers necessary or proper, under Mont. Code Ann. § 30-14-133.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON MONTANA LAW)

1075.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1076.   This claim is brought on behalf of the Montana Subclass against FCA.

1077.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1078.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided

1   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

2   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

3   properly when driven in normal usage.

4          1079.   Defendant knew these representations were false when made.

5          1080.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

6   members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered

7   vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

8   advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

9   Affected Vehicles turns off or is limited during normal driving conditions.

10         1081.   Defendant had a duty to disclose that the NOx reduction system in the Affected

11   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

12   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

13   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

14   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

15   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

16   emission vehicles, efficient, and free from defects.

17         1082.   As alleged in this Complaint, at all relevant times, Defendant has held out the

18   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

19   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

20   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

21   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

22   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

23   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

24   making other disclosures about the emission system deceptive.

25         1083.   The truth about the defective emissions controls and Defendant's manipulations of

26   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

27   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

28

1  know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

2  members.

3      1084.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

4  had no way of knowing that Defendant's representations were false and/or misleading.  As

5  consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

6  their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

7  true facts about the Affected Vehicles' emissions.

8      1085.   Defendant also concealed and suppressed material facts concerning what is evidently

9  the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

10  compliance with federal and state clean air laws and emissions regulations that are meant to protect

11  the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

12  and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

13  because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

14  environment.  And yet, that is precisely what the Affected Vehicles are doing.

15      1086.   Defendant's false representations were material to consumers because they concerned

16  the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

17  state laws and regulations regarding clean air and emissions, and also because the representations

18  played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

19  including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

20  leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

21      1087.   Defendant had a duty to disclose the emissions defect, defective design of emissions

22  controls, and violations with respect to the Affected Vehicles because details of the true facts were

23  known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

24  facts, and because Defendant knew these facts were not known to or reasonably discoverable by

25  Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

26  affirmative representations about the qualities of the vehicles with respect to emissions, starting with

27  references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

28  which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1088.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1089.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1090.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1091.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1092.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1093.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1094.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**AA.   Claims Brought on Behalf of the Nebraska Subclass**

2

**COUNT I**

3

**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(NEB. REV. STAT. § 59-1601 *ET SEQ.*)**

4

1095.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

5

herein.

6

1096.   This claim is brought on behalf of the Nebraska Subclass against FCA.

7

1097.   Defendant, Plaintiff and Nebraska Subclass members are "person[s]" under the

8

Nebraska Consumer Protection Act ("Nebraska CPA"), Neb. Rev. Stat. § 59-1601(1).

9

1098.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce

10

as defined under Neb. Rev. Stat. § 59-1601(2).

11

1099.   The Nebraska CPA prohibits "unfair or deceptive acts or practices in the conduct of

12

any trade or commerce." Neb. Rev. Stat. § 59-1602.  Defendant's conduct as set forth herein

13

constitutes unfair or deceptive acts or practices.

14

1100.   In the course of Defendant's business, Defendant willfully failed to disclose and

15

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

16

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

17

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

18

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

19

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

20

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

21

deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

22

uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

23

particular standard and quality when they are not; failing to reveal a material fact, the omission of

24

which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

25

the consumer; making a representation of fact or statement of fact material to the transaction such

26

that a person reasonably believes the represented or suggested state of affairs to be other than it

27

28

SECOND AMENDED CLASS ACTION COMPLAINT - 234
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1101.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1102.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1103.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1104.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1105.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1106.   Defendant knew or should have known that its conduct violated the Nebraska CPA.

1107.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

        a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

        b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

        c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1108.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1109.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1110.   Because Defendant's conduct caused injury to Nebraska Subclass members' property through violations of the Nebraska CPA, Plaintiff and the Nebraska Subclass seek recovery of actual damages, as well as enhanced damages up to $1,000, an order enjoining Defendant's unfair or deceptive acts and practices, court costs, reasonable attorneys' fees, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEBRASKA LAW)

1111.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1112.   Plaintiff brings this Count on behalf of the Nebraska Subclass against FCA.

1113.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1114.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1115.   Defendant knew these representations were false when made.

1116.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1117.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1118.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1119.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1120.  Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1121.  Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1122.  Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1123.  Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1124.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1125.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1126.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

1    of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

2    members.

3        1127.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

4    members have sustained damage because they own vehicles that are diminished in value as a result

5    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

6    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

7    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

8    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

9    emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

10   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

11   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

12   or would not have purchased or leased them at all.

13       1128.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

14   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

15   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

16   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

17   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

18   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

19   vehicles.

20       1129.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

21   amount to be proven at trial.

22       1130.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

23   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

24   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

25   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

26   future, which amount is to be determined according to proof.

1

**BB.**   **Claims Brought on Behalf of the Nevada Subclass**

2

## COUNT I

3

### VIOLATIONS OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT
### (NEV. REV. STAT. § 598.0903 *ET SEQ.*)

4

1131.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

5

1132.   Plaintiff brings this Count on behalf of the Nevada Subclass against FCA.

6

1133.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat.

7

§ 598.0903 *et seq.*, prohibits deceptive trade practices.  Nev. Rev. Stat. § 598.0915 provides that a

8

person engages in a "deceptive trade practice" if, in the course of business or occupation, the person:

9

"5.  Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits,

10

alterations or quantities of goods or services for sale or lease or a false representation as to the

11

sponsorship, approval, status, affiliation or connection of a person therewith"; "7.  Represents that

12

goods or services for sale or lease are of a particular standard, quality or grade, or that such goods are

13

of a particular style or model, if he or she knows or should know that they are of another standard,

14

quality, grade, style or model"; "9.  Advertises goods or services with intent not to sell or lease them

15

as advertised"; or "15.  Knowingly makes any other false representation in a transaction."

16

Accordingly, Defendant has violated the Nevada DTPA by knowingly representing that the Affected

17

Vehicles have uses and benefits which they do not have; representing that the Affected Vehicles are

18

of a particular standard, quality, and grade when they are not; advertising Affected Vehicles with the

19

intent not to sell or lease them as advertised; representing that the subject of a transaction involving

20

Affected Vehicles has been supplied in accordance with a previous representation when it has not;

21

and knowingly making other false representations in a transaction.

22

1134.   In the course of Defendant's business, Defendant willfully failed to disclose and

23

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

24

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

25

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

26

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

27

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

28

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1135.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1136.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1137.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1138.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1139.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1140.   Defendant knew or should have known that its conduct violated the Nevada DTPA.

1141.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1142.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1143.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1144.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1145.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1146.   Accordingly, Plaintiff and the Nevada Subclass seek their actual damages, punitive damages, court costs, attorney's fees, and all other appropriate and available remedies under the Nevada DTPA.  Nev. Rev. Stat. § 41.600.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NEVADA LAW)

1147.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1148.   This claim is brought on behalf of the Nevada Subclass against FCA.

1149.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1150.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1151.   Defendant knew these representations were false when made.

1152.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1153.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1154.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1155.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1156.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1157.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1158.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1159.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1160.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1161.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1162.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1163.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1164.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

1    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5    vehicles.

6        1165.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7    amount to be proven at trial.

8        1166.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12   future, which amount is to be determined according to proof.

13   **CC.    Claims Brought on Behalf of the New Hampshire Subclass under New Hampshire Law**

14                                    **COUNT I**

15                 **VIOLATION OF N.H. CONSUMER PROTECTION ACT**
                      **(N.H. REV. STAT. § 358-A:1 *ET SEQ.*)**

16

17       1167.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

     herein.
18

19       1168.   Plaintiff brings this claim on behalf of the New Hampshire Subclass against FCA.

20       1169.   Plaintiff, New Hampshire Subclass members, and Defendant are "persons" under the

21   New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

22       1170.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce

23   as defined under N.H. Rev. Stat. § 358-A:1.

24       1171.   The New Hampshire CPA prohibits a person, in the conduct of any trade or

25   commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the

26   following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or

27   quantities that they do not have;" "(VII) Representing that goods or services are of a particular

28

1   standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with

2   intent not to sell them as advertised."  N.H. Rev. Stat. § 358-A:2.

3       1172.   In the course of Defendant's business, Defendant willfully failed to disclose and

4   actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

5   during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

6   gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

7   consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

8   emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

9   Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

10   deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

11   uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

12   particular standard and quality when they are not; failing to reveal a material fact, the omission of

13   which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

14   the consumer; making a representation of fact or statement of fact material to the transaction such

15   that a person reasonably believes the represented or suggested state of affairs to be other than it

16   actually is; and failing to reveal facts that are material to the transaction in light of representations of

17   fact made in a positive manner.

18       1173.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

19   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

20   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

21   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

22   including NOx, as described above.

23       1174.   Plaintiff and Subclass members reasonably relied upon Defendant's false

24   misrepresentations.  They had no way of knowing that Defendant's representations were false and

25   gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

26   deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

27   their own.

28       1175.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

SECOND AMENDED CLASS ACTION COMPLAINT - 249
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1176.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1177.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1178.   Defendant knew or should have known that its conduct violated the New Hampshire CPA.

1179.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1180.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1181.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1182.   Because Defendant's willful conduct caused injury to New Hampshire Subclass members' property through violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and

SECOND AMENDED CLASS ACTION COMPLAINT - 250
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

reasonable attorneys' fees, an order enjoining Defendant's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEW HAMPSHIRE LAW)

1183.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1184.   Plaintiff brings this claim on behalf of the New Hampshire Subclass against FCA.

1185.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1186.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1187.   Defendant knew these representations were false when made.

1188.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1189.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1190.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1191.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1192.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1193.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1194.  Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1195.  Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1196.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1197.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1198.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1199.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1    1200.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

2    Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

3    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

4    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

5    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

6    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

7    vehicles.

8    1201.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

9    amount to be proven at trial.

10    1202.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

11    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

12    representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

13    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

14    future, which amount is to be determined according to proof.

**DD.    Claims Brought on Behalf of the New Jersey Subclass**

**COUNT I**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1 *ET SEQ.*)**

18    1203.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

19    herein.

20    1204.   Plaintiff brings this Count on behalf of the New Jersey Subclass against FCA.

21    1205.   The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.* ("N.J. CFA"),

22    prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

23    1206.   In the course of Defendant's business, Defendant willfully failed to disclose and

24    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

25    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

26    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

27    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

28

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1207.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1208.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1209.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1210.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1211.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1212.   Defendant knew or should have known that its conduct violated the N.J. CFA.

1213.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

a.  Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.  Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.  Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1214.  Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1215.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1216.  Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass and Subclass members.

1217.  Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1218.  Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1219.  Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint within 10 days of filing.

# COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON NEW JERSEY LAW)

1220.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1221.   Plaintiff brings this Count on behalf of the New Jersey Subclass against FCA.

1222.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1223.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1224.   Defendant knew these representations were false when made.

1225.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1226.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1227.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1228.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1229.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1230.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1231.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1232.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1233.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1234.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1235.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1236.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1237.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

1   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5   vehicles.

6       1238.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7   amount to be proven at trial.

8       1239.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12  future, which amount is to be determined according to proof.

13  **EE.    Claims Brought on Behalf of the New Mexico Subclass**

14                          **COUNT I**

15              **VIOLATIONS OF THE NEW MEXICO UNFAIR
                    TRADE PRACTICES ACT**

16              **(N.M. STAT. ANN. § 57-12-1 *ET SEQ.*)**

17      1240.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

18  herein.

19      1241.   This claim is brought on behalf of the New Mexico Subclass against FCA.

20      1242.   Defendant, Plaintiff, and New Mexico Subclass members are or were "person[s]"

21  under the New Mexico Unfair Trade Practices Act ("New Mexico UTPA"), N.M. Stat. Ann. § 57-12-

22  2. 010549-11 816608 V1

23      1243.   Defendant's actions as set forth herein occurred in the conduct of trade or commerce

24  as defined under N.M. Stat. Ann. § 57-12-2.

25      1244. The New Mexico UTPA makes unlawful "a false or misleading oral or written

26  statement, visual description or other representation of any kind knowingly made in connection with

27  the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's

28  trade or commerce, that may, tends to or does deceive or mislead any person," including but not

SECOND AMENDED CLASS ACTION COMPLAINT - 262
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann.

2    § 57-12- 2(D).  Defendant's acts and omissions described herein constitute unfair or deceptive acts or

3    practices under N.M. Stat. Ann. § 57-12-2(D).  In addition, Defendant's actions constitute

4    unconscionable actions under N.M. Stat. Ann. § 57-12-2(E), since they took advantage of the lack of

5    knowledge, ability, experience, and capacity of the New Mexico Subclass members to a grossly

6    unfair degree.

7         1245.   In the course of Defendant's business, Defendant willfully failed to disclose and

8    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

9    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

10   gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

11   consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

12   emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

13   Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

14   deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

15   uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

16   particular standard and quality when they are not; failing to reveal a material fact, the omission of

17   which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

18   the consumer; making a representation of fact or statement of fact material to the transaction such

19   that a person reasonably believes the represented or suggested state of affairs to be other than it

20   actually is; and failing to reveal facts that are material to the transaction in light of representations of

21   fact made in a positive manner.

22        1246.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

23   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

24   Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

25   controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

26   including NOx, as described above.

27        1247.   Plaintiff and Subclass members reasonably relied upon Defendant's false

28   misrepresentations.  They had no way of knowing that Defendant's representations were false and

SECOND AMENDED CLASS ACTION COMPLAINT - 263
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1248.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1249.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1250.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1251.   Defendant knew or should have known that its conduct violated the New Mexico UTPA.

1252.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1253.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1254.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1255.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1256.   As a direct and proximate result of Defendant's violations of the New Mexico UTPA, Plaintiff and the New Mexico Subclass have suffered injury in fact and/or actual damage.

1257.   New Mexico Subclass members seek punitive damages against Defendant because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.  Because Defendant's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

1258.   Because Defendant's unconscionable, willful conduct caused actual harm to New Mexico Subclass members, Plaintiff and the New Mexico Subclass seek recovery of actual damages or $100, whichever is greater, discretionary treble damages, punitive damages, and reasonable attorneys' fees and costs, as well as all other proper and just relief available under N.M. Stat. Ann. § 57-12-10.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NEW MEXICO LAW)

1259.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1260.   Plaintiff brings this Count on behalf of the New Mexico Subclass against FCA.

1261.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1262.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1263.   Defendant knew these representations were false when made.

1264.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1265.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1266.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1267. The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1268. Plaintiff and Subclass members reasonably relied upon Defendant's deception. They had no way of knowing that Defendant's representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1269. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1270. Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1271. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1272.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1273.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1274.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1275.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1276.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1277.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1278.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**FF.    Claims Brought on Behalf of the New York Subclass**

2

<b>COUNT I</b>

3

<b>VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349<br>(N.Y. GEN. BUS. LAW § 349)</b>

4

5        1279.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

6

7        1280.   This claim is brought on behalf of the New York Subclass against FCA.

8        1281.   New York's General Business Law § 349 makes unlawful "[d]eceptive acts or

practices in the conduct of any business, trade or commerce."  In the course of Defendant's business,

9

Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the

10

Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles

11

emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more

12

pollution than a reasonable consumer would expect in light of Defendant's advertising campaign,

13

and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as

14

described above.  The challenged act or practice was "consumer-oriented;" (2) that the act or practice

15

was misleading in a material way; and (3) Plaintiff suffered injury as a result of the deceptive act or

16

practice.  Accordingly, Defendant has violated General Business Law § 349.

17        1282.   In the course of Defendant's business, Defendant willfully failed to disclose and

18

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

19

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

20

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

21

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

22

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

23

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

24

deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

25

uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

26

particular standard and quality when they are not; failing to reveal a material fact, the omission of

27

which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

28

the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1283.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1284.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1285.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1286.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1287.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1288.   Defendant knew or should have known that its conduct violated New York's General Business Law § 349.

1289.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1290.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1291.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1292.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1293.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1294.   Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff and each Subclass member may recover actual damages, in addition to three times actual damages up to $1,000 for Defendant's willful and knowing violation of N.Y. Gen. Bus. Law § 349.

## COUNT II

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. GEN. BUS. LAW § 350)**

1295.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1296.   This claim is brought on behalf of the New York Subclass against FCA.

1297.   New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of … representations [made] with respect to the commodity."  N.Y. Gen. Bus. Law § 350-a.

1298.   Defendant caused to be made or disseminated throughout New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Subclass members.

1299.   Defendant has violated N.Y. Gen. Bus. Law § 350 because of the misrepresentations and omissions alleged herein, including, but not limited to, Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1300.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1301.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1302.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1303.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1304.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1     1305.   Defendant knew or should have known that its conduct violated General Business

2   Law § 350.

3     1306.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

4   emissions systems manipulation because Defendant:

5         a.   Possessed exclusive knowledge that it manipulated the emissions system in the

6             Affected Vehicles to turn off or limit effectiveness in normal driving

7             conditions;

8         b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

9         c.   Made incomplete representations that it manipulated the emissions system in

10            the Affected Vehicles to turn off or limit effectiveness in normal driving

11            conditions, while purposefully withholding material facts from Plaintiff and

12            the Subclass that contradicted these representations.

13    1307.   Defendant had a duty to disclose that the NOx reduction system in the Affected

14  Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles were

15  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

16  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

17  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

18  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

19  emission vehicles, efficient, and free from defects.

20    1308.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

21  members.

22    1309.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss,

23  injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

24  the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

25  their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

26  direct and natural consequence of Defendant's misrepresentations and omissions.

27    1310.   Defendant's violations present a continuing risk to Plaintiff as well as to the general

28  public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

SECOND AMENDED CLASS ACTION COMPLAINT - 274
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1311.   Plaintiff and the other Subclass members are entitled to recover their actual damages or $500, whichever is greater.  Because Defendant acted willfully or knowingly, Plaintiff and the other Subclass members are entitled to recover three times actual damages, up to $10,000.

### COUNT III

### FRAUDULENT CONCEALMENT
### (BASED ON NEW YORK LAW)

1312.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1313.   This claim is brought on behalf of the New York Subclass against FCA.

1314.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1315.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1316.   Defendant knew these representations were false when made.

1317.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1318.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1319.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1320.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1321.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1322.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1323.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1324.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1325.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1326.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1327.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1328.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1329.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1330.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1331.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**GG.     Claims Brought on Behalf of the North Carolina Subclass**

**COUNT I**

**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT**
**(N.C. GEN. STAT. § 75-1.1 *ET SEQ.*)**

1332.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1333.   Plaintiff brings this Count on behalf of the North Carolina Subclass against FCA.

1334.   Defendant engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

1335.   The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. Gen. Stat. § 75-1.1(a).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as

described above.  Accordingly, Defendant engaged in unfair and deceptive trade practices because it (1) had the capacity or tendency to deceive, (2) offend public policy, (3) are immoral, unethical, oppressive, or unscrupulous, or (4) cause substantial injury to consumers.

1336.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1337.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1338.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1339.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1340.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1341.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1342.   Defendant knew or should have known that its conduct violated the North Carolina UDTPA.

1343.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1344.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1345.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1346.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

1   the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

2   their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

3   direct and natural consequence of Defendant's misrepresentations and omissions.

4        1347.   Defendant's violations present a continuing risk to Plaintiff as well as to the general

5   public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

6        1348.   Plaintiff seeks an order for treble his actual damages, court costs, attorney's fees, and

7   any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

8        1349.   Plaintiff also seeks punitive damages against Defendant because Defendant's conduct

9   was malicious, willful, reckless, wanton, fraudulent and in bad faith.

10                               **COUNT II**

11                       **FRAUDULENT CONCEALMENT**
                         **(BASED ON NORTH CAROLINA LAW)**

12        1350.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

13   herein.

14        1351.   This claim is brought on behalf of the North Carolina Subclass against FCA.

15        1352.   Defendant intentionally concealed that the NOx reduction system in the Affected

16   Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

17   defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

18   emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

19   advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

20   compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

21   and denied Plaintiff and the other Subclass members information that is highly relevant to their

22   purchasing decision.

23        1353.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

24   advertising and other forms of communication, including standard and uniform material provided

25   with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

26   friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate

27   properly when driven in normal usage.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 282
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1354.   Defendant knew these representations were false when made.

1355.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1356.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1357.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1358.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1359.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own. Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1360. Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers. Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations. Consumers buy diesel cars from Defendant because they feel they are clean diesel cars. They do not want to be spewing noxious gases into the environment. And yet, that is precisely what the Affected Vehicles are doing.

1361. Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1362. Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members. Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1363.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1364.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1365.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1366.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

1  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

2  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

3  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

4  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

5  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

6  or would not have purchased or leased them at all.

7       1367.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

8  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

9  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

10  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

11  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

12  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

13  vehicles.

14      1368.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

15  amount to be proven at trial.

16      1369.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

17  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

18  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

19  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

20  future, which amount is to be determined according to proof.

21  **HH.     Claims Brought on Behalf of the North Dakota Subclass**

22                              **COUNT I**

23              **VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT**
                              **(N.D. CENT. CODE § 51-15-02)**

24      1370.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

25  herein.

26      1371.   This claim is brought on behalf of the North Dakota Subclass against FCA.

27

28

1372.   Plaintiff, North Dakota Subclass members, and Defendant are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

1373.   Defendant engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

1374.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise." N.D. Cent. Code § 51-15-02. As set forth above and below, Defendant committed deceptive acts or practices, with the intent that North Dakota Subclass members rely thereon in connection with their purchase or lease of the Affected Vehicles.

1375.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above. Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1376.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1377.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1378.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1379.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1380.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1381.   Defendant knew or should have known that its conduct violated the North Dakota CFA.

1382.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1383.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

1    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

2    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

3    emission vehicles, efficient, and free from defects.

4        1384.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

5    members.

6        1385.   Defendant's violations present a continuing risk to Plaintiff as well as to the general

7    public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

8        1386.   As a direct and proximate result of Defendant's violations of the North Dakota CFA,

9    Plaintiff and the North Dakota Subclass have suffered injury in fact and/or actual damage.

10        1387.   North Dakota Subclass members seek punitive damages against Defendant because

11    Defendant's conduct was egregious.  Defendant's egregious conduct warrants punitive damages.

12        1388.   Further, Defendant knowingly committed the conduct described above, and thus,

13    under N.D. Cent. Code § 51-15-09, Defendant is liable to Plaintiff and the North Dakota Subclass for

14    treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements.

15    Plaintiff further seeks an order enjoining Defendant's unfair and/or deceptive acts or practices, and

16    other just and proper available relief under the North Dakota CFA.

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON NORTH DAKOTA LAW)

17

18

19

20        1389.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

21

22        1390.   Plaintiff brings this Count on behalf of the North Dakota Subclass against FCA.

23        1391.   Defendant intentionally concealed that the NOx reduction system in the Affected

24    Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles,

25    emitted pollutants higher than a reasonable consumer would expect in light of Defendant's

26    advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

27    compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

28

SECOND AMENDED CLASS ACTION COMPLAINT - 289
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1392.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1393.   Defendant knew these representations were false when made.

1394.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1395.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1396.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

SECOND AMENDED CLASS ACTION COMPLAINT - 290
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1397.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1398.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1399.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1400.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1401.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1402.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1403.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1404.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1405.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1406.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1407.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1408.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**II.     Claims Brought on Behalf of the Ohio Subclass**

**COUNT I**

**VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
**(OHIO REV. CODE § 1345.01 *ET SEQ.*)**

1409.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1410.   This claim is brought on behalf of the Ohio Subclass against FCA.

1411.   Plaintiff and the other Ohio Subclass members are "consumers" as defined by the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ("Ohio CSPA").  Defendant is a "supplier" as defined by the Ohio CSPA.  Plaintiff's and the other Ohio Subclass members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the Ohio CSPA.

1412.   The Ohio CSPA, Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.  *Id.*  Defendant's conduct as alleged above and below constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

1413.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

SECOND AMENDED CLASS ACTION COMPLAINT - 294
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1   uses, benefits, and qualities which they do not have; representing the that Affected Vehicles are of a

2   particular standard and quality when they are not; failing to reveal a material fact, the omission of

3   which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

4   the consumer; making a representation of fact or statement of fact material to the transaction such

5   that a person reasonably believes the represented or suggested state of affairs to be other than it

6   actually is; and failing to reveal facts that are material to the transaction in light of representations of

7   fact made in a positive manner.

8        1414.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

9   members were deceived by Defendant's failure to disclose that the NOx reduction system in the

10  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

11  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

12  including NOx, as described above.

13       1415.   Plaintiff and Subclass members reasonably relied upon Defendant's false

14  misrepresentations.  They had no way of knowing that Defendant's representations were false and

15  gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

16  deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

17  their own.

18       1416.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

19       1417.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

20  reasonable consumers.

21       1418.   Defendant intentionally and knowingly misrepresented material facts regarding the

22  Affected Vehicles with intent to mislead Plaintiff and the Subclass.

23       1419.   Defendant knew or should have known that its conduct violated the Ohio CSPA.

24       1420.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

25  emissions systems manipulation because Defendant:

26          a.   Possessed exclusive knowledge that it manipulated the emissions system in the

27               Affected Vehicles to turn off or limit effectiveness in normal driving

28               conditions;

b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1421.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1422.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1423.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1424.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1425.   Plaintiff and the Subclass sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under the Ohio CSPA.

1426.   Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT II

## FRAUDULENT CONCEALMENT
## (BASED ON OHIO LAW)

1427.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1428.   This claim is brought on behalf of the Ohio Subclass against FCA.

1429.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1430.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1431.   Defendant knew these representations were false when made.

1432.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1433.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1434.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1435.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1436.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1437.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

1    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

2    environment.  And yet, that is precisely what the Affected Vehicles are doing.

3         1438.   Defendant's false representations were material to consumers because they concerned

4    the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

5    state laws and regulations regarding clean air and emissions, and also because the representations

6    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

7    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

8    leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

9         1439.   Defendant had a duty to disclose the emissions defect, defective design of emissions

10   controls, and violations with respect to the Affected Vehicles because details of the true facts were

11   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

12   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

13   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

14   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

15   references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

16   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

17   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

18   respect to compliance with federal and state clean air laws and emissions regulations, and

19   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

20   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

21   truth, but the entire truth.  These omitted and concealed facts were material because they directly

22   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

23   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

24   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

25   or non-compliance, are material concerns to a consumer, including with respect to the emissions

26   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

27   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

28   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

SECOND AMENDED CLASS ACTION COMPLAINT - 299
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1440.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1441.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1442.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1443.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1444.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

1     unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2     requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3     Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4     any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5     vehicles.

6          1445.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7     amount to be proven at trial.

8          1446.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9     intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10    representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12    future, which amount is to be determined according to proof.

13    **JJ.     Claims Brought on Behalf of the Oklahoma Subclass**

14                              **COUNT I**

15            **VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT**
               **(OKLA. STAT. TIT. 15 § 751 *ET SEQ.*)**

16         1447.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

17         1448.   Plaintiff brings this Count on behalf of the Oklahoma Subclass against FCA.

18         1449.   Plaintiff and the Oklahoma Subclass members are "persons" under the Oklahoma

19    Consumer Protection Act ("Oklahoma CPA"), Okla. Stat. tit. 15 § 752.

20         1450.   Defendant is a "person," "corporation," or "association" within the meaning of Okla.

21    Stat. tit. 15 § 15-751(1).

22         1451.   The sale or lease of the Affected Vehicles to the Oklahoma Subclass members was a

23    "consumer transaction" within the meaning of Okla. Stat. tit. 15 § 752, and Defendant's actions as

24    set forth herein occurred in the conduct of trade or commerce.

25         1452.   The Oklahoma CPA declares unlawful, *inter alia*, the following acts or practices

26    when committed in the course of business: "mak[ing] a false or misleading representation,

27    knowingly or with reason to know, as to the characteristics, … uses, [or] benefits, of the subject of a

28

consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." *See* Okla. Stat. tit. 15, § 753.

1453.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1454.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1455.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.

3         1456.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4         1457.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5    reasonable consumers.

6         1458.   Defendant intentionally and knowingly misrepresented material facts regarding the

7    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8         1459.   Defendant knew or should have known that its conduct violated the Oklahoma CPA.

9         1460.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11        a.    Possessed exclusive knowledge that it manipulated the emissions system in the

12             Affected Vehicles to turn off or limit effectiveness in normal driving

13             conditions;

14        b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15        c.    Made incomplete representations that it manipulated the emissions system in

16             the Affected Vehicles to turn off or limit effectiveness in normal driving

17             conditions, while purposefully withholding material facts from Plaintiff and

18             the Subclass that contradicted these representations.

19        1461.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26        1462.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 303
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1463.   Plaintiff and the Oklahoma Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information.

1464.   Defendant's unlawful acts and practices complained of herein affect the public interest.

1465.   As a direct and proximate result of Defendant's violations of the Oklahoma CPA, Plaintiff and the Oklahoma Subclass have suffered injury in fact and/or actual damage.

1466.   Defendant's conduct as alleged herein was unconscionable because (1) Defendant, knowingly or with reason to know, took advantage of consumers reasonably unable to protect their interests because of their age, physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor; (2) at the time the consumer transaction was entered into, Defendant knew or had reason to know that price grossly exceeded the price at which similar vehicles were readily obtainable in similar transactions by like consumers; and (3) Defendant knew or had reason to know that the transaction Defendant induced the consumer to enter into was excessively one-sided in favor of Defendant.

1467.   Because Defendant's unconscionable conduct caused injury to Oklahoma Subclass members, Plaintiff and the Oklahoma Subclass seek recovery of actual damages, discretionary penalties up to $2,000 per violation, punitive damages, and reasonable attorneys' fees, under Okla. Stat. tit. 15 § 761.1.  Plaintiff and the Oklahoma Subclass further seek an order enjoining Defendant's unfair and/or deceptive acts or practices, and any other just and proper relief available under the Oklahoma CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON OKLAHOMA LAW)

1468.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1469.   Plaintiff brings this Count on behalf of the Oklahoma Subclass against FCA.

1470.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1471.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1472.   Defendant knew these representations were false when made.

1473.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1474.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1475.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1476.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1477.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1478.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1479.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1480.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1481.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1482.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1483.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1484.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1485.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1486.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1487.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**KK.     Claims Brought on Behalf of the Pennsylvania Subclass**

**COUNT I**

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1 *ET SEQ.*)**

1488.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1489.   Plaintiff brings this Count on behalf of the Pennsylvania Subclass against FCA.

1490.   Plaintiff purchased his Affected Vehicle primarily for personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

1491.   All of the acts complained of herein were perpetrated by Defendant in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

1492.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices, including:  (i) "Representing that goods or services have … characteristics, … [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade … if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."  73 P.S. § 201-2(4).

1493.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

1    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

2    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

3    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

4    particular standard and quality when they are not; failing to reveal a material fact, the omission of

5    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

6    the consumer; making a representation of fact or statement of fact material to the transaction such

7    that a person reasonably believes the represented or suggested state of affairs to be other than it

8    actually is; and failing to reveal facts that are material to the transaction in light of representations of

9    fact made in a positive manner.

10    1494.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

11    members were deceived by Defendant's failure to disclose that the NOx reduction system in the

12    Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

13    controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

14    including NOx, as described above.

15    1495.   Plaintiff and Subclass members reasonably relied upon Defendant's false

16    misrepresentations.  They had no way of knowing that Defendant's representations were false and

17    gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

18    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

19    their own.

20    1496.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

21    1497.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

22    reasonable consumers.

23    1498.   Defendant intentionally and knowingly misrepresented material facts regarding the

24    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

25    1499.   Defendant knew or should have known that its conduct violated the Pennsylvania

26    CPL.

27    1500.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

28    emissions systems manipulation because Defendant:

SECOND AMENDED CLASS ACTION COMPLAINT - 310
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

a.      Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

b.      Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

c.      Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1501.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1502.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1503.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1504.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1505.   Defendant is liable to Plaintiff and the Pennsylvania Subclass for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).  Plaintiff and the Pennsylvania Subclass members are also entitled to an award of punitive damages given that

Defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON PENNSYLVANIA LAW)

1506.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1507.   This claim is brought on behalf of the Pennsylvania Subclass against FCA.

1508.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1509.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1510.   Defendant knew these representations were false when made.

1511.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1512.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1513.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1514.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1515.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1516.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

1    because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

2    environment.  And yet, that is precisely what the Affected Vehicles are doing.

3          1517.   Defendant's false representations were material to consumers because they concerned

4    the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

5    state laws and regulations regarding clean air and emissions, and also because the representations

6    played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

7    including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

8    leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

9          1518.   Defendant had a duty to disclose the emissions defect, defective design of emissions

10   controls, and violations with respect to the Affected Vehicles because details of the true facts were

11   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

12   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

13   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

14   affirmative representations about the qualities of the vehicles with respect to emissions, starting with

15   references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

16   which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

17   forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

18   respect to compliance with federal and state clean air laws and emissions regulations, and

19   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

20   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

21   truth, but the entire truth.  These omitted and concealed facts were material because they directly

22   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

23   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

24   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

25   or non-compliance, are material concerns to a consumer, including with respect to the emissions

26   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

27   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

28   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1519.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1520.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1521.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1522.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1523.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

1    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

2    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

3    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

4    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

5    vehicles.

6          1524.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

7    amount to be proven at trial.

8          1525.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

9    intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

10    representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

11    warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

12    future, which amount is to be determined according to proof.

**LL.    Claims Brought on Behalf of the Rhode Island Subclass**

**COUNT I**

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT
(R.I. GEN. LAWS § 6-13.1 *ET SEQ.*)**

17          1526.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

18          1527.   Plaintiff brings this Count on behalf of the Rhode Island Subclass against FCA.

19          1528.   Plaintiff is a person who purchased an Affected Vehicle primarily for personal,

20    family, or household purposes within the meaning of R.I. Gen. Laws § 6-13.1-5.2(a).

21          1529.   Rhode Island's Unfair Trade Practices and Consumer Protection Act ("Rhode Island

22    CPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce"

23    including: "(v) Representing that goods or services have sponsorship, approval, characteristics,

24    ingredients, uses, benefits, or quantities that they do not have"; "(vii) Representing that goods or

25    services are of a particular standard, quality, or grade, … if they are of another"; "(ix) Advertising

26    goods or services with intent not to sell them as advertised"; "(xii) Engaging in any other conduct

27    that similarly creates a likelihood of confusion or of misunderstanding"; "(xiii) Engaging in any act

28    or practice that is unfair or deceptive to the consumer"; and "(xiv) Using any other methods, acts or

1   practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-

2   13.1-1(6).

3       1530.   Defendant engaged in unlawful trade practices, including: (1) representing that the

4   Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2)

5   representing that the Affected Vehicles are of a particular standard and quality when they are not; (3)

6   advertising the Affected Vehicles with the intent not to sell them as advertised; and (4) otherwise

7   engaging in conduct that is unfair or deceptive and likely to deceive.

8       1531.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

9       1532.   In the course of Defendant's business, Defendant willfully failed to disclose and

10  actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

11  during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

12  gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

13  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

14  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

15  Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

16  deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

17  uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

18  particular standard and quality when they are not; failing to reveal a material fact, the omission of

19  which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

20  the consumer; making a representation of fact or statement of fact material to the transaction such

21  that a person reasonably believes the represented or suggested state of affairs to be other than it

22  actually is; and failing to reveal facts that are material to the transaction in light of representations of

23  fact made in a positive manner.

24      1533.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

25  members were deceived by Defendant's failure to disclose that the NOx reduction system in the

26  Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

27  controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

28  including NOx, as described above.

SECOND AMENDED CLASS ACTION COMPLAINT - 317
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    1534.   Plaintiff and Subclass members reasonably relied upon Defendant's false

misrepresentations.  They had no way of knowing that Defendant's representations were false and

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

their own.

1535.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1536.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

reasonable consumers.

1537.   Defendant intentionally and knowingly misrepresented material facts regarding the

Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1538.   Defendant knew or should have known that its conduct violated the Rhode Island

CPA.

1539.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the

Affected Vehicles to turn off or limit effectiveness in normal driving

conditions;

    b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.   Made incomplete representations that it manipulated the emissions system in

the Affected Vehicles to turn off or limit effectiveness in normal driving

conditions, while purposefully withholding material facts from Plaintiff and

the Subclass that contradicted these representations.

1540.   Defendant had a duty to disclose that the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

defective, employed a "defect device," emitted pollutants at a much higher rate than gasoline-

powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1541.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1542.   Plaintiff and the Rhode Island Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information. Plaintiff who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1654.   Defendant's unlawful acts and practices complained of herein affect the public interest.

1655.   As a direct and proximate result of Defendant's violations of the Rhode Island CPA, Plaintiff and the Rhode Island Subclass have suffered injury in fact and/or actual damage.

1656.   Plaintiff and Rhode Island Subclass members are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a).  Plaintiff also seeks punitive damages in the discretion of the Court because of Defendant's egregious disregard of consumer and public safety and their long-running concealment of the serious safety defects and their tragic consequences.

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON RHODE ISLAND LAW)**

1543.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1544.   Plaintiff brings this Count on behalf of the Rhode Island Subclass against FCA.

1545.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-

compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1546.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1547.   Defendant knew these representations were false when made.

1548.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1549.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1550.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

1    unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

2    making other disclosures about the emission system deceptive.

3        1551.   The truth about the defective emissions controls and Defendant's manipulations of

4    those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

5    emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

6    know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

7    members.

8        1552.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

9    had no way of knowing that Defendant's representations were false and/or misleading.  As

10   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

11   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

12   true facts about the Affected Vehicles' emissions.

13       1553.   Defendant also concealed and suppressed material facts concerning what is evidently

14   the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

15   compliance with federal and state clean air laws and emissions regulations that are meant to protect

16   the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

17   and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

18   because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

19   environment.  And yet, that is precisely what the Affected Vehicles are doing.

20       1554.   Defendant's false representations were material to consumers because they concerned

21   the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

22   state laws and regulations regarding clean air and emissions, and also because the representations

23   played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

24   including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

25   leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

26       1555.   Defendant had a duty to disclose the emissions defect, defective design of emissions

27   controls, and violations with respect to the Affected Vehicles because details of the true facts were

28   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

1    facts, and because Defendant knew these facts were not known to or reasonably discoverable by

2    Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

3    affirmative representations about the qualities of the vehicles with respect to emissions, starting with

4    references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

5    which were misleading, deceptive, and incomplete without the disclosure of the additional facts set

6    forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with

7    respect to compliance with federal and state clean air laws and emissions regulations, and

8    Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

9    information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

10   truth, but the entire truth.  These omitted and concealed facts were material because they directly

11   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

12   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

13   emissions regulations, and whether that manufacturer tells the truth with respect to such compliance

14   or non-compliance, are material concerns to a consumer, including with respect to the emissions

15   certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

16   members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they

17   were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

18       1556.   Defendant actively concealed and/or suppressed these material facts, in whole or in

19   part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

20   vehicles and did not or could not comply with federal and state laws governing clean air and

21   emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

22   at the expense of Plaintiff and Subclass members.

23       1557.   Defendant still has not made full and adequate disclosures, and continues to defraud

24   Plaintiff and Subclass members by concealing material information regarding the emissions qualities

25   of the Affected Vehicles.

26       1558.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

27   herein, and they would not have acted as they did if they had known of the concealed and/or

28   suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

SECOND AMENDED CLASS ACTION COMPLAINT - 322
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1   manufactured by Defendant, and/or would not have continued to drive their heavily polluting

2   vehicles, or would have taken other affirmative steps in light of the information concealed from

3   them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

4   of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

5   members.

6       1559.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

7   members have sustained damage because they own vehicles that are diminished in value as a result

8   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

9   Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

10  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

11  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

12  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

13  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

14  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

15  or would not have purchased or leased them at all.

16      1560.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

17  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

18  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

19  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

20  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

21  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

22  vehicles.

23      1561.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

24  amount to be proven at trial.

25      1562.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

26  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

27  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

28

1   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

2   future, which amount is to be determined according to proof.

3   **MM.   Claims Brought on Behalf of the South Carolina Subclass**

4   **COUNT I**

5   **VIOLATIONS OF THE SOUTH CAROLINA**
    **UNFAIR TRADE PRACTICES ACT**
6   **(S.C. CODE ANN. § 39-5-10 *ET SEQ.*)**

7   1563.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

8   herein.

9   1564.   This claim is brought on behalf of the South Carolina Subclass against FCA.

10   1565.   Defendant is a "person" under S.C. Code Ann. § 39-5-10.

11   1566.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits

12   "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. §

13   39-5-20(a).

14   1567.   In the course of Defendant's business, Defendant willfully failed to disclose and

15   actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

16   during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

17   gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

18   consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

19   emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

20   Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

21   deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

22   uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

23   particular standard and quality when they are not; failing to reveal a material fact, the omission of

24   which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

25   the consumer; making a representation of fact or statement of fact material to the transaction such

26   that a person reasonably believes the represented or suggested state of affairs to be other than it

27   actually is; and failing to reveal facts that are material to the transaction in light of representations of

28   fact made in a positive manner.

SECOND AMENDED CLASS ACTION COMPLAINT - 324
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1568.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1569.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1570.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1571.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1572.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1573.   Defendant knew or should have known that its conduct violated the South Carolina UTPA.

1574.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1575.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1576.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1577.   Plaintiff and the South Carolina Subclass suffered ascertainable loss caused by Defendant's misrepresentations and concealment of and failure to disclose material information. Plaintiff who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

1578. Defendant's unlawful acts and practices complained of herein affect the public interest.

1579.   As a direct and proximate result of Defendant's violations of the South Carolina UTPA, Plaintiff and the South Carolina Subclass have suffered injury in fact and/or actual damage.

1580.   Pursuant to S.C. Code Ann. § 39-5-140(a), Plaintiff seeks monetary relief against Defendant to recover for economic losses.  Because Defendant's actions were willful and knowing, Plaintiff's damages should be trebled.  *Id.*

1581.   Plaintiff further alleges that Defendant's malicious and deliberate conduct warrants an assessment of punitive damages because Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiff and the Subclass to cruel and unjust hardship as a result.

## COUNT II

### VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT
### (S.C. CODE ANN. § 56-15-10 *ET SEQ.*)

1582.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

1583.   This claim is brought only on behalf of the South Carolina Subclass against FCA.

1584.   Defendant was a "manufacturer" as set forth in S.C. Code Ann. § 56-15-10, as each was engaged in the business of manufacturing or assembling new and unused motor vehicles.

1585.   Defendant committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

1586.   Defendant engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiff, the South Carolina Subclass, and to the public.

1587.   Defendant's bad faith and unconscionable actions include, but are not limited to: (1) representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Affected Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Affected Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Affected Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Affected Vehicles has been supplied in accordance with a previous representation when it has not.

**COUNT III**

**FRAUDULENT CONCEALMENT**
**(BASED ON SOUTH CAROLINA LAW)**

1588.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1589.   Plaintiff brings this Count on behalf of the South Carolina Subclass against FCA.

1590.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth

and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1591.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1592.   Defendant knew these representations were false when made.

1593.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1594.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1595.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1

1596.   The truth about the defective emissions controls and Defendant's manipulations of

2

those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

3

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

4

know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

5

members.

6

1597.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

7

had no way of knowing that Defendant's representations were false and/or misleading.  As

8

consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

9

their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

10

true facts about the Affected Vehicles' emissions.

11

1598.   Defendant also concealed and suppressed material facts concerning what is evidently

12

the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

13

compliance with federal and state clean air laws and emissions regulations that are meant to protect

14

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

15

and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

16

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

17

environment.  And yet, that is precisely what the Affected Vehicles are doing.

18

1599.   Defendant's false representations were material to consumers because they concerned

19

the quality of the Affected Vehicles, because they concerned compliance with applicable federal and

20

state laws and regulations regarding clean air and emissions, and also because the representations

21

played a significant role in the value of the vehicles.  As Defendant well knew, its customers,

22

including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or

23

leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

24

1600.   Defendant had a duty to disclose the emissions defect, defective design of emissions

25

controls, and violations with respect to the Affected Vehicles because details of the true facts were

26

known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

27

facts, and because Defendant knew these facts were not known to or reasonably discoverable by

28

Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1601.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1602.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1603.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from

1  them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control
2  of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass
3  members.

4        1604.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass
5  members have sustained damage because they own vehicles that are diminished in value as a result
6  of Defendant's concealment of the true quality and quantity of those vehicles' emissions and
7  Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the
8  actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered
9  by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true
10  emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and
11  compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members
12  who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles
13  or would not have purchased or leased them at all.

14        1605.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of
15  Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the
16  unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions
17  requirements, all of which has greatly tarnished Defendant's brand name, which is attached to
18  Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase
19  any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the
20  vehicles.

21        1606.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an
22  amount to be proven at trial.

23        1607.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with
24  intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the
25  representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct
26  warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the
27  future, which amount is to be determined according to proof.

28

1   **NN.   Claims Brought on Behalf of the Tennessee Subclass**

2   ## COUNT I

3   **VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT**
**(TENN. CODE ANN. § 47-18-101 *ET SEQ.*)**

4   1608.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

5   1609.   Plaintiff brings this Count on behalf of the Tennessee Subclass against FCA.

6   1610.   Plaintiff and Tennessee Subclass members are "natural persons" and "consumers"

7   within the meaning of Tenn. Code Ann. § 47-18-103(2).

8   1611.   Defendant is a "person" within the meaning of Tenn. Code Ann. § 47-18-103(2).

9   1612.   Defendant's conduct complained of herein affected "trade," "commerce" or

10  "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

11  1613.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or

12  deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited

13  to:  "Representing that goods or services have … characteristics, [or] … benefits … that they do not

14  have…;" "Representing that goods or services are of a particular standard, quality or grade … if they

15  are of another;" "Advertising goods or services with intent not to sell them as advertised;" and

16  "Engaging in any other act or practice which is deceptive to the consumer or any other person."

17  Tenn. Code Ann. § 47-18-104.  In the course of Defendant's business, Defendant willfully failed to

18  disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or

19  is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants

20  than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

21  consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

22  emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

23  Defendant violated the Tennessee CPA by engaging in unfair or deceptive acts, including

24  representing that the Affected Vehicles have characteristics or benefits that they did not have;

25  representing that the Affected Vehicles are of a particular standard, quality, or grade when they are

26  of another; advertising the Affected Vehicles with intent not to sell them as advertised; and engaging

27  in acts or practices that are deceptive to consumers.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 332
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1614.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1615.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1616.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1617.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1618.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

SECOND AMENDED CLASS ACTION COMPLAINT - 333
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1     1619.   Defendant intentionally and knowingly misrepresented material facts regarding the

2   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

3     1620.   Defendant knew or should have known that its conduct violated the Tennessee CPA.

4     1621.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

5   emissions systems manipulation because Defendant:

6          a.   Possessed exclusive knowledge that it manipulated the emissions system in the

7               Affected Vehicles to turn off or limit effectiveness in normal driving

8               conditions;

9          b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

10         c.   Made incomplete representations that it manipulated the emissions system in

11              the Affected Vehicles to turn off or limit effectiveness in normal driving

12              conditions, while purposefully withholding material facts from Plaintiff and

13              the Subclass that contradicted these representations.

14    1622.   Defendant had a duty to disclose that the NOx reduction system in the Affected

15  Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

16  defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

17  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

18  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

19  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

20  emission vehicles, efficient, and free from defects.

21    1623.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

22  members.

23    1624.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss,

24  injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and

25  the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of

26  their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the

27  direct and natural consequence of Defendant's misrepresentations and omissions.

28

1625.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1626.   Pursuant to Tenn. Code § 47-18-109(a), Plaintiff and the Tennessee Subclass seek monetary relief against Defendant measured as actual damages in an amount to be determined at trial, treble damages as a result of Defendant's willful or knowing violations, and any other just and proper relief available under the Tennessee CPA.

## COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON TENNESSEE LAW)

1627.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1628.   This claim is brought on behalf of the Tennessee Subclass against FCA.

1629.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1630.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1631.   Defendant knew these representations were false when made.

1632.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

1    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

2    Affected Vehicles turns off or is limited during normal driving conditions.

3        1633.   Defendant had a duty to disclose that the NOx reduction system in the Affected

4    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

5    defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

6    powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

7    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

8    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

9    emission vehicles, efficient, and free from defects.

10       1634.   As alleged in this Complaint, at all relevant times, Defendant has held out the

11   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

12   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

13   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

14   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

15   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

16   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

17   making other disclosures about the emission system deceptive.

18       1635.   The truth about the defective emissions controls and Defendant's manipulations of

19   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

20   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

21   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

22   members.

23       1636.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

24   had no way of knowing that Defendant's representations were false and/or misleading.  As

25   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

26   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

27   true facts about the Affected Vehicles' emissions.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 336
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1637.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1638.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1639.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1640.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1641.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1642.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1643.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

1    compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

2    who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

3    or would not have purchased or leased them at all.

4         1644.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

5    Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

6    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

7    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

8    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

9    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

10   vehicles.

11        1645.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

12   amount to be proven at trial.

13        1646.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

14   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

15   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

16   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

17   future, which amount is to be determined according to proof.

18   **OO.    Claims Brought on Behalf of the Texas Subclass**

19                                    **COUNT I**

20              **VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
                 **(TEX. BUS. & COM. CODE § 17.41 *ET SEQ.*)**

21

22        1647.   The Texas Deceptive Trade Practices Act ("Texas DTPA") declares "[f]alse,

      misleading, or deceptive acts" to be unlawful Tex. Bus. & Com. Code § 17.46.
23

24        1648.   This claim is brought on behalf of the Texas Subclass against FCA.

25        1649.    Plaintiff will make a demand in satisfaction of Tex. Bus. & Com. Code § 17.505(a),

26   and may amend this Complaint to assert claims under the Texas DTPA once the required notice

27   period has elapsed.  This paragraph is included for purposes of notice only and is not intended to

      actually assert a claim under the Texas DTPA.
28

1

## COUNT II

2

### FRAUDULENT CONCEALMENT
### (BASED ON TEXAS LAW)

3

4

1650.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

5

1651.   This claim is brought on behalf of the Texas Subclass against FCA.

6

7

1652.   Defendant intentionally concealed that the NOx reduction system in the Affected

Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had

8

defective emissions controls, failed to meet and maintain the advertised MPG rate, emitted pollutants

9

at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable

10

consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels

11

of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant

12

acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members

13

information that is highly relevant to their purchasing decision.

14

1653.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in

15

advertising and other forms of communication, including standard and uniform material provided

16

with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-

17

friendly and low-emission vehicles, met and maintained the advertised MPG rate, complied with

18

EPA regulations, and would perform and operate properly when driven in normal usage.

19

1654.   Defendant knew these representations were false when made.

20

1655.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass

21

members were, in fact, defective, not meeting and maintaining the advertised MPG rate, emitting

22

pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a

23

reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-

24

compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is

25

limited during normal driving conditions.

26

1656.   Defendant had a duty to disclose that the NOx reduction system in the Affected

27

Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

28

defective, did not meet and maintain the advertised MPG rate, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, were non-EPA-compliant and unreliable, and failed to meet and maintain the advertised MPG rate, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1657.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced emission, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deployed a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1658.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," failure to meet and maintain the advertised MPG rate, and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts and Defendant actively concealed these facts from Plaintiff and Subclass members.

1659.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1660.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—one characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  They also emphasized profits and sales above the trust that Plaintiff and

1    Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because

2    they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the

3    environment.  And yet, that is precisely what the Affected Vehicles are doing.

4         1661.   Defendant's false representations were material to consumers because they concerned

5    the quality and cost-effectiveness of the Affected Vehicles, because they concerned compliance with

6    applicable federal and state laws and regulations regarding clean air and emissions, and also because

7    the representations played a significant role in the value of the vehicles.  As Defendant well knew, its

8    customers, including Plaintiff and Subclass members, highly valued that the vehicles they were

9    purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid

10   accordingly.

11        1662.   Defendant had a duty to disclose the emissions defect, defective design of emissions

12   controls, and violations with respect to the Affected Vehicles because details of the true facts were

13   known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such

14   facts, and because Defendant knew these facts were not known to or reasonably discoverable by

15   Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general

16   affirmative representations about the qualities of the Affected Vehicles with respect to emissions,

17   starting with references to them as *reduced-emissions diesel cars* and as compliant with all laws in

18   each state, which were misleading, deceptive, and incomplete without the disclosure of the additional

19   facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy

20   with respect to compliance with federal and state clean air laws and emissions regulations, and

21   Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide

22   information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial

23   truth, but the entire truth.  These omitted and concealed facts were material because they directly

24   impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.

25   Whether a manufacturer's products pollute, comply with federal and state clean air laws and

26   emissions regulations, meets and maintains the advertised MPG rate, and whether that manufacturer

27   tells the truth with respect to such compliance or non-compliance, are material concerns to a

28   consumer, including with respect to the emissions certifications testing their vehicles must pass.

SECOND AMENDED CLASS ACTION COMPLAINT - 342
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing fuel-

2    efficient, reduced-emissions diesel vehicles when, in fact, they were purchasing or leasing defective,

3    high-emission vehicles with unlawfully high emissions.

4         1663.   Defendant actively concealed and/or suppressed these material facts, in whole or in

5    part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel

6    vehicles and did not or could not comply with federal and state laws governing clean air and

7    emissions, which perception would hurt the brand's image and cost Defendant money, and it did so

8    at the expense of Plaintiff and Subclass members.

9         1664.   Defendant had still not made full and adequate disclosures, and continues to defraud

10   Plaintiff and Subclass members by concealing material information regarding the emissions qualities

11   of the Affected Vehicles.

12        1665.   Plaintiff and Subclass members were unaware of the omitted material facts referenced

13   herein, and they would not have acted as they did if they had known of the concealed and/or

14   suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars

15   manufactured by Defendant, and/or would not have continued to drive their heavily polluting

16   vehicles, or would have taken other affirmative steps in light of the information concealed from

17   them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

18   of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

19   members.

20        1666.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

21   members have sustained damage because they own vehicles that are diminished in value as a result

22   of Defendant's concealment of the true quality and quantity of those vehicles' emissions and fuel

23   efficiency and Defendant's failure to timely disclose the defect or defective design of the EcoDiesel

24   engine, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues

25   engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of

26   the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth

27   and compliance with applicable federal and state laws and regulations, and its failure to meet and

28   maintain the advertised MPG rate, Plaintiff and Subclass members who purchased or leased new or

1    certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or

2    leased them at all.

3        1667.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

4    Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

5    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

6    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

7    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

8    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

9    vehicles.

10       1668.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

11   amount to be proven at trial.

12       1669.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

13   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

14   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

15   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

16   future, which amount is to be determined according to proof.

17   **PP.**     **Claims Brought on Behalf of the Utah Subclass**

18                                **COUNT I**

19       **VIOLATIONS OF THE UTAH CONSUMER SALES PRACTICES ACT**
         **(UTAH CODE ANN. § 13-11-1 *ET SEQ.*)**

20       1670.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

21       1671.   Plaintiff brings this Count on behalf of the Utah Subclass against FCA.

22       1672.   Defendant qualifies as a "supplier" under the Utah Consumer Sales Practices Act

23   ("Utah CSPA"), Utah Code Ann. § 13-11-3.

24       1673.   Plaintiff and the Subclass members are "persons" under Utah Code Ann. § 13-11-3.

25       1674.   Sales of the Affected Vehicles to Plaintiff and the Subclass were "consumer

26   transactions" within the meaning of Utah Code Ann. § 13-11-3.

27

28

1675.   The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction" under Utah Code Ann. § 13-11-4.  Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally:  (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not."  Utah Code Ann. § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA.  Utah Code Ann. § 13-11-5.

1676.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1677.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

SECOND AMENDED CLASS ACTION COMPLAINT - 345
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1    1678.   Plaintiff and Subclass members reasonably relied upon Defendant's false

2    misrepresentations.  They had no way of knowing that Defendant's representations were false and

3    gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

4    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

5    their own.

6    1679.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

7    1680.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

8    reasonable consumers.

9    1681.   Defendant intentionally and knowingly misrepresented material facts regarding the

10   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

11   1682.   Defendant knew or should have known that its conduct violated the Utah CSPA.

12   1683.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

13   emissions systems manipulation because Defendant:

14          a.    Possessed exclusive knowledge that it manipulated the emissions system in the

15                Affected Vehicles to turn off or limit effectiveness in normal driving

16                conditions;

17          b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

18          c.    Made incomplete representations that it manipulated the emissions system in

19                the Affected Vehicles to turn off or limit effectiveness in normal driving

20                conditions, while purposefully withholding material facts from Plaintiff and

21                the Subclass that contradicted these representations.

22   1684.   Defendant had a duty to disclose that the NOx reduction system in the Affected

23   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

24   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

25   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

26   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

27   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

28   emission vehicles, efficient, and free from defects.

SECOND AMENDED CLASS ACTION COMPLAINT - 346
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1685.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1686.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1687.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1688.   Pursuant to Utah Code Ann. § 13-11-4, Plaintiff and the Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $2,000 for Plaintiff and each Utah Subclass member, reasonable attorneys' fees, and any other just and proper relief available under the Utah CSPA.

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON UTAH LAW)**

1689.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1690.   Plaintiff brings this Count on behalf of the Utah Subclass against FCA.

1691.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1692.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1693.   Defendant knew these representations were false when made.

1694.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1695.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1696.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1697.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

SECOND AMENDED CLASS ACTION COMPLAINT - 348
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1698.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1699.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1700.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1701.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1702.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1703.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1704.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1705.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1706.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1707.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1708.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

1

**QQ.   Claims Brought on Behalf of the Vermont Subclass**

2

## COUNT I

3

### VIOLATION OF VERMONT CONSUMER FRAUD ACT
### (VT. STAT. ANN. TIT. 9, § 2451 *ET SEQ.*)

4

5

1709.  Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

6

7

1710.   This claim is brought on behalf of the Vermont Subclass against FCA.

8

1711.   Defendant is a seller within the meaning of Vt. Stat. Ann. tit. 9, § 2451(a)(c).

9

1712.   The Vermont Consumer Fraud Act ("Vermont CFA") makes unlawful "[u]nfair

10

methods of competition in commerce, and unfair or deceptive acts or practices in commerce." Vt.

Stat. Ann. tit. 9, § 2453(a).

11

12

1713.   In the course of Defendant's business, Defendant willfully failed to disclose and

13

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

14

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

15

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

16

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

17

Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

18

deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

19

uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

20

particular standard and quality when they are not; failing to reveal a material fact, the omission of

21

which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

22

the consumer; making a representation of fact or statement of fact material to the transaction such

23

that a person reasonably believes the represented or suggested state of affairs to be other than it

24

actually is; and failing to reveal facts that are material to the transaction in light of representations of

25

fact made in a positive manner.

26

1714.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

27

members were deceived by Defendant's failure to disclose that the NOx reduction system in the

28

1    Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

2    controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

3    including NOx, as described above.

4         1715.   Plaintiff and Subclass members reasonably relied upon Defendant's false

5    misrepresentations.  They had no way of knowing that Defendant's representations were false and

6    gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

7    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

8    their own.

9         1716.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

10        1717.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

11   reasonable consumers.

12        1718.   Defendant intentionally and knowingly misrepresented material facts regarding the

13   Affected Vehicles with intent to mislead Plaintiff and the Subclass.

14        1719.   Defendant knew or should have known that its conduct violated the Vermont CFA.

15        1720.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

16   emissions systems manipulation because Defendant:

17        a.   Possessed exclusive knowledge that it manipulated the emissions system in the

18             Affected Vehicles to turn off or limit effectiveness in normal driving

19             conditions;

20        b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

21        c.   Made incomplete representations that it manipulated the emissions system in

22             the Affected Vehicles to turn off or limit effectiveness in normal driving

23             conditions, while purposefully withholding material facts from Plaintiff and

24             the Subclass that contradicted these representations.

25        1721.   Defendant had a duty to disclose that the NOx reduction system in the Affected

26   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

27   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

28   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

1   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

2   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

3   emission vehicles, efficient, and free from defects.

4          1722.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

5   members.

6          1723.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

7   reasonable consumers, including Plaintiff, about the true cleanliness and efficiency of the EcoDiesel

8   engine, the quality of Defendant's brands, the devaluing of environmental cleanliness and integrity at

9   Defendant's company, and the true value of the Affected Vehicles.

10         1724.   Defendant intentionally and knowingly misrepresented material facts regarding the

11  Affected Vehicles with intent to mislead Plaintiff and the Vermont Subclass.  Defendant's fraudulent

12  use of the "defeat device" and concealment of the true characteristics of the Clean Diesel engine

13  system were material to Plaintiff and the Vermont Subclass.  A vehicle made by a reputable

14  manufacturer of environmentally friendly vehicles is worth more than an otherwise comparable

15  vehicle made by a disreputable and dishonest manufacturer of polluting vehicles that conceals the

16  amount its vehicles pollute rather than make environmentally friendly vehicles.

17         1725.   Plaintiff and the Vermont Subclass suffered ascertainable loss caused by Defendant's

18  misrepresentations and concealment of and failure to disclose material information.  Plaintiff who

19  purchased the Affected Vehicles either would have paid less for their vehicles or would not have

20  purchased or leased them at all.

21         1726.   Defendant had an ongoing duty to all its customers to refrain from unfair and

22  deceptive acts or practices under the Vermont CFA.  All owners of Affected Vehicles suffered

23  ascertainable loss in the form of the diminished value of their vehicles as a result of Defendant's

24  deceptive and unfair acts and practices that occurred In the course of Defendant's business.

25         1727.   Defendant's violations present a continuing risk to Plaintiff as well as to the general

26  public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

27         1447.   As a direct and proximate result of Defendant's violations of the Vermont CFA,

28  Plaintiff and the Vermont Subclass have suffered injury in fact and/or actual damage.

SECOND AMENDED CLASS ACTION COMPLAINT - 354
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1448.   Plaintiff and Vermont Subclass members are entitled to recover "appropriate equitable relief" and "the amount of [their] damages, or the consideration or the value of the consideration given by [them], reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by [them]" pursuant to Vt. Stat. Ann. tit. 9, § 2461(b).

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON VERMONT LAW)**

1728.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1729.   Plaintiff brings this Count on behalf of the Vermont Subclass against FCA.

1730.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1731.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1732.   Defendant knew these representations were false when made.

1733.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's

1    advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the

2    Affected Vehicles turns off or is limited during normal driving conditions.

3        1734.   Defendant had a duty to disclose that the NOx reduction system in the Affected

4    Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

5    defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

6    powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

7    were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

8    Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

9    emission vehicles, efficient, and free from defects.

10       1735.   As alleged in this Complaint, at all relevant times, Defendant has held out the

11   Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

12   details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

13   important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

14   normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

15   "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

16   unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

17   making other disclosures about the emission system deceptive.

18       1736.   The truth about the defective emissions controls and Defendant's manipulations of

19   those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

20   emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

21   know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

22   members.

23       1737.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

24   had no way of knowing that Defendant's representations were false and/or misleading.  As

25   consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

26   their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

27   true facts about the Affected Vehicles' emissions.

28

1738.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1739.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1740.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and

emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1741.  Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1742.  Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1743.  Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1744.  Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

1    compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

2    who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

3    or would not have purchased or leased them at all.

4          1745.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

5    Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

6    unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

7    requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

8    Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

9    any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

10   vehicles.

11         1746.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

12   amount to be proven at trial.

13         1747.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

14   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

15   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

16   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

17   future, which amount is to be determined according to proof.

18   **RR.    Claims Brought on Behalf of the Virginia Subclass**

19                                   **COUNT I**

20              **VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
                   **(VA. CODE ANN. § 59.1-196 *ET SEQ.*)**

21         1748.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

22         1749.   This claim is brought on behalf of the Virginia Subclass against FCA.

23         1750.   Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.  The transactions

24   between Plaintiff and the other Subclass members on the one hand and Defendant on the other,

25   leading to the purchase or lease of the Affected Vehicles by Plaintiff and the other Subclass

26   members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the

27   Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

28

1    1751.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "(5)

2    misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or

3    benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style,

4    or model; … (8) advertising goods or services with intent not to sell them as advertised; … [and]

5    (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in

6    connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).

7    1752.   In the course of Defendant's business, Defendant willfully failed to disclose and

8    actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

9    during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

10    gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

11    consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

12    emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

13    Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or

14    deceptive acts or practices, including representing that the Affected Vehicles have characteristics,

15    uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a

16    particular standard and quality when they are not; failing to reveal a material fact, the omission of

17    which tends to mislead or deceive the consumer, and which fact could not reasonably be known by

18    the consumer; making a representation of fact or statement of fact material to the transaction such

19    that a person reasonably believes the represented or suggested state of affairs to be other than it

20    actually is; and failing to reveal facts that are material to the transaction in light of representations of

21    fact made in a positive manner.

22    1753.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass

23    members were deceived by Defendant's failure to disclose that the NOx reduction system in the

24    Affected Vehicles turns off or is limited during normal driving conditions, that the emissions

25    controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants,

26    including NOx, as described above.

27    1754.   Plaintiff and Subclass members reasonably relied upon Defendant's false

28    misrepresentations.  They had no way of knowing that Defendant's representations were false and

gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1755.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1756.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1757.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1758.   Defendant knew or should have known that its conduct violated the Virginia CPA.

1759.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

    a.   Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

    b.   Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

    c.   Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1760.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1761.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

SECOND AMENDED CLASS ACTION COMPLAINT - 361
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1762.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1763.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1764.   Pursuant to Va. Code Ann. § 59.1-204, Plaintiff and the Subclass seek monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for Plaintiff and each Subclass member. Because Defendant's conduct was committed willfully and knowingly, Plaintiff is entitled to recover, for himself and each Subclass member, the greater of (a) three times actual damages or (b) $1,000.

1765.   Plaintiff also seeks punitive damages, and attorneys' fees, and any other just and proper relief available under General Business Law § 59.1-204 *et seq.*

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON VIIRGINIA LAW)

1766.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1767.   Plaintiff brings this Count on behalf of the Virginia Subclass against FCA.

1768.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1769.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1770.   Defendant knew these representations were false when made.

1771.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1772.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1773.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1774.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1775.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1776.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1777.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1778.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1779.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1780.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1781.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control

1    of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

2    members.

3         1782.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

4    members have sustained damage because they own vehicles that are diminished in value as a result

5    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

6    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

7    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

8    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

9    emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

10   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

11   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

12   or would not have purchased or leased them at all.

13        1783.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

14   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

15   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

16   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

17   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

18   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

19   vehicles.

20        1784.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

21   amount to be proven at trial.

22        1785.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

23   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

24   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

25   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

26   future, which amount is to be determined according to proof.

27

28

1

**SS.**     **Claims Brought on Behalf of the Washington Subclass**

2

**COUNT I**

3

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(WASH. REV. CODE ANN. § 19.86.010 *ET SEQ.*)**

4

5

1786.   Plaintiff incorporates by reference all preceding allegations as though fully set forth

herein.

6

1787.   Plaintiff brings this Count on behalf of the Washington Subclass against FCA.

7

1788.   Defendant, Plaintiff, and each member of the Washington Subclass is a "person"

8

under Wash. Rev. Code Ann. § 19.86.010(1) ("Washington CPA").

9

1789.   Defendant engaged in "trade" or "commerce" under Wash. Rev. Code Ann. §

10

19.86.010(2).

11

1790.   The Washington Consumer Protection Act ("Washington CPA") broadly prohibits

12

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade

13

or commerce."  Wash. Rev. Code. Wash. Ann. § 19.96.010.

14

1791.   In the course of Defendant's business, Defendant willfully failed to disclose and

15

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

16

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

17

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable

18

consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles

19

emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly,

20

Defendant engaged in unfair and deceptive business practices prohibited by the Washington CPA.

21

Defendant's conduct was unfair because it (1) offends public policy as it has been established by

22

statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3)

23

causes substantial injury to consumers.  Defendant's conduct is deceptive because it has the capacity

24

or tendency to deceive.

25

1792.   In the course of Defendant's business, Defendant willfully failed to disclose and

26

actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

27

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than

28

gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1793.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1794.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.

1795.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

1796.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

1797.   Defendant intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with intent to mislead Plaintiff and the Subclass.

1798.   Defendant knew or should have known that its conduct violated the Washington CPA.

1799.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its emissions systems manipulation because Defendant:

      a.    Possessed exclusive knowledge that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions;

      b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

      c.    Made incomplete representations that it manipulated the emissions system in the Affected Vehicles to turn off or limit effectiveness in normal driving conditions, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations.

1800.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1801.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass members.

1802.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1803.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1804.   Defendant is liable to Plaintiff and the Subclass for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. Ann. § 19.86.090.

### COUNT II

### FRAUDULENT CONCEALMENT
### (BASED ON WASHINGTON LAW)

1805.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1806.   Plaintiff brings this Count on behalf of the Washington Subclass against FCA.

1807.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1808.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1809.   Defendant knew these representations were false when made.

1810.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1811.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1812.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1813.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1814.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1815.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect

the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1816.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1817.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass

members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1818.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1819.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1820.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1821.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1822.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1823.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1824.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**TT.    Claims Brought on Behalf of the West Virginia Subclass**

**COUNT I**

**VIOLATIONS OF THE WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT**
**(W. VA. CODE § 46A-1-101 *ET SEQ.*)**

1825.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1826.   Plaintiff brings this Count on behalf of the West Virginia Subclass against FCA.

1827.   Plaintiff intends to assert a claim under the West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce ...." W. VA. CODE § 46A-6-104.  Plaintiff will make a demand in satisfaction of W. VA. CODE § 46A-6-106(b), and may amend this Complaint to assert claims under the CCPA once the required 20 days have elapsed.  This paragraph is included for purposes of notice only and is not intended to actually assert a claim under the CCPA.

.

**COUNT II**

**FRAUDULENT CONCEALMENT
(BASED ON WEST VIRGINIA LAW)**

1828.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1829.   Plaintiff brings this Count on behalf of the West Virginia Subclass against FCA.

1830.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1831.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1832.   Defendant knew these representations were false when made.

1833.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1834.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

1  powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

2  were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

3  Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

4  emission vehicles, efficient, and free from defects.

5  1835.   As alleged in this Complaint, at all relevant times, Defendant has held out the

6  Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain

7  details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the

8  important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during

9  normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a

10  "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted

11  unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements,

12  making other disclosures about the emission system deceptive.

13  1836.   The truth about the defective emissions controls and Defendant's manipulations of

14  those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

15  emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not

16  know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass

17  members.

18  1837.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They

19  had no way of knowing that Defendant's representations were false and/or misleading.  As

20  consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

21  their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the

22  true facts about the Affected Vehicles' emissions.

23  1838.   Defendant also concealed and suppressed material facts concerning what is evidently

24  the true culture of Defendant—a culture characterized by an emphasis on profits and sales above

25  compliance with federal and state clean air laws and emissions regulations that are meant to protect

26  the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff

27  and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant

28

SECOND AMENDED CLASS ACTION COMPLAINT - 376
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1839.  Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1840.  Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.  Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1841.   Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1842.   Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1843.   Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and Subclass members' actions were justified.  Defendant was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

1844.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Defendant's concealment of the true quality and quantity of those vehicles' emissions and Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

1845.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions requirements, all of which has greatly tarnished Defendant's brand name, which is attached to Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

1846.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

1847.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**UU.    Claims Brought on Behalf of the Wisconsin Subclass**

**COUNT I**

**VIOLATIONS OF THE WISCONSIN
DECEPTIVE TRADE PRACTICES ACT
(WIS. STAT. § 110.18)**

1848.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1849.   Plaintiff brings this claim on behalf of the Wisconsin Subclass against FCA.

1850.   Defendant is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

1851.   Plaintiff and Wisconsin Subclass members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).  Plaintiff and Wisconsin Subclass members purchased or leased one or more Affected Vehicles.

1852.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading."  Wis. Stat. § 100.18(1).  In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited

during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in deceptive business practices prohibited by the Wisconsin DTPA.

1853.   In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles emitted far more pollutants than gasoline-powered vehicles, that the Affected Vehicles emit far more pollution than a reasonable consumer would expect in light of Defendant's advertising campaign, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.  Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Affected Vehicles are of a particular standard and quality when they are not; failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

1854.   In purchasing or leasing the Affected Vehicles, Plaintiff and the other Subclass members were deceived by Defendant's failure to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.

1855.   Plaintiff and Subclass members reasonably relied upon Defendant's false misrepresentations.  They had no way of knowing that Defendant's representations were false and gravely misleading.  As alleged herein, Defendant engaged in extremely sophisticated methods of

1    deception.  Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on

2    their own.

3        1856.   Defendant's actions as set forth above occurred in the conduct of trade or commerce.

4        1857.   Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive

5    reasonable consumers.

6        1858.   Defendant intentionally and knowingly misrepresented material facts regarding the

7    Affected Vehicles with intent to mislead Plaintiff and the Subclass.

8        1859.   Defendant knew or should have known that its conduct violated the Wisconsin DTPA.

9        1860.   Defendant owed Plaintiff and the Subclass a duty to disclose the truth about its

10   emissions systems manipulation because Defendant:

11       a.    Possessed exclusive knowledge that it manipulated the emissions system in the

12             Affected Vehicles to turn off or limit effectiveness in normal driving

13             conditions;

14       b.    Intentionally concealed the foregoing from Plaintiff and the Subclass; and/or

15       c.    Made incomplete representations that it manipulated the emissions system in

16             the Affected Vehicles to turn off or limit effectiveness in normal driving

17             conditions, while purposefully withholding material facts from Plaintiff and

18             the Subclass that contradicted these representations.

19       1861.   Defendant had a duty to disclose that the NOx reduction system in the Affected

20   Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were

21   defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-

22   powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and

23   were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on

24   Defendant's material representations that the Affected Vehicles they were purchasing were reduced-

25   emission vehicles, efficient, and free from defects.

26       1862.   Defendant's conduct proximately caused injuries to Plaintiff and the other Subclass

27   members.

28

SECOND AMENDED CLASS ACTION COMPLAINT - 381
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

1863.   Plaintiff and the other Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

1864.   Defendant's violations present a continuing risk to Plaintiff as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

1865.   Plaintiff and Wisconsin Subclass members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2).  Because Defendant's conduct was committed knowingly and/or intentionally, Plaintiff and Wisconsin Subclass members are entitled to treble damages.

1866.   Plaintiff and Wisconsin Subclass members also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

**COUNT II**

**FRAUDULENT CONCEALMENT**
**(BASED ON WISCONSIN LAW)**

1867.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

1868.   Plaintiff brings this Count on behalf of the Wisconsin Subclass against FCA.

1869.   Defendant intentionally concealed that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, that the Affected Vehicles had defective emissions controls, emitted pollutants at a higher level than gasoline-powered vehicles, emitted pollutants higher than a reasonable consumer would expect in light of Defendant's advertising campaign, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Defendant acted with reckless disregard for the truth and denied Plaintiff and the other Subclass members information that is highly relevant to their purchasing decision.

1870.   Defendant further affirmatively misrepresented to Plaintiff and Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, were Earth-friendly and low-emission vehicles, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

1871.   Defendant knew these representations were false when made.

1872.   The Affected Vehicles purchased or leased by Plaintiff and the other Subclass members were, in fact, defective, emitting pollutants at a much higher rate than gasoline-powered vehicles and at a much higher rate than a reasonable consumer would expect in light of Defendant's advertising campaign, non-EPA-compliant, and unreliable because the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions.

1873.   Defendant had a duty to disclose that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions and that the Affected Vehicles were defective, employed a "defeat device," emitted pollutants at a much higher rate than gasoline-powered vehicles, had emissions that far exceeded those expected by a reasonable consumer, and were non-EPA-compliant and unreliable, because Plaintiff and the other Subclass members relied on Defendant's material representations that the Affected Vehicles they were purchasing were reduced-emission vehicles, efficient, and free from defects.

1874.   As alleged in this Complaint, at all relevant times, Defendant has held out the Affected Vehicles to be reduced-emissions, EPA-compliant vehicles.  Defendant disclosed certain details about the diesel engine, but nonetheless, Defendant intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles turns off or is limited during normal driving conditions, and that the Affected Vehicles had defective emissions controls, deploy a "defeat device," emitted higher levels of pollutants than expected by a reasonable consumer, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

1875.   The truth about the defective emissions controls and Defendant's manipulations of those controls, unlawfully high emissions, the "defeat device," and non-compliance with EPA

emissions requirements was known only to Defendant; Plaintiff and the Subclass members did not know of these facts, and Defendant actively concealed these facts from Plaintiff and Subclass members.

1876.   Plaintiff and Subclass members reasonably relied upon Defendant's deception.  They had no way of knowing that Defendant's representations were false and/or misleading.  As consumers, Plaintiff and Subclass members did not, and could not, unravel Defendant's deception on their own.  Rather, Defendant intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicles' emissions.

1877.   Defendant also concealed and suppressed material facts concerning what is evidently the true culture of Defendant—a culture characterized by an emphasis on profits and sales above compliance with federal and state clean air laws and emissions regulations that are meant to protect the public and consumers.  Defendant also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Defendant because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing.

1878.   Defendant's false representations were material to consumers because they concerned the quality of the Affected Vehicles, because they concerned compliance with applicable federal and state laws and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Defendant well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were fuel efficient, clean diesel cars with reduced emissions, and they paid accordingly.

1879.   Defendant had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Defendant, because Defendant had exclusive knowledge as to such facts, and because Defendant knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Defendant also had a duty to disclose because it made general affirmative representations about the qualities of the vehicles with respect to emissions, starting with references to them as reduced-emissions diesel cars and as compliant with all laws in each state,

which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of the vehicles, Defendant's actual philosophy with respect to compliance with federal and state clean air laws and emissions regulations, and Defendant's actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff and Subclass members, Defendant had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members. Whether a manufacturer's products pollute, comply with federal and state clean air laws and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Defendant represented to Plaintiff and Subclass members that they were purchasing or leasing reduced-emission diesel vehicles when, in fact, they were purchasing or leasing defective, high-emission vehicles with unlawfully high emissions.

1880. Defendant actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Defendant money, and it did so at the expense of Plaintiff and Subclass members.

1881. Defendant still has not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of the Affected Vehicles.

1882. Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced-emissions diesel cars manufactured by Defendant, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's and Subclass members' actions were justified. Defendant was in exclusive control

1    of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass

2    members.

3        1883.   Because of the concealment and/or suppression of the facts, Plaintiff and Subclass

4    members have sustained damage because they own vehicles that are diminished in value as a result

5    of Defendant's concealment of the true quality and quantity of those vehicles' emissions and

6    Defendant's failure to timely disclose the defect or defective design of the diesel engine system, the

7    actual emissions qualities and quantities of Defendant's vehicles, and the serious issues engendered

8    by Defendant's corporate policies.  Had Plaintiff and Subclass members been aware of the true

9    emissions facts with regard to the Affected Vehicles, and Defendant's disregard for the truth and

10   compliance with applicable federal and state laws and regulations, Plaintiff and Subclass members

11   who purchased or leased new or certified pre-owned vehicles would have paid less for their vehicles

12   or would not have purchased or leased them at all.

13       1884.   The value of Plaintiff's and Subclass members' vehicles has diminished as a result of

14   Defendant's fraudulent concealment of the defective emissions controls of the Affected Vehicles, the

15   unlawfully high emissions of the Affected Vehicles, and the non-compliance with EPA emissions

16   requirements, all of which has greatly tarnished Defendant's brand name, which is attached to

17   Plaintiff's and Subclass members' vehicles, and made any reasonable consumer reluctant to purchase

18   any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the

19   vehicles.

20       1885.   Accordingly, Defendant is liable to Plaintiff and Subclass members for damages in an

21   amount to be proven at trial.

22       1886.   Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with

23   intent to defraud, and in reckless disregard of Plaintiff's and Subclass members' rights and the

24   representations that Defendant made to them, in order to enrich Defendant.  Defendant's conduct

25   warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the

26   future, which amount is to be determined according to proof.

27

28

SECOND AMENDED CLASS ACTION COMPLAINT - 386
Case No.: 3:17-md-02777-EMC
010635-11  947453 V1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Nationwide RICO Class, California Class, and Multistate Class, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendants, as follows:

A.      Certification of the proposed Nationwide RICO Class, California Class, and Multistate Class, including appointment of Plaintiff's counsel as Class Counsel;

B.      An order temporarily and permanently enjoining FCA and Bosch from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.      Injunctive relief in the form of a recall or free replacement program;

D.      Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

E.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

F.      An order requiring FCA and Bosch to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: May 16, 2017                    HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
      Steve W. Berman (*pro hac vice*)
Jessica M. Thompson (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
jessicat@hbsslaw.com

Shana E. Scarlett (217895)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

Peter B. Fredman (189097)
LAW OFFICE OF PETER FREDMAN PC
125 University Ave, Suite 102
Berkeley, CA 94710
Telephone: (510) 868-2626
Facsimile: (510) 868-2627
peter@peterfredmanlaw.com

Christopher A. Seeger (*pro hac vice to be filed*)
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
cseeger@seegerweiss.com

James E. Cecchi (*pro hac vice*)
CARELLA, BYRNE, CECCHI, OLSTEIN
BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com

Robert C. Hilliard (*pro hac vice to be filed*)
HILLIARD MUNOZ GONZALES LLP
719 S. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401
Telephone: (361) 882-1612
bobh@hmglawfirm.com

Jeffrey S. Goldenberg (*pro hac vice*)
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, Ohio  45202-3604
Telephone: (513) 345-8297
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs and the Proposed Classes*